No. 22-55254


**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

PERSIAN BROADCAST SERVICE
GLOBAL, INC., a California Corporation
*Plaintiff-Appellant*,

v.

MARTIN J. WALSH, Secretary of Labor;
U.S. DEPARTMENT OF LABOR,
*Defendants-Appellees*

---

Appeal from United States District Court – Central District, California
Case No. 2:21-cv-00229-CAS-GJS    (Honorable Christina A. Snyder)


**PLAINTIFF-APPELLANT'S OPENING BRIEF**
_____

Ira J. Nasserian, Esq.
CSB# 225380
12 Cypress Way
Rolling Hills Estates, CA 90274
Phone: (310) 337-7900
Email:  inasserian@lawinscal.com
*Attorney for Plaintiff-Appellant*

# DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTERESTS

Pursuant to Federal Rule of Appellate Procedure 26.1 and 9th Circuit Rule 26.1 Plaintiff-Appellant makes the following disclosures:

The party is not a subsidiary or affiliate of a publicly owned corporation. There is no publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome.

/s/_____          _____

Ira J. Nasserian
*Attorney for Plaintiff-Appellant*

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS/INTEREST......................2

TABLE OF CONTENTS...............................................................3

TABLE OF AUTHORITIES............................................................4

JURISDICTION AND VENUE.........................................................6

ISSUE PRESENTED ON APPEAL....................................................7

STATUTORY AND REGULATORY BACKGROUND………………………..8

FACTUAL BACKGROUND INCLUDING ADMINISTRATIVE ACTIONS..10

PROCEDURAL HISTORY OF THE DISTRICT COURT CASE .......................14

STANDARD OF APPELLATE REVIEW............................................16

STATEMENT OF ARGUMENT………………………………………...........17

ARGUMENT.........................................................................18
. I. The ARB's Timeliness Finding is not supported by its
   own interpretation of period of authorized employment……………………..18
II. The amount of ARB's Award to Varess under the Second LCA
   is not supported by ARB's own case law…………………………………….24
III. The Court's finding directing the enforcement of the ARB's order for
   Appellant to pay Varess $183, 794, plus pre- and post-judgment interest is not
   supported by the facts or statutory or case law……………………………..28

CONCLUSION.......................................................................29

STATEMENT OF RELATED CASES................................................29

RELIEF SOUGHT...................................................................29

CERTIFICATE OF COMPLIANCE..................................................30

CERTIFICATE OF SERVICE........................................................31

3

**TABLE OF AUTHORITIES**

Page(s)

CASES

*Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253 (9th Cir.) …………………………....16

*2-Bar Ranch Ltd. P'ship v. U S Forest Serv.*, 996 F.3d 984 (9th Cir. 2021)……………....16

*Horton by Horton v. City of Santa Maria*, 915 F.3d 592 (9th Cir. 2019)………………..... 16

*Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751 (9th Cir. 2017)……………....16

*Mull for Mull v. Motion Picture Indus. Health Plan*, 865 F.3d 1207 (9th Cir. 2017)….........16

*Carey v. Nevada Gaming Control Bd.*, 279 F.3d 873, 877 n.1 (9th Cir. 2002)…………......16

*Csutoras v. Paradise High Sch.*, 12 F.4th 960 (9th Cir. 2021)……………………………......16

*Innova Sols., Inc. v. Baran*, 983 F.3d 428 (9th Cir. 2020)…………………………………………16

*Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co*., 546 F.3d 1142 (9th Cir. 2008)…..16

*Suzuki Motor Corp. v. Consumers Union, Inc.*, 330 F.3d 1110 (9th Cir. 2003)…………......17

*Judulang v. Holder*, 132 S. Ct. 476 (2011)…………………………………………………......17, 20

*Nance v. EPA*, 645 F.2d 701, 705 (9th Cir. 1981)…………………………………………………17

*Family Inc. v. USCIS.* 469 F.3d 1313 (9th Cir. 2006)………………………………………......20

*Vimalraj Manoharan v HCL America, Inc*., (ARB 2021-0060) April 14, 2022 …………......20-26

*Alaska Dep't of Health & Social Servs. v. Ctrs. for Medicare & Medicaid Servs.*, 424 F.3d 931 (9th Cir. 2005)…………………………………………………......24

*Mao v. Nasser Eng'g & Computing Servs.*, ARB No. 2006-0121………………....25

*United States v. Occidental Chem. Corp.*, 200 F.3d 143, 149 n.6 (3d Cir. 1999)…………....28

*Cyberworld Enter. Techs., Inc. v. Napolitano*, 602 F.3d 189, 198 (3d Cir. 2010)………......28

