No. 22-55254


UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

PERSIAN BROADCAST SERVICE GLOBAL,
INC., a California Corporation *Plaintiff-
Appellant*,


v.


MARTIN J. WALSH, Secretary of Labor;
U.S. DEPARTMENT OF LABOR,
*Defendants-Appellees*

---

Appeal from United States District Court – Central District, California
Case No. 2:21-cv-00229-CAS-GJS    (Honorable Christina A. Snyder)


## PLAINTIFF-APPELLANT's EXCERPTS OF RECORD
### Volume 1 of 1
---

Ira J. Nasserian, Esq.
CSB# 225380
12 Cypress Way
Rolling Hills Estates, CA 90274
Phone: (310) 337-7900
Email:  inasserian@lawinscal.com
*Attorney for Plaintiff-Appellant*

# TABLE OF CONTENTS

**DOCUMENT**

                                                                        **Page**

Civil Minutes-General, Dkt. No. 35 (Feb 7, 2022)......................................... ER 3

Defendants' Statement of Uncontroverted Material Facts, Response
to Plaintiff's Statement of Material Facts, and Proposed Conclusions
of Law, Dkt. No. 30-1. (12/13/2021).................................................................ER 22

Plaintiff's Local Rule 56-1 Statement of Uncontroverted Facts in Support
of Plaintiff's Motion for Summary Judgment, Dkt. No.29-1(11/22/2021.......ER 40

U.S Department of Labor, Administrative Law Judge- " Decision and Order
Denying Relief". Dkt. No. 22 # 7, Excerpt pages 627-636 (12/11/2017)........ER 45

U.S Department of Labor, Administrative Law Judge- " Amended Decision
and Order Denying Relief". Dkt. No. 22 # 7, Excerpt-pages 640-649
(12/14/2017)...................................................................................................ER-55

U.S Department of Labor, Administrative Review Board- " Decision and
Order Reversing and Remanding". Dkt. No. 22 # 9, Excerpt pages 808-817
(09/26/2019)....................................................................................................ER 65

U.S Department of Labor, Administrative Law Judge- "Decision and Order
After Remand". Dkt. No. 22 # 9, Excerpt-pages 822-825
(10/30/2019)....................................................................................................ER 75

U.S Department of Labor, Administrative Review Board- " Decision and
Order". Dkt. No. 22 # 10, Excerpt pages 973-976 (07/14/2020).....................ER 79

Testimony of Majid Varess before Administrative Law Judge Larson.
Dkt. No. 22 #5, Excerpt pages 441-442 (10/26/2017)....................................ER 83

Notice of Appeal...............................................................................................ER 86

Civil Docket for Case#:2:21-cv-00229-CAS-GJS ..........................................ER 93

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL   'O'  JS-6

Case No.   2:21-cv-00229-CAS (GJSx)       Date   February 7, 2022

Title   PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL.

Present: The Honorable   CHRISTINA A. SNYDER

| Catherine Jeang | Katie Thibodeaux | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Ira Nasserian | Matthew Smock, AUSA |

**Proceedings:**   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 29, filed on NOVEMBER 22, 2021)

DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT (DKT. 30, FILED ON DECEMBER 13, 2021)

## I.   INTRODUCTION

This case centers around the review of the Department of Labor Administrative Review Board's ("ARB's") decision to require a company to pay back wages to a former employee, who was employed under the E-3 visa program provision of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 110(a)(15)(E)(iii). On January 11, 2021, plaintiff Persian Broadcast Service Global Inc. ("Persian Broadcast") filed this action against defendants Martin J. Walsh,[1] in his official capacity as United States Secretary of Labor, the United States Department of Labor, and Majid Varess, collectively ("defendants"). Dkt. 1 ("Compl.").

Defendant Varess, an Australian citizen who previously worked for Persian Broadcast, filed an administrative complaint against Persian Broadcast for back wages with the U.S. Department of Labor and prevailed. Id. Persian Broadcast now seeks review of the agency action under the Administrative Procedures Act, 5 U.S.C. § 702 et seq. ("APA"), alleging that (1) the Department of Labor's finding that Varess's complaint

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Martin J. Walsh, the current Secretary of the United States Department of Labor, is automatically substituted as the proper defendant in this action in place of Eugene Scalia.

**ER-3**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL           'O'   JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

was timely filed, and (2) the agency's calculation of back wages owed to Varess were both arbitrary, capricious, and contrary to law under 5 U.S.C. § 706(2).

On May 13, 2021, defendants Martin J. Walsh, in his official capacity, and the U.S. Department of Labor (collectively, "federal defendants"), filed a counterclaim against Persian Broadcast. Dkt. 11. The federal defendants' counterclaim seeks to enforce the Department of Labor's final order mandating the payment of back wages, plus interest, owed by plaintiff for violating the INA's E-3 visa program requirements. Id. ¶ 1-3. 8 U.S.C. § 1182(t); 28 U.S.C. § 3001.

On August 10, 2021, the Court dismissed this action as to defendant Majid Varess for plaintiff's failure to prosecute and for its failure to comply with Federal Rule of Civil Procedure ("Rule") 78 and Local Rule 7.15, after plaintiff failed to respond to the Court's Order to Show Cause from July 1, 2021. Dkt. 18.

On November 11, 2021, plaintiff filed a motion for summary judgment. Dkt. 29 ("Pltf. MSJ"). On December 13, 2021, defendants concurrently filed a cross-motion for summary judgment and opposition. Dkt. 30 ("Def. MSJ"). On January 3, 2022, plaintiff filed an opposition to defendants' cross-motion. Dkt. 32. On January 24, 2022, defendants filed a reply in support of their cross-motion. Dkt. 33. On February 7, 2022, the Court held a hearing.

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   BACKGROUND

### A.   The Parties and Factual Background

Plaintiff Persian Broadcast, a corporation incorporated under the laws of the State of California, is a Farsi-language television station that serves the Persian community. Dkt. 30-1 (Defendant Statement of Uncontroverted Facts) ("Def. SUF") at ¶ 1. See also Compl. ¶ 1; Dkt. No. 22 (Certified Administrative Record) ("CAR"). Persian Broadcast's president and Chief Operating Officer is Amir Shadjareh. Def. SUF ¶ 2.

Defendant Martin J. Walsh, in his official capacity, is the Secretary of Labor and charged with the supervision and management of all decisions within the U.S.

**ER-4**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                     **'O'   JS-6**

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

Department of Labor. Compl. ¶ 5. The U.S. Department of Labor is an administrative agency responsible for issuing labor condition attestations in connection with employer petitions for authorization to employee E-3 workers and for enforcing compliance with labor-related conditions of the H-2B program. Id. ¶ 6; 8 C.F.R. § 214.2(h)(6)(ix).

Defendant Majid Varess is an Australian national of Iranian origin who has worked since 1974 as a sports reporter and producer. Id. ¶ 3. In 2011, Persian Broadcast filed an application for E-3 nonimmigrant status on behalf of Majid Varess to allow Varess to enter the United States and produce programming for Persian Broadcast's televised broadcast for a period of two years. Dkt. 29-1 (Plaintiff Statement of Uncontroverted Facts) ("Pltf. SUF") at ¶ 4. Varess alleges that even though there were financial costs he incurred associated with moving to the United States including airfare, rent payments, furniture, and appliances, Varess accepted the position because he viewed the position as a unique late-career opportunity to broadcast sports in Farsi for a station that shared his opposition to the Iranian regime. Def. SUF ¶¶ 5-7.

To employ Varess, Persian Broadcast filed a Labor Condition Application ("LCA") with the Department of Labor in September 2011. Def. SUF ¶ 8. The LCA indicated that Persian Broadcast would be employing a "TV producer and reporter" and that the prevailing wage rate for this position was $44,013 per year, and Varess would be paid $45,000 per year. Def. SUF ¶ 9. The Department of Labor approved the LCA for a period from September 12, 2011, to September 12, 2013. Def. SUF ¶ 10. On November 23, 2011, Varess entered the United States on an E-3 Visa. Def. SUF ¶ 11; Pltf. SUF ¶ 5. Varess worked for Persian Broadcast both in the United States and from other locations around the world, leaving and returning to the United States many times during the course of his work and reporting on sporting events from England, Ireland, Belgium, France, and Australia. Def. SUF ¶ 14, 15. For instance, Varess departed the U.S. on August 19, 2012, and returned on October 17, 2012; Varess again departed the U.S. on January 14, 2013, and returned on May 17, 2013. Pltf. SUF ¶¶ 6-9. Varess estimates that he worked between 60 to 70 hours per week during his employment for Persian Broadcast. Def. SUF ¶ 13. To perform his duties overseas, Varess uploaded the shows he produced using the internet, and Persian Broadcast broadcasted the shows via satellite. Def. SUF ¶ 17. While abroad, Varess continued to produce and host sports programs for Persian Broadcast. Pltf. SUF ¶ 10. Varess temporarily departed the United States on July 14, 2013. Def. SUF ¶ 22; Pltf. SUF ¶ 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'   JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|----------|--------------------------|------|------------------|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

In August 2013, Persian Broadcast filed a second LCA to continue Varess's employment. Def. SUF ¶ 19. The second LCA listed the prevailing wage rate as $59,384 and stated that Varess would be paid an annual salary of $60,000. Def. SUF ¶ 20. On August 30, 2013, the Department of Labor approved the second LCA for a period from September 12, 2013 to September 12, 2015. Def. SUF ¶ 21. Varess's original LCA and E-3 visa expired on September 12, 2013. Pltf. SUF ¶ 14. When Varess reentered the United State on September 3, 2013, the Department of Homeland Security's Customs and Border Protection ("CBP") admitted him for an additional two years, informing Varess he could remain and work in the United States until September 2015. Def. SUF ¶ 22.

Varess continued working for Persian Broadcast in the United States until November 16, 2013, when he left the United States and traveled to Australia. Def. SUF ¶¶ 23-24. Prior to Varess's departure from the United States in November 2013, Shadjareh signed a letter to the U.S. Consulate in Sydney, Australia in support of Varess's application to renew his E-3 visa and stating that Persian Broadcast desired to continue to employ Varess at a salary of $60,000 per year. Def. SUF ¶ 25. Varess states he initially intended to renew his visa in Australia, however he ultimately did not renew the E-3 visa. Def. SUF ¶¶ 26-27; CAR 466 (Varess testified that he paid a fee for an application renewal and initially attempted to renew the visa, but eventually withdrew the application). Varess further states the main reason he did not renew his visa is because of Persian Broadcast's failure to pay him. Def. SUF ¶ 27. Varess did not return to the United States after November 16, 2013. Def. SUF ¶ 27. However, Varess continued to work for Persian Broadcast from overseas until July 14, 2014. Def. SUF ¶ 28.

Throughout Varess's employment Persian Broadcast paid him irregularly and sporadically in amounts between $300 and $2,300, for a total of approximately $20,000. Def. SUF ¶ 29. When Varess brought up the issues regarding his wages, Shadjareh responded that Persian Broadcast was having financial difficulties and promised to pay him later. Def. SUF ¶ 30. Varess states that he continued to work for Persian Broadcast despite the payment issues because he had invested in the position, he wanted to preserve his professional reputation, and he wanted to work for a company that opposed the Iranian regime. Def. SUF ¶ 31. On July 11, 2014, Shadjareh informed Varess, via text message, that he could "no longer afford to pay" him. Def. SUF ¶ 32. Varess did not perform any more work for Persian Broadcast after the text message; however, Varess states he did not interpret the text message as a notice of termination. Def. SUF ¶¶ 33-34.

**ER-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                    'O'  JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

### B.    Statutory and Regulatory Background

Under the Immigration and Nationality Act, the E-3 visa program allows Australian nationals to work in the United States temporarily in specialty occupations. 8 U.S.C. § 1101(a)(15)(E)(iii). To employ an E-3 worker, an employer must file a Labor Conditions Application with the Department of Labor stating its intention to employ a nonimmigrant in a particular occupation. 8 U.S.C. § 1182(t); 20 C.F.R. § 655.700. After the Department of Labor certifies the LCA, the worker applies to the Department of State for a visa, which, if granted, allows the worker to enter the United States for a two-year period. 20 C.R.F. §§ 655.705(b); 655.750(a); 22 C.F.R. § 41.51(c).[2]

The LCA contains certain binding attestations, one of which is that during the period of authorized employment, the employer must pay a required wage which is the higher of "the actual wage level paid by the employer to all other individuals with similar experience and qualifications for the specific employment in question," or "the prevailing wage level for the occupational classification in the area of employment." 8 U.S.C. § 1182(t)(1)(A)(i).

An employer is required to pay an E-3 employee on nonproductive status unless an exception applies. Under the statute, an employer is not required to pay an E-3 employee on nonproductive status when (1) there are conditions unrelated to employment which take the nonimmigrant away from his duties at his voluntary request and convenience (e.g., touring the U.S., caring for ill relative) or render the nonimmigrant unable to work (e.g., maternity leave, automobile accident) or (2) there is a *bona fide* termination of the employment relationship. 8 U.S.C. § 1182(t)(3)(C)(vii)(I)-(II); 20 C.F.R. § 655.731(c)(7)(i)-(ii).

The Department of Labor enforces the requirements of the E-3 visa. 8 U.S.C. § 1182(t)(3). An aggrieved party must file a complaint with the Department of Labor's

---

[2] The requirements and enforcement mechanisms for E-3 visas are largely, though not entirely, identical to those for the H-1B visa program, which applies to temporary foreign workers in specialty occupations generally. 20 C.F.R. § 655.700(d)(2). One distinction between H-1B visa program and E-3 visa program is that an employer is not required to file a petition to the Department of Homeland Security to employ an E-3 worker. 70 Fed. Reg. 52,292 (Sept. 2, 2005).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL          'O'   JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

Wage and Hour Division. 20 C.F.R. §§ 655.800(a); 806(a). "A complaint must be filed
not later than 12 months after the latest date on which the alleged violation(s) were
committed, which would be the date on which the employer allergy failed to perform an
action or fulfill a condition specified in the LCA." 20 C.F.R. §§ 655.806(a)(5). After the
Wage and Hour Division investigates the complaint, it issues a determination and any
remedies, including the payment of any back wages due. 20 C.F.R. §§ 655.806(a)(3),
(b); 655.810(a), 655.815. The Wage and Hour Division's determinations can be
challenged in a hearing before an administrative law judge, and the administrative law
judge's decision can be appealed to the Department's Administrative Review Board. 20
C.F.R. §§ 655.820; 655.845. If the Secretary of Labor does not review the
Administrative Review Board's order, it becomes the final Department of Labor Order.
85 Fed. Reg. 13,186 (Mar. 6, 2020).

### C.   Administrative History

On February 5, 2015, Varess filed a complaint with the United State Department of
Labor, Wage and Hour Division alleging that Persian Broadcast failed to pay him the
required wages under the two LCAs. Def. SUF ¶ 35. Varess's written complaint referred
to an earlier telephonic complaint made on December 9, 2014. Def. SUF ¶ 36. On
March 18, 2015, Varess submitted a completed Nonimmigrant Worker Information Form
(WFI-4) describing the wage violation, including a constructive termination in July 2014.
Pltf. SUF ¶ 18. The Wage and Hour Division investigated the complaint and issued a
determination on March 28, 2016, finding that no violation had occurred. Def. SUF ¶ 37.
Varess then requested a hearing before an administrative law judge ("ALJ"). Def. SUF ¶
38.

On December 14, 2017, the ALJ found that Varess was not an employee of Persian
Broadcast entitled to a salary and denied relief to Varess. Def. SUF ¶ 39. Varess
appealed the ALJ's decision to the Administrative Review Board ("ARB"). Def. SUF ¶
40. On September 26, 2019, the ARB reversed the decision of the ALJ, concluding that
Persian Broadcast was required to pay Varess the wages specified in the LCAs. Def.
SUF ¶ 41. The ARB found that (1) Varess entered into employment with Persian
Broadcast, (2) Persian Broadcast never effected a *bona fide* termination, (3) Varess never
entered into voluntary nonproductive status, and (4) any misrepresentations Varess may

**ER-8**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'  JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

have made did not relieve Persian Broadcast of its obligations. CAR 812.[3] The ARB then remanded the case to the ALJ for determinations on the timeliness of Varess's complaint and on any damages owed. Def. SUF ¶ 41.

On October 30, 2019, the ALJ issued a decision on remand, concluding that Varess's complaint was timely filed, and that Persian Broadcast owed Varess $183,794 in back wages plus pre- and post-judgment interest. Def. SUF ¶ 42. The ALJ concluded that neither Varess's failure to renew his visa nor his departure from the United States vitiated Persian Broadcast's responsibilities under the LCAs. CAR 823-24. Further, the ALJ held that Persian Broadcast's violations continued until the end of the second LCA period in September 2015. Id. On November 26, 2019, Persian Broadcast appealed the ALJs decision on remand. Def. SUF ¶ 43. On July 14, 2020, the ARB affirmed the ALJ's decision on remand. Def. SUF ¶ 44. Persian Broadcast has not paid the amount it owes Varess pursuant to the ARB's final order. Def. SUF ¶ 45.

## III. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The

---

[3] Persian Broadcast argued to the ARB that Varess misled Persian Broadcast by "handling all the paperwork, making all the arrangements, and misrepresenting the binding nature of the LCAs." CAR 813-14. The ARB found that Varess's alleged misconduct does not affect Persian Broadcast's duty as the employer to pay the wages set in the LCAs.

**ER-9**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'   JS-6**

| Case No. | 2:21-cv-00229-CAS (GJSx) | | Date | February 7, 2022 |
|---|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | | |

nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

**B.     APA Standard of Review**

Under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (the "APA"), a court shall hold unlawful and set aside agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." A court is not empowered by section 706(2)(A) to substitute its judgment for that of the administrative agency. Nw. Motorcycle Ass'n v. U.S. Dept. of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). A court may reverse an agency decision under the arbitrary and capricious standard "only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Greater Yellowstone Coalition v. Lewis, 628 F.3d 1143, 1148 (9th Cir. 2010) (internal citations omitted).

**ER-10**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                'O'   JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

For purposes of APA review, the agency's factual findings are reviewed for substantial evidence, and the Court will not disturb the agency's findings unless the "evidence presented would compel a reasonable finder of fact to reach a contrary result." Family Inc. v. USCIS, 469 F.3d 1313, 1316 (9th Cir. 2006). When reviewing a final agency action, the district court sits as an appellate tribunal and must determine "as a matter of law if the evidence in the administrative record permitted the agency to make the decision it did. Rhoads v. U.S. Dept of Veterans Affs., 242 F. Supp. 3d 985, 990 (E.D. Cal. 2017) (quoting Occidental Eng'g Co. v. I.N.S., 753 F. 2d at 769).

## IV.   DISCUSSION

Persian Broadcast argues that the Court should set aside the Department of Labor ARB's decision under the APA as arbitrary and capricious on two grounds. First, Persian Broadcast argues that Varess has no remedy for its violation because Varess's administrative complaint to the Department of Labor was time barred. Second, Persian Broadcast argues that the Department of Labor's calculation of back pay owed to Varess was arbitrary and capricious because it was not required to pay Varess under the second LCA because his E-3 visa expired and he left the country. The Court addresses these arguments in turn.

### A.   The ARB's Timeliness Finding

Persian Broadcast contends that the ARB erred in finding that Varess's complaint was timely filed under 20 C.F.R. § 655.806(a)(5). Pltf. MSJ at 13. Under 20 C.F.R. § 655.806(a)(5) a complainant must file a complaint alleging a violation of the nonimmigrant worker regulations not later than 12 months after the latest date on which the alleged violation(s) were committed, which would be the date on which the employer allegedly failed to perform an action or fulfill a condition specified in the LCA, or the date on which the employer, through its action or inaction, allegedly demonstrated a misrepresentation of material fact in the LCA.

Persian Broadcast argues that Varess filed his administrative complaint outside of the 12 month period prescribed by the regulations. Pltf. MSJ at 13. Persian Broadcast argues that the two LCAs it signed only cover a "period of authorized employment," and Varess was not an authorized employee after the first LCA ended, because Varess was not properly issued another E-3 visa by the United States Customs and Immigration

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                          **'O'  JS-6**

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

Services ("USCIS") when his second LCA started.  20 C.F.R. § 655.730(c)(2).  Persian Broadcast notes that obtaining an LCA from the Department of Labor is only the first step in receiving an E-3 visa; after, the employee must take the LCA to the U.S. Department of State to receive an E-3 visa stamp.  Pltf. MSJ at 15.  According to Persian Broadcast, Varess's employment terminated after the first LCA ended on September 12, 2013, because his E-3 visa was not renewed properly.  Id. at 15.  Persian Broadcast contends that the admitting officer made a procedural error when Varess was readmitted to the United States on September 3, 2013, and given status as an E-3 employee until September 2, 2015, because his LCA expired on September 12, 2013, and he was no longer in the United States legally under E-3 status.  Pltf. MSJ at 18.[4]  Therefore, Persian Broadcast argues that Varess's filing of the administrative complaint on February 5, 2015, was over a year after its "alleged violation," and outside the authorized statutory time to file a complaint.  20 C.F.R. 655.806(a)(5).