**STATUTES**

5 U.S.C. § 702 ……………………………………………………………………… 6, 15

5 U.S.C. § 706(2)……………………………………………………… 7,15, 23,28

8 U.S.C. § 1101(a)(15)(E)(iii)……………………………………………………….8

8 U.S.C. § 1182(t)……………………………………………………………….8, 15

8 U.S.C. § 1182(t)(1)(A)(i)…………………………………………………………...8

8 U.S.C. § 1182(t)(3)……………………………………………………………….9

8 U.S.C. § 1182(t)(3)(C)(vii)(I)-(II)……………………………………………… 9

28 U.S.C. §1291……………………………………………………………………...6

28 U.S.C. § 1331……………………………………………………………………..6

28 U.S.C. § 1961(a)………………………………………………………………….28

28 U.S.C. § 3001…………………………………………………………………….15

26 U.S.C. §6621(a)(2)………………………………………………………………28

**REGULATIONS**

8 CFR Section 1.4……………………………………………………………….8, 9

8 CFR § 235.1(h)……………………………………………………………………..3

20 C.F.R. § 655.700………………………………………………………………….8

20 C.F.R. § 655.700(d)(2)………………………………………………………….8

20 C.F.R. § 655.700(d)(4)(i)……………………………………………………….19

20 C.F.R. § 655.705(b)……………………………………………………………….8

20 CFR § 655.730(c) and (d)………………………………………………………21

20 C.F.R. § 655.730(c) (2)………………………………………………………….18

20 CFR § 655.731-4…………………………………………………………………8

20 CFR § 655.705(b)……………………………………………………………….8

20 CFR §655.750 (a)………………………………………………………………..8

20 C.F.R. § 655.731(a)……………………………………………………………...25

20 C.F.R. §655.731(c) (6)………………………………………………………….26

20 C.F.R. § 655.731(c)(7)(i)-(h)…………………………………………………..9, 25

20 C.F.R. § 655.732...............................................................................................8

20 C.F.R. § 655.733……………………………………………………………8

20 C.F.R. § 655.734……………………………………………………………8

20 C.F.R. § 655.800(a)…………………………………………………......10

20 C.F.R. § 655.806(a)(3)……………………………………………………10

20 C.F.R. § 655.806(a)(5)……………………………………………10,18,19,20

20 C.F.R. § 655.806 (b)………………………………………………………10

20 C.F.R. § 655.810(a)………………………………………………………10

20 C.F.R. § 655.815……………………………………………………… 10

20 C.F.R. § 655.820………………………………………………………...10

20 C.F.R. § 655. 845…………………………………………………………10

22 C.F.R. § 41.51(c)…………………………………………………………..8

**OTHERS**

DHS Delegation 7010.3 II.B.5 (May 11, 2006)…………………………………9

70 Fed.Reg. 52, 292 (Sept. 2, 2005)…………………………………………...8

85 Fed.Reg. 13, 186 (Mar. 6, 2020)…………………………………………...10

https://www.dol.gov/agencies/whd/immigration/e3.......................................................21

## **JURISDICTION AND VENUE**

Plaintiff-Appellant Persian Broadcast Service Global, Inc. (Appellant), a Farsi language television station, filed a Complaint with U.S. District Court, Central Division, California against Martin Walsh as Secretary of Labor, the U. S. Department of Labor and Majid Varess on January 11, 2021 asking that an Department of Labor award of back wages to Varess be set aside as an agency action that was arbitrary, capricious, and contrary to law, – 5 U.S.C. § 706(2)

The District Court had jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 702, the Administrative Procedure Act ("APA").

On February 8, 2022, the U.S. District Court, Central Division, California granted the Defendants'-Appellees motion for summary judgement. On March 7, 2022, ER 3-21 Plaintiff-Appellant timely filed its Notice of Appeal of the District Court's final Order that dismissed the complaint to the 9th Circuit Court of Appeals. ER-86

Accordingly, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §1291.

# ISSUES PRESENTED ON APPEAL

On February 8, 2022, the U.S. District Court denied Appellant's Motion for Summary Judgment, granted Appellee's Motion for Summary Judgment finding that the administrative actions by the Department of Labor Administrative Review Board ("ARB's") in awarding of back wages to Appellant's former employee were did not violate the Administrative Procedure Act (APA) as arbitrary, capricious or contrary to law.

Accordingly, the questions/issues on appeal are as follows:

1. Was the US District Court correct in finding that the ARB's ruling that Appellant's former employee's complaint to the Department of Labor for back wages was timely filed was supported by the facts and statutes and thus, not arbitrary, capricious, and contrary to law under 5 U.S.C. § 706(2) of the APA. ER 11-14

2. Did the US District Court err in confirming that the ARB's ruling that Appellant's former employee was entitled to back wages to the period designated on a second labor condition attestation (LCA) after his E-3 nonimmigrant work visa and status had expired for the duration of the period of validity of the second LCA. ER 14-19

3. If this Court finds for Appellant on either of the two issues above, should the District Court's granting of Appellees' "Counterclaim for Enforcement of Judgment" be reversed. ER 19-21

## STATUTORY AND REGULATORY BACKGROUND

Under the Immigration and Nationality Act (INA), Australian nationals may apply for and receive permission to work in the United States temporarily in occupations requiring the minimum of a bachelor's degree or its equivalent. 8 U.S.C. § 1101(a)(15)(E)(iii). To obtain this permission for a prospective E-3 worker, an employer must file a Labor Conditions Application (LCA) with the Department of Labor stating its intention to employ a nonimmigrant in a particular occupation. 8 U.S.C. § 1182(t); 20 C.F.R. § 655.700. and certifying its intended compliance The LCA includes four required attestations from the employer including an agreement to pay the worker the prevailing wage as determined by the Department of Labor, 20 CFR 655.731 8 U.S.C. § 1182(t)(1)(A)(i);that the working conditions will be the same as those of employer's current employees, 20 CFR 655.732; that there is no strike or lockout in effect, 20 CFR 655.733 and that it has provided notice of the application to employer's employees, 20 CFR 655.734..

After the Department of Labor certifies the LCA, the worker applies to the Department of State for a visa, which, if granted, allows the worker to enter the United States for a two-year period. 20 CFR §§ 655.705(b); 655.750(a); 22 C.F.R. § 41.51(c). (note that the requirements and enforcement mechanisms for E-3 visas are largely, though not entirely, identical to those for the H-1B visa program, which applies to temporary foreign workers in specialty occupations generally. 20 C.F.R. § 655.700(d)(2). One distinction between H-1B visa program and E-3 visa program is that an employer is not required to file a petition to the Department of Homeland Security to employ an E-3 worker. 70 Fed.Reg. 52, 292 (Sept. 2, 2005).)