Additionally, Persian Broadcast argues that even if the Court accepts that Varess was considered to have legal E-3 status while in the United States, Varess's departure from the United States on November 16, 2013, and his subsequent decision not to renew his E-3 visa in Australia absolved Persian Broadcast of any obligation under the second LCA.  Pltf. MSJ at 20.  Persian Broadcast's argument centers around the idea that "one cannot be in authorized employment status in the US if one is not physically in the US."  Id. at 21.  Under its alternative argument, the latest date in which Persian Broadcast allegedly failed to perform an action would be November 16, 2013, which it notes is still more than a year before Varess filed his administrative complaint in February 2015.

Defendants assert that Varess's administrative complaint was timely filed, because Persian Broadcast's failure to pay wages was a continuing violation, and therefore when Varess filed the complaint in February 2015, the limitations period had not even begun to run.  Def. MSJ at 19.  Defendants argue that Persian Broadcast's wage obligation did not

---

[4] Plaintiff cites to the American Immigration Lawyers Association Practice Tips Regarding Individuals Admitted in E-3 Status, AILA Doc. No. 08092970 to support its argument.  Since this document was not considered by the administrative agency, the Court may not, and does not, consider it.  See Lands Council v. Powell, 395 F.3d 1019, 1029 (9th Cir. 2005) (noting that "the Supreme Court has expressed a general rule that courts reviewing an agency decision are limited to the administrative record").

**ER-12**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                    'O'   JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | | Date | February 7, 2022 |
|---|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | | |

terminate in September 2013, when Varess's E-3 visa expired, nor in November 2013, when Varess left the United States, because Varess's non-renewal of his visa and departure from the United States did not affect the binding nature of the second LCA. Def. MSJ at 20. In the alternative, defendants argue that under the conclusion that Persian Broadcast's nonpayment of wages and Varess's decision to stop working for Varess in July 2014 constituted Persian Broadcast's last violation, Varess's administrative complaint in February 2015 would still be timely. Def. MSJ at 20.

The ARB found that Varess's complaint was timely, determining that the second LCA was binding because it was "signed by [Persian Broadcast], certified by the [Department of Labor] , and constituted an obligation [Persian Broadcast] had to abide by until the expiration of the LCA period or an exception to that obligation was satisfied." CAR 815. Further, the ALJ held, and the ARB affirmed, that Persian Broadcast was "liable to pay wages for the duration of the second LCA (September 12, 2013, to September 12, 2015) and the reasons [Persian Broadcast] provide[d] for why the second LCA was invalid do not relieve it of its obligations." CAR-973 (ARB Case No. 2020-0017). Therefore, the ARB concluded that a complaint filed on February 5, 2015, would be timely because any nonpayment of wages during the second LCA period would start the clock as a failure to perform an action, and the LCA period was still ongoing when Varess filed his complaint. Id. Alternatively, the ARB noted that it was on July 11, 2014, when Persian Broadcast notified Varess it could no longer pay him, and therefore if this was considered a notice of an adverse action, then a complaint filed on February 5, 2015, would still be timely. Id. Under either alternative, the ARB found the administrative complaint was timely. Id.

"By submitting a signed and completed LCA, the employer makes certain representations and agrees to several attestations regarding the employer's responsibilities, including the wages, working conditions, and benefits to be provided to the E-3 [] immigrant." 20 C.F.R. § 655.700(d)(4)(i). The administrative record makes clear, and the parties do not dispute, that Persian Broadcast signed both LCAs.

The Court concludes that the ARB's holdings are consistent with the interpretation of 8 U.S.C. § 1101(a)(15)(E)(iii) and its accompanying regulations. C.F.R. §§ 655.806(a)(5). The arbitrary and capricious standard is a deferential standard, and the scope of a court's review is narrow; the court is not to substitute its judgment for that of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'  JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

the agency's.  See Judulang v. Holder, 565 U.S. 42, 52-53 (2011).  The Court may not "disturb the agency's findings under this deferential standard unless the evidence presented would compel a reasonable finder of fact to reach a contrary result."  Family Inc. v. USCIS, 469 F.3d 1313, 1315 (9th Cir. 2006) (internal citation omitted).  The Court finds that the administrative record supports the ARB's finding that under one of two alternative theories, Varess's complaint was timely, and the ARB's holding is not arbitrary, capricious, or an abuse of discretion.

The Court notes that the administrative record shows that Amir Shadjareh, president of Persian Broadcast, signed a second LCA—which covers the period from September 12, 2013 to September 12, 2015—agreeing "to all four(4) labor condition statements summarized," including that Persian Broadcast will "pay nonimmigrants at least the local prevailing wage or the employer's actual wage, whichever is higher, and pay for nonproductive time."  Dkt. 22-1, CAR at 24 ("Labor Conditions Application for Nonimmigrant Workers ETA Form 9035 & 9035E).  Neither the text of the statute nor the regulations nor the LCA itself support Persian Broadcast's argument that an employee's non-renewal of an E-3 visa or the departure of an employee from the United States, terminate the "period of authorized employment" and discharge an employer's responsibilities to continue to pay the employee under the LCA.  An employer's consistent and continual failure to pay the required wage, including failing to pay for nonproductive time, is a continuing violation.  Administrator v. ME Global, 2019 WL 3293915, at *7 (ARB Mar. 22, 2019).  Therefore, Varess's complaint, filed in February 2015, was timely since it was filed within one year of Persian Broadcast's failure to pay Varess the required wage under the LCA.  Id.; See generally National R. R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002) (finding that if an employee files an administrative complaint to the appropriate agency within the statutory period, then he may recover under Title VII, even if some of the employer's violation fell outside of the statutory period).

### B.    The ARB's Award to Varess

Persian Broadcast argues that if the Court finds that Varess's administrative complaint was timely filed, the Court should rule that the Department of Labor's award to Varess of $183,974.00 is arbitrary, capricious, and contrary to law.  Pltf. MSJ at 22.  5 U.S.C. § 706(2).  Persian Broadcast argues that the award of back wages is excessive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'   JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

because it is only required to pay wages under the first LCA, and the administrative award calculates payment of wages for the entirety of both LCAs. Pltf. MSJ at 22. Persian Broadcast argues that the second LCA, which spanned from September 12, 2013 to September 12, 2015, was not an enforceable employment agreement for two reasons. Id. (citing to CAR at 645, Decision of ALJ, Dec. 11, 2017) ("An LCA is not an employment contract").

First, Persian Broadcast reasons that the second LCA is not enforceable because Varess's second E-3 visa was not properly issued. Pltf. MSJ at 17. Persian Broadcast argues that in order for an employer to be bound by the LCA, the employee must "enter into employment," under the language of 20 C.F.R. §655.731(c)(6) (an E-3 nonimmigrant "enters into employment" when he makes himself available to work or otherwise comes under the control of the employer"). Persian Broadcast alleges that under the statutory language, Varess needed to obtain another E-3 visa after his initial visa expired on September 12, 2013 to enter into employment with Persian Broadcast, and because Varess did not complete his E-3 visa application, it is relieved of any potential liability under the second LCA.[5] Pltf. MSJ at 24.

In the alternative, Persian Broadcast reasons that if Varess did "enter into employment" under the second LCA when Customs and Border Protection admitted Varess back into the United States on September 3, 2013, his authorization ended when Varess returned to Australia in November 2013. Pltf. MSJ at 17; 20 C.F.R. § 655.731(c)(7). Persian Broadcast cites to 20 C.F.R. § 665.750(a), which states that an LCA is only valid during the "period of authorized employment," and argues that Varess was no longer an authorized employee when he returned to Australia. Id.

Defendants respond that the ARB's decision was not arbitrary and capricious, and is supported by substantial evidence in the administrative record. Def. MSJ at 9. Defendants note that Persian Broadcast does not dispute that the first LCA was valid, nor that the Department of Labor approved the second LCA, nor that Varess began the

---

[5] During oral argument, counsel for plaintiff emphasized that the fact that Varess withdrew his second E-3 visa application demonstrates that Varess no longer wished to work for Persian Broadcast, and that therefore Persian Broadcast is not liable for back wages under the second LCA. Def. SUF ¶¶ 26-27; CAR 466.

**ER-15**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'  JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
| --- | --- | --- | --- |
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

second LCA period working for Persian Broadcast in the United States. Id. Defendants emphasize that Persian Broadcast was required by its own binding attestation in the LCA, and by the regulations of the Immigration and Nationality Act, to pay Varess the greater of the prevailing wage level for the occupational classification in the area of employment or the actual wage level it paid to all other individuals with similar experience and qualifications. 20 C.F.R. § 655.731(a).

Citing to the regulations addressing circumstances in which employers need not pay the required wage, defendants note that the regulations do not contain exceptions from the wage requirement for visa expiration or travel abroad—the two reasons Persian Broadcast relies on to argue it does not have to pay back wages. Def MSJ at 11; 20 C.F.R. § 655.731(c)(7)(ii). Defendants note that the regulations make clear that the only circumstances in which employers need not pay is (1) if the employee is in nonproductive status under narrow circumstances that do not apply to Varess's situation or (2) if there is a *bona fide* termination. Id. Defendants contend that neither of these two explicit exceptions exempting an employer from paying an E-3 worker's wages apply in Varess's case. 8 U.S.C. § 1882(t)(3)(C)(vii)(IV).

The first exception—that an employer need not pay an E-3 worker during a period of nonproductive status that is due to non-work-related factors that take the nonimmigrant away from work for the worker's convenience or that render the nonimmigrant unable to work—did not apply to Varess when he departed from the United States, because Varess's duties, such as reporting "live from relevant sporting arenas," included off-site work, and therefore his travel did not render him nonproductive or unable to work. Def. MSJ at 14; CAR 357.

The second exception—*bona fide* termination of the employment relationship—did not apply because Persian Broadcast did not meet the requirements of *bona fide* termination such as notifying United States Customs and Immigration Services nor notifying Varess himself that his employment was terminated. 20 C.F.R. § 655.731(c)(7)(ii). Defendants note there was no "actual meeting of the minds between the employer and the nonimmigrant that the employment relationship [was] terminated," because Varess did not understand Shadjareh's text message stating Persian Broadcast could no longer afford to pay him to signal a notice of termination. Def. MSJ at 16; see

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               'O'  JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

also  Gupta v. Jain Software Consulting, Inc., 2007 WL 1031365 at *4 n.3 (ARB Mar. 30, 2007).

Further, defendants rebut Persian Broadcast's proposition that Varess's "period of authorized employment" did not include any time after the expiration of his visa or departure from the United States. Def. MSJ at 12. Defendants note that the Department of Labor's regulations explicitly state that "[a] labor condition application (LCA) certified under § 655.750 is valid for a period of employment indicated by the authorized [Department of Labor] official," and Persian Broadcast does not dispute the second LCA was authorized. Alternatively, defendants note that even if the "authorized employment" language in the regulations contemplates additional authorization, the regulations can be "reasonably understood as referring to the permission [Customs and Border Patrol] grants a nonimmigrant to stay in the United States." Def. MSJ at 12; 22 C.F.R. § 41.112(a). Defendants note that when Varess returned to the United States on September 3, 2013, he was admitted by Customs and Border Patrol until September 2015. Def. MSJ at 12. As such, defendants argue that for purposes of the LCA, Varess was an authorized employee. Def. MSJ at 12-13.

Persian Broadcast replies by acknowledging that there was no *bona fide* termination of Varess's employment, but insists that no *bona fide* termination was required to terminate Varess's employment under the second LCA because Varess's second E-3 visa was not properly issued, or in the alternative the E-3 visa was not renewed when Varess returned to Australia in November 2013.

An E-3 worker must receive the required wage "beginning on the date when the nonimmigrant 'enters into employment' with the employer." 20 C.F.R. § 655.731(c)(6); 8 U.S.C. §§ 1182(t)(1)(A), 1182(t)(3)(C)(vii)(I)-(III). The LCA binds the employer to pay the required wages for the duration of the employment relationship unless certain narrowly-defined exceptions are met. 20 C.F.R. § 655.731(a)(2)(viii). The employer must pay with the required wage even if the LCA is withdrawn, suspended, or invalidated, as long as the employer continues to employ the worker. 20 C.F.R. §655.750(b)(3), (c)(3).

The ARB found that Persian Broadcast "failed to pay [Varess] the required wage under the first LCA which was $45,000 per year. [Persian Broadcast] also failed to pay

**ER-17**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'  JS-6**

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

[Varess] the required wage of $60,000 for the second LCA period.  Because [Persian Broadcast's] president signed and filed both LCAs with the [Department of Labor], it was legally obligated to pay [Varess] the specified wages when [Varess] entered into employment until the LCA period expired unless an exception to that obligation applied." CAR at 812 (ARB decision Sept. 26, 2019).  The ARB determined there was no exception to that obligation because no *bona fide* termination of the employment occurred, and it remanded the case to the ALJ to calculate back wages.  Id.  The ALJ concluded, on remand, that Persian Broadcast owes Varess $183,794 (gross salary of $204,375 less the $20,581 Varess received). CAR at 824.

The Court concludes that the ARB's decision to award Varess $183,794, by calculating back wages owed for a four-year period, including the two-year period from LCA 1 and the two-year period from LCA 2, was not arbitrary and capricious.  The ARB correctly noted that the plain language of the statute did not list an exception for the expiration of an existing E-3 worker's visa or for travel to outside the United States.  As such, the ARB rejected such exceptions as being unauthorized.  See Syed v. M-I, LLC, 853 F.3d 492, 501 (9th Cir. 2017) (when a provision contains express exceptions, "the familiar judicial maxim *expressio unius est exclusion alterius* counsels against finding additional, implied, exceptions").

The Court notes that the ARB did not find that an LCA is binding on an employer when an employee does not have an E-3 visa and never enters the United States.  Rather, the ARB made the factual finding that in this specific circumstance, the second LCA was binding because Varess "entered into employment" under the second LCA when he "entered the U.S. and began or continued working for [Persian Broadcast] under the second LCA on or about September 12, 2013."  CAR 812.  The ARB reasonably found, and the factual record supports, that Customs and Border Protection's admission of Varess to the United States from September 2013 to September 2015—whether or not in error—was sufficient to authorize Varess's employment under the second LCA, because he had already "made himself available to work" and "received authorization for travel to the U.S." under the terms of the LCA.  8 U.S.C. 1182(t)(A)(i); 20 C.F.R. 731(c)(6)(i) and (i)(i).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'   JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
|---|---|---|---|
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

The ARB's finding is supported by additional facts in the administrative record, including records that show that (1) Persian Broadcast continued to accept work from Varess after the first LCA ended, (2) Shadjareh signed a letter confirming that Varess was working for him as a sports producer until September 2015 with a monthly salary of $5,000, and (3) on November 13, 2013, Shadjareh sent another letter to the U.S. Consulate in Sydney, Australia, stating that he wished to continue to engage in Varess's services as a TV producer for a salary of $60,000. CAR 800. Further, the Court acknowledges that the regulations are silent as to whether *bona fide* termination is still required to relieve an employer of his duty to pay wages when the Department of Labor has approved a second LCA for a previously authorized employee, and that employee has been admitted to the United States through Customs and Border Protection, even if that employee is no longer in the United States.

A court is required to defer to an agency's interpretation of a statute when the statute is silent or ambiguous about an issue, provided that the interpretation is based on a permissible construction of the statute. See Alaska Dep't of Health & Social Servs. v. Ctrs. for Medicare & Medicaid Servs., 424 F.3d 931, 939 (9th Cir. 2005). The ARB's conclusion that Persian Broadcast was not relieved of its payment obligations due to Varess's failure to renew his visa and departure from the United States was a reasonable interpretation of the statutory and regulatory ambiguities to which this Court must defer. See id. Neither the statute nor the regulations speak directly to this narrow, factual question, and for the reasons set out above, the ARB's resolution of these ambiguities by concluding that an employer remains bound by its wage obligations to an existing E-3 worker who can perform his duties abroad notwithstanding the worker's visa's expiration and overseas travel, is a reasonable interpretation that is entitled to deference.

### C.   Defendants' Counterclaim for Enforcement of Judgment

Defendants move for summary judgment on their counterclaim to enforce the ARB's order, and request that the Court enter a judgment directing Persian Broadcast to pay Varess or the Department of Labor for Varess's benefit $183,794, plus pre- and post-judgment interest. Defendants argue that a judgment in this enforcement action will fully effectuate the Department of Labor's authority by ensuring that the back wages the Department of Labor found are due are paid, in order to protect nonimmigrant workers

**ER-19**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                                   'O'   JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

like Varess and their American counterparts. Cyberworld Enter. Techs., Inc. v.
Napolitano, 602 F.3d 189, 198 (3d Cir. 2010) (The Department of Labor's enforcement
of LCAs "vindicate[s]" rights that "are of a 'public' nature, since [the Department] is
acting to protect the U.S. workforce from displacement by [nonimmigrant visa] recipients
and to enforce the rules of the immigration system."). Defendants note that Persian
Broadcast has not complied with the Secretary of Labor's order. Def. MSJ at 22.

Further, defendants argue that the Court should award pre-judgment interest at the
rate set by the ARB, and award post-judgment interest pursuant to 28 U.S.C. § 1961(a).
Def. MSJ at 22. Under ARB precedent, pre- and post- judgment interest are awarded
using the rate charged on the underpayment of federal income tax, 26 U.S.C. §
6621(a)(2), which is currently at 3 percent. Mao v. Nasser Eng'g & Comput. Servs.,
2008 WL 5079135 (ARB Nov. 26, 2008). However, defendants note that the Ninth
Circuit has held that interest should be awarded pursuant to 28 U.S.C. § 1961(a) at "a
rate equal to the weekly average 1-year constant maturity Treasury yield," which is
currently at .28 percent. W. Pac. Fisheries, Inc. v. S.S. President Grant, 730 F.2d 1280,
1289 (9th Cir. 1984). Persian Broadcast does not respond to defendants' requested
interest rates.

When a federal agency such as the Department of Labor issues an administrative
order pursuant to its delegated statutory authority, the agency or the United States may
obtain a judgment to enforce that order. See, e.g., United States v. Occidental Chem.
Corp., 200 F.3d 143, 149 n.6 (3d Cir. 1999) (suit to enforce Environmental Protection
Agency's order under the Comprehensive Environmental Response, Compensation, and
Liability Act).

The Court finds that enforcement of the ARB's order directing Persian Broadcast
to pay Varess $183,794, plus pre- and post- judgment interest is appropriate here. The
ALJ found, and the ARB affirmed, that Varess should be awarded both pre- and post-
judgment interest using the rate charged on the underpayment of federal income taxes.
Mao v. Nasser Eng'g & Comput. Servs., 2008 WL 5079135 (ARB Nov. 26, 2008); CAR
824. However, as defendants note, the Ninth Circuit has held that interest should be
awarded pursuant to 28 U.S.C. § 1961(a), "unless the trial judge finds, on substantial
evidence, that the equities of the particular case require a different rate." W. Pac.
Fisheries, Inc., 730 F.2d at 1289. Here, the Court agrees with defendants that pre-

**ER-20**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                 'O'  JS-6

| Case No. | 2:21-cv-00229-CAS (GJSx) | Date | February 7, 2022 |
| Title | PERSIAN BROADCAST SERVICE GLOBAL INC. v. MARTIN J. WALSH; ET AL. | | |

judgment interest should be awarded at the higher rate set by the ARB because the Court's judgment enforces the ARB's order and the case involves wages owed for as much as a decade. Accordingly, the Court awards pre-judgment pursuant to 26 U.S.C. §6621(a)(2), and post-judgment interest pursuant to 28 U.S.C. § 1961(a).

## V.   CONCLUSION

In accordance with the foregoing:

1) The Court **DENIES** Persian Broadcast's motion for summary judgment.

2) The Court **GRANTS** defendants' cross-motion for summary judgment on their counterclaim and orders Persian Broadcast to pay Varess $183,794 plus pre-judgment interest pursuant to 26 U.S.C. § 6621(a)(2), and post-judgment interest pursuant to 28 U.S.C. § 1961(a).