Once the E-3 worker is inspected and admitted by the Department of Homeland

Security, he or she is issued a Form I-94 Arrival/Departure Record (8 CFR Section 1.4). The Department of Homeland Security (DHS) delegated its authority to issue and process the Form I-94 (Arrival/Departure Record) to U.S. Customs and Border Protection (CBP). *See* DHS Delegation 7010.3 II.B.5 (May 11, 2006). CBP issues a Form I-94 to certain nonimmigrants who are eligible for admission or parole in the United States. Each arriving nonimmigrant who is admitted to the United States, including nonimmigrants arriving by commercial conveyances, must be issued a Form I-94 as evidence of the terms of admission, unless otherwise exempted. *See* 8 CFR 235.1(h). CBP generally issues the Form I-94 to nonimmigrants at the time they lawfully enter the United States. The current Form I-94 documents nonimmigrants' arrival and departure information, as well as their biographical information, such as name, birth date, sex, country of citizenship, visa and passport information or Alien Registration Number for certain categories of nonimmigrant, country of residence, address and telephone number while in the United States, and email address. For nonimmigrants admitted to the United States, the Form I-94 becomes the evidence of the terms of their admission.

An employer is required to pay an E-3 employee while that employee is either working or on nonproductive status unless an exception applies. Under the statute, an employer is not required to pay an E-3 employee on nonproductive status when (1) there are conditions unrelated to employment which take the nonimmigrant away from his duties at his voluntary request and convenience (e.g., touring the U.S., caring for ill relative) or render the nonimmigrant unable to work (e.g., maternity leave, automobile accident) or (2) there is a *bona fide* termination of the employment relationship. 8 U.S.C. § 1182(t)(3)(C)(vii)(I)-(II); 20 C.F.R. § 655.731(c)(7)(i)-(h).

The Department of Labor is authorized to enforce the requirements of the E-3

visa. 8 U.S.C. § 1182(t)(3). An aggrieved party must file a complaint with the Department of Labor's Wage and Hour Division. 20 C.F.R. §§ 655.800(a); 806(a). "A complaint must be filed not later than 12 months after the latest date on which the alleged violation(s) were committed, which would be the date on which the employer allergy failed to perform an action or fulfill a condition specified in the LCA." 20 C.F.R. §§ 655.806(a)(5).

After the Wage and Hour Division investigates the complaint, it issues a determination and any remedies, including the payment of any back wages due. 20 C.F.R. §§ 655.806(a)(3), (b); 655.810(a), 655.815. The Wage and Hour Division's determinations can be challenged in a hearing before an administrative law judge, and the administrative law judge's decision can be appealed to the Department's Administrative Review Board. 20 C.F.R. §§ 655.820; 655.845. If the Secretary of Labor does not review the Administrative Review Board's order, it becomes the final Department of Labor Order. 85 Fed.Reg. 13, 186 (Mar. 6, 2020).

## FACTUAL BACKGROUND INCLUDING ADMINISTRATIVE ACTIONS

Appellant is a Farsi-language television station providing news and entertainment to the Iranian community in the US and abroad via satellite. ER 24 at ¶ 1. Appellant's president and Chief Operating Officer is Amir Shadjareh. ER 24 at ¶ 2.

In 2011, Persian Broadcast filed an application for E-3 nonimmigrant status on behalf of Majid Varess, an Australian national of Iranian, origin to allow Varess to enter the United States and produce programming for Appellant's televised broadcast for a period of two years. ER 24 at ¶ 4. Varess accepted the position because he viewed the position as a unique late-career opportunity to broadcast sports in Farsi for a station

that shared his opposition to the Iranian regime. ER 24-25  at ¶¶ 5-7.

As part of the application, Appellant filed a Labor Condition Application ("LCA") with the Department of Labor (DOL) in September 2011. ER 25 at ¶ 8. The LCA identified the position as a "TV producer and reporter", identified the prevailing wage rate for this position as $44, 013 per year, and offered the position at $45, 000 per year. ER 25 at ¶ 9. DOL approved the LCA for a period from September 12, 2011, to September 12, 2013. ER 25 at ¶10. On November 23, 2011, Varess entered the United States on an E-3 Visa. ER 26 at ¶ 11; ER 25 at ¶5. Varess worked for Persian Broadcast both in the United States and from other locations around the world, leaving and returning to the United States many times during the course of his work and reporting on sporting events from England, Ireland, Belgium, France, and Australia. ER 26 at ¶¶ 14, 15. While overseas, Varess uploaded the shows he produced using the internet, and Persian Broadcast broadcasted the shows via satellite. ER 27 at ¶17. While abroad, Varess continued to produce and host sports programs for Persian Broadcast. ER 42 at ¶10. Varess temporarily departed the United States on July 14, 2013. ER 28 at ¶ 22; ER 42 at ¶ 10.

In August 2013, Persian Broadcast filed a second LCA to continue Varess's employment ER 27 at ¶19. The second LCA listed the prevailing wage rate as $59, 384 and stated that Varess would be paid an annual salary of $60, 000. ER 27 at ¶20. On August 30, 2013, the Department of Labor approved the second LCA for a period from September 12, 2013 to September 12, 2015. ER 27 at ¶ 21. Varess's original LCA and E-3 visa expired on September 12, 2013. ER 42 at ¶ 14. When Varess reentered the United State on September 3, 2013, the Department of Homeland Security's Customs and Border Protection ("CBP") admitted him for an additional two years,

informing Varess he could remain and work in the United States until September 2015. ER 28 at ¶ 22.