IT IS SO ORDERED.

|  |  | 00 | : | 20 |
| Initials of Preparer | | | CMJ | |

**ER-21**

1  TRACY L. WILKISON
   United States Attorney
2  DAVID M. HARRIS
   Assistant United States Attorney
3  Chief, Civil Division
   JOANNE S. OSINOFF
4  Assistant United States Attorney
5  Chief, General Civil Section
   MATTHEW J. SMOCK (Cal. Bar No. 293542)
6  Assistant United States Attorney
7       Federal Building, Suite 7516
        300 North Los Angeles Street
8       Los Angeles, California 90012
9       Telephone: (213) 894-0397
        Facsimile: (213) 894-7819
10      E-mail: Matthew.Smock@usdoj.gov
11
12 Attorneys for Defendants Martin J. Walsh
13 and United States Department of Labor

14              UNITED STATES DISTRICT COURT
15        FOR THE CENTRAL DISTRICT OF CALIFORNIA
16                   WESTERN DIVISION

17 PERSIAN BROADCAST SERVICE            No. 2:21-cv-00229-CAS (GJSx)
18 GLOBAL INC., a California
   corporation,
19                                      **DEFENDANTS' STATEMENT OF**
                                        **UNCONTROVERTED MATERIAL**
20          Plaintiff,                  **FACTS, RESPONSE TO PLAINTIFF'S**
                                        **STATEMENT OF MATERIAL FACTS,**
21              v.                      **AND PROPOSED CONCLUSIONS OF**
                                        **LAW**
22 MARTIN J. WALSH, et al.,
23          Defendants.                 Hearing Date:    February 7, 2022
                                        Hearing Time:    9:00 a.m.
24                                      Location:        U.S. Courthouse
                                                         350 W. 1st St.
25                                                       Courtroom 8D
                                                         Los Angeles, CA 90012
26                                      Hon. Christina A. Snyder
27
28

                                    1

**ER-22**

1

2

3       Pursuant to Local Rules 56-1 and 56-2, Defendants hereby submit the following

4    Statement of Uncontroverted Material Facts in support of Defendants' Cross-Motion for

5    Summary Judgment, and Response to Plaintiff's Statement of Uncontroverted Facts

6    (ECF No. 29-1) in opposition to Plaintiff's Motion for Summary Judgment.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS**

| Facts | Supporting Evidence |
|---|---|
| 1. Persian Broadcast Global, Inc. ("Persian"), a California corporation, operates Pars TV, a Farsi-language television station that serves the Persian community. | Certified Administrative Record ("CAR") 296 (ECF No. 22-4 at 1) ¶ 1; CAR 537-38 (ECF No. 22-6 at 42-43). |
| 2. Persian's president and chief operating officer is Amir Shadjareh. | CAR 296 (ECF No. 22-4 at 1) ¶ 2; CAR 537, 568 (ECF No. 22-6 at 42, 73). |
| 3. Majid Varess is an Australian national of Iranian origin who has worked since 1974 as a sports producer and reporter. | CAR 296 ¶ 3, 357-58, 392 (ECF No. 22-4 at 1 ¶ 3, 62-63, 97). |
| 4. In 2011, at the age of 61, Varess came to the United States to work for Persian on an E-3 visa. | CAR 296 ¶ 5, 390 (ECF No. 22-4 at 1 ¶ 5, 95). |
| 5. Financial costs Varess incurred associated with relocating to the United States included airfare; rent payments in Australia and the United States; and furniture, appliances, and other expenses in | CAR 405-06 (ECF No. 22-5 at 10-11). |

1

| | |
|---|---|
| the United States. | |
| 6. Varess's family lives in Australia. | CAR 391-92 (ECF No. 22-4 at 96-97); CAR 405 (ECF No. 22-5 at 10). |
| 7. Despite these drawbacks and his own health problems, Varess viewed the position with Persian as a unique late-career opportunity to broadcast sports worldwide in Farsi for a station that shared his opposition to the Iranian regime. | CAR 390-91 (ECF No. 22-4 at 95-96); CAR 407 (ECF No. 22-5 at 12). |
| 8. To employ Varess, Persian filed a Labor Condition Application ("LCA") with the Department of Labor ("DOL") in September 2011. | CAR 296 ¶ 4, 341-346 (ECF No. 22-4 at 1 ¶ 4, 46-51). |
| 9. The LCA indicated that Persian would be employing a "TV producer and reporter," that the prevailing wage rate for this position was $44,013 per year, and that Varess would be paid $45,000 per year. | CAR 342, 344 (ECF No. 22-4 at 47, 49). |
| 10. DOL approved the LCA for a period from September 12, 2011 to | CAR 296 ¶ 4, 346 (ECF No. 22-4 at 1 ¶ 4, 51). |

2

| | |
|---|---|
| September 12, 2013. | |
| 11. Varess obtained a visa with an expiration date of September 12, 2013, entered the United States on November 23, 2011, and began working for Persian. | CAR 296 ¶ 5, 353 (ECF No. 22-4 at 1 ¶ 5, 58). |
| 12. During Varess's employment with Persian, he hosted and produced sports programs. | CAR 296 ¶ 5, 357 (ECF No. 22-4 at 1 ¶ 5, 62). |
| 13. Varess estimated that during his employment with Persian, he worked between 60 and 70 hours per week, whether he was working from the United States or from elsewhere. | CAR 475-76 (ECF No. 22-5 at 80-81). |
| 14. Varess worked for Persian both in the United States and from other locations around the world, and left the United States and returned several times. | CAR 296-97 ¶¶ 6-12 (ECF No. 22-4 at 1-2 ¶¶ 6-12); CAR 421 (ECF No. 22-5 at 26). |
| 15. Varess reported from England during the Wimbledon tennis tournament, reported on soccer matches from England and Ireland, | CAR 421-22, 451-52 (ECF No. 22-5 at 26-27, 56-57). |

3

**ER-26**

| | |
|---|---|
| and also reported from Belgium, France, and Australia. | |
| 16. Varess hoped to broadcast the 2014 World Cup soccer tournament, in which Iran participated, from Brazil. | CAR 443, 456-59 (ECF No. 22-5 at 48, 61-64). |
| 17. To perform his duties overseas, Varess uploaded his shows using the internet, and Persian broadcast them via satellite. | CAR 421-22, 452-53, 475 (ECF No. 22-5 at 26-27, 57-58, 80). |
| 18. Shadjareh supported Varess's efforts to broadcast overseas. | CAR 475 (ECF No. 22-5 at 80). |
| 19. In August 2013, Persian filed a second LCA to continue Varess's employment. | CAR 297 ¶ 11, 347-52 (ECF No. 22-4 at 2 ¶ 11, 52-57). |
| 20. The second LCA listed the prevailing wage rate as $59,384 and stated that Varess would be paid an annual salary of $60,000. | CAR 350 (ECF No. 22-4 at 55). |
| 21. On August 30, 2013, DOL approved the second LCA for a period from September 12, 2013 to | CAR 297 ¶ 11, 352 (ECF No. 22-4 at 2 ¶ 11, 57). |

4

**ER-27**

| | |
|---|---|
| September 12, 2015. | |
| 22. When Varess entered the United States on September 3, 2013 after temporarily departing in July 2013, the Department of Homeland Security's Customs and Border Protection ("CBP") admitted him for an additional two years until September 2, 2015. The CBP officer at the airport told him he could remain and work in the United States. | CAR 297 ¶ 12, 354, 367 (ECF No. 22-4 at 2 ¶ 12, 59, 72); CAR 445-46 (ECF No. 22-5 at 50-51). |
| 23. Varess continued working for Persian in the United States until November 16, 2013. | CAR 359-66 (ECF No. 22-4 at 64-71) (sample programs produced by Varess from November-September 2013); CAR 573-74 (ECF No. 22-6 at 78-79). |
| 24. On November 16, 2013, Varess left the United States and traveled to Australia. | CAR 297 ¶ 13 (ECF No. 22-4 at 2 ¶ 13); CAR 399 (ECF No. 22-5 at 4). |
| 25. Prior to Varess's departure in November 2013, Shadjareh signed a letter to the United States Consulate in Sydney, Australia in support of Varess's application to | CAR 356-58 (ECF No. 22-4 at 61-63); CAR 409-10 (ECF No. 22-5 at 14-15); CAR 577-78 (ECF No. 22-6 at 82-83). |

5

| | |
|---|---|
| renew his E-3 visa, stating that Persian desired to continue employing him at a salary of $60,000 per year. | |
| 26. Varess initially intended to renew his visa in Australia. | CAR 413, 441-43, 456-57 (ECF No. 22-5 at 18, 46-48, 61-62). |
| 27. Varess ultimately did not renew his visa, due largely to Persian's failure to pay him, and did not return to the United States after November 16, 2013. | CAR 297 ¶ 13 (ECF No. 22-4 at 2 ¶ 13); CAR 441-43 (ECF No. 22-5 at 46-48). |
| 28. Varess continued to work for Persian from overseas until July 14, 2014. | CAR 394 (ECF No. 22-4 at 99); CAR 415, 417, 452-53, 482 (ECF No. 22-5 at 20, 22, 57-58, 87). |
| 29. Throughout Varess's employment, Persian paid him irregularly and sporadically in amounts between $300 and $2,300, for a total of approximately $20,000. | CAR 319-337 (exhibit showing Persian's check copies, tax forms, and an internal report), 393-96 (ECF No. 22-4 at 24-42, 98-100; ECF No. 22-5 at 1); CAR 415-16 (ECF No. 22-5 at 20-21); CAR 824 (ECF No. 22-9 at 29). |
| 30. Varess brought up issues regarding his wages with Shadjareh and Persian, who would respond that the station was having financial | CAR 393-94 (ECF No. 22-4 at 98-99). |

| | |
|---|---|
| difficulties and promise to pay him at a later date. | |
| 31. Varess continued to work for Persian despite these payment issues because he had invested considerably in the position, and because he wanted to preserve his professional reputation and to work for a company opposed to the Iranian regime. | CAR 405-07, 437-38 (ECF No. 22-5 at 10-12, 42-43). |
| 32. On July 11, 2014, in response to an inquiry from Varess about his wages, Shadjareh told Varess, via text message, that he could no longer afford to pay him. | CAR 370-72 (ECF No. 22-4 at 75-77); CAR 417 (ECF No. 22-5 at 22). |
| 33. Varess did not perform any more work for Persian after July 14, 2014. | CAR 421, 482 (ECF No. 22-5 at 26, 87). |
| 34. Varess did not interpret Shadjareh's July 11, 2014 message as a notice of termination. | CAR 424 (ECF No. 22-5 at 29). |
| 35. On February 5, 2015, Varess, through counsel, filed a written complaint with DOL's Wage and | CAR 297 ¶ 14, 307-13 (ECF No. 22-4 at 2 ¶ 14, 12-18). |

7

| | |
|---|---|
| Hour Division, alleging that Persian failed to pay him the required wage. | |
| 36. Varess's written complaint referred to an earlier telephonic complaint made on December 9, 2014. | CAR 297 ¶ 14, 307 (ECF No. 22-4 at 2 ¶ 14, 12). |
| 37. WHD investigated the complaint and issued a determination on March 28, 2016 finding no violations. | CAR 1-2 (ECF No. 22-1 at 6-7); CAR 297 ¶ 15 (ECF No. 22-4 at 2 ¶ 15). |
| 38. Varess requested a hearing before an administrative law judge ("ALJ"). | CAR 3-4 (ECF No. 22-1 at 8-9). |
| 39. The ALJ denied relief to Varess on December 14, 2017, finding that notwithstanding the LCAs, Varess was not an employee of Persian entitled to a salary. | CAR 640-51 (ECF No. 22-7 at 45-56). |
| 40. Varess appealed the ALJ's decision to the ARB. | CAR 652-727 (ECF No. 22-7 at 57-100, ECF No. 22-8 at 1-32). |
| 41. On September 26, 2019, the ARB reversed the ALJ, concluding that Persian was required to pay Varess | CAR 808-19 (ECF No. 22-9 at 13-24). |

8

**ER-31**

| | |
|---|---|
| the wages specified in the LCAs. The ARB remanded the case to the ALJ for determinations on the timeliness of Varess's complaint and on any damages owed. | |
| 42. On October 30, 2019, the ALJ issued a decision on remand concluding that Varess's complaint was timely filed and that Persian owed Varess $183,794 in back wages plus pre- and post-judgment interest. | CAR 822-27 (ECF No. 22-9 at 27-32). |
| 43. On November 26, 2019, Persian appealed the ALJ's decision on remand to the ARB. | CAR 828-908 (ECF No. 22-9 at 33-100; ECF No. 22-10 at 1-13). |
| 44. On July 14, 2020, the ARB affirmed the ALJ's decision on remand. | CAR 973-78 (ECF No. 22-10 at 78-83). |
| 45. Persian has not paid the amount it owes Varess pursuant to the ARB's final order. | Federal Defendants' Answer and Counterclaim at 13 ¶ 28 (ECF No. 11 at 14 ¶ 28); Plaintiff's Answer to Defendants' Counterclaim at 4 ¶ 28 (ECF No. 12 at 4 ¶ 28). |

9

# DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF
# UNCONTROVERTED FACTS

| Plaintiff's Proffered Uncontroverted Facts and Supporting Evidence | Response |
|---|---|
| 1. Plaintiff, Persian Broadcast Service Global, Inc. (hereinafter, "Plaintiff" or "Pars TV"), is a legal entity incorporated under the laws of the State of California.  Certified Administrative Record (CAR) Page 296, #1. | Undisputed. |
| 2. Amir Shadjareh is the President of Pars TV. CAR Page 296, #2. | Undisputed. |
| 3. Defendant, Majid Varess (hereinafter, "Varess"), is a national of Australia, where he currently resides.  CAR Page 296, #3. | Undisputed. |
| 4. In September 2011, Plaintiff filed an application for labor certification (LCA) with the Department of Labor (DOL) on behalf of Varess. The LCA was approved with a validity date of September 12, 2011, to September 12, 2013, at an annual Wage Rate of $45,000. CAR Page 296, #4. | Undisputed. |
| 5. On November 23, 2011, Varess | Undisputed. |

10

**ER-33**

| | |
|---|---|
| entered the U.S. on an E-3 visa and commenced working for Plaintiff as a Pars TV television producer of content) and reporter from the U.S. CAR Page 296, #5. | |
| 6. Varess departed the U.S. on August 19, 2012. CAR Page 296, #6. | Undisputed. |
| 7. Varess returned to the U.S. on October 17, 2012.  CAR Page 296, #7. | Undisputed. |
| 8. Varess departed the U.S. on January 14, 2013.  CAR Page 296, #8. | Undisputed. |
| 9. Varess returned to the U.S. on May 17, 2013.  CAR Page 296, #9. | Undisputed. |
| 10. Varess departed the U.S. on July 14, 2013. During these periods outside the U.S., Varess produced and solo hosted sports programs for Pars TV.  CAR Page 296, #10. | Undisputed. |
| 11. In August 2013, Plaintiff filed a second LCA with the DOL on behalf of Varess at an Annual Wage Rate increased by 33.3% to $60,000, on the stated "Basis" of "Continuation of previously approved employment without | Undisputed. |

11

**ER-34**

| | |
|---|---|
| change with the same employer." CAR Page 296, #11. | |
| 12. The second LCA was approved with a validity date of September 12, 2013 to September 12, 2015. CAR Page 296, #11. | Undisputed. |
| 13. On September 3, 2013, Varess returned to the U.S. and was admitted for stay until September 2, 2015. CAR Page 296, #12. | Undisputed. |
| 14. Both Varess's original LCA and E-3 visa stamp expired on September 12, 2013. CAR Pages 55-60 and Page 74. | Defendant does not dispute that Varess's original LCA and E-3 visa expired on September 12, 2013, or that the stamp on Varess's visa when he originally entered the United States permitted him to stay in the United States until September 12, 2013. Defendants clarify that the stamps on Varess's visa were made by the Department of Homeland Security's Customs and Border Protection. CAR 74 (ECF No. 22-1 at 79). |
| 15. On November 16, 2013, Varess departed the U.S., and has not returned. CAR Page 296, #13. | Undisputed. |
| 16. Varess never attempted to obtain a new E-3 visa after his departure of November 16, 2013. CAR Page | Disputed in part. Defendants do not dispute that Varess never renewed his E-3 visa or obtained a new E-3 visa after |

12

**ER-35**

| | |
|---|---|
| 440, Lines 19-25. | departing the United States on November 16, 2013. Defendants dispute that Varess never "attempted" to do so. Varess testified that he paid a fee for an application for visa renewal, CAR 466 (ECF No. 22-5 at 71), and that he initially attempted to renew the visa, including requesting for an appointment at the U.S. Consulate in Sydney, but postponed the appointment because Persian was not paying him, and eventually withdrew his application. CAR 441-42 (ECF No. 22-5 at 46-47). |
| 17. On February 5, 2015, Varess filed a written complaint against Plaintiff with the Wage and Hours Division (WHD) of the DOL which refers to a complaint on his behalf made by phone on December 9, 2014. CAR Page 296, #14. | Undisputed except to clarify that WHD stands for "Wage and Hour Division." |
| 18. On March 18, 2015, Varess submitted to DOL a completed Nonimmigrant Worker Information Form WFI-4 describing the claimed wage and other violations, including but not limited to claimed constructive termination in July | Undisputed. |

13

| | |
|---|---|
| 2014.  CAR Page 296, #14. | |
| 19. On March 28, 2016, the WHD concluded that Plaintiff had not committed any wage violations as to Varess.  CAR Page 296, #15. | Undisputed. |
| 20. At no point prior to July 14, 2014, did Plaintiff notify the DOL of termination of Varess's employment under 20 C.F.R. §655.731, subsection(c)(7)(ii) (see also 8 C.F.R. §214.2, subsection (h) (1 l)(i)(A).  CAR Page 296, #16. | Undisputed. |

14

## DEFENDANTS' PROPOSED CONCLUSIONS OF LAW

1. The ARB's decision awarding Majid Varess $183,794 in back wages plus pre- and post-judgment interest due to Persian Broadcast Global, Inc.'s violations of the Labor Condition Application ("LCA") requirements of the E-3 provisions of the Immigration and Nationality Act ("INA") was supported by substantial evidence, was reasonable and in accordance with law, and does not meet the criteria under which this Court may set aside agency action under the Administrative Procedure Act, 5 U.S.C. § 706(2).

2. Pursuant to its authority to enforce the LCA requirements of the INA, Defendants are entitled to a judgment from this Court enforcing the ARB's order and ordering the payment of back wages and interest to Varess.

3. Pursuant to the ARB's decision, Varess is entitled to interest until the date of any judgment in this Court at the rate specified in 26 U.S.C. § 6621(a)(2). Varess is also entitled to interest after the date of the entry of judgment in this Court at the rate prescribed by 28 U.S.C. § 1961(a).

1    Dated: December 13, 2021          Respectfully submitted,

2

3                               TRACY L. WILKISON
                              United States Attorney
                              DAVID M. HARRIS

4                               Assistant United States Attorney
                              Chief, Civil Division
                              JOANNE S. OSINOFF

5                               Assistant United States Attorney
                              Chief, General Civil Section

6

7                              /s/ Matthew J. Smock

8                               MATTHEW J. SMOCK
                              Assistant United States Attorney

9                               Of counsel:

10                               Jennifer S. Brand, Associate Solicitor
                              Jonathan Kronheim, Counsel for Trial

11                               Litigation
                              Jesse Z. Grauman, Senior Attorney

12                               U.S. Department of Labor
                              Office of the Solicitor

13                               Fair Labor Standards Division
                              200 Constitution Avenue NW

14                               Room N-2716
                              Washington, D.C. 20210

15

16                               Attorneys for Defendants

17

18

19

20

21

22

23

24

25

26

27

28

1 | Ira J. Nasserian, Esq.                                    CSB# 225380
2 | 12 Cypress Way
   | Rolling Hills Estates, CA 90274
   | Phone: (310) 337-7900
3 | Email:  inasserian@lawinscal.com

4

5 | Attorney for Plaintiff Persian Broadcast Service Global, Inc.

6

7

8

9 |               UNITED STATES DISTRICT COURT

10 |        FOR THE CENTRAL DISTRICT OF CALIFORNIA

11 |                  LOS ANGELES, CALIFORNIA

12

13

14

15 | PERSIAN BROADCAST SERVICE          ) No. 2:21-cv-00229-CAS (GJSx)
16 | GLOBAL INC.,  a California          )
    | corporation                        ) **PLAINTIFF'S LOCAL RULE 56-1**
17 |                                     ) **STATEMENT OF**
    | Plaintiff.                         ) **UNCONTROVERTED FACTS**
18 |                                     ) **IN SUPPORT OF PLAINTIFF'S**
19 |                 v.                  ) **MOTION FOR SUMMARY**
20 |                                     ) **JUDGMENT**
21 | MARTIN J. WALSH, in his capacity as )
22 | United   States   Secretary   of  Labor, )
23 | UNITED STATES DEPARTMENT OF )
24 | LABOR, MAJID VARESS               )
25 | Defendants                         )

26

27

28 |                            1

**ER-40**

Plaintiff, Persian Broadcast Service Global, Inc. ("Plaintiff") respectfully submits the following Statement of Uncontroverted Facts and Conclusions of Law pursuant to Local Rule 56-1 in support of Plaintiff's Motion for Summary Judgment

## STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Facts | Supporting Evidence |
| --- | --- |
| 1. Plaintiff, Persian Broadcast Service Global, Inc. (hereinafter, "Plaintiff" or "Pars TV"), is a legal entity incorporated under the laws of the State of California. | Certified Administrative Record (CAR) CAR Page 296, #1 |
| 2. Amir Shadjareh is the President of Pars TV | Certified Administrative Record (CAR) CAR Page 296, #2 |
| 3. Defendant, Majid Varess (hereinafter, "Varess"), is a national of Australia, where he currently resides. | Certified Administrative Record (CAR) CAR Page 296, #3 |
| 4. In September 2011, Plaintiff filed an application for labor certification (LCA) with the Department of Labor (DOL) on behalf of Varess. The LCA was approved with a validity date of September 12, 2011, to September 12, 2013, at an annual Wage Rate of $45,000. | Certified Administrative Record (CAR) CAR Page 296, #4 |
| 5. On November 23, 2011, Varess entered the U.S. on an E-3 visa and commenced working for Plaintiff as a Pars TV television producer of content) and reporter from the U.S. | Certified Administrative Record (CAR) CAR Page 296, #5 |

2

| | |
|---|---|
| 6. Varess departed the U.S. on August 19, 2012. | Certified Administrative Record (CAR) CAR Page 296, #6 |
| 7. Varess returned to the U.S. on October 17, 2012. | Certified Administrative Record (CAR) CAR Page 296, #7 |
| 8. Varess departed the U.S. on January 14, 2013. | Certified Administrative Record (CAR) CAR Page 296, #8 |
| 9. Varess returned to the U.S. on May 17, 2013. | Certified Administrative Record (CAR) CAR Page 296, #9 |
| 10. Varess departed the U.S. on July 14, 2013. During these periods outside the U.S., Varess produced and solo hosted sports programs for Pars TV. | Certified Administrative Record (CAR) CAR Page 296, #10 |
| 11. In August 2013, Plaintiff filed a second LCA with the DOL on behalf of Varess at an Annual Wage Rate increased by 33.3% to $60,000, on the stated "Basis" of "Continuation of previously approved employment without change with the same employer," | Certified Administrative Record (CAR) CAR Page 297, #11 |
| 12. The second LCA was approved with a validity date of September 12, 2013 to September 12, 2015. | Certified Administrative Record (CAR) CAR Page 297, #11 |
| 13. On September 3, 2013, Varess returned to the U.S. and was admitted for stay until September 2, 2015. | Certified Administrative Record (CAR) CAR Page 297, #12 |
| 14. Both Varess's original LCA and E-3 visa stamp expired on September 12, 2013 | Certified Administrative Record (CAR) CAR Pages 55-60 and Page 74 |
| 15. On November 16, 2013, Varess departed the U.S., and has not returned. | Certified Administrative Record (CAR) CAR Page 297, #13 |

3

| | |
|---|---|
| 16. Varess never attempted to obtain a new E-3 visa after his departure of November 16, 2013 | Certified Administrative Record (CAR) CAR Page 440, Lines 19-25 |
| 17. On February 5, 2015, Varess filed a Written complaint against Plaintiff with the Wage and Hours Division (WHD) of the DOL which refers to a complaint on his behalf made by phone on December 9, 2014. | Certified Administrative Record (CAR) CAR Page 297, #14 |
| 18. On March 18, 2015, Varess submitted to DOL a completed Nonimmigrant Worker Information Form WFI-4 describing the claimed wage and other violations, including but not limited to claimed constructive termination in July 2014. | Certified Administrative Record (CAR) CAR Page 297, #14 |
| 19. On March 28, 2016, the WHD concluded that Plaintiff had not committed any wage violations as to Varess. | Certified Administrative Record (CAR) CAR Page 297, #15 |
| 20. At no point prior to July 14, 2014, did Plaintiff notify the DOL of termination of Varess's employment under 20 C.F.R. §655.731, subsection (c)(7)(ii) (see also 8 C.F.R. §214.2, subsection (h) (1 l)(i)(A) | Certified Administrative Record (CAR) CAR Page 297, #16 |

Respectfully submitted,


Ira J. Nasserian, Esq.
12 Cypress Way
Rolling Hills Estates, CA 90274
Attorney for Plaintiff Persian Broadcast Service Global, Inc.