Varess continued working for Persian Broadcast in the United States until November 16, 2013, when he left the United States and traveled to Australia. ER 28 at ¶¶ 23-24. Prior to Varess's departure from the United States in November 2013, Shadjareh signed a letter to the U.S. Consulate in Sydney, Australia in support of Varess's application to renew his E-3 visa and stating that Persian Broadcast desired to continue to employ Varess at a salary of $60, 000 per year. ER 28 at ¶ 25. Varess states he initially intended to renew his visa in Australia, however he ultimately did not renew the E-3 visa. ER 29 at ¶¶ 26-27; ER 83-84 (Varess testified that he paid a fee for an application renewal and initially attempted to renew the visa, but eventually withdrew the application). Varess further states the main reason he did not renew his visa is because of Persian Broadcast's failure to pay him. ER 29 at ¶27; ER 83-84. Varess did not return to the United States after November 16, 2013. ER 29 at ¶27 ;. However, Varess continued to work for Persian Broadcast from overseas until July 14, 2014. ER 29 at ¶ 28.

Throughout Varess's employment Persian Broadcast paid him irregularly and sporadically in amounts between $300 and $2, 300, for a total of approximately $20, 000. ER 29 at ¶ 29. When Varess brought up the issues regarding his wages, Shadjareh responded that Persian Broadcast was having financial difficulties and promised to pay him later. ER 29 at ¶ 30. Varess states that he continued to work for Persian Broadcast despite the payment issues because he had invested in the position, he wanted to preserve his professional reputation, and he wanted to work for a company that opposed the Iranian regime. ER 30 at ¶ 31. On July 11, 2014, Shadjareh informed

Varess, via text message, that he could "no longer afford to pay" him. ER 30 at ¶ 32. Varess did not perform any more work for Persian Broadcast after the text message; however, Varess states he did not interpret the text message as a notice of termination. ER 30 at ¶¶ 33-34.

**ADMINISTRATIVE HISTORY**

Majid Varess filed a complaint with DOL, Wage and Hour Division on February 5, 2015 alleging that Persian Broadcast failed to pay him the required wages under the two LCAs. ER 30-31 at ¶ 35. Varess filed a complaint with the U.S. Department of Labor, Wage and Hour Division (WHD) alleging that Plaintiff had failed to pay him LCA specified wages under the first and second LCA's which refers to a complaint on his behalf made by phone on December 9, 2014. ER 43 at #17. On March 18, 2015, Varess submitted to DOL a completed Nonimmigrant Worker Information Form WFI-4 describing the claimed wage and other violations, including but not limited to claimed constructive termination in July 2014. ER 43 at #18. The WHD then conducted a thorough investigation and reached the conclusion On March 28, 2016 that Plaintiff had not committed any wage violations and did not owe Varess any wages. ER 43 at ¶19

Varess appealed the WHD's decision to the U.S. Department of Labor's Office of Administrative Law Judges (OALJ) on April 11, 2016. On December 11, 2017,after a full evidentiary hearing, Judge Christopher Larson (the ALJ) issued an order denying relief to Varess for two alternative bases-first that Varess had not shown that Plaintiff was obligated to pay him and, second, that Varess's complaint was untimely filed. ER 45-54. (Judge Larson subsequently modified the order/decision on December 14, 2017 by writing that he had not actually reached a

final decision as to whether Varess's filing of his complaint was timely). ER 55-64

On January 11, 2018, Varess, through counsel, filed a petition for review with the U.S. Department of Labor's Administrative Review Board (ARB) which issued a decision on September 26, 2019 reversing and remanding Varess's case to the ALJ with instructions to "make finding of facts concerning the timeliness of Complainant's complaint and a computation of damages". ER 65-74. On October 30, 2019, the ALJ issued a new decision and order finding the complaint to be timely filed and ordering Plaintiff to pay back wages in the amount of $183,794. ER 75-78

Plaintiff appealed the ALJ's decision to the ARB, arguing that the ALJ's position that Varess's complaint was timely filed was in error and that the amount of damages computed was in error.

On July 14, 2020 the ARB summarily affirmed the October 30, 2019 decision in favor of Varess. ER 79-82

## PROCEDURAL HISTORY OF THE DISTRICT COURT  CASE

Persian Broadcast Service Global Inc. ("Appellant") filed a civil complaint with the United States District Court, Central Division on January 11, 2021 against Appellees Martin J. Walsh,  in his official capacity as United States Secretary of Labor (Pursuant to Fed.R.Civ.P. 25(d), Martin J. Walsh, the current Secretary of the United States Department of Labor, was automatically substituted as the proper defendant in this action in place of Eugene Scalia), the United States Department of Labor, and Majid Varess (Varess) seeking the review and overturning of the De*p*artment of Labor Administrative Review Board's ("ARB's") award of back wages to Varess, who was formerly employed by  as an  E-3 nonimmigrant worker whose employment was

authorized under the Immigration and Nationality Act ('INA"), 8 U.S.C. § 110(a)(15)(E)(iii). ER- 94 at Dkt. 1 ("Complaint.").

Appellant challenged the ARB's action under the Administrative Procedures Act, 5 U.S.C. § 702 et seq. ("APA"), alleging that (1) the Department of Labor's finding that Varess's complaint was timely filed, and (2) the agency's calculation of back wages owed to Varess were both arbitrary, capricious, and contrary to law under 5 U.S.C. § 706(2). *Id.*

On May 13, 2021, Appellees Martin J. Walsh, in his official capacity, and the U.S. Department of Labor filed a counterclaim against asking the District Court to enforce the Department of Labor's final order mandating the Appellant's payment of back wages, plus interest, to Varess. ER 95 at Dkt. 11¶ 1-3. 8 U.S.C. § 1182(t); 28 U.S.C. § 3001.