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5

U.S. Department of Labor

Office of Administrative Law Judges
90 Seventh Street, Suite 4-800
San Francisco, CA 94103-1516

(415) 625-2200
(415) 625-2201 (FAX)



Issue Date: 11 December 2017

CASE NO.: 2016-LCA-00019

*In the Matter of:*

MAJID VARESS,
  *Prosecuting Party,*

   vs.

PERSIAN BROADCAST SERVICE
GLOBAL, INC.,
  *Respondent.*

APPEARANCES:

NORMAN J. RESNICOW, Esq.
  For the Prosecuting Party.

DAVID M. STURMAN, Esq.
JONATHAN R. STURMAN, Esq.
  For the Respondent.

BEFORE:   CHRISTOPHER LARSEN
          Administrative Law Judge

## DECISION AND ORDER DENYING RELIEF

This is a claim arising under the Immigration and Nationality Act ("INA" or "Act") H-1B visa program, 8 U.S.C. §1182.

I held a telephonic hearing in this matter on October 26 and 27, 2017. Attorney Norman J. Resnicow appeared for the Prosecuting Party, Majid Varess, and Attorneys David M. Sturman and Jonathan R. Sturman appeared for the Respondent, Persian Broadcasting Service Global, Inc. At the hearing, I heard testimony from

the Prosecuting Party, Majid Varess; and from witnesses Daryoush "Nick" Zahab and Amir Shadjareh. I received in evidence Prosecuting Party's Exhibits ("CX") 1-10 and "G," and Respondent's Exhibits ("RX") 6.

Before the hearing, the parties stipulated in writing:

> 1. Respondent, Persian Broadcast Service Global, Inc. (hereinafter, "Respondent" or "Pars TV"), is a legal entity incorporated under the laws of the State of California.
>
> 2. Amir Shadjareh is the President of Pars TV.
>
> 3. Prosecuting Party, Majid Varess (hereinafter, "Claimant"), is a national of Australia, where he currently resides.
>
> 4. In September 2011, Respondent filed an application for labor certification (LCA) with the Department of Labor (DOL) on behalf of Claimant. The LCA was approved with a validity date of September 12, 2011, to September 12, 2013, at an annual Wage Rate of $45,000.
>
> 5. On November 23, 2011, Claimant entered the U.S. on an E-3 visa and commenced working for Respondent as a Pars TV television producer (of content) and reporter from the U.S.
>
> 6. Claimant departed the U.S. on August 19, 2012.
>
> 7. Claimant returned to the U.S. on October 17, 2012.
>
> 8. Claimant departed the U.S. on January 14, 2013.
>
> 9. Claimant returned to the U.S. on May 17, 2013.
>
> 10. Claimant departed the U.S. on July 14, 2013. During these periods outside the U.S., Claimant produced and solo hosted sports programs for Pars TV.
>
> 11. In August 2013, Respondent filed a second LCA with the DOL on behalf of Claimant at an Annual Wage Rate increased by 33.3% to $60,000, on the stated "Basis" of "Continuation of previously approved employment without change with the same employer." The second LCA was approved with a validity date of September 12, 2013 to September 12, 2015.
>
> 12. On September 3, 2013, Claimant returned to the U.S. and was admitted for stay until September 2, 2015.

- 2 -

13. On November 16, 2013, Claimant departed the U.S., and has not returned since.

14. On February 5, 2015, Claimant filed a written complaint against Respondent with the Wage and Hours Division (WHD) of the DOL which refers to a complaint on his behalf made by phone on December 9, 2014. On March 18, 2015, Claimant submitted to DOL a completed Nonimmigrant Worker Information Form WH-4 describing the claimed wage and other violations, including but not limited to claimed constructive termination in July 2014.

15. On March 28, 2016, the WHD concluded that Respondent had not committed any wage violations as to Claimant.

16. At no point prior to July 14, 2014, did Respondent notify the DOL of termination of Claimant's employment under 20 C.F.R. §655.731, subsection (c)(7)(ii) (see also 8 C.F.R. §214.2, subsection (h)(11)(i)(A)).

The dispute between the parties is clearly defined. Mr. Varess claims Respondent employed him and failed to pay the agreed salary. Respondent contends it engaged Mr. Varess as a contractor for a shorter period than Mr. Varess alleges, and owes him nothing. Respondent further contends Mr. Varess's claim is time-barred.

## Discussion

Stripped to its essence, this case is a garden-variety claim for unpaid wages. It comes before the Department of Labor, rather than a state administrative agency or a court of general jurisdiction, because the putative employer in this case filed two Labor Condition Applications ("LCAs") with the Department under 8 U.S.C. § 1182(n)(1), *see also* 20 C.F.R. §§ 655.371 and 655.373. The filing of an LCA with the Department is a necessary first step in the admission into the United States of so-called "H-1B workers" or "H-1B nonimmigrants" – non-citizens allowed to work temporarily in the United States. The United States allows such temporary workers to enter the country if 1) U.S. workers are not available to perform such temporary employment in the United States, *and* the employment of aliens for such temporary work will not adversely affect the wages or working conditions of similarly-employed U.S. workers. *See* 20 C.F.R. §§ 655.0, subsection (a)(1); 655.731; 655.732. Thus, "[n]o alien may be admitted or provided status as an H-1B nonimmigrant in an occupational classification unless the employer has filed with the Secretary of Labor an application." 8 U.S.C. § 1182(n)(1)(G)(vi).

As the Administrative Review Board observed in *Gupta v. Compunnel Software Group, Inc.,* ARB Case No. 12-049 (ARB May 29, 2014), 2014 WL 2917576,

- 3 -

"Four federal agencies (Department of Labor, Department of State, Department of Justice, and Department of Homeland Security) are involved in the process relating to H-1B nonimmigrant classification and employment." *[Citation.]* More importantly, the H-1B hiring process involves three procedural phases that fundamentally impact DOL's resolution of H-1B wage complaints. The first of the three phases requires the H-1B employer to file with DOL for certification of the completed LCA. *[Citation.]* In the LCA, the employer stipulates to the wage levels and working conditions, among other things, that it guarantees for the H-1B worker for the period of his or her authorized employment. Second, if DOL certifies the LCA, then the employer must file an H-1B petition with USCIS, requesting permission to employ the H-1B worker and allowing the H-1B beneficiary to apply for an H-1B visa. Third, if USCIS approves the H-1B petition, the H-1B beneficiary must apply to the U.S. State Department for an H-1B visa. An approved visa grants the H-1B beneficiary permission to seek entry into the United States up to a date specified on the visa as the "expiration date."

Once the H-1B petition is granted, the petitioning employer assumes various legal obligations after the H-1B beneficiary enters the country or becomes "eligible to work for the petitioning employer." *[Citation.]* The H-1B employer must begin paying the H-1B worker within the time prescribed in 20 C.F.R. § 655.731(c)(6)(ii). . . . The employer may end its obligation to pay the H-1B nonimmigrant through a "*bona fide* termination" of the employment relationship, and it must inform DHS of such termination. *[Citation]* . . .

Similarly, to work in more than one location, an H-1B nonimmigrant "must include an itinerary with the dates and locations of the services or training and [the itinerary] must be filed with USCIS as provided in the form instructions." *[Citation]* USCIS explained that this regulation "was designed to ensure that aliens seeking H-1B nonimmigrant status have an actual job offer and are not coming to the United States for the purpose of seeking employment" upon arrival. *[Citation.]* . . . In the event of a material change in the terms or conditions of the nonimmigrant's employment, the petitioning employer must file a new certified LCA together with an amended H-1B petition with USCIS. *[Citation.]* USCIS's guidance provides that any change in employment that requires a new LCA also requires an amended H-1B petition.

-4-

The Administrator of the Wage and Hour Division has broad authority to investigate an employer's compliance with the representations and attestations on an LCA. *See* 20 C.F.R. § 655.805. In an appropriate case, the aggrieved employee may recover back wages. 20 C.F.R. § 655.810, subsection (a). Mr. Varess contends Respondent did not pay him consistently with the representations it made in the two LCAs in this case. Accordingly, he comes before this court to claim the wages he alleges are due.

But there is a further complication in this case. The nature of the legal relationship between Mr. Varess and Respondent, and the terms of Mr. Varess's compensation, are disputed. The burden is on Mr. Varess to establish not only his entitlement to compensation, but the amount of that compensation.[1]

In Mr. Varess's view, he was an employee of Respondent. He contends Respondent agreed to pay him $45,000 per year for two years, and $60,000 per year for an additional two years, but failed to do so. Mr. Shadjareh, the President of Respondent, testified Mr. Varess was an independent contractor, rather than an employee, producing sports programming; and that he was paid at first in the form of rental on an apartment in the United States (TR p. 168, line 5 - p. 170, line 19; p. 187, lines 4-19), or, later, a set fee per program produced, rather than a salary (TR p. 162, line 5 - p. 163, line 21).

To support his view, Mr. Varess relies on four documents signed by Mr. Shadjareh: CX 1, an LCA signed on September 8, 2011; CX 2, an LCA signed on September 4, 2013; CX 4, a "To-Whom-It-May-Concern" letter signed on or about September 7, 2013; and CX 5, a letter to the Nonimmigrant Visa Section of the United States Consulate General in Sydney, Australia, dated November 13, 2013. CX 1 recites that Respondent intends to employ Mr. Varess as a TV producer and reporter from September 12, 2011, to September 12, 2013, at a yearly salary of $45,000 (CX 1, pp. 2, 4). CX 2 recites that Respondent intends to employ Mr. Varess as a TV producer and reporter from September 12, 2013, to September 12, 2015, at a yearly salary of $60,000 (CX 2, pp. 2, 4). The first paragraph of CX 5 reads

> We submit this letter on behalf of Majid Varess in order that
> he may be authorized to continue to perform temporary ser-

---

[1] The Office of Administrative Law Judges' Rules of Practice and Procedure, 29 C.F.R. Part 18, Subpart A, apply in this case. 29 C.F.R. §1978.107, subsection (a). Under those rules, within 21 days of entry of an initial notice or order acknowledging the case had been docketed (29 C.F.R. §18.80, subsection (c)(1)(iv), and "without awaiting a discovery request" (29 C.F.R. §18.80, subsection (c)(1)(i), Mr. Varess should have disclosed to Respondent "[a] computation of each category of damages claimed by the disclosing party," including supporting documentation. In addition to that, Mr. Varess had a continuing duty under 29 C.F.R. §18.53 to "supplement or correct" that disclosure if, at any time, he learned it had become incomplete or incorrect in some material respect. Given those obligations, one would reasonably expect find, at some point in the hearing or in the post-hearing brief, a computation of Mr. Varess's claimed damages. To my astonishment, there is none. This failure alone comprises grounds for denying relief in this case.

vices in the specialty occupation of TV Producer and Reporter
with Persian Broadcast Service Global, Inc. Persian Broadcast
Service Global, Inc., wishes to continue to engage the services
of Mr. Varess, an Australian citizen, for an additional two-year
period. He will be compensated in the amount of $60,000 per
year.

(CX 5, p. 1).

Finally, CX 4 recites "Mr. Majid Varess is working for Pars TV station as a
sport *[sic]* producer until Sep 2015. His monthly salary is $5000.00" (CX 4, p. 1).

These documents are not primary evidence of an employment agreement. An
LCA is not an employment contract, and neither is an unverified letter addressed to
the world at large. The distinction is important in this case. Mr. Varess employs
these documents as secondary evidence of an employment agreement, perhaps even
as grounds for estopping Respondent from contradicting Mr. Varess's theory of the
case. But Mr. Shadjareh testified he did not write CX 1, CX 2, or CX 5. Instead, he
testified – *and Mr. Varess admitted* – those documents were written by Noah Klug,
an attorney Mr. Varess hired for that purpose (TR p. 52, lines 2-19; p. 53, lines 14-
22; p. 53, line 24 - p. 54, line 19). In fact, according to Mr. Shadjareh, Mr. Varess
had asked Mr. Shadjareh to apply for a visa for him; Mr. Shadjareh had replied he
could not; and Mr. Varess had told him Mr. Varess would hire an attorney to pre-
pare "papers" Mr. Shadjareh need only sign. Mr. Shadjareh testified he signed
those "papers" without reading them or further considering them (TR p. 168, line 5 -
p. 170, line 19; p. 187, lines 4-19; p. 208, lines 4-25; p. 210, lines 9-21). In spite of
what those documents recited, according to Mr. Shadjareh, the understanding be-
tween the parties was that Respondent would pay Mr. Varess's rent in the United
States, up to $1,800 per month, in exchange for Mr. Varess's producing two one-
hour programs per week for broadcast (TR p. 167, line 10 – p. 168, line 1; p. 168,
lines 13-24).[2]  As to CX 4, Mr. Shadjareh testified he signed it at Mr. Varess's re-
quest solely to help Mr. Varess qualify to rent an apartment (TR p. 199, line 3 - p.
200, line 16). What is more, Mr. Zahab testified that he and Mr. Varess, in July,
2013, began working together, as independent contractors, to produce sports pro-
gramming for Respondent (TR p. 116, line 5 – p. 119, line 8), supporting Mr.
Shadjareh's testimony to that effect (TR p. 173, line 1 - p. 180, line 5). Mr. Zahab
testified the terms of that independent-contractor relationship were set forth in RX
4, a proposed contract – although RX 4 is not signed either by Mr. Zahab himself, by
Mr. Varess, or by Mr. Shadjareh.

---

[2] While this testimony may appear to contradict his earlier testimony that Respondent agreed to pay
Mr. Varess per program (TR p. 162, line 5 - p. 163, line 21), Mr. Shadjareh also testified Mr. Varess
terminated the programs-for-rent agreement in May or June of 2013; worked briefly for a competitor,
Channel One; and then resumed a working relationship with Respondent, together with Mr. Zahab,
under an oral contract identical to the unsigned written contract in evidence as RX 4, under which
he would have been paid per program produced (TR p. 173, line 1 – p. 180, line 5).

- 6 -

Significantly, Mr. Varess did not specifically testify at the hearing that Respondent had ever agreed to pay him a salary in a particular amount. He merely responded to leading questions from his counsel:

> Q: Okay. When you started working, you were – your stated salary $45,000 a year *[sic]*. What payment patterns developed when you started working, I believe it was, in November 2011 after your arrival?
>
> A: There wasn't any specific pattern. I was given sometimes check (inaudible) and sometimes a thousand, sometimes five hundred, and all they say, "We have financial problem. We'll pay you later." And later, and that was the pattern, basically, from the beginning right to the end.
>
> . . .
>
> Q: Yes. When you would say, "Why aren't I getting my salary every week, every two weeks, every month, on the $45,000?" When you would ask him why you weren't getting it, and when were you going to be paid, give me some examples of the kind of answers he would give you.
>
> A: Most of the time, it was about that we are short in project. We are not getting enough responses. We don't have enough advertising. I can pay you, you know. I believe in you. You believe in me. And those are things and that was basically the things he was saying.
>
> Q: And now from the time you started producing shows in November 2011, until your final show under the second LCA, on July 2014, did he ever pay you regularly –
>
> A: Never.
>
> Q: – the amount he was supposed to pay you?
>
> A: Never.

(TR p. 19, line 8 - p. 20, line 12).

> Q: Did not your second LCA, which was approved and accepted, provide for an increase from $45,000 a year to $60,000 a year?
>
> A: Could you repeat that again, please?

- 7 -

Q: Okay. Would you have accepted a decrease in salary when your first LCA salary of $45,000 a year was increased to $60,000 a year for your second LCA period? Would you have accepted a reduction in salary below the $45,000?

A: No.

Q: So you go – is it fair to say that your going forward with a second LCA looked to an increase in salary, not a decrease in salary?

A: It was obvious to everyone, I think, in the PARS TV.

(TR p. 30, line 23 - p. 31, line 11).

One can parse this language too closely, but I am struck by the fact it is counsel, and not Mr. Varess, who repeatedly offers the specific figures here. I search the record in vain for an unqualified sworn statement by Mr. Varess that Mr. Shadjareh, or anyone else at Respondent, ever promised to pay him $45,000 per year for two years, or $60,000 for two years. Instead, what Mr. Varess most commonly says (or agrees with) is that the LCAs indicate those salaries – LCAs written by his own lawyer, and not by Respondent. I find his credibility on this issue is impaired as a result.

Finally, after September, 2011, in at least two important respects, the parties' working relationship appears never to have conformed to the LCA. Their conduct, in fact, supports an inference that neither was too concerned with the particulars of Mr. Varess's H-1B status.

First, Mr. Varess contends (TR p. 19, line 8 - p. 22, line 11), and Respondent does not dispute (RX 6), that Respondent never paid him a regular salary. Nonetheless, Mr. Varess continued to produce programs for Respondent. He testified he did so for two reasons: because of the expenses he had incurred in moving to the United States (and the potential expenses he might incur to leave again), and because he did not want to disappoint his fans (TR p. 31, line 12 - p. 32, line 16). But neither explains his failure to complain to the Wage and Hour Administrator at that time, as he has finally done now. It is, after all, the Administrator's job to protect H-1B immigrants who find themselves in the very situation Mr. Varess describes. The Administrator's determination that Mr. Varess was entitled to a salary consistent with the LCA would have done him much more good in 2011 than now, after years of uncompensated work. Respondent, if it truly could not pay what it had promised, might have chosen then to effect a *bona fide* termination of Mr. Varess's employment and return him to Australia at its expense under 20 C.F.R. § 655.731, subsection (c)(7)(ii); 8 C.F.R. § 214.2, subsection (h)(4)(iii)(E). Mr. Varess's stated reasons for continuing to work do not explain his failure to bring a formal complaint.

- 8 -

Second, Mr. Varess worked away from Tarzana, California, much of the time. He testified he produced programs in England, Ireland, Belgium, France, and Australia (TR p. 47, lines 8-23). He traveled outside of the United States of his own volition, and not because Respondent required it (TR p. 77, line 4 - p. 78, line 4; p. 78, line 21 - p. 79, line 10; p. 170, line 24 - p. 171, line 11). Under 20 C.F.R. § 655.735, subsection (c), an H-1B nonimmigrant generally should not work at a location other than his place of employment listed on the relevant LCA for more than 60 days in a one-year period. But during the one-year period beginning on August 19, 2012, Mr. Varess spent most of his time not only away from Tarzana, California, but outside of the United States entirely: 59 days from August 19, 2012, to October 17, 2012; 123 days from January 14, 2013, to May 17, 2013; and 34 days from July 14, 2013, until August 17, 2013, a total of 216 days of the 365-day period. He was outside the United States for an additional 14 days in 2013 before leaving the country for the last time on November 16, 2013. Mr. Varess appears to have been free to work from wherever in the world he chose, and neither party appears to have been too concerned about his staying in Tarzana in conformance with the LCAs.