On August 10, 2021, the District Court dismissed this action as to then defendant Majid Varess for Appellant' failure to prosecute and for its failure to comply with Federal Rule of Civil Procedure ("Rule") 78 and Local Rule 7.15, after Appellant failed to respond to the District Court's Order to Show Cause from July 1, 2021. ER 95 at Dkt. 18).

On November 11, 2021, Appellant filed a motion for summary judgment. ER 96 at Dkt. 29. On December 13, 2021, Appellees concurrently filed a cross-motion for summary judgment and opposition. ER 96 at Dkt. 30. On January 3, 2022, Appellant filed an opposition to Appellees' cross-motion. ER 97 at Dkt. 32. On January 24, 2022, Appellees filed a reply in support of their cross-motion. ER 97 at Dkt. 33. On February 7, 2022, the District Court held a hearing.

On February 8, 2022, the Honorable Judge Christina A. Snyder rendered her decision, denying Appellant's Motion for Summary Judgment, granting Appellee's Motion for Summary Judgment and awarding back pay to Varess. ER 97 at Dkts 35, 36

On March 7, 2022, Appellant timely filed its Notice of Appeal of the District Court's final Order that dismissed the complaint to the 9th Circuit Court of Appeals. ER 97 at Dkt 37

## STANDARD OF APPELLATE REVIEW

A district court's decision to grant, partially grant, or deny summary judgment or a summary adjudication motion is reviewed de novo. *See, e.g.*, *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1259 (9th Cir.) (grant), *cert. denied*, 142 S. Ct. 343 (2021); *2-Bar Ranch Ltd. P'ship v. United States Forest Serv.*, 996 F.3d 984, 990 (9th Cir. 2021) (partial summary judgment); *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 606 (9th Cir. 2019) (denial); *Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 759 (9th Cir. 2017); *Mull for Mull v. Motion Picture Indus. Health Plan*, 865 F.3d 1207, 1209 (9th Cir. 2017); *but see Carey v. Nevada Gaming Control Bd.*, 279 F.3d 873, 877 n.1 (9th Cir. 2002) (declining to review denial of summary judgment). A district court's decision on cross motions for summary judgment is also reviewed de novo. *See Csutoras v. Paradise High Sch.*, 12 F.4th 960, 965 (9th Cir. 2021); *Innova Sols., Inc. v. Baran*, 983 F.3d 428, 431 (9th Cir. 2020); *Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142, 1145 (9th Cir. 2008).

The appellate court's review is governed by the same standard used by the trial court under Fed. R. Civ. P. 56(c). *See Suzuki Motor Corp. v. Consumers Union, Inc.*, 330 F.3d 1110, 1131 (9th Cir. 2003).

The District Court in this matter adjudicated the case under the standards set forth under the Administrative Procedure Act (APA) which provides that a court may set aside agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). When examining a policy to see if it is arbitrary and capricious, the Court exercises a narrow scope of review, giving deference to the agency's judgment in implementing the policy however Courts are responsible for making sure that agencies make policies that are reasonable. *Judulang v. Holder*, 132 S. Ct. 476, 483 (2011). Review under the arbitrary-and- capricious standard is limited to "whether there has been a clear error of judgment by the agency and whether the agency action was based on a consideration of the relevant factors." *Nance v. EPA*, 645 F.2d 701, 705 (9th Cir. 1981).

## STATEMENT OF ARGUMENT

Appellant urges this Court to set aside the District Court's denial of its Motion for Summary Judgment seeking to overturn the Department of Labor (DOL) ARB's decision under the APA as arbitrary and capricious on two grounds. First, Appellant claims that the ARB's consideration of Varess's administrative complaint to DOL was untimely filed. Second, Appellant argues that the DOL's calculation of back pay owed to Varess was arbitrary and capricious because it was not required to pay Varess under the second LCA because his E-3 visa expired and he left the country. Additionally, Appellant contends that that the District Courts issuance of an order to enforce the present ARB award to Varess is excessive and should be recalculated.

<u>**ARGUMENT**</u>

**I. The ARB's Timeliness Finding is not supported by its own interpretation of period of authorized employment**

Appellant has always maintained that Varess failed to timely file his complaint under 20 C.F.R. §655.806(a)(5) which requires the complainant to file a complaint alleging a violation of the nonimmigrant worker regulations not later than 12 months after the latest date on which the alleged violation(s) were committed, which would be the date on which the employer allegedly failed to perform an action or fulfill a condition specified in the LCA, or the date on which the employer, through its action or inaction, allegedly demonstrated a misrepresentation of material fact in the LCA. ER 47.

The District Court's decision accurately describes Appellant's arguments as to why the complaint was not timely filed as the fact the second LCA only covered a "period of authorized employment," and Varess was not an authorized employee after the first LCA ended, because Varess was not properly issued another E-3 visa by the United States Customs and Immigration Services ("USCIS")or the Department of State to cover the period of authorized employment of the second LCA  20 C.F.R. § 655.730(c)(2). ER 11-14. In fact, any assumption that the Department of State would issue another E-3 visa to Varess is highly questionable, particularly if a consular officer ascertained that Appellant had not paid Varess the prevailing wage during the period of the first LCA. Therefore, Varess's employment terminated after the first LCA ended on September 12, 2013, because his E-3 visa was not renewed properly. and procedural error made by an admitting officer did not cure this. Therefore, Persian Broadcast

18

argues that Varess's filing of the administrative complaint on February 5, 2015, was over a year after its "alleged violation," and outside the authorized statutory time to file a complaint. 20 C.F.R. 655.806(a)(5). ER 11-12

The ARB found that Varess's complaint was timely, determining that the second LCA was binding because it was "signed by [Persian Broadcast], certified by the [Department of Labor], and constituted an obligation [Persian Broadcast] had to abide by until the expiration of the LCA period or an exception to that obligation was satisfied." ER 81. Further, the ALJ held, and the ARB affirmed, that Persian Broadcast was "liable to pay wages for the duration of the second LCA (September 12, 2013, to September 12, 2015) and the reasons [Persian Broadcast] provide[d] for why the second LCA was invalid do not relieve it of its obligations." ER 79-82. "By submitting a signed and completed LCA, the employer makes certain representations and agrees to several attestations regarding the employer's responsibilities, including the wages, working conditions, and benefits to be provided to the E-3 [] immigrant." 20 C.F.R. § 655.700(d)(4)(i). The administrative record makes clear, and the parties do not dispute, that Persian Broadcast signed both LCAs.