All of this evidence supports Mr. Shadjareh's testimony that he signed CX 1, CX 2, and CX 5 merely as an accommodation to Mr. Varess, and his testimony that CX 4 was likewise an accommodation to Mr. Varess is uncontradicted in the record. Undoubtedly Mr. Varess had some kind of a working relationship with Respondent beginning in September, 2011, but there is insufficient credible evidence to show the parties agreed to employ him in Tarzana, California, under the terms of CX 1 or CX 2 in exchange for a salary of $45,000 per year (in the case of CX 1) or $60,000 per year (in the case of CX 2). Under the particular facts of this case, I conclude the evidence as a whole, including the LCAs, does not establish an obligation for Respondent to pay Mr. Varess the salary he claims.

I make no findings on the issue of Respondent's, or Mr. Shadjareh's, potential culpability for misrepresentations in CX 1, CX 2, CX 4, or CX 5, because that issue is not before me. I do not reach, and do not decide, Respondent's claim that the complaint was untimely.

## ORDER

Although there was a working relationship of some kind between them, the Complainant has not shown, by a preponderance of the evidence, that Respondent was obligated to pay him a salary.

In the alternative, the court denies the complaint as untimely.

SO ORDERED.



Digitally signed by John C. Larsen
DN: CN=John C. Larsen,
OU=Administrative Law Judge, O=US
DOL Office of Administrative Law
Judges, L=San Francisco, S=CA, C=US
Location: San Francisco CA

CHRISTOPHER LARSEN
Administrative Law Judge

**NOTICE OF APPEAL RIGHTS:** Any interested party desiring review of this Decision and Order may file a petition for review with the Administrative Review Board (Board) pursuant to 20 C.F.R. § 655.845.

The Board's address is: Administrative Review Board, U.S. Department of Labor, Suite S-5220, 200 Constitution Avenue, NW, Washington DC 20210, for traditional paper filing. Alternatively, the Board offers an Electronic File and Service Request (EFSR) system. The EFSR for electronic filing (eFile) permits the submission of forms and documents to the Board through the Internet instead of using postal mail and fax. The EFSR portal allows parties to file new appeals electronically, receive electronic service of Board issuances, file briefs and motions electronically, and check the status of existing appeals via a web-based interface accessible 24 hours every day. No paper copies need be filed.

An e-Filer must register as a user, by filing an online registration form. To register, the e-Filer must have a valid e-mail address. The Board must validate the e-Filer before he or she may file any e-Filed document. After the Board has accepted an e-Filing, it is handled just as it would be had it been filed in a more traditional manner. e-Filers will also have access to electronic service (eService), which is simply a way to receive documents, issued by the Board, through the Internet instead of mailing paper notices/documents.

Information regarding registration for access to the EFSR system, as well as a step by step user guide and FAQs can be found at: https://dol-appeals.entellitrak.com. If you have any questions or comments, please contact: Boards-EFSR-Help@dol.gov

If filing paper copies, you must file an original and four copies of the petition for review with the Board, together with one copy of this decision. If you e-File your petition only one copy need be uploaded.

**U.S. Department of Labor**     Office of Administrative Law Judges
90 Seventh Street, Suite 4-800
San Francisco, CA 94103-1516

(415) 625-2200
(415) 625-2201 (FAX)



Issue Date: 14 December 2017

CASE NO.:  2016-LCA-00019

*In the Matter of:*

**MAJID VARESS,**
  *Prosecuting Party,*

vs.

**PERSIAN BROADCAST SERVICE
GLOBAL, INC.,**
  *Respondent.*

APPEARANCES:

**NORMAN J. RESNICOW, Esq.**
  For the Prosecuting Party.

**DAVID M. STURMAN, Esq.
JONATHAN R. STURMAN, Esq.**
  For the Respondent.

BEFORE:  CHRISTOPHER LARSEN
  Administrative Law Judge

## AMENDED DECISION AND ORDER DENYING RELIEF

This is a claim arising under the Immigration and Nationality Act ("INA" or "Act") H-1B visa program, 8 U.S.C. §1182. To correct a clerical error in the original Decision and Order Denying Relief issued December 11, 2017, the court now vacates that Decision and Order, and issues this Amended Decision and Order in its place.

I held a telephonic hearing in this matter on October 26 and 27, 2017. Attorney Norman J. Resnicow appeared for the Prosecuting Party, Majid Varess, and At-

torneys David M. Sturman and Jonathan R. Sturman appeared for the Respondent, Persian Broadcasting Service Global, Inc. At the hearing, I heard testimony from the Prosecuting Party, Majid Varess; and from witnesses Daryoush "Nick" Zahab and Amir Shadjareh. I received in evidence Prosecuting Party's Exhibits ("CX") 1-10 and "G," and Respondent's Exhibits ("RX") 6.

Before the hearing, the parties stipulated in writing:

> 1. Respondent, Persian Broadcast Service Global, Inc. (hereinafter, "Respondent" or "Pars TV"), is a legal entity incorporated under the laws of the State of California.

> 2. Amir Shadjareh is the President of Pars TV.

> 3. Prosecuting Party, Majid Varess (hereinafter, "Claimant"), is a national of Australia, where he currently resides.

> 4. In September 2011, Respondent filed an application for labor certification (LCA) with the Department of Labor (DOL) on behalf of Claimant. The LCA was approved with a validity date of September 12, 2011, to September 12, 2013, at an annual Wage Rate of $45,000.

> 5. On November 23, 2011, Claimant entered the U.S. on an E-3 visa and commenced working for Respondent as a Pars TV television producer (of content) and reporter from the U.S.

> 6. Claimant departed the U.S. on August 19, 2012.

> 7. Claimant returned to the U.S. on October 17, 2012.

> 8. Claimant departed the U.S. on January 14, 2013.

> 9. Claimant returned to the U.S. on May 17, 2013.

> 10. Claimant departed the U.S. on July 14, 2013. During these periods outside the U.S., Claimant produced and solo hosted sports programs for Pars TV.

> 11. In August 2013, Respondent filed a second LCA with the DOL on behalf of Claimant at an Annual Wage Rate increased by 33.3% to $60,000, on the stated "Basis" of "Continuation of previously approved employment without change with the same employer." The second LCA was approved with a validity date of September 12, 2013 to September 12, 2015.

- 2 -

12. On September 3, 2013, Claimant returned to the U.S. and was admitted for stay until September 2, 2015.

13. On November 16, 2013, Claimant departed the U.S., and has not returned since.

14. On February 5, 2015, Claimant filed a written complaint against Respondent with the Wage and Hours Division (WHD) of the DOL which refers to a complaint on his behalf made by phone on December 9, 2014. On March 18, 2015, Claimant submitted to DOL a completed Nonimmigrant Worker Information Form WH-4 describing the claimed wage and other violations, including but not limited to claimed constructive termination in July 2014.

15. On March 28, 2016, the WHD concluded that Respondent had not committed any wage violations as to Claimant.

16. At no point prior to July 14, 2014, did Respondent notify the DOL of termination of Claimant's employment under 20 C.F.R. §655.731, subsection (c)(7)(ii) (see also 8 C.F.R. §214.2, subsection (h)(11)(i)(A)).

The dispute between the parties is clearly defined. Mr. Varess claims Respondent employed him and failed to pay the agreed salary. Respondent contends it engaged Mr. Varess as a contractor for a shorter period than Mr. Varess alleges, and owes him nothing. Respondent further contends Mr. Varess's claim is time-barred.

## Discussion

Stripped to its essence, this case is a garden-variety claim for unpaid wages. It comes before the Department of Labor, rather than a state administrative agency or a court of general jurisdiction, because the putative employer in this case filed two Labor Condition Applications ("LCAs") with the Department under 8 U.S.C. § 1182(n)(1), *see also* 20 C.F.R. §§ 655.371 and 655.373. The filing of an LCA with the Department is a necessary first step in the admission into the United States of so-called "H-1B workers" or "H-1B nonimmigrants" – non-citizens allowed to work temporarily in the United States. The United States allows such temporary workers to enter the country if 1) U.S. workers are not available to perform such temporary employment in the United States, *and* the employment of aliens for such temporary work will not adversely affect the wages or working conditions of similarly-employed U.S. workers. *See* 20 C.F.R. §§ 655.0, subsection (a)(1); 655.731; 655.732. Thus, "[n]o alien may be admitted or provided status as an H-1B nonimmigrant in an occupational classification unless the employer has filed with the Secretary of Labor an application." 8 U.S.C. § 1182(n)(1)(G)(vi).

- 3 -

As the Administrative Review Board observed in *Gupta v. Compunnel Software Group, Inc.,* ARB Case No. 12-049 (ARB May 29, 2014), 2014 WL 2917576,

> "Four federal agencies (Department of Labor, Department of State, Department of Justice, and Department of Homeland Security) are involved in the process relating to H-1B nonimmigrant classification and employment." *[Citation.]* More importantly, the H-1B hiring process involves three procedural phases that fundamentally impact DOL's resolution of H-1B wage complaints. The first of the three phases requires the H-1B employer to file with DOL for certification of the completed LCA. *[Citation.]* In the LCA, the employer stipulates to the wage levels and working conditions, among other things, that it guarantees for the H-1B worker for the period of his or her authorized employment. Second, if DOL certifies the LCA, then the employer must file an H-1B petition with USCIS, requesting permission to employ the H-1B worker and allowing the H-1B beneficiary to apply for an H-1B visa. Third, if USCIS approves the H-1B petition, the H-1B beneficiary must apply to the U.S. State Department for an H-1B visa. An approved visa grants the H-1B beneficiary permission to seek entry into the United States up to a date specified on the visa as the "expiration date."

> Once the H-1B petition is granted, the petitioning employer assumes various legal obligations after the H-1B beneficiary enters the country or becomes "eligible to work for the petitioning employer." *[Citation.]* The H-1B employer must begin paying the H-1B worker within the time prescribed in 20 C.F.R. § 655.731(c)(6)(ii). . . . The employer may end its obligation to pay the H-1B nonimmigrant through a "*bona fide* termination" of the employment relationship, and it must inform DHS of such termination. *[Citation]* . . .

> Similarly, to work in more than one location, an H-1B nonimmigrant "must include an itinerary with the dates and locations of the services or training and [the itinerary] must be filed with USCIS as provided in the form instructions." *[Citation]* USCIS explained that this regulation "was designed to ensure that aliens seeking H-1B nonimmigrant status have an actual job offer and are not coming to the United States for the purpose of seeking employment" upon arrival. *[Citation.]* . . . In the event of a material change in the terms or conditions of the nonimmigrant's employment, the petitioning employer must file a new certified LCA together with an amended H-1B

- 4 -

petition with USCIS. *[Citation.]* USCIS's guidance provides that any change in employment that requires a new LCA also requires an amended H-1B petition.

The Administrator of the Wage and Hour Division has broad authority to investigate an employer's compliance with the representations and attestations on an LCA. *See* 20 C.F.R. § 655.805. In an appropriate case, the aggrieved employee may recover back wages. 20 C.F.R. § 655.810, subsection (a). Mr. Varess contends Respondent did not pay him consistently with the representations it made in the two LCAs in this case. Accordingly, he comes before this court to claim the wages he alleges are due.

But there is a further complication in this case. The nature of the legal relationship between Mr. Varess and Respondent, and the terms of Mr. Varess's compensation, are disputed. The burden is on Mr. Varess to establish not only his entitlement to compensation, but the amount of that compensation.[1]

In Mr. Varess's view, he was an employee of Respondent. He contends Respondent agreed to pay him $45,000 per year for two years, and $60,000 per year for an additional two years, but failed to do so. Mr. Shadjareh, the President of Respondent, testified Mr. Varess was an independent contractor, rather than an employee, producing sports programming; and that he was paid at first in the form of rental on an apartment in the United States (TR p. 168, line 5 - p. 170, line 19; p. 187, lines 4-19), or, later, a set fee per program produced, rather than a salary (TR p. 162, line 5 - p. 163, line 21).

To support his view, Mr. Varess relies on four documents signed by Mr. Shadjareh: CX 1, an LCA signed on September 8, 2011; CX 2, an LCA signed on September 4, 2013; CX 4, a "To-Whom-It-May-Concern" letter signed on or about September 7, 2013; and CX 5, a letter to the Nonimmigrant Visa Section of the United States Consulate General in Sydney, Australia, dated November 13, 2013. CX 1 recites that Respondent intends to employ Mr. Varess as a TV producer and reporter from September 12, 2011, to September 12, 2013, at a yearly salary of $45,000 (CX 1, pp. 2, 4). CX 2 recites that Respondent intends to employ Mr. Varess

---

[1] The Office of Administrative Law Judges' Rules of Practice and Procedure, 29 C.F.R. Part 18, Subpart A, apply in this case. 29 C.F.R. §1978.107, subsection (a). Under those rules, within 21 days of entry of an initial notice or order acknowledging the case had been docketed (29 C.F.R. §18.80, subsection (c)(1)(iv), and "without awaiting a discovery request" (29 C.F.R. §18.80, subsection (c)(1)(i), Mr. Varess should have disclosed to Respondent "[a] computation of each category of damages claimed by the disclosing party," including supporting documentation. In addition to that, Mr. Varess had a continuing duty under 29 C.F.R. §18.53 to "supplement or correct" that disclosure if, at any time, he learned it had become incomplete or incorrect in some material respect. Given those obligations, one would reasonably expect find, at some point in the hearing or in the post-hearing brief, a computation of Mr. Varess's claimed damages. To my astonishment, there is none. This failure alone comprises grounds for denying relief in this case.

as a TV producer and reporter from September 12, 2013, to September 12, 2015, at a yearly salary of $60,000 (CX 2, pp. 2, 4). The first paragraph of CX 5 reads

> We submit this letter on behalf of Majid Varess in order that
> he may be authorized to continue to perform temporary ser-
> vices in the specialty occupation of TV Producer and Reporter
> with Persian Broadcast Service Global, Inc. Persian Broadcast
> Service Global, Inc., wishes to continue to engage the services
> of Mr. Varess, an Australian citizen, for an additional two-year
> period. He will be compensated in the amount of $60,000 per
> year.

(CX 5, p. 1).

Finally, CX 4 recites "Mr. Majid Varess is working for Pars TV station as a sport *[sic]* producer until Sep 2015. His monthly salary is $5000.00" (CX 4, p. 1).

These documents are not primary evidence of an employment agreement. An LCA is not an employment contract, and neither is an unverified letter addressed to the world at large. The distinction is important in this case. Mr. Varess employs these documents as secondary evidence of an employment agreement, perhaps even as grounds for estopping Respondent from contradicting Mr. Varess's theory of the case. But Mr. Shadjareh testified he did not write CX 1, CX 2, or CX 5. Instead, he testified – *and Mr. Varess admitted* – those documents were written by Noah Klug, an attorney Mr. Varess hired for that purpose (TR p. 52, lines 2-19; p. 53, lines 14-22; p. 53, line 24 - p. 54, line 19). In fact, according to Mr. Shadjareh, Mr. Varess had asked Mr. Shadjareh to apply for a visa for him; Mr. Shadjareh had replied he could not; and Mr. Varess had told him Mr. Varess would hire an attorney to pre-pare "papers" Mr. Shadjareh need only sign. Mr. Shadjareh testified he signed those "papers" without reading them or further considering them (TR p. 168, line 5 - p. 170, line 19; p. 187, lines 4-19; p. 208, lines 4-25; p. 210, lines 9-21). In spite of what those documents recited, according to Mr. Shadjareh, the understanding be-tween the parties was that Respondent would pay Mr. Varess's rent in the United States, up to $1,800 per month, in exchange for Mr. Varess's producing two one-hour programs per week for broadcast (TR p. 167, line 10 – p. 168, line 1; p. 168, lines 13-24).[2] As to CX 4, Mr. Shadjareh testified he signed it at Mr. Varess's re-quest solely to help Mr. Varess qualify to rent an apartment (TR p. 199, line 3 - p. 200, line 16). What is more, Mr. Zahab testified that he and Mr. Varess, in July, 2013, began working together, as independent contractors, to produce sports pro-

---

[2] While this testimony may appear to contradict his earlier testimony that Respondent agreed to pay Mr. Varess per program (TR p. 162, line 5 - p. 163, line 21), Mr. Shadjareh also testified Mr. Varess terminated the programs-for-rent agreement in May or June of 2013; worked briefly for a competitor, Channel One; and then resumed a working relationship with Respondent, together with Mr. Zahab, under an oral contract identical to the unsigned written contract in evidence as RX 4, under which he would have been paid per program produced (TR p. 173, line 1 – p. 180, line 5).

gramming for Respondent (TR p. 116, line 5 – p. 119, line 8), supporting Mr. Shadjareh's testimony to that effect (TR p. 173, line 1 - p. 180, line 5). Mr. Zahab testified the terms of that independent-contractor relationship were set forth in RX 4, a proposed contract – although RX 4 is not signed either by Mr. Zahab himself, by Mr. Varess, or by Mr. Shadjareh.

Significantly, Mr. Varess did not specifically testify at the hearing that Respondent had ever agreed to pay him a salary in a particular amount. He merely responded to leading questions from his counsel:

> Q: Okay. When you started working, you were – your stated salary $45,000 a year *[sic]*. What payment patterns developed when you started working, I believe it was, in November 2011 after your arrival?
>
> A: There wasn't any specific pattern. I was given sometimes check (inaudible) and sometimes a thousand, sometimes five hundred, and all they say, "We have financial problem. We'll pay you later." And later, and that was the pattern, basically, from the beginning right to the end.
>
> . . .
>
> Q: Yes. When you would say, "Why aren't I getting my salary every week, every two weeks, every month, on the $45,000?" When you would ask him why you weren't getting it, and when were you going to be paid, give me some examples of the kind of answers he would give you.
>
> A: Most of the time, it was about that we are short in project. We are not getting enough responses. We don't have enough advertising. I can pay you, you know. I believe in you. You believe in me. And those are things and that was basically the things he was saying.
>
> Q: And now from the time you started producing shows in November 2011, until your final show under the second LCA, on July 2014, did he ever pay you regularly –
>
> A: Never.
>
> Q: – the amount he was supposed to pay you?
>
> A: Never.

(TR p. 19, line 8 - p. 20, line 12).

- 7 -

Q: Did not your second LCA, which was approved and accepted, provide for an increase from $45,000 a year to $60,000 a year?

A: Could you repeat that again, please?

Q: Okay. Would you have accepted a decrease in salary when your first LCA salary of $45,000 a year was increased to $60,000 a year for your second LCA period? Would you have accepted a reduction in salary below the $45,000?

A: No.

Q: So you go – is it fair to say that your going forward with a second LCA looked to an increase in salary, not a decrease in salary?

A: It was obvious to everyone, I think, in the PARS TV.

(TR p. 30, line 23 - p. 31, line 11).

One can parse this language too closely, but I am struck by the fact it is counsel, and not Mr. Varess, who repeatedly offers the specific figures here. I search the record in vain for an unqualified sworn statement by Mr. Varess that Mr. Shadjareh, or anyone else at Respondent, ever promised to pay him $45,000 per year for two years, or $60,000 for two years. Instead, what Mr. Varess most commonly says (or agrees with) is that the LCAs indicate those salaries – LCAs written by his own lawyer, and not by Respondent. I find his credibility on this issue is impaired as a result.

Finally, after September, 2011, in at least two important respects, the parties' working relationship appears never to have conformed to the LCA. Their conduct, in fact, supports an inference that neither was too concerned with the particulars of Mr. Varess's H-1B status.

First, Mr. Varess contends (TR p. 19, line 8 - p. 22, line 11), and Respondent does not dispute (RX 6), that Respondent never paid him a regular salary. Nonetheless, Mr. Varess continued to produce programs for Respondent. He testified he did so for two reasons: because of the expenses he had incurred in moving to the United States (and the potential expenses he might incur to leave again), and because he did not want to disappoint his fans (TR p. 31, line 12 - p. 32, line 16). But neither explains his failure to complain to the Wage and Hour Administrator at that time, as he has finally done now. It is, after all, the Administrator's job to protect H-1B immigrants who find themselves in the very situation Mr. Varess describes. The Administrator's determination that Mr. Varess was entitled to a salary consistent with the LCA would have done him much more good in 2011 than now, after years

- 8 -

of uncompensated work. Respondent, if it truly could not pay what it had promised, might have chosen then to effect a *bona fide* termination of Mr. Varess's employment and return him to Australia at its expense under 20 C.F.R. § 655.731, subsection (c)(7)(ii); 8 C.F.R. § 214.2, subsection (h)(4)(iii)(E). Mr. Varess's stated reasons for continuing to work do not explain his failure to bring a formal complaint.

Second, Mr. Varess worked away from Tarzana, California, much of the time. He testified he produced programs in England, Ireland, Belgium, France, and Australia (TR p. 47, lines 8-23). He traveled outside of the United States of his own volition, and not because Respondent required it (TR p. 77, line 4 - p. 78, line 4; p. 78, line 21 - p. 79, line 10; p. 170, line 24 - p. 171, line 11). Under 20 C.F.R. § 655.735, subsection (c), an H-1B nonimmigrant generally should not work at a location other than his place of employment listed on the relevant LCA for more than 60 days in a one-year period. But during the one-year period beginning on August 19, 2012, Mr. Varess spent most of his time not only away from Tarzana, California, but outside of the United States entirely: 59 days from August 19, 2012, to October 17, 2012; 123 days from January 14, 2013, to May 17, 2013; and 34 days from July 14, 2013, until August 17, 2013, a total of 216 days of the 365-day period. He was outside the United States for an additional 14 days in 2013 before leaving the country for the last time on November 16, 2013. Mr. Varess appears to have been free to work from wherever in the world he chose, and neither party appears to have been too concerned about his staying in Tarzana in conformance with the LCAs.