The Court accepted the ARB decision that a complaint filed on February 5, 2015, would be timely because any nonpayment of wages during the second LCA period would start the clock as a failure to perform an action, and the LCA period was still ongoing when Varess filed his complaint, writing

*Neither the text of the statute nor the regulations nor the LCA itself support Persian Broadcast's argument that an employee's non-renewal of an E-3 visa or the departure of an employee from the United States, terminate the "period of authorized employment" and discharge an employer's responsibilities to*

19

*continue to pay the employee under the LCA.* ER 14

The Court concluded that the ARB's holdings are consistent with the interpretation of 8 U.S.C.§1101(a)(15)(E)(iii) and its accompanying regulations. 20 C.F.R. §§ 655.806(a)(5). The arbitrary and capricious standard is a deferential standard, and the scope of a court's review is narrow; the court is not to substitute its judgment for that of the agency's. *See Judulang v. Holder*, 565 U.S. 42, 52-53 (2011). The Court may not "disturb the agency's findings under this deferential standard unless the evidence presented would compel a reasonable finder of fact to reach a contrary result." *Family Inc. v. USCIS.* 469 F.3d 1313, 1315 (9th Cir. 2006). The Court finds that the administrative record supports the ARB's finding that under one of two alternative theories, Varess's complaint was timely, and the ARB's holding is not arbitrary, capricious, or an abuse of discretion.

Whether the Court's decision was correct or not at the time it was rendered, the ARB in its very recent decision, *Vimalraj Manoharan v HCL America, Inc*., (ARB 2021-0060) April 14, 2022 actually provides new guidance on the issue as to whether

"*an employee's non-renewal of an E-3 visa or the departure of an employee from the United States, terminate the "period of authorized employment" and discharge an employer's responsibilities to continue to pay the employee under the LCA.*" ER 14

*Manoharan* concerns an H-1B employee's complaint for back wages, among other issues. In fact, the ARB specifically limits the scope of its analysis of the "Regulatory Background" to H-1B visa, writing at page 8, footnote 49 writing "*This analysis applies only to the H-1B program and not to similar programs like H1B1 and E-3*". Obviously there are other factors concerning

eligibility for H-1B1 visas (available to professionals under the U.S.-Chile and U.S.-Singapore Free Trade Agreements) see 8 U.S.C. 1101(a)(15)(H)(i)(b1) and E-3 visas based on a similar agreement with Australia.

However, the regulations for the filing of the LCA and employer's obligations thereunder are the same for H-1B, H-1b1 and E-3 visas. Employers seeking to employ nonimmigrant workers in specialty occupations under H-1B, H-1B1, or E-3 visas must file a labor condition application with the Department of Labor as described in 20 CFR § 655.730(c) and (d). 20 CFR § 655.700. DOL (the governing agency of the ARB) states simply and without reservation "**The E-3 program is governed by the labor certification standards that apply to H-1B and H-1B1 programs**." Emphasis Added-https://www.dol.gov/agencies/whd/immigration/e3.

The factual background in *Manoharan* is strikingly similar to Appellant's. Manoharan, an Indian national, worked for Respondent as an H-1B nonimmigrant. The first approved Labor Condition Application (LCA) and H-1B petition (Petition) for his employment in Sunnyvale, California, both specified an end date of February 20, 2018. Upon entering the U.S. on July 16, 2015, USCIS issued Manoharan an I-94 form that authorized him to stay in the country until March 1, 2017. On October 7, 2015, Manoharan's employer filed a new LCA for a position in Galesberg, Michigan, ending on September 29, 2018. After the Department of Labor (DOL) approved the LCA, his employer filed an amended Petition for Complainant. On April 11, 2016, USCIS approved the second Petition with an end date of March 1, 2017.

Manoharan traveled to India in April 2016. Upon his return to the U.S. on April 29, 2016, the Customs and Border Patrol (CBP) issued him a new I-94 authorizing him to stay until February 20, 2018.

On June 12, 2016, his employer filed another petition to employ Manoharan under the third LCA with an end date of November 2, 2018. USCIS never approved the third petition.

On January 21, 2017, Manoharan's employer notified him that he was terminated as of February 10, 2017. On February 16, 2017, the employer requested the Department of Homeland Security (DHS) to cancel Manoharan's H-1B work permits, which DHS confirmed on March 6, 2017.

On February 22, 2017, Manoharan filed a complaint with the WHD, alleging that Respondent had committed several violations of the H-1B provisions of the INA, including failure to pay him the required wage rate and retaliation for protected activity. The case proceeded to a hearing before an administrative law judge (ALJ) and ultimately before the ARB.

Among the issues determined by the ARB concerned the actual date for the end of the "period of authorized employment". The ALJ concluded that his period of authorized employment ended on March 1, 2017, the end date of Manoharan's most recently approved Petition. Manoharan argued on appeal that his employer's wage obligation continued until the end date specified in his first LCA or second I-94, February 20, 2018.