All of this evidence supports Mr. Shadjareh's testimony that he signed CX 1, CX 2, and CX 5 merely as an accommodation to Mr. Varess, and his testimony that CX 4 was likewise an accommodation to Mr. Varess is uncontradicted in the record. Undoubtedly Mr. Varess had some kind of a working relationship with Respondent beginning in September, 2011, but there is insufficient credible evidence to show the parties agreed to employ him in Tarzana, California, under the terms of CX 1 or CX 2 in exchange for a salary of $45,000 per year (in the case of CX 1) or $60,000 per year (in the case of CX 2). Under the particular facts of this case, I conclude the evidence as a whole, including the LCAs, does not establish an obligation for Respondent to pay Mr. Varess the salary he claims.

I make no findings on the issue of Respondent's, or Mr. Shadjareh's, potential culpability for misrepresentations in CX 1, CX 2, CX 4, or CX 5, because that issue is not before me. I do not reach, and do not decide, Respondent's claim that the complaint was untimely.

## ORDER

Although there was a working relationship of some kind between them, the Complainant has not shown, by a preponderance of the evidence, that Respondent was obligated to pay him a salary.

SO ORDERED.



Digitally signed by John C. Larsen
DN: CN=John C. Larsen,
OU=Administrative Law Judge, O=US
DOL Office of Administrative Law
Judges, L=San Francisco, S=CA, C=US
Location: San Francisco CA

CHRISTOPHER LARSEN
Administrative Law Judge

**NOTICE OF APPEAL RIGHTS:** Any interested party desiring review of this Decision and Order may file a petition for review with the Administrative Review Board (Board) pursuant to 20 C.F.R. § 655.845.

The Board's address is: Administrative Review Board, U.S. Department of Labor, Suite S-5220, 200 Constitution Avenue, NW, Washington DC 20210, for traditional paper filing. Alternatively, the Board offers an Electronic File and Service Request (EFSR) system. The EFSR for electronic filing (eFile) permits the submission of forms and documents to the Board through the Internet instead of using postal mail and fax. The EFSR portal allows parties to file new appeals electronically, receive electronic service of Board issuances, file briefs and motions electronically, and check the status of existing appeals via a web-based interface accessible 24 hours every day. No paper copies need be filed.

An e-Filer must register as a user, by filing an online registration form. To register, the e-Filer must have a valid e-mail address. The Board must validate the e-Filer before he or she may file any e-Filed document. After the Board has accepted an e-Filing, it is handled just as it would be had it been filed in a more traditional manner. e-Filers will also have access to electronic service (eService), which is simply a way to receive documents, issued by the Board, through the Internet instead of mailing paper notices/documents.

Information regarding registration for access to the EFSR system, as well as a step by step user guide and FAQs can be found at: https://dol-appeals.entellitrak.com. If you have any questions or comments, please contact: Boards-EFSR-Help@dol.gov

- 10 -



U.S. Department of Labor

Administrative Review Board
200 Constitution Avenue, N.W.
Washington, D.C. 20210

In the Matter of

MAJID VARESS,

     PROSECUTING PARTY,

v.

PERSIAN BROADCAST SERVICE
GLOBAL, INC.,

     RESPONDENT.

ARB CASE NO.  2018-0023

ALJ CASE NO.  2016-LCA-00019

DATE:    SEP 2 6 2019

SEP 3 6 2019

Appearances:

*For the Complainant*:
> Jonathan D. Wasden, Esq.; *Wasden Immigration Law*; Reston,
> Virginia

*For the Respondent*:
> Jonathan R. Sturman, Esq.; *Law Offices of David M. Sturman*;
> Encino, California

BEFORE: James A. Haynes, Thomas H. Burrell, and Heather C. Leslie,
*Administrative Appeals Judges*

### DECISION AND ORDER
### REVERSING AND REMANDING

PER CURIAM. This case arises under the E-3 visa program[1] provisions of the
Immigration and Nationality Act, as amended (INA), 8 U.S.C. § 1101(a)(15)(E)(iii)
(2014), and implementing regulations at 20 C.F.R. Part 655, subparts H and I
(2018). The Complainant Majid Varess urges the Administrative Review Board

---

[1]    The ALJ erroneously stated that the case arises under the H-1B program.

(Board) to reverse the Amended Decision and Order Denying Relief (December 14, 2017) of the Administrative Law Judge (ALJ). The ALJ found in favor of the Respondent Persian Broadcast Service Global, Inc. Complainant appealed to the Board. We reverse and remand.

## BACKGROUND

In September 2011, Respondent filed a labor certification application (LCA) with the U.S. Department of Labor (DOL) for Complainant. D. & O. at 2. DOL approved the LCA for a validity period of September 12, 2011, to September 12, 2013, at an annual wage rate of $45,000.00. D. & O. at 2. Amir Shadjareh, Respondent's president, signed the LCA. D. & O. at 6. On November 23, 2011, Complainant entered the U.S. and began working for Respondent as a television producer and reporter. *Id.* at 2. During periods of his employment under the LCA, Complainant worked outside of the United States producing and hosting sports programs for Respondent. *Id.*

In August 2013, Respondent filed a second LCA with DOL for Complainant. *Id.* DOL approved the second LCA for a validity period of September 12, 2013, to September 12, 2015, at an annual wage rate of $60,000.00. *Id.* Respondent's president, Shadjareh, also signed the second LCA. *Id.* at 6. On September 7, 2013, Shadjareh signed a letter stating that he was confirming that Complainant was working for Respondent as a sports producer until September 2015 with a monthly salary of $5,000.00. CX 4.

On November 13, 2013, Shadjareh sent a letter to the U.S. Consulate in Sydney, Australia, stating that Respondent wished to continue to engage Complainant's services as a TV producer and reporter at a salary of $60,000 per year. CX 5. In the letter he described the duties of the position, which included reporting "live from relevant sporting arenas and other external locations." *Id.* Shadjareh requested approval of Complainant's continued E-3 visa status. *Id.*

During Complainant's employment with Respondent he worked in several different locations around the world and Respondent never paid him a regular salary. D. & O. at 7-9. In 2013 and 2014, Respondent made irregular payments to Complainant by check in amounts varying between $300.00 and $2,300.00 until at least July 11, 2014. RX 6. On July 11, 2014, Shadjareh texted Complainant that he could not pay Complainant's wages because he did not have the money. The text

continued that Respondent might have been able to pay Complainant if he had broadcast the news show daily and they could have attracted sponsors. CX 9. At no point before or after July 14, 2014, did Respondent notify DOL that it had terminated Complainant's employment. D. & O. at 3.

Complainant filed a complaint against Respondent with the Administrator, Wage and Hour Division for unpaid wages on February 5, 2015. *Id.* at 3; see RX 2. The Administrator determined that the Respondent had not committed any violations. The Complainant filed objections with the Office of Administrative Law Judges requesting a hearing. The ALJ found for Respondent. Complainant appealed the ALJ's decision to the Board.

JURISDICTION AND STANDARD OF REVIEW

The Board has jurisdiction to review the ALJ's Decision and Order. 20 C.F.R. § 655.845; *see* Secretary's Order 01-2019 (Delegation of Authority and Assignment of Responsibility to the Administrative Review Board), 84 Fed. Reg. 13072 (Apr. 3, 2019).

DISCUSSION

On appeal, Complainant argues that he is entitled to back pay for the difference between the wages Respondent attested it would pay him on the two LCAs and the amounts it actually paid him. He argues that the ALJ failed to follow the plain language of the statute and regulations that require H-1B and E-3 employers to pay wages under the terms of LCAs unless there has been a *bona fide* termination or the employee has placed himself in a voluntary nonproductive status. We agree. We reverse and remand the ALJ's decision because Respondent failed to pay Complainant the required wage under his two LCA periods and neither of the two possible exceptions applies.

## 1. Statutory and regulatory framework

The INA defines various classes of aliens who, under different visa classifications, may enter the United States for prescribed periods of time. 8 U.S.C. § 1101(a)(15). The E-3 visa allows employers to temporarily hire Australian workers in specialty occupations. 8 U.S.C. § 1101(a)(15)(E)(iii). The E-3 visa regulations

4

require employers to file an LCA and guarantee specified prevailing wages and working conditions, among other things.[2]

An employer must pay an E-3 employee the prevailing wage listed on the employee's LCA starting on the date that the employee "'enters into employment' with the employer" or, if the employee has not "enter[ed] into employment" with the employer, thirty days after the Complainant has obtained permission to enter the U.S. and work for the employer or sixty days after the employee becomes eligible to work for the employer. 20 C.F.R. § 655.731(c)(6). The employee "'enter[s] into employment,' when he/she first makes him/herself available for work or otherwise comes under the control of the employer . . . ." 20 C.F.R. § 655.731(c)(6)(i). An employer is obligated to pay the wages specified in the employee's LCA even if it places the employee in a nonproductive status or "benches" the employee. 20 C.F.R. § 655.731(c)(7)(i). If an employer places an E-3 employee in nonproductive status "due to a decision by the employer" and does not pay the employee full-time wages in accordance with the LCA, then the employer commits a violation of the Act. 8 U.S.C. § 1182(n)(2)(C)(vii)(I).

In signing and filing an LCA, an employer attests that for the entire "period of authorized employment," it will pay the required wage to the E-3 nonimmigrant. 20 C.F.R. §§ 655.700(d)(4); 655.730(c)(2). But the employer need not pay wages to the employee if there has been a *bona fide* termination of the employment relationship. To effect a *bona fide* termination, the employer must notify the employee that his employment has been terminated and also notify the Department of Homeland Security (DHS) so that it may revoke approval of the visa.[3] An employer is also not required to pay wages if a nonimmigrant worker is in nonproductive status due to his or her "voluntary request and convenience." 20 C.F.R. § 655.731(c)(7)(ii).

---

[2]     20 C.F.R. § 655.700(c)(3); 20 C.F.R. § 655.700(d)(4). Several subsections in Subparts H and I of Part 655 apply only to H-1B nonimmigrant workers and not to E-3 nonimmigrant workers.

[3]     8 U.S.C. § 1182(n)(1); 20 C.F.R. §655.731(a). Under certain circumstances, the employer must also provide the employee with payment for transportation home. 8 C.F.R. § 214.2(h)(4)(iii)(E); 20 C.F.R. § 655.731(c)(7)(ii); *Gupta v. Jain Software Consulting, Inc.*, ARB No. 05-008, ALJ No. 2004-LCA-039, slip op. at 5-6 (ARB Mar. 30, 2007).

## 2. Respondent owed Complainant wages as specified in the LCAs

In this case, Respondent failed to pay Complainant the required wage under the first LCA which was $45,000 per year. Respondent also failed to pay Complainant the required wage of $60,000.00 for the second LCA period. Because Respondent's president signed and filed both LCAs with the DOL, it was legally obligated to pay the Complainant the specified wages when Complainant entered into employment until the LCA period expired unless an exception to that obligation applied.

### A. Complainant "entered into employment"

On November 23, 2011, Complainant entered the U.S. and began working for Respondent under the first LCA as a television producer and reporter. D. & O. at 2. On September 3, 2013, Complainant entered the U.S. and began or continued working for Respondent under the second LCA on or about September 12, 2013. D. & O. at 3; CX-7.

### B. Respondent did not effect a bona fide termination

As noted earlier, the employer may end any obligation to pay wages under the LCA is through a *bona fide* termination. The Act and its regulations impose the duty to terminate the employment relationship on the employer, not the nonimmigrant employee. 20 C.F.R. § 655.731(c)(7)(ii); *Adm'r, Wage & Hour Div., U.S. Dep't of Labor v. Avenue Dental Care*, ARB No. 07-101, ALJ No. 2006-LCA-029, slip op. at 8 (ARB Jan. 7, 2010). Respondent concedes that it never effected a *bona fide* termination of Complainant's employment. Resp. Br. at 19.

### C. Complainant did not enter into voluntary nonproductive status

An employer is also freed from the LCA's wage obligation when a nonimmigrant worker is in nonproductive status due to his or her "voluntary request and convenience." 20 C.F.R. § 655.731(c)(7)(ii).

As stated previously, the ALJ found that during periods in 2012 and 2013, Complainant produced and hosted sports programs for Respondent outside the United States. D. & O. at 2. Respondent urges us to find that when Complainant voluntarily left the United States on November 16, 2013, and never returned, he quit his employment or that he voluntarily placed himself in a nonproductive status.

It is undisputed that during Complainant's employment with Respondent, he performed work producing television programs outside of the United States. Shadjareh testified that when Complainant was outside of the U.S., he produced his television program by "scribe or internet." Tr. 165. In a letter, Shadjareh described Complainant's duties to the U.S. Consulate as including reporting "live from relevant sporting arenas and other external locations." CX 5. Further, Respondent's records show that it paid him for work throughout 2013 and up to at least July 2014, with many or most of the payments occurring during periods when Complainant was outside of the United States. Thus, the mere fact that Complainant was outside of the United States does not by itself indicate that he was not performing work for Respondent. Indeed, Respondent does not appear to allege that Complainant was not performing work as an employee. Rather, Respondent appears to rely solely on the fact that Complainant left the U.S.

As stated previously, when a nonimmigrant worker stops working for an employer, it is the employer's responsibility to effect a *bona fide* termination including notice to DHS and this Respondent failed to provide that notice. Respondent's allegation that Complainant "quit" does not negate Respondent's responsibility to pay wages under the LCAs in this case. Respondent has not proven that Complainant put himself in nonproductive status simply because he was out of the country.

### D. Complainant's misrepresentations and other misconduct do not relieve Respondent from LCA wage obligations

Under the implementing regulations at § 655.731, *bona fide* termination and voluntary nonproductive status found in 731(c)(7)(ii) are the only two alternatives to the employer's obligation to pay LCA wages through the LCA period.[4] The employer's lack of work or the employee's misconduct do not excuse an employer's failure to pay wages.

In this case, Respondent argues that Complainant misled Respondent by handling all the paperwork, making all the arrangements, and misrepresenting the

---

[4]     "If the H-1B [including E-3 nonimmigrants] nonimmigrant is not performing work and is in a nonproductive status due to a decision by the employer (e.g., because of lack of assigned work), lack of a permit or license, **or any other reason except** as specified in paragraph (c)(7)(ii) of this section, the employer is required to pay the salaried employee the full pro-rata amount due." 655.731(c)(7)(i) (emphasis added); *Adm'r, Wage & Hour Div., U.S. Dep't of Labor v. Efficiency3 Corp.*, ARB No. 15-005, ALJ No. 2014-LCA-007, slip op. at n.13 (ARB Aug. 4, 2016).

binding nature of LCAs. "Once [Complainant] secured his visa, he had no interest in abiding by the terms of the LCAs." Resp. Br. 3.

Complainant's alleged misconduct does not affect Respondent's duty to pay Complainant the wage set in the LCAs. The INA and the regulations provide that *employers* must submit labor condition applications to DOL. Respondent's president Shadjareh signed both LCAs for submission to DOL as Complainant's employer. Shadjareh's signature affirms the truth of the statements on the LCA and acknowledges the employer's agreement to those labor condition statements (attestations) that are specifically identified. Shadjareh testified that he signed the LCAs because he was relying on Complainant and Complainant's attorney's representations that they were just a formality and he wanted to do a favor for Complainant. D. & O. at 6, 9; Tr. 199. However Shadjareh may not evade his obligations under the LCAs by asserting that he did not believe the documents were valid or enforceable. We hold that Complainant's misrepresentations, even assuming their success, do not relieve Respondent of the obligation to pay back wages.[5]

Next, Respondent argues that Complainant did not comply with the terms of the LCA or regulations requiring him to work in the area of intended employment since he was outside of the United States. Respondent claims that it should be absolved of its wage obligations under the INA. Respondent failed to cite any legal authority empowering DOL to consider Complainant's noncompliance with respect to LCAs as negating Respondent's wage obligations under the INA. Without legal support, we find this argument is unpersuasive.

## 3. We remand for the ALJ to address the Respondent's claim that Complainant's complaint is untimely

Finding for the Respondent on other grounds, the ALJ avoided Respondent's claim that the Complainant's complaint was untimely filed. D. & O. at 9. Regulation § 655.806(a)(5) provides that a complainant must file a complaint alleging a violation of the nonimmigrant worker regulations "not later than 12 months after the latest date on which the alleged violation(s) were committed, which would be the date on which the *employer* allegedly failed to perform an action or fulfill a

---

[5]     *Avenue Dental Care*, ARB No. 07-101, slip op. at 8-9; *Efficiency3 Corp.*, ARB No. 15-005, slip op. at 13-14.

condition specified in the LCA, or the date on which the employer, through its action or inaction, allegedly demonstrated a misrepresentation of a material fact in the LCA." 20 C.F.R. § 655.806(a)(5) (emphasis added).

Respondent argues to the Board that since Complainant was never authorized to work under the second LCA (because Complainant never renewed his E-3 visa for the second LCA period), the expiration date of the first visa, September 12, 2013, is the latest date on which a violation could have occurred and he did not file his complaint until February 5, 2015, which would make such complaint untimely. Alternatively, Respondent asserts that Complainant's complaint is untimely because Complainant voluntarily departed the U.S. on November 16, 2013, and never returned. Respondent argues that it is irrelevant that it never effected a *bona fide* termination of Complainant's employment.

As we discussed above, the second LCA was signed by the Respondent, certified by the DOL, and constituted an obligation Respondent had to abide by until the expiration of the LCA period or an exception to that obligation was satisfied. Respondent's argument attempts to shift the relevant focus to the Complainant's activity but the regulations provide that the Complainant has to file a complaint "not later than 12 months after the latest date on which the alleged [employer's] violation(s) were committed." 20 C.F.R. § 655.806(a)(5). As such, we will remand to the ALJ to make appropriate findings of fact as to whether Complainant's February 5, 2015 complaint was filed "not later than 12 months after the latest date on which" Respondent violated its LCA obligations.

### 4. Computation of damages

The ALJ stated that Complainant had never submitted a computation of his claimed damages. D. & O. at 5 n.1. Respondent also argues that Complainant failed in his burden to compute damages and that as a result, his complaint should be dismissed on this ground.

The regulations governing proceedings before DOL ALJs provide that unless ordered otherwise, the prehearing statement before the ALJ must state "[a] precise statement of the relief sought." 29 C.F.R. § 18.80(c)(3). General provisions regarding discovery provide that a party must provide to the other parties "[a] computation of each category of damages claimed by the disclosing party. . . ." 29 C.F.R. § 18.50(c)(1)(i)(C).

Contrary to Respondent's position and the ALJ's findings of fact, Complainant provided a clear statement of the relief sought in the supplement to his complaint sent by his attorney to the Wage and Hour Division on February 5, 2015,[6] and also in the Complainant's disclosure statement filed with the Office of Administrative Law Judges on July 24, 2017. In the supplement to the complaint, Complainant asserted Respondent owed him at least $109,385.58 in unpaid wages. Complainant alternatively stated that Respondent owed him $177,769.14, in unpaid wages considering the entire period of the two LCAs.[7]

Additionally, in the July 24, 2017 Disclosure Statement, Complainant detailed anew that for the first LCA period Respondent owed him $43,169.00 plus interest for the period November 23, 2011, to seventeen months later (having taken into account payments made by Respondent to Complainant) and $8,876.88 plus interest for 72 days of work he performed during the period after Respondent ceased paying him beginning on July 3, 2013. Disclosure Statement at 4. With respect to the second LCA, Complainant stated that Respondent owed him $28,334.14 plus interest for the period September 12, 2013, to July 11, 2014 (when Respondent ceased paying him and having taken into account $21,473 in payments made by Respondent during this period) and $70,354.64 plus interest for the period July 12, 2014, to the end of the second LCA period on September 12, 2015. The total amount computed as back wages was $150,734.66, plus interest, penalties, and attorney's fees. As such, remand is necessary to allow the ALJ to make findings of fact consistent with this decision as to the amount of damages due Complainant.[8]

## CONCLUSION

For the reasons explained above, we hold that the ALJ erred in concluding that the Respondent did not violate its LCA attestations and did not owe wages as

---

[6]  RX-2. This letter purports to support a complaint made by telephone call on December 9, 2014, and e-mails that followed the call.

[7]  RX 2, at 4. Each of these amounts reflect a starting date of September 8, 2011, which does not appear to take into account that Complainant did not enter the U.S. to begin his employment until November 23, 2011.

[8]  We make clear that the ALJ is not constrained by Complainant's calculations in making fact findings on the issue of back pay on remand and may develop the record as necessary.

specified in the LCAs. Accordingly, we **REVERSE** the decision and order below and **REMAND** to the ALJ to make findings of fact concerning the timeliness of Complainant's complaint and a computation of damages. Within 120 days of the date of issuance of this decision, the ALJ will transmit to the Board the findings of fact mandated above as part of a revised Decision and Order on Remand that corrects the noted errors of law and is consistent with the holdings of this decision.