The ARB agreed with the ALJ writing:

"We agree with the Administrator's position. The INA and the relevant regulations demonstrate that **an LCA authorizes the employer to employ H-1B nonimmigrants for a particular position in the**

**country, while the approved Petition authorizes an individual H-1B nonimmigrant to work for an employer in the U.S.** Complainant had two sources of employment authorization at the time Respondent terminated his employment: the approved second Petition and the pending third Petition. The pending Petition permitted him to work under the H-1B portability provision until Respondent withdrew it on February 16, 2017. Therefore, Complainant's period of authorized employment concluded on March 1, 2017, the end date on the second approved Petition. Accordingly, the ALJ correctly granted summary judgment on the back wages claim". Emphasis added)

By this decision, the ARB clearly confirms that the period on the LCA only describes the period an employer is authorized to employ a foreign worker and that the expiration of an H-1B (or by association-E-3) visa constituted the end of the "period of authorized employment". Also note, that the ARB completely disregarded the obviously incorrect I-94 issued to Manoharan authorizing him to stay until February 20, 2018.

Therefore the Court's finding that *an employee's non-renewal of an E-3 visa or the departure of an employee from the United States, terminate the "period of authorized employment" and discharge an employer's responsibilities to continue to pay the employee under the LCA"* ER 14 is not supported by Appellee Department of Labor's own administrative decisions. Appellant's claim that Varess's complaint was untimely filed is substantiated and the Court's decision should be reversed.

## II. The amount of ARB's Award to Varess under the Second LCA is not supported by ARB's own case law.

Appellant submits that the award of back wages under the second LCA is arbitrary, capricious, and contrary to law as it is excessive. 5 U.S.C. § 706(2). Appellant admits that it owes Varess for back wages earned under the first LCA because it is only required to pay wages under the first LCA, and the administrative award calculates payment of wages for the entirety of both LCAs. Pltf MS J at 22. Appellant continues to assert that the second LCA, which spanned from September 12, 2013 to September 12, 2015, was not an enforceable employment agreement.

In its decision, the District Court wrote:

"A court is required to defer to an agency's interpretation of a statute when the statute is silent or ambiguous about an issue, provided that the interpretation is based on a permissible construction of the statute. *See Alaska Dep't of Health & Social Servs. v. Ctrs. for Medicare & Medicaid Servs.*, 424 F.3d 931, 939 (9th Cir. 2005). The ARB's conclusion that Persian Broadcast was not relieved of its payment obligations due to Varess's failure to renew his visa and departure from the United States was a reasonable interpretation of the statutory and regulatory ambiguities to which this Court must defer. *See id.* Neither the statute nor the regulations speak directly to this narrow, factual question, and for the reasons set out above, the ARB's resolution of these ambiguities by concluding that an employer remains bound by its wage obligations to an existing E-3 worker who can perform his duties abroad notwithstanding the worker's visa's expiration and overseas travel, is a reasonable interpretation that is entitled to deference. ER 19

While this may have been true at one time, the ARB has spoken to this "narrow, factual question" in its decision in *Manoharan v HCL America, Inc*. as described above and containing a factual situation containing the same issues as the case at bar. After *Manoharan*, Appellant asserts that the District Court's position that Appellant "was not relieved of its payment obligations due to Varess's failure to renew his visa and departure from the United States was a reasonable interpretation of the statutory and regulatory ambiguities to which this Court must defer" is no longer supported by earlier interpretations of these ambiguities.

The ARB in *Manoharan* found that any period of authorized employment expires with the expiration of a valid visa or any USCIS extension thereof. The ARB acknowledged that Employers are required to pay H-1B nonimmigrant workers the required wage rate "for the entire period of authorized employment." 20 C.F.R. § 655.731(a) If an employer discharges the employee but does not make a bona fide termination of the employment relationship, "its obligation to pay [the employee] the 'actual wage' continue[s] until the expiration of [the employee's] authorized period of employment." *Mao v. Nasser Eng'g & Computing Servs.*, ARB No. 2006-0121, ALJ No. 2005-LCA- 00036, slip op. at 10 (ARB Nov. 26, 2008) (citing 20 C.F.R. § 655.731(c)(7)(ii)).

However, the ARB agreed with the ALJ that Manoharan's period of authorized employment ended on March 1, 2017, the end date of Manoharan's most recently approved Petition. It specifically dismissed any LCA as the defining instrument writing "The INA and the relevant regulations demonstrate that an LCA authorizes the employer to employ H-

1B nonimmigrants for a particular position in the country, while the approved Petition authorizes an individual H-1B nonimmigrant to work for an employer in the U.S." …… Complainant's period of authorized employment concluded on March 1, 2017, the end date on the second approved Petition."

In the present case, Varess's E-3 visa expired on September 13, 2013. Although, similar to Manoharan, an admitting officer erroneously issued him an I-94 for a period far beyond the that date, this action did not and could not procedurally extend Varess's expired visa or grant him authorized employment beyond the date of expiration of his visa. Plainly put, the period between September 13, 2013 and his departure in that November when he was working for Appellant was neither legal nor authorized. In order for the Appellant to be bound by the LCA, the employee must "enter into employment," under the language of 20 C.F.R. §655.731(c)(6) (an E-3 nonimmigrant "enters into employment" when he makes himself available to work or otherwise comes under the control of the employer"). When Varess's E-3 visa expired, he no longer was an E-3 nonimmigrant rendering the period of authorized employment contained in the second LCA unenforceable.