**SO ORDERED.**

**U.S. Department of Labor**     Office of Administrative Law Judges
90 Seventh Street, Suite 4-800
San Francisco, CA 94103-1516

(415) 625-2200
(415) 625-2201 (FAX)



Issue Date: 30 October 2019

CASE NO.: 2016-LCA-00019

*In the Matter of:*

**MAJID VARESS,**
   *Prosecuting Party,*

   vs.

**PERSIAN BROADCAST SERVICE
GLOBAL, INC.,**
   *Respondent.*

## DECISION AND ORDER AFTER REMAND

This is a claim arising under the Immigration and Nationality Act ("INA" or "Act") H-1B visa program, 8 U.S.C. §1182. I held a telephonic hearing in this matter on October 26 and 27, 2017. On December 14, 2017, I issued an Amended Decision and Order denying relief. An appeal followed, and on September 26, 2019, the Administrative Review Board issued its Decision and Order Reversing and Remanding, directing me to consider and issue findings with respect to 1) the timeliness of the Prosecuting Party's February 5, 2015, complaint; and 2) if the complaint was timely, the computation of damages. Having carefully considered the record before me, I now find as follows.

### The Prosecuting Party's Complaint is Timely

The Prosecuting Party, Majid Varess, filed his complaint in this matter on February 5, 2015. Under 20 C.F.R. section 655.806, subsection (a)(5), an aggrieved party must file a complaint "not later than 12 months after the latest date on which the alleged violation(s) were committed, which would be the date on which the employer allegedly failed to perform an action or fulfill a condition specified in the LCA, or the date on which the employer, through its action or inaction, allegedly demonstrated a misrepresentation of a material fact in the LCA."

This case involves two Labor Condition Applications. Before the telephonic hearing, the parties stipulated the Department of Labor approved the first ("LCA 1") with a validity date of September 12, 2011, to September 23, 2013. LCA 1 sets forth an annual wage rate of $45,000. The parties further stipulated that Respondent filed the second Labor Condition Application ("LCA 2") in August, 2013, and the Department of Labor approved it with a validity date of September 12, 2013, to September 12, 2015. LCA 2 sets forth an annual wage rate of $60,000.

In its Decision and Order Reversing and Remanding, p. 5, the Administrative Review Board found

> In this case, Respondent failed to pay Complainant the required wage under the first LCA which was $45,000 per year. Respondent also failed to pay Complainant the required wage of $60,000.00 for the second LCA period. Because Respondent's president signed and filed both LCAs with the DOL, it was legally obligated to pay the Complainant the specified wages when Complainant entered into employment until the LCA period expired unless an exception to that obligation applied.

The Board also concluded Respondent never effected a bona fide termination of the Mr. Varess's employment under 20 C.F.R. section 655.731, subsection (c)(7)(ii),[1] and Mr. Varess never voluntarily requested voluntary nonproductive status under that same regulation. What is more, the Board ruled misconduct by Mr. Varess, as a matter of law, did not excuse Respondent's obligation to pay the wages specified in an LCA. *See* 20 C.F.R. section 655.731, subsection (c)(7)(i).

Respondent advances two arguments to support its contention the February 4, 2015, complaint is untimely. First, Respondent contends Mr. Varess failed to renew his E-3 visa for the second LCA period, so the one-year period for filing a complaint would have commended upon expiration of his first visa on September 12, 2013. Second, Respondent contends Mr. Varess left the United States on November 16, 2013, and never returned – facts to which the parties stipulated before the telephonic hearing before me. Respondent contends Mr. Varess's departure comprised, in essence, the termination of his employment, and accordingly the commencement of the one-year period for filing the complaint.

But under the legal principles set forth by the Administrative Review Board, neither line of argument is tenable. On the record before me, Respondent had a legal obligation to pay wages under LCA 1 and under LCA 2, and only a *bona fide* termination of employment or the employee's request to be placed in nonproductive status can affect that legal obligation. Since neither condition occurred in this case,

---

[1] Respondent apparently conceded this point in its brief before the Board. Decision and Order Reversing and Remanding, p. 5.

Respondent was obligated to pay LCA wages even after Mr. Varess filed his complaint. Accordingly, the complaint is timely.

## The Record Shows $183,794.00 in Damages

Since the complaint was timely, I must calculate the damages to which the prosecuting party is entitled. As the Board noted, Mr. Varess entered the United States to begin work under LCA 1 on November 23, 2011 (Decision and Order Reversing and Remanding, p. 9, fn. 7). Respondent accordingly was obligated under LCA 1 to pay him $45,000 per year from November 23, 2011, to September 11, 2013. Respondent was obligated to pay him $60,000 per year under LCA 2 from September 12, 2013, to September 12, 2015. Thus, Respondent should have paid Mr. Varess about $84,375.00 under LCA 1 (93.5 weeks of employment from about November 23, 2011, to September 11, 2013) and $120,000.00 under LCA 2 ($60,000.00 annually for two years), a total of $204,375.00.

At the hearing, Respondent placed in evidence documents showing payments it made to Mr. Varess in 2013 and 2014 (RX 6). In 2013, Respondent appears to have paid Mr. Varess a total of $9,000.00: $1,500.00 in January and February, and $1,200.00 in March, April, May,[2] June, and July. In 2014, Respondent avers it paid Mr. Varess a total of $12,473.00 (as shown on a 2013 Form 1099-MISC, and on a "Find Report" document on the preceding page in RX 6). But it did not offer into evidence all of the checks referenced on the "Find Report;" instead, it offered copies (in many cases duplicate copies) of negotiated checks totaling only $7,300.00.

Respondent[3] also introduced into evidence a February 5, 2015, letter from Attorney Norman J. Resnicow to the Department of Labor's Wage and Hour Division on behalf of Mr. Varess (RX 2). In that letter, Attorney Resnicow states Respondent paid Mr. Varess $20,581.00 while LCA 1 was in force – $892 less than the $21,473.00 Respondent attempts to document in RX 6, but considerably more than the $16,300.00 supported by copies of negotiated checks. Since clarity and accuracy in record-keeping seems to be neither party's strong suit, I accept Attorney Resnicow's figure of $20,581.00 as an admission.

Consistent with the Administrative Review Board's determination that Respondent was obligated to pay wages under both LCA 1 and LCA 2, I conclude Respondent owes Mr. Varess $183,794.00 in back wages (that is, gross salary of $204,375.00 less the $20,581.00 Mr. Varess admittedly received). He is entitled to recover prejudgment and postjudgment interest under *Mao v. Nasser Engineering & Computing Services*, ARB No. 06-121, ALJ No. 2005-LCA-36 (ARB Nov. 26, 2008).

---

[2] The May payment came in two installments, one of $300.00 and one of $900.00 (RX 6).

[3] Mr. Varess did not introduce this document in support of his claim.

Mr. Varess seeks an award of attorney fees, but under *Talukdar v. U.S. Dept. of Veterans Affairs*, ARB No. 04-100, ALJ No. 2002-LCA-25 (ARB Jan. 31, 2007), attorney fees are not recoverable in this matter. Likewise, while the Administrator can award civil monetary penalties in an appropriate case, 20 C.F.R. section 655.801, subsection (b), Mr. Varess cites no authority for the proposition that I may do so in a case where he acts as Prosecuting Party, and I know of none.

## ORDER

After careful consideration of the record in the light of the Administrative Review Board's Decision and Order Reversing and Remanding, I find and conclude:

1. Mr. Varess's complaint in this matter was timely filed.

2. Respondent must pay Mr. Varess $183,794.00 in back wages, together with prejudgment and postjudgment interest in an amount to be calculated by the Wage and Hour Division.

SO ORDERED.



Digitally signed by John C. Larsen
DN: CN=John C. Larsen,
OU=Administrative Law Judge, O=US
DOL Office of Administrative Law
Judges, L=San Francisco, S=CA, C=US
Location: San Francisco CA

CHRISTOPHER LARSEN
Administrative Law Judge

**NOTICE OF APPEAL RIGHTS:** Any interested party desiring review of this Decision and Order may file a petition for review with the Administrative Review Board (Board) pursuant to 20 C.F.R. § 655.845.

The Board's address is: Administrative Review Board, U.S. Department of Labor, Suite S-5220, 200 Constitution Avenue, NW, Washington DC 20210, for traditional paper filing. Alternatively, the Board offers an Electronic File and Service Request (EFSR) system. The EFSR for electronic filing (eFile) permits the submission of forms and documents to the Board through the Internet instead of using postal mail and fax. The EFSR portal allows parties to file new appeals electronically, receive electronic service of Board issuances, file briefs and motions electronically, and check the status of existing appeals via a web-based interface accessible 24 hours every day. No paper copies need be filed.

- 4 -

U.S. Department of Labor          Administrative Review Board
                                  200 Constitution Ave. NW
                                  Washington, DC 20210-0001



In the Matter of

MAJID VARESS,                          ARB CASE NO.  2020-0017

          PROSECUTING PARTY,           ALJ CASE NO.  2016-LCA-00019

                                       DATE:  July 14, 2020

     v.

PERSIAN BROADCAST SERVICE
GLOBAL, INC.,

          RESPONDENT.

Appearances:

*For the Complainant and Prosecuting Party*:
     Jonathan D. Wasden, Esq.; *Wasden Banias, LLC*; Mount Pleasant,
     South Carolina

*For the Respondent*:
     Jonathan R. Sturman, Esq.; *Law Offices of David M. Sturman*; Encino,
     California

Before: Thomas H. Burrell, *Acting Chief Administrative Appeals Judge*;
James A. Haynes and Heather C. Leslie, *Administrative Appeals Judges*

## DECISION AND ORDER

     PER CURIAM. This case arises under the E-3 visa program provisions of the
Immigration and Nationality Act, as amended (INA), 8 U.S.C. § 1101(a)(15)(E)(iii)
(2014), and implementing regulations at 20 C.F.R. Part 655, subparts H and I
(2018). The Respondent Persian Broadcast Service Global Inc. requests that the
Administrative Review Board (Board) reverse the Administrative Law Judge's
(ALJ) Amended Decision and Order After Remand (October 30, 2019). The ALJ

found in favor of Complainant. Respondent appealed to the Board. We summarily affirm.

## PROCEDURAL HISTORY

Complainant filed a complaint against Respondent with the Administrator, Wage and Hour Division, for unpaid wages on February 5, 2015. *Id.* at 3; see RX 2. The Administrator determined that the Respondent had not committed any violations. Complainant filed objections with the Office of Administrative Law Judges requesting a hearing. After an ALJ found for Respondent, Complainant appealed the ALJ's decision to the Board, and we reversed and remanded because none of the exceptions to the Respondent's obligations to pay wages under the LCAs applied. In the decision (ARB Decision), we directed the ALJ on remand to make a determination regarding the timeliness of the complaint.

On remand, the ALJ found for Complainant and ordered Respondent to pay Complainant back wages. The ALJ also held that Complainant's complaint was timely filed as Respondent's obligation to pay Complainant wages continued until the end of the second LCA period, which ran from September 12, 2013, to September 12, 2015. D. & O. at 2-3. Respondent again appealed to the Board arguing that the complaint was untimely, and in the event it is found timely, that it is not obligated to pay Complainant for periods of time it argues were nonproductive time due to Complainant's voluntary acts.

## JURISDICTION AND STANDARD OF REVIEW

This Board has jurisdiction to hear appeals concerning questions of law or fact from final decisions of ALJs in cases under the E-3 provisions of the Immigration and Nationality Act. *See* 20 C.F.R. § 655.845; *see also* Secretary's Order No. 01-2020 (Delegation of Authority and Assignment of Responsibility to the Administrative Review Board (Secretary's discretionary review of ARB decisions)), 85 Fed. Reg. 13,186 (Mar. 6, 2020). The Board has plenary authority to review an ALJ's legal conclusions de novo. *Limanseto v. Ganze & Co.*, ARB No. 2011-0068, ALJ No. 2011-LCA-00005, slip op. at 3 (ARB June 6, 2013).

## DISCUSSION

An employer is required to pay its E-3 nonimmigrant employees the required wage, including for so-called "nonproductive time," for the entire duration of the LCA period, unless the employer can show that one of the two exceptions to the

benching provision applies. 20 C.F.R. § 655.731(b)(7)(ii).[1] Respondent failed to pay Complainant the required wage for certain periods during the duration of his two LCAs and neither of the two exceptions applies. ARB Decision at 5-6.

On appeal, Respondent does not argue that it paid Complainant the required wages under the LCAs it completed for him or that it effected a bona fide termination of his employment. Instead, Respondent's first argument is that Complainant's February 5, 2015 complaint was untimely filed. Regulation § 655.806(a)(5) provides that a complainant must file a complaint alleging a violation of the nonimmigrant worker regulations "not later than 12 months after the latest date on which the alleged violation(s) were committed, which would be the date on which the *employer* allegedly failed to perform an action or fulfill a condition specified in the LCA, or the date on which the employer, through its action or inaction, allegedly demonstrated a misrepresentation of a material fact in the LCA." 20 C.F.R. § 655.806(a)(5) (emphasis added). As the ALJ explained, Respondent was liable to pay wages for the duration of the second LCA (September 12, 2013, to September 12, 2015) and the reasons Respondent provides for why the second LCA was invalid do not relieve it of its obligations.[2] See ARB Decision at 5. It seems that any nonpayment of wages during the second LCA period would start the clock as a failure to perform an action. Alternatively, the evidence shows that on July 11, 2014, Respondent paid Complainant wages and notified Complainant that it would no longer pay him. ARB Decision at 2-3. Considering this notification, notice of an adverse action, the limitations period would have started running on July 11, 2014. Thus, Complainant February 5, 2015 is timely under either alternative.

Respondent's second argument is that the regulatory exception to its requirement to pay the required wages applies because Complainant voluntarily put himself in nonproductive status. Respondent has the burden to prove nonproductive time that relieves it of the obligation to pay wages. *Gupta v. Compunnel Software Group, Inc.*, ARB No. 2012-0049, ALJ No. 2011-LC-00045, slip op. at 16 (ARB May 29, 2014). As explained in the Board's prior order, Respondent failed to show that

---

[1]     The two exceptions specified in this regulation are (1) when there has been a bona fide termination or (2) when "conditions unrelated to employment … take the nonimmigrant away from his/her duties at his/her voluntary request and convenience (e.g., touring the U.S., caring for ill relative) or render the nonimmigrant unable to work (e.g., maternity leave, automobile accident which temporarily incapacitates the nonimmigrant)."

[2]     The arguments Respondent makes for why its obligation to pay ended at an earlier date (making Complainant's complaint untimely) were rejected in our prior order (for example, that Respondent's obligation ended when Complainant left the country on November 16, 2013).

Complainant put himself in nonproductive status to relieve it of its obligation to pay wages. ARB Decision at 6.

The ALJ addressed all of Respondent's arguments and we affirm the ALJ's findings that Respondent failed to pay Complainant the required wage under both LCAs for the reasons he explained. We also affirm the ALJ's finding that the complaint was timely filed. The ALJ found Respondent liable for $183,794 in back wages. Respondent does not challenge this computation on appeal other than his previously rejected arguments discussed above. Accordingly, we find that the amount of back wages that the ALJ ordered with respect to the LCAs was proper and is affirmed. 20 C.F.R. §§ 655.810(a), 655.700(c)-(d).

## CONCLUSION

In sum, Respondent failed to pay Complainant, an E-3 nonimmigrant employee, the required wage for two LCA periods. Respondent thus owes Complainant $183,794.00 in back pay plus pre and post-judgment interest.

**SO ORDERED.**

1    Is that correct, Mr. Varess?

2            THE WITNESS:  Your Honor, when I get back, let me

3    say that, please.  When I came back, they gave me this

4    two-year visa to stay.  And when I was planning to go back to

5    Australia, that, to me, that was the time I had to go and get

6    my visa in a way or in New York, or to get a multiple visa.

7            MR. J. STURMAN:  Okay.

8            THE WITNESS:  I didn't think --

9            JUDGE LARSEN:  Okay.  Yeah.  So you had a good

10   reason for not renewing it.  But the fact is you didn't renew

11   it.  Correct?

12           THE WITNESS:  That's correct, Your Honor.

13           JUDGE LARSEN:  All right.  Thank you.  Mr. Sturman,

14   you may proceed.

15           MR. J. STURMAN:  Okay.

16   BY MR. J. STURMAN:

17       Q    So you did not renew it.  Did you try to renew it?

18       A    When I was in the states, as I said --

19       Q    Yes or no, did you attempt to renew the visa?

20       A    Yes.

21       Q    When?  What month and what year?

22       A    When I came back to Australia, about late December

23   or early January, as far as I'm concerned, I lost the

24   application with all the documents that Mr. Shadjareh

25   supported.  I lost an application to Consulate in Sydney.  I

REPORTERS AND TRANSCRIBERS      JACKSON REPORTING, INC.      (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

**ER-83**

1  asked for an appointment. I asked for an appointment and

2  then discussed it with Mr. Shadjareh. I postponed it because

3  I wasn't receiving any money. I had to pay the fee again. I

4  had to pay Noah, as you mentioned his name. I have to pay

5  him and nothing would happen. And I started to think that I

6  have to get money before to follow this. And my show was

7  going on with Zahab and then by myself. That's the story.

8      Q   So you never got another visa. That's what it

9  looks like.

10      A   No, no. I withdraw the application.

11      Q   Okay. That's fine. So you didn't get a visa.

12  Okay. So why did you have to work in the United States when

13  you came in on September -- after September 12th when your

14  visa expired?

15      A   Could you please repeat the question?

16      Q   Did you have a right to work after your visa

17  expired in September -- on September 12th, 2013?

18      A   Yes.

19      Q   You did? But you just said you never got a visa.

20      A   I said I had two-year visa.

21      Q   You said --

22      A   I had a visa. Excuse me. U.S. visa is just a

23  travel activity in this case. I was -- by having LCA to work

24  on, if I didn't want to come to Sydney or anywhere in the

25  world, I did it based on the U.S. law as far as I am

REPORTERS AND TRANSCRIBERS    **JACKSON REPORTING, INC.**    (707) 546-8911
*Computerized Transcripts*
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

**ER-84**

Name _Ira J. Nasserian, Esq. CSB# 225380_

Address _12 Cypress Way_

City, State, Zip _Rolling Hills Estates, CA 90274_

Phone _(310) 337-7900_

Fax _____

E-Mail _inasserian@lawinscal.com_

☐ FPD    ☐ Appointed    ☐ CJA    ☐ Pro Per    ☒ Retained

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERSIAN BROADCAST SERVICE  GLOBAL INC., a California corporation<br><br>PLAINTIFF(S),<br><br>v.<br><br>MARTIN J. WALSH, in his capacity as United States Secretary of Labor,  UNITED STATES DEPARTMENT<br>DEFENDANT(S). | CASE NUMBER:<br><br>2:21-cv-00229-CAS (GJSx)<br><br><br>**NOTICE OF APPEAL** |

NOTICE IS HEREBY GIVEN that  _PERSIAN BROADCAST SERVICE  GLOBAL INC.,_  hereby appeals to

*Name of Appellant*

the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☐ Order (specify):

☒ Judgment (specify):
    Docket #36, Granting Defendants Motion

☐ Other (specify):

Imposed or Filed on _____02/07/2022_____ . Entered on the docket in this action on _03/01/2022_____ .

A copy of said judgment or order is attached hereto.

_3/7/2022_

Date

Signature

☐ Appellant/ProSe    ☒ Counsel for Appellant    ☐ Deputy Clerk

**Note:**  The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party.  Also, if not electronically filed in a criminal case,  the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

A-2 (01/07)                                                **NOTICE OF APPEAL**

Ira J. Nasserian, Esq.  CSB# 225380
12 Cypress Way
Rolling Hills Estates, CA 90274
Phone: (310) 337-7900
Email:  inasserian@lawinscal.com

Attorney for Plaintiff and  Appellant
Persian Broadcast Service Global, Inc.

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES, CALIFORNIA

| | |
|---|---|
| PERSIAN BROADCAST SERVICE GLOBAL INC., a California corporation<br><br>Plaintiff.<br><br>v.<br><br>MARTIN J. WALSH, in his capacity as United States Secretary of Labor, UNITED STATES DEPARTMENT OF LABOR,<br><br>Defendants | No. 2:21-cv-00229-CAS (GJSx)<br><br>**NOTICE OF APPEAL – PLAINTIFF PERSIAN BROADCAST SERVICE GLOBAL INC.'S NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**<br><br>**REPRESENTATION STATEMENT**<br><br>**SUMMARY JUDGMENT APPEAL**<br><br>Before  Hon. Christina A. Snyder |

**NOTICE OF APPEAL; REPRESENTATION STATEMENT**

1

**ER-86**

## NOTICE OF APPEAL

Notice is hereby given that Persian Broadcast Service Global, Inc., ("Persian"),

Plaintiff in the above-referenced case, hereby appeals to the United States Court of

Appeals for the Ninth Circuit from the District Court's Order and Judgment

granting Defendants Martin J. Walsh, in his capacity as United States Secretary of

Labor,  United States Department of Labor Motion for Summary Judgment,

denying Persian's Motion for Summary Judgment and awarding to Majid Varess

$183,794 plus interest and costs payable to Defendants, a copy of which is attached

as Exhibit 1 (the "Order and Judgment").