The District Court in the present case concluded that the ARB reasonably found, and the factual record supported, that Customs and Border Protection's admission of Varess to the United States from September 2013 to September 2015-whether or not in error-was sufficient to authorize Varess's employment under the second LCA, because he had already "made himself available to work" and "received authorization for travel to the U.S." under the terms of the LCA. 8 U.S.C. 1182(t)(A)(i); 20 C.F.R. 731(c)(6)(i) and (i)(i). ER 20. This is clear error. The second LCA was not utilized to obtain a new E-3 visa by Varess. Instead he the visa that granted him authorization for

travel to the US was issued under the terms of the first LCA which permitted his entry on September 3, 2013 prior to the expiration of that visa. As discussed above, Varess was unable to make himself legally available to work after the expiration of his E-3 visa as an E-3 nonimmigrant because he was no longer authorized to do so.

Appellant does not dispute that had Varess, after returning to Australia, acquired another E-3 visa and then continued working for Appellant, his period on authorized employment would have been the duration on the second LCA even if he worked from Australia. However, that is not the case. Varess at various times in his testimony before an ALJ gave conflicting answers. He first said that he had made an appointment with the US consulate but cancelled it because he had misplaced the application his attorney had prepared for him and he didn't want to pay the attorney to do it again. ER 83 Subsequently, he said he decided not to after discussing the matter with Appellant's CEO. The fact that both parties apparently agreed that he should not get a new E-3 visa to enter the US and work with Appellant underscores that both parties no longer wanted to continue any relationship as formal as that required under the E-3 visa. This agreement, in absence of any affirmative action on Varess's part to obtain a new E-3 visa, led to a new relationship where Varess periodically produced shows for Appellant and was compensated for each production individually.

Appellant asks this court, in agreement with Appellees' own Administrative Review Board ruling in *Manoharan*, to find that Appellant is not obligated to pay Varess back wages for the dates specified in the second LCA and that therefore, the Department of Labor's award to Varess of $183, 974.00 is arbitrary, capricious, and contrary to law and therefore the District Court's finding must be overturned.

**III. The Court's finding directing the enforcement of the ARB's order for Appellant to pay Varess $183, 794, plus pre- and post-judgment interest is not supported by the facts or statutory or case law.**

The District Court granted Appellees' motion for summary judgment on their counterclaim to enforce the ARB's order, and request that the Court enter a judgment directing Persian Broadcast to pay Varess or the Department of Labor for Varess's benefit $183,794, plus pre-judgment pursuant to 26 U.S.C. §6621(a)(2), and post-judgment interest pursuant to 28 U.S.C. § 1961(a). ER 21; ER 97at Dkt 36. Appellant challenges this decision on the basis of the statutory and case laws discussed above which would preclude an award of back wages for periods of unauthorized employment, wherever it may take place. As Appellant has demonstrated that the period specified by the second LCA cannot be considered a period of valid employment, then Varess has no claim for back wages that he would have been entitled to had he continued on an E-3 nonimmigrant visa.

When a federal agency such as the Department of Labor issues an administrative order pursuant to its delegated statutory authority, the agency or the United States may obtain a judgment to enforce that order. *See*, *e.g.. United States v. Occidental Chem. Corp.*, 200 F.3d 143, 149 n.6 (3d Cir. 1999) However, when the underlying administrative order is found to be arbitrary, capricious, and contrary to law under 5 U.S.C. § 706(2), any enforcement of it does not protect nonimmigrant workers like Varess and their American counterparts. *Cyberworld Enter. Techs., Inc. v. Napolitano*, 602 F.3d 189, 198 (3d Cir. 2010) (The Department of Labor's enforcement of LCAs "vindicate[s]" rights that "are of a 'public' nature, since [the Department] is acting to protect the U.S. workforce from displacement by [nonimmigrant visa]

recipients and to enforce the rules of the immigration system.") as Appellees' claim. In fact, enforcement of an excessive an unjustifiable award of back wages will not protect the American counterparts to Varess as factually, the size of the award will essentially force Appellant to "close shop" and render those counterparts unemployed.

Appellant believes that any award to Varess should be limited to that which he is legally entitled, but certainly not in excess of and wages owing per the first LCA and E-3 visa along with the appropriate pre and post judgment interest. Therefore, it would be in the interests of justice for this Court to remand this issue back to the ARB if Appellant's claim that Varess's complaint was time barred is not accepted.

## CONCLUSION

Respectfully, Plaintiff-Appellant submits that the District Court improperly denied Plaintiff-Appellant's Motion for Summary Judgment and that its granting of Appellees' Motion for Summary Judgment regarding enforcement collection of ARB's award for back wages was also improperly granted.

## STATEMENT OF RELATED CASES

Pursuant to 9th Circuit Rule 28-2.6, Plaintiff-Appellant submits that there are no known related cases pending in this Court.

## RELIEF SOUGHT

**The Plaintiff-Appellant respectfully asks that this Court find that the District Court erred in denying Plaintiff-Appellant's Motion for Summary**

Judgment. Further the Plaintiff-Appellant asks that this Court REVERSE the Order of Denying Plaintiff-Appellant's Motion for Summary Judgment and approve it or, in the alternative, REMAND the matter for further proceedings.

/s/ Ira J. Nasserian, Esq.

*Attorney for Plaintiff-Appellant*

**Form 8.      Certificate of Compliance Pursuant to 9th Circuit Rules 28.1-1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number 17-16705**

This brief complies with the length limits permitted by Ninth Circuit Rule 32-1. The brief is **7,549** words, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a) (5) and (6).

Signature of Attorney                              Date: 0 8 / 0 8 / 2 0 2 2

/s/ Ira J. Nasserian, Esq.

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 8, 2022, an electronic copy of the Brief of Plaintiff-Appellant was filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. The undersigned also certifies that participants who are registered CM/ECF users will be served via the CM/ECF system.

/s/ Ira J. Nasserian, Esq.

*Attorneys for Plaintiff-Appellant*