The United States Court of Appeals for the Ninth Circuit has pendent appellate

jurisdiction over the District Court's "Order and Judgment granting Defendants

Motion for Summary Judgment in its entirety and denying Persian's Motion for

Summary Judgment in its entirety for the following reasons, among others:

        1)     The Order and Judgment is final; and

### NOTICE OF APPEAL; REPRESENTATION STATEMENT

2

**ER-87**

2)      The Order and Judgment concerning the Summary Judgment

Order is based solely on legal arguments.

Dated: March 7, 2022                    Respectfully submitted,

Ira J. Nasserian, Esq.
12 Cypress Way
Rolling Hills Estates, CA 90274
Attorney for Plaintiff
Persian Broadcast Service Global, Inc.

NOTICE OF APPEAL; REPRESENTATION STATEMENT

3

**ER-88**

## REPRESENTATION STATEMENT

The undersigned represents Persian Broadcast Service Global, Inc., Plaintiff and Appellant in this matter, and no other party. Attached is a service list that shows all of the parties to the action below, and identifies their counsel by name, firm, address, email and telephone number, where appropriate. (F.R.A.P. 12(b); Circuit Rule 3-2(b).)

Dated:  March 7, 2022,  Respectfully submitted,

Ira J. Nasserian, Esq.
12 Cypress Way
Rolling Hills Estates, CA 90274
Attorney for Plaintiff
Persian Broadcast Service Global, Inc.

### NOTICE OF APPEAL; REPRESENTATION STATEMENT

4

**ER-89**

## SERVICE LIST OF REPRESENTATION STATEMENT

Plaintiff and Appellant:

Persian Broadcast Service Global, Inc.

Counsel for Plaintiff and Appellant Persian Broadcast Service Global, Inc.:

.:    Ira J. Nasserian, Esq. CSB# 225380
12 Cypress Way
Rolling Hills Estates, CA 90274
Phone: (310) 337-7900
Email: inasserian@lawinscal.com

Defendants/Appellees:

Martin J. Walsh, in his capacity as United States Secretary of Labor,
United States Department of Labor

Counsel for Defendants and Appellees Martin J. Walsh, U. S. Secretary of Labor,
United States Department of Labor

Tracy L. Wilkison
United States Attorney

David M. Harris
Assistant United States Attorney
Chief, Civil Division

Joanne S. Osinoff
Assistant United States Attorney
Chief, General Civil Section

Matthew J. Smock (Cal. Bar No. 293542)
Assistant United States Attorney
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-0397
Facsimile: (213) 894-7819
E-mail: Matthew.Smock@usdoj.gov

NOTICE OF APPEAL; REPRESENTATION STATEMENT

5

# Exhibit 1

NOTICE OF APPEAL; REPRESENTATION STATEMENT

6

Notice of Electronic Filing

The following transaction was entered on 3/2/2022 at 11:24 AM PST and filed on 3/1/2022

**Case Name:**     Persian Broadcast Service Global Inc. v. Eugene Scalia et al

**Case Number:**   2:21-cv-00229-CAS-GJS

**Filer:**

**WARNING: CASE CLOSED on 02/07/2022**

**Document Number:** 36

**Docket Text:**

**ORDER AND JUDGMENT ON DEFENDANTS MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS MOTION FOR SUMMARY JUDGMENT by Judge Christina A. Snyder, IT IS SO ORDERED AND ADJUDGED that: Defendants' motion for summary judgment is granted in its entirety; Plaintiff's motion for summary judgment is denied in its entirety;Judgment is hereby entered in favor of Defendants and against Plaintiff;Plaintiff is ordered to pay Majid Varess $183,794, plus pre-judgmentinterest at the rate set forth in 26 U.S.C. § 6621(a)(2), plus post-judgmentinterest at the rate set forth in 28 U.S.C. § 1961(a); and Defendants shall be entitled to costs pursuant to Federal Rule of Civil Procedure 54(d). (shb)**

**2:21-cv-00229-CAS-GJS Notice has been electronically mailed to:**

Matthew J Smock   caseview.ecf@usdoj.gov, carolina.usi@usdoj.gov, matthew.smock@usdoj.gov, usacac.civil@usdoj.gov

Ira J Nasserian   inasserian@lawinscal.com

**2:21-cv-00229-CAS-GJS Notice has been delivered by First Class U. S. Mail or by other means BY THE FILER to :**

ACCO,(GJSx),APPEAL,CLOSED,DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
### CIVIL DOCKET FOR CASE #: 2:21-cv-00229-CAS-GJS

| | |
|---|---|
| Persian Broadcast Service Global Inc. v. Eugene Scalia et al | Date Filed: 01/11/2021 |
| Assigned to: Judge Christina A. Snyder | Date Terminated: 02/07/2022 |
| Referred to: Magistrate Judge Gail J. Standish | Jury Demand: None |
| Case in other court: 9th Circuit, 22-55254 | Nature of Suit: 790 Labor: Other |
| Cause: 05:702 Administrative Procedure Act | Jurisdiction: U.S. Government Defendant |

## Plaintiff

**Persian Broadcast Service Global Inc.**
*a California corporation*

represented by **Ira J Nasserian**
Law Offices of Ira J Nasserian and
Associates
12 Cypress Way
Rolling Hills Estates, CA 90274
310-337-7900
Fax: 310-337-7902
Email: inasserian@lawinscal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

## Defendant

**Marty J Walsh**
*Secretary of Labor*

represented by **Matthew J Smock**
AUSA - US Attorneys Office
Civil Division
300 North Los Angeles Street Suite 7516
Los Angeles, CA 90012
213-894-0397
Fax: 213-894-7819
Email: matthew.smock@usdoj.gov
*ATTORNEY TO BE NOTICED*

## Defendant

**United States Department of Labor**

represented by **Matthew J Smock**
(See above for address)
*ATTORNEY TO BE NOTICED*

## Defendant

**Majid Varess**
*TERMINATED: 08/10/2021*

## Counter Claimant

**Marty J Walsh**
*Secretary of Labor*

represented by **Matthew J Smock**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**United States Department of Labor**  represented by  **Matthew J Smock**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Persian Broadcast Service Global Inc.**  represented by  **Ira J Nasserian**
*a California corporation*  (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/11/2021 | 1 | COMPLAINT Receipt No: ACACDC-29976475 - Fee: $402, filed by Plaintiff Persian Broadcast Service Global Inc.. (Attorney Ira J Nasserian added to party Persian Broadcast Service Global Inc.(pty:pla))(Nasserian, Ira) (Entered: 01/11/2021) |
| 01/12/2021 | 2 | NOTICE OF ASSIGNMENT to District Judge Christina A. Snyder and Magistrate Judge Gail J. Standish. (lh) (Entered: 01/12/2021) |
| 01/12/2021 | 3 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (lh) (Entered: 01/12/2021) |
| 01/12/2021 | 4 | NOTICE OF DEFICIENCIES in Attorney Case Opening. The following error(s) was found: The Civil Cover Sheet (CV-71)is missing or incomplete. All civil actions presented for filing must be accompanied by a completed Civil Cover Sheet. See Local Rule 3-1. Counsel must file a completed Civil Cover Sheet immediately. Failure to do so may be addressed by judicial action, including sanctions. See Local Rule 83-7. No Notice of Interested Parties has been filed. A Notice of Interested Parties must be filed with every partys first appearance. See Local Rule 7.1-1. Counsel must file a Notice of Interested Parties immediately. Failure to do so may be addressed by judicial action, including sanctions. See Local Rule 83-7. (lh) (Entered: 01/12/2021) |
| 01/12/2021 | 5 | AMENDED CIVIL COVER SHEET filed by Plaintiff Persian Broadcast Service Global Inc.. (Nasserian, Ira) (Entered: 01/12/2021) |
| 01/12/2021 | 6 | CERTIFICATE of Interested Parties filed by Plaintiff Persian Broadcast Service Global Inc., (Nasserian, Ira) (Entered: 01/12/2021) |
| 01/14/2021 | 7 | Request for Clerk to Issue Summons on Certificate/Notice of Interested Parties 6 , Complaint (Attorney Civil Case Opening) 1 , Civil Cover Sheet (CV-71) 5 filed by Plaintiff Persian Broadcast Service Global Inc.. (Nasserian, Ira) (Entered: 01/14/2021) |
| 02/01/2021 | 8 | NOTICE TO COUNSEL upon filing of the complaint by Judge Christina A. Snyder. (rba) (Entered: 02/01/2021) |
| 02/11/2021 | 9 | 60/21 DAY Summons Issued re Complaint (Attorney Civil Case Opening) 1 as to Defendants Eugene Scalia, United States Department of Labor, Majid Varess. (shb) (Entered: 02/11/2021) |
| 03/31/2021 | 10 | STIPULATION Extending Time to Answer the complaint as to United States Department of Labor answer now due 5/13/2021; Eugene Scalia answer now due 5/13/2021, re Complaint (Attorney Civil Case Opening) 1 filed by Defendant United States Department of Labor; Eugene Scalia.(Attorney Matthew J Smock added to party Eugene |

| | | |
|---|---|---|
| | | Scalia(pty:dft), Attorney Matthew J Smock added to party United States Department of Labor(pty:dft))(Smock, Matthew) (Entered: 03/31/2021) |
| 05/13/2021 | 11 | ANSWER to Complaint (Attorney Civil Case Opening) 1 *AND*, COUNTERCLAIM against Persian Broadcast Service Global Inc. filed by Defendants United States Department of Labor, Eugene Scalia. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Smock, Matthew) (Entered: 05/13/2021) |
| 06/02/2021 | 12 | *Answer to Counterclaim filed by Counter Defendant Persian Broadcast Service Global Inc* ANSWER to Answer to Complaint (Attorney Civil Case Opening),, Counterclaim, 11 *Answer to Counterclaim* filed by Plaintiff/Counter defendant Persian Broadcast Service Global Inc..(Nasserian, Ira) (Entered: 06/02/2021) |
| 06/11/2021 | 13 | *Answer to Counterclaim filed by Counter Defendant Persian Broadcast Service Global Inc* ANSWER to Answer to Complaint (Attorney Civil Case Opening),, Counterclaim, 11 *Answer to Counterclaim* filed by Counter defendant Persian Broadcast Service Global Inc.. (Nasserian, Ira) (Entered: 06/11/2021) |
| 07/01/2021 | 14 | ORDER SETTING SCHEDULING CONFERENCE by Judge Christina A. Snyder. Scheduling Conference is set for 8/16/2021 at 11:00 AM before Judge Christina A. Snyder. (cj) (Entered: 07/01/2021) |
| 07/01/2021 | 15 | MINUTE ORDER (IN CHAMBERS) - ORDER TO SHOW CAUSE by Judge Christina A. Snyder: IT IS HEREBY ORDERED that PLAINTIFF show cause in writing not later than July 21, 2021, why this action should not be dismissed for lack of prosecution as to defendant MAJID VARESS, only. (see document for further details) (bm) (Entered: 07/02/2021) |
| 08/02/2021 | 16 | JOINT REPORT Rule 26(f) Discovery Plan filed by Defendants Eugene Scalia, United States Department of Labor.. (Attachments: # 1 Proposed Order)(Smock, Matthew) (Entered: 08/02/2021) |
| 08/10/2021 | 17 | SCHEDULING NOTICE (IN CHAMBERS) AND SETTING HEARING BY ZOOM by Judge Christina A. Snyder, re: Initial Order Setting R26 Scheduling Conference 14 and Joint Report Rule 26(f) Discovery Plan 16 . The 8/16/2021 Scheduling Conference at 11:00 AM will be held by Zoom. Zoom Webinar Information can be found on the Court's website, under Judge Snyder's Procedures. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (cj) TEXT ONLY ENTRY (Entered: 08/10/2021) |
| 08/10/2021 | 18 | MINUTE (IN CHAMBERS) - DISMISSAL BY COURT FOR FAILURE TO COMPLY WITH LOCAL RULES AND FEDERAL RULES OF CIVIL PROCEDURE, 15 by Judge Christina A. Snyder: A response to the Order to Show Cause was to be filed and served no later thanJuly 21, 2021. As of todays date, no such response has been received by this Court; IT IS HEREBY ORDERED AND ADJUDGED that the above-entitled action isdismissed WITHOUT PREJUDICE, as to defendant MAJID VARESS, only for plaintiff's failure to comply with the Local Rules, Federal Rules of Civil Procedure, and orders of this Court. Majid Varess terminated. (shb) (Entered: 08/11/2021) |
| 08/16/2021 | 19 | MINUTES OF ZOOM SCHEDULING CONFERENCE held before Judge Christina A. Snyder. The Court confers with counsel and sets the following dates: Settlement Completion Cutoff: November 5, 2021; Plaintiffs Dispositive Motion Cut-off: November 22, 2021; Defendant Cross Dispositive Motion Cut-off: December 13, 2021; Plaintiffs Opposition Brief Cutoff: January 3, 2022; Defendants Reply Brief Cutoff: January 24, 2022; Hearing on Dispositive Motions (10:00 A.M.): February 7, 2022.Counsel inform the court of the parties preference to go before a Magistrate Judge for settlement purposes. Counsel are to confer regarding the Magistrate Judges identified in Court for settlement purposes. Counsel shall contact those Magistrate Judges Courtroom Deputy Clerk |

| | | |
|---|---|---|
| | | regarding availability, forthwith. ADR-12 to issue. Court Reporter: Laura Elias. (shb) (Entered: 08/18/2021) |
| 08/16/2021 | 20 | ORDER/REFERRAL to ADR Procedure No 1 by Judge Christina A. Snyder. Case ordered to Magistrate Judge Gail J. Standish for Settlement Conference. ADR Proceeding to be held no later than November 5, 2021. (shb) (Entered: 08/20/2021) |
| 09/01/2021 | 21 | SCHEDULING NOTICE by Magistrate Judge Michael R. Wilner. Status Conference set for September 17, 2021 at 11:00 AM. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (vm) TEXT ONLY ENTRY (Entered: 09/01/2021) |
| 09/07/2021 | 22 | CERTIFIED ADMINISTRATIVE RECORD filed by Defendants Eugene Scalia, United States Department of Labor. (Attachments: # 1 CAR PART 1 - 1-95, # 2 CAR PART 2 - 96-195, # 3 CAR PART 3 - 196-295, # 4 CAR PART 4 - 296-395, # 5 CAR PART 5 - 396-495, # 6 CAR PART 6 - 496-595, # 7 CAR PART 7 - 596-695, # 8 CAR PART 8 - 696-795, # 9 CAR PART 9 - 796-895, # 10 CAR PART 10 - 896-978)(Smock, Matthew) (Entered: 09/07/2021) |
| 09/17/2021 | 23 | MINUTES OF Status Conference held before Magistrate Judge Michael R. Wilner.The Court conferred with the parties on the status of the case. The Court sets a further status conference on October 8, 2021 at 10:00 a.m. Court Recorder: Not Recorded. (vm) (Entered: 09/17/2021) |
| 10/08/2021 | 24 | MINUTES OF Status Conference held before Magistrate Judge Michael R. Wilner: The Court will conduct a settlement conference in this action on Thursday, October 28, 2021, beginning at 9 a.m. PT. (See Minute Order for further details) Court Recorder: Not Recorded. (vm) (Entered: 10/08/2021) |
| 10/28/2021 | 25 | MINUTES OF Settlement Conference held before Magistrate Judge Michael R. Wilner. Judge Wilner attempted to conduct a settlement conference today. Mr. Nasserian and Persian Broadcast are ordered to show cause why they should not be sanctioned for their conduct today. They will discharge this OSC by filing a declaration (not to exceed five pages) regarding todays hearing no later than November 5. (See Minute Order for further details) Court Recorder: Not Recorded. (vm) (Entered: 10/28/2021) |
| 11/05/2021 | 26 | RESPONSE filed by Counter Defendant Persian Broadcast Service Global Inc. (Attachments: # 1 Supplement year to date profit and loss, # 2 Supplement authorization foe settlement)(Nasserian, Ira) (Entered: 11/05/2021) |
| 11/05/2021 | 27 | RESPONSE filed by Plaintiff Persian Broadcast Service Global Inc. (Attachments: # 1 year to date profit and loss, # 2 authorization for settlement)(Nasserian, Ira) (Entered: 11/05/2021) |
| 11/10/2021 | 28 | ORDER DISCHARGING OSC by Magistrate Judge Michael R. Wilner. In an exercise of discretion, the OSC is discharged as to Mr. Nasserian and PBS without further consequence. (See Order for further details) (vm) (Entered: 11/10/2021) |
| 11/22/2021 | 29 | NOTICE OF MOTION AND MOTION for Summary Judgment as to complaint filed by plaintiff Persian Broadcast Service Global Inc.. (Attachments: # 1 statement of uncontroverted facts) (Nasserian, Ira) (Entered: 11/22/2021) |
| 12/13/2021 | 30 | NOTICE OF MOTION AND MOTION for Summary Judgment *And Cross -Motion for Summary Judgment* filed by Defendants Eugene Scalia, United States Department of Labor. Motion set for hearing on 2/7/2022 at **10:00 AM** before Judge Christina A. Snyder. (Attachments: # 1 DEFENDANTS STATEMENT OF UNCONTROVERTED MATERIAL FACTS, RESPONSE TO PLAINTIFFS STATEMENT OF MATERIAL FACTS, AND PROPOSED CONCLUSIONS OF LAW, # 2 Proposed Order and Judgment) (Smock, Matthew) (Entered: 12/13/2021) |

| 12/14/2021 | 31 | SCHEDULING NOTICE AND ORDER by Judge Christina A. Snyder. The Court, on its own motion, hereby resets the Motion for Summary Judgment as to the Complaint 29 and the Motion for Summary Judgment and Cross-Motion for Summary Judgment 30 to February 7, 2022 at **10:00 a.m.** IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (droj) (Entered: 12/14/2021) |
|---|---|---|
| 01/03/2022 | 32 | OPPOSITION filed by Plaintiff Persian Broadcast Service Global Inc.. (Attachments: # 1 Proposed Order)(Nasserian, Ira) (Entered: 01/03/2022) |
| 01/24/2022 | 33 | REPLY in support NOTICE OF MOTION AND MOTION for Summary Judgment *And Cross -Motion for Summary Judgment* 30 filed by Defendants Eugene Scalia, United States Department of Labor. (Smock, Matthew) (Entered: 01/24/2022) |
| 01/31/2022 | 34 | SCHEDULING NOTICE (IN CHAMBERS) AND SETTING HEARING BY ZOOM by Judge Christina A. Snyder, re: NOTICE OF MOTION AND MOTION for Summary Judgment as to complaint 29 , Text Only Scheduling Notice 31 , and NOTICE OF MOTION AND MOTION for Summary Judgment 30 . The 2/7/2022 hearing at 10:00 AM will be held by Zoom. Zoom Webinar Information can be found on the Court's website, under Judge Snyder's Procedures. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (cj) TEXT ONLY ENTRY (Entered: 01/31/2022) |
| 02/07/2022 | 35 | MINUTES PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 29, filed on NOVEMBER 22, 2021); DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT (DKT. 30, FILED ON DECEMBER 13, 2021) by Judge Christina A. Snyder: 1) The Court DENIES Persian Broadcast's motion for summary judgment. 2) The Court GRANTS defendants' cross-motion for summary judgment on their counterclaim and orders Persian Broadcast to pay Varess $183,794 plus pre-judgment interest pursuant to 26 U.S.C. § 6621(a)(2), and post-judgment interest pursuant to 28 U.S.C. § 1961(a).IT IS SO ORDERED. Court Reporter: Katie Thibodeaux. (shb) Modified on 3/1/2022 (cj). (Entered: 02/08/2022) |
| 03/01/2022 | 36 | ORDER AND JUDGMENT ON DEFENDANTS MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS MOTION FOR SUMMARY JUDGMENT by Judge Christina A. Snyder, IT IS SO ORDERED AND ADJUDGED that: Defendants' motion for summary judgment is granted in its entirety; Plaintiff's motion for summary judgment is denied in its entirety;Judgment is hereby entered in favor of Defendants and against Plaintiff;Plaintiff is ordered to pay Majid Varess $183,794, plus pre-judgmentinterest at the rate set forth in 26 U.S.C. § 6621(a)(2), plus post-judgmentinterest at the rate set forth in 28 U.S.C. § 1961(a); and Defendants shall be entitled to costs pursuant to Federal Rule of Civil Procedure 54(d). (shb) (Entered: 03/02/2022) |
| 03/07/2022 | 37 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by plaintiff Persian Broadcast Service Global Inc.. Appeal of Judgment,, 36 . (Appeal Fee - $505 Fee Paid, Receipt No. ACACDC-32905438.) (Attachments: # 1 judge's order)(Nasserian, Ira) (Entered: 03/07/2022) |
| 03/09/2022 | 38 | NOTIFICATION from Ninth Circuit Court of Appeals of case number assigned and briefing schedule. Appeal Docket No. 22-55254 assigned to Notice of Appeal to 9th Circuit Court of Appeals, 37 as to Plaintiff Persian Broadcast Service Global Inc.. (shb) (Entered: 03/10/2022) |

| PACER Service Center |
|---|
| **Transaction Receipt** |
| 08/16/2022 07:32:22 |

| PACER Login: | Ijnass1938 | Client Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 2:21-cv-00229-CAS-GJS End date: 8/16/2022 |
| Billable Pages: | 6 | Cost: | 0.60 |