No. 22-55254

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

**PERSIAN BROADCAST SERVICE GLOBAL, INC.**,
*Plaintiff-Appellant,*

v.

**MARTIN J. WALSH, Secretary of Labor**;
**U.S. DEPARTMENT OF LABOR,**
*Defendants-Appellees.*

Appeal from the United States District Court,
Central District of California, No. 2:21-cv-00229-CAS-GJS

---

**SUPPLEMENTAL EXCERPTS OF RECORD**

---

E. MARTIN ESTRADA
  *United States Attorney*
DAVID M. HARRIS
  *Assistant United States Attorney*
  *Chief, Civil Division*
MATTHEW J. SMOCK
  *Assistant United States Attorney*
  Federal Building
  300 N. Los Angeles Street, Suite 7516
  Los Angeles, California 90012
  Telephone: (213) 894-0397
  E-mail: matthew.smock@usdoj.gov

Attorneys for Defendants-Appellees
Martin J. Walsh, Secretary of Labor and
U.S. Department of Labor

# INDEX

**Page (SER-)**

Plaintiff's Response to Defendants' Opposition to
Plaintiff's Motion for Summary Judgment and Opposition
to Defendants' Cross-Motion for Summary Judgment
Docket No. 32 (filed Jan. 3, 2022) ............................................................ 5

Excerpts from Certified Administrative Record,
Docket No. 22 (filed Sept. 7, 2021) ......................................................... 8

    Administrator's Determination, March 28, 2016
    Docket No. 22-1 (filed Sept. 7, 2021) ................................................. 8

    Varess's Request for Hearing, April 11, 2016
    Docket No. 22-1 (filed Sept. 7, 2021) ............................................... 10

    Joint Stipulation of Facts for ALJ Hearing, Oct. 26, 2017
    Docket Nos. 22-3–22-4 (filed Sept. 7, 2021) .................................... 12

    Varess's Administrative Complaint, Feb. 5, 2015
    ALJ Proceedings, Respondent's Ex. 2
    Docket No. 22-4 (filed Sept. 7, 2021) ............................................... 16

    Persian's Records of Payments to Varess
    ALJ Proceedings, Respondent's Ex. 6
    Docket No. 22-4 (filed Sept. 7, 2021) ............................................... 23

    Persian's First LCA
    ALJ Proceedings, Prosecuting Party's Ex. 1
    Docket No. 22-4 (filed Sept. 7, 2021) ............................................... 42

    Persian's Second LCA
    ALJ Proceedings, Prosecuting Party's Ex. 2
    Docket No. 22-4 (filed Sept. 7, 2021) ............................................... 48

Varess's Visa and Passport Entry Stamps
ALJ Proceedings, Prosecuting Party's Ex. 3
Docket No. 22-4 (filed Sept. 7, 2021) ..............................................54

Persian Letter Re Varess's E-3 Visa Renewal Application
ALJ Proceedings, Prosecuting Party's Ex. 5
Docket No. 22-4 (filed Sept. 7, 2021) ..............................................56

Sampling of Work Performed by Varess for Persian in
United States During Second LCA Period
ALJ Proceedings, Prosecuting Party's Ex. 6
Docket No. 22-4 (filed Sept. 7, 2021) ..............................................59

Record of Varess's Form I-94
ALJ Proceedings, Prosecuting Party's Ex. 7
Docket No. 22-4 (filed Sept. 7, 2021) ..............................................67

Text Messages Between Varess and Shadjareh, July 11, 2014
ALJ Proceedings, Prosecuting Party's Ex. 9
Docket No. 22-4 (filed Sept. 7, 2021) ..............................................68

ALJ Hearing Transcript Excerpts
Docket Nos. 22-4, 22-5, 22-6 (filed Sept. 7, 2021) ........................71

Plaintiff's Answer to Defendants' Counterclaim
Docket No. 12 (filed June 2, 2021) ......................................................127

Defendants' Answer and Counterclaim
Docket No. 11 (filed May 13, 2021) ......................................................134

Notice of Appeal
Docket No. 37 (filed March 7, 2022) ......................................................160

Docket Sheet ......................................................................................170

SER-4

Ira J. Nasserian, Esq.  CSB# 225380
12 Cypress Way
Rolling Hills Estates, CA 90274
Phone: (310) 337-7900
Email:  inasserian@lawinscal.com


Attorney for Plaintiff Persian Broadcast Service Global, Inc.


# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| PERSIAN BROADCAST SERVICE GLOBAL INC.,  a California corporation <br><br>　　　Plaintiff. <br><br>　　　v. <br><br> MARTIN J. WALSH, in his capacity as United States Secretary of Labor, UNITED STATES DEPARTMENT OF LABOR, MAJID VARESS <br><br> DEFENDANTS | No. 2:21-cv-00229-CAS (GJSx) <br><br> **PLAINTIFF'S RESPONSE TO DEFENDANTS'OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** <br><br> Separate Statement and Proposed Order and Judgment <br><br> Hearing Date:　February 7, 2022 <br><br> Hearing Time:　9:00 a.m. <br> Location:　U.S. Courthouse3 <br>　50 W. 1st St. <br>　Courtroom 8D <br>　Los Angeles, CA 90012 <br><br> HON. CHRISTINA A. SNYDER |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS'CROSS-MOTION FOR SUMMARY JUDGMENT**
DEFENDANT'S NAME - 1

1
2   Plaintiff and Plaintiff's counsel have reviewed the Defendants' Opposition to
3   Plaintiff's Motion for Summary Judgment and Defendants'Cross-Motion for
    Summary Judgment  and Plaintiff has determined that Plaintiff's Original Motion
4   for Summary Judgment and specifically the Memorandum of Points and
5   Authorities specifically provides this Court with sufficient factual and legal basis
6   to grant Plaintiff's Motion for Summary Judgment and to deny Defendants'Cross-
7   Motion for Summary Judgment.
8

9   Therefore, with respect to this Court's busy calendar and workload and because
10  any further opposition or argument would simply be a restatement of our earlier
11  argument presented in a different format, Plaintiff reincorporates the facts and
12  points and authorities into this opposition and prays this Court grant Plaintiff's
13  Motion for Summary Judgment in this matter.
14

15
16  Respectfully submitted this 3rd day of January, 2022.

17

18

19  Ira J. Nasserian
20  Attorney for Plaintiff

21

22

23

24

25

26

27  **PLAINTIFF'S RESPONSE TO DEFENDANTS'OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
    JUDGMENT AND OPPOSITION TO DEFENDANTS'CROSS-MOTION FOR
28  SUMMARY JUDGMENT**
    DEFENDANT'S NAME - 2

**U.S. Department of Labor**   Wage and Hour Division
915 Wilshire Blvd., Suite 960
Los Angeles, CA 90017
Phone:   (213) 894-6375
Fax:      (213) 894-6845



---

CERTIFIED MAIL RETURN RECEIPT REQUESTED: #7012 0470 0001 6142 1064

March 28, 2016

Amir Shadjareh, President
Persian Broadcast Service Global, Inc.
18720 Oxnard Street, Suite 102
Tarzana, CA 91356

Subject:   Administrator's Determination Pursuant to Regulations at 20 C.F.R.
Part 655 -- H-1B Specialty Occupations under the Immigration and Nationality
Act (INA) administered by the Department of Labor (DOL)
Reference #1757069

Dear Mr. Shadjareh:

Based on the evidence obtained in the recently concluded Wage and Hour Division investigation
of Persian Broadcast Service Global, Inc., under the H-1B provisions of the INA, as amended, (8
U.S.C. § 1182(n)), it has been determined that there is no violation. Any Labor Condition
Application (LCA) (Form ETA 9035 and/or ETA 9035E) included in this investigation is listed
or enclosed. Your firm is liable for any ongoing violations.

You and any interested party have the right to request a hearing on this determination. Such
request must be dated, be typewritten or legibly written, specify the issue(s) stated in this notice
of determination on which a hearing is requested, state the specific reason(s) why the requestor
believes this determination to be in error, be signed by the requestor or by an authorized
representative, and include the address at which the requestor or the authorized representative
desires to receive further communications relating to the hearing request.

The request must be made to and received by the Chief Administrative Law Judge (OALJ) at the
following address no later than 15 calendar days after the date of this determination:

<div align="center">

U.S. Department of Labor
Chief Administrative Law Judge
ATTN: Deputy Secretary of BALCA
800 K Street NW., Room 400 North
Washington, DC 20001-8002

</div>

If you or any interested party do not make a timely request for a hearing, this determination will
become a final and unappealable order of the Secretary of Labor.

The procedure for filing a request for a hearing is provided in 20 C.F.R. § 655.820. Please note
that 20 C.F.R. § 655.820(f) requires that a copy of any such request for a hearing must also be

1

AR-2

sent to me <u>and</u> to those parties listed below who were provided a copy of this determination. The Department of Labor will notify any complainant and interested parties of any appeal. Due to the delayed delivery of mail in certain areas, you may wish to transmit your request to the OALJ via facsimile at 202-693-7365 to ensure timely receipt.

In the event that a hearing is timely requested, it is possible that there will be a final agency action (either a decision by an administrative law judge or an appeal decision by the Administrative Review Board) which finds that there was a violation which requires that the employer be denied the opportunity to sponsor any alien for employment for a period of time. If such a final agency action is entered, the U.S. Department of Labor's Employment and Training Administration (ETA) and the Department of Homeland Security (DHS) shall be so notified, pursuant to 20 C.F.R. § 655.855(a). The DHS (formerly the Attorney General), upon notification, is required to deny any petitions filed by your business under § 204 (8 U.S.C. § 1154) and § 214(c) (8 U.S.C. § 1184(c)) of the INA for a period of at least one to three years from the date of receipt of the notification. Upon receipt of the notification, ETA will be required to invalidate any current LCA(s) (with respect to new hires only) and not accept for filing any new LCA(s) for the period of time for which the firm is debarred by the DHS.

A copy of 20 C.F.R. Part 655 subparts H and I can be found at the following web address: http://www.gpo.gov/fdsys/pkg/CFR-2014-title20-vol1

Sincerely

Siriporn Poondee
Assistant District Director

Enclosures:    Copy / List of LCAs

cc:    U.S. Department of Labor
       Chief Administrative Law Judge
       ATTN: Deputy Secretary of BALCA
       800 K Street NW, Room 400 North
       Washington, DC 20001-8002

       U.S. Department of Labor
       Office of the Regional Solicitor
       90 7th Street, Suite 3-700
       San Francisco, CA 94103

       Regional Immigration Coordinator
       U.S. Department of Labor
       2800 Cottage Way, Suite W-1836
       Sacramento, CA

       David M. Sturman, Esq.
       Law Office of David M. Sturman
       16530 Ventura Blvd., Suite 312
       Encino, CA 91436

       Complainant and other interested parties

2

# FOX HORAN & CAMERINI LLP

825 THIRD AVENUE
NEW YORK, NEW YORK 10022

ATTORNEYS AND COUNSELLORS
AT LAW

TELEPHONE: (212) 480-4800
TELECOPIERS: (212) 269-2383
(212) 709-0248

April 11, 2016

**Via Facsimile: 213-894-6845**

Ms. Siriporn Poondee
Assistant District Director
Wage and Hour Division
U.S. Department of Labor
915 Wilshire Blvd., Suite 960
Los Angeles, CA 90017

Subject:   Administrator's Determination Pursuant to Regulations at 20 C.F.R.
Part 655 – H-1B Specialty Occupations under the Immigration and Nationality
Act (INA) administered by the Department of Labor (DOL)
Reference #1757069

Dear Ms. Poondee:

I refer to your above described initial determination letter dated Monday, March 28, 2016 (attached hereto), a copy of which was sent by postal mail and received by me at my office late Friday afternoon, April 1, 2016.

As I am the attorney designated by Complainant, Mr. Majid Varess, to be Complainant's representative in this matter, a copy of the letter was sent to me (copy of envelope attached hereto).

This response letter, as sent by fax today to you and all other indicated recipients (per the determination letter's requirement to send copies to them), hereby constitutes Complainant's formal request for a hearing and appeal on the initial determination.

It is noted that the determination letter refers to "Enclosures: Copy/List of LCAs." No copies of any LCAs were enclosed. However, Complainant already has copies of the two pertinent LCAs, so this purely technical omission is not of concern to Complainant.

What is of concern to Complainant is that the determination letter does not state, or even give the slightest hint of, any reason or basis for the determination. The letter only says that "it has been determined that there has been no violation."

SER-10

Ms. Siriporn Poondee
April 11, 2016
Page 2 of 2

　　　　For that reason, Complainant hereby reserves and preserves all his rights as to his claims concerning his complaint, including but not limited to the legal, factual, procedural and all other aspects of the case.　As the hearing and appeal procedures in this matter develop over time, it is presumed that Complainant will receive some statement of the particular bases for the initial determination.　When that has been provided, Complainant will be in a position to particularize the bases for his objection and appeal.

　　　　Kindly confirm to me by reply fax your good and timely receipt of this filing of Complainant's request for a hearing and appeal.

　　　　　　　　　　　　Sincerely,

　　　　　　　　　　　　Norman J. Resnicow

cc w/attachments:　　Via Facsimile: 202-693-7365　　　　Via Facsimile: 916-978-6125
　　　　　　　　　　U.S. Department of Labor　　　　　　Regional Immigration Coordinator
　　　　　　　　　　Chief Administrative Law Judge　　　U.S. Department of Labor
　　　　　　　　　　Attn:　Deputy Secretary of BALCA　2800 Cottage Way, Suite W-1836
　　　　　　　　　　800 K Street NW, Room 400 North　Sacramento, CA
　　　　　　　　　　Washington, DC　20001-8002

　　　　　　　　　　Via Facsimile: 415-625-7772　　　　Via Facsimile: 818-907-0039
　　　　　　　　　　U.S. Department of Labor　　　　　　David M. Sturman, Esq.
　　　　　　　　　　Office of the Regional Solicitor　　　Law Office of David M. Sturman
　　　　　　　　　　90 7th Street, Suite 3-700　　　　　16530 Ventura Blvd., Suite 312
　　　　　　　　　　San Francisco, CA　94103　　　　　Encino, CA　91436

1   David M. Sturman, SB #89393              Norman J. Resnicow, AR (NY) 1083005
    16530 Ventura Blvd., Suite 412           Fox Horan & Camerini LLP
2   Encino, CA 91436                         825 Third Avenue, 12th Floor
    Phone: (818) 907-0777                    New York, NY 10022
3   Fax: (818) 907-0039                      Phone (212) 709-0281; (917) 576-6626
    Email: david@davidsturman.com            Fax: (212) 269-2383; (212) 709-0248
4   Attorney for Respondent                  Email: Njresnicow@foxlex.com
                                             Attorney for Prosecuting Party
5

6                   UNITED STATES DEPARTMENT OF LABOR
                    OFFICE OF ADMINISTRATIVE LAW JUDGES
7

8   In the Matter of                    )    Case No. 2016-LCA-00019
                                         )
9       Majid Varess                     )    **JOINT STIPULATION OF FACTS**
              Prosecuting Party,         )
10                                       )
                                         )    Next Hearing: October 26, 2017
11              vs.                       )    Time: 1:30 PM
                                         )    Crtm: 90
12      Persian Broadcasting Service Global, )
        Inc.                             )
13            Respondent                 )
                                         )
    _____

14
        Respondent, Persian Broadcasting Service Global, Inc., and Prosecuting
15
    Party, Majid Varess, respectfully submit the following Joint Stipulation of Facts
16
    pursuant to the November 23, 2016 Prehearing Order, as amended by the May 18,
17
    2017 Order Continuing Hearing.
18
        The Parties stipulate to the following facts:
19

20

1.  Respondent, Persian Broadcast Service Global, Inc. (hereinafter, "Respondent" or "Pars TV"), is a legal entity incorporated under the laws of the State of California.

2.  Amir Shadjareh is the President of Pars TV.

3.  Prosecuting Party, Majid Varess (hereinafter, "Claimant"), is a national of Australia, where he currently resides.

4.  In September 2011, Respondent filed an application for labor certification (LCA) with the Department of Labor (DOL) on behalf of Claimant. The LCA was approved with a validity date of September 12, 2011, to September 12, 2013, at an annual Wage Rate of $45,000.

5.  On November 23, 2011, Claimant entered the U.S. on an E-3 visa and commenced working for Respondent as a Pars TV television producer (of content) and reporter from the U.S.

6.  Claimant departed the U.S. on August 19, 2012.

7.  Claimant returned to the U.S. on October 17, 2012.

8.  Claimant departed the U.S. on January 14, 2013.

9.  Claimant returned to the U.S. on May 17, 2013.

10. Claimant departed the U.S. on July 14, 2013. During these periods outside the U.S., Claimant produced and solo hosted sports programs for Pars TV.

2

11. In August 2013, Respondent filed a second LCA with the DOL on behalf of Claimant at an Annual Wage Rate increased by 33.3% to $60,000, on the stated "Basis" of "Continuation of previously approved employment without change with the same employer." The second LCA was approved with a validity date of September 12, 2013 to September 12, 2015.

12. On September 3, 2013, Claimant returned to the U.S. and was admitted for stay until September 2, 2015.

13. On November 16, 2013, Claimant departed the U.S., and has not returned since.

14. On February 5, 2015, Claimant filed a written complaint against Respondent with the Wage and Hours Division (WHD) of the DOL which refers to a complaint on his behalf made by phone on December 9, 2014. On March 18, 2015, Claimant submitted to DOL a completed Nonimmigrant Worker Information Form WH-4 describing the claimed wage and other violations, including but not limited to claimed constructive termination in July 2014.

15. On March 28, 2016, the WHD concluded that Respondent had not committed any wage violations as to Claimant.

16. At no point prior to July 14, 2014, did Respondent notify the DOL of termination of Claimant's employment under 20 C.F.R. §655.731, subsection (c)(7)(ii) (see also 8 C.F.R. §214.2, subsection (h) (11)(i)(A)).

3

1

2

3
David M. Sturman
Attorney for Respondent                    Dated:____09/19/2017

4

5

6

7
Norman J. Resnicow                         Dated:____09/19/2017
Attorney for Prosecuting Party

8

9

10

11

12

13

14

15

16

17

18

19

20

4

# FOX HORAN & CAMERINI LLP

825 THIRD AVENUE
NEW YORK. NEW YORK 10022

ATTORNEYS AND COUNSELLORS
AT LAW

TELEPHONE: (212) 480-4600
TELECOPIERS: (212) 269-2383
(212) 709-0248

February 5, 2015

Via Email: Flores.Miguel@dol.gov

Mr. Miguel Flores
Wage and Hour Technician
Los Angeles District Office
U.S. Department of Labor
Wage and Hour Division
915 Wilshire Boulevard, Suite 960
Los Angeles, CA 90017-3446

Re:  **Mr. MAJID VARESS Claim For DOL To Compel Payment of Back Wages Of At Least $109,385.58 As Total Unpaid Salary By E-3 Visa Employer PERSIAN BROADCAST SERVICE GLOBAL INC.**

Dear Mr. Flores:

1.      I write further to our December 9, 2014 phone call, and also the attached emails between us that followed our call.  Most recently, you emailed me that you submitted the LCA documents (which you had asked me to send you) to the manager in charge, and that you would be following up with me on this unusually large claim for payment of back wages arising from massive underpayment by the employer of the salary legally required under DOL regulations.

         In order to assist you and the manager with the follow-up, I am submitting this letter to provide additional documents and facts in further support of the back wages claim of Mr. Majid Varess to rectify the salary underpayment in the total amount of at least $109,385.58 by his E-3 Visa employer, Persian Broadcast Service Global Inc. a/k/a Pars TV ("Persian Broadcast").

         As mentioned in our December 9 call, I represent Mr. Varess as his U.S. attorney in pursuing his back wages claim against Persian Broadcast with your Wage and Hour Division office of DOL.  Attached is a copy of the signed legal representation agreement showing Mr. Varess's engagement of my firm and me in that formal capacity.

2.      Mr. Varess was granted an E-3 (Australian) nonimmigrant Visa based on the Labor Condition Application ("LCA") submitted by the employer Persian Broadcast. This LCA was signed by Mr. Amir Shadjareh as President of Persian Broadcast (on September 8, 2011), and was certified by signature of Mr. William M. Carlson of DOL (also on September 8, 2011), for the two-year period of 09/12/2011 to 09/12/2013.  A copy of that LCA is attached (as previously sent to you), together with a copy of Mr. Varess's E-3 Visa as correspondingly issued.

U.S. Department of Labor
Wage and Hour Division
February 5, 2015
Page 2 of 7

     After two years of work under that E-3 Visa, Mr. Varess's employment was continued by
Persian Broadcast, under the same E-3 Visa status, on the basis of "Continuation of previously
approved employment without change with the same employer". This was done pursuant to a
second LCA, as likewise signed by Mr. Shadjareh (on September 4, 2013), and as likewise
certified by signature of Mr. Carlson (on August 30, 2013), for the additional two-year period of
09/12/2013 to 09/12/2015. A copy of that second LCA is attached (as previously sent to you).
Also attached is a copy of the page from Mr. Varess's Australian Passport as correspondingly
stamped officially (by U.S. DHS Customs and Border Protection) to show extension of his E-3
Visa to September 2, 2015.

3.    Both LCAs specified that Mr. Varess's employment was for a "full-time position" with
Persian Broadcast, having its address at 18720 Oxnard Street, No. 102, Tarzana, California
91356. It is my understanding that such employer address is within the jurisdiction of your
District Office. Persian Broadcast's phone numbers are 818-881-5800 and 818-776-1061 (please
ask for Mr. Amir Shadjareh as President). Its email address is info@pars.tv.

     Mr. Varess's position was "TV Producer and Reporter" as stated on the two LCAs. He
was responsible for making and presenting two 90-minute television shows every week. Mr.
Varess performed all the tasks needed for that to be done, including the writing, editing,
directing, narrating, presenting, interviewing, shooting, etc. In addition, Mr. Varess provided
live commentary on certain sports events, often requiring him to be at a studio at odd hours (like
3 to 6 am) due to international time differences. Further, Mr. Varess provided guidance and
advice on other shows to be broadcast on Pars TV. All of this together entailed a 70+ hour
workweek for Mr. Varess during the time he worked at Persian Broadcast.

     As can be seen from the two LCAs, Mr. Varess's annual salary was raised from $45,000
for the first two-year period to $60,000 for the second two-year period, a 33.3 percent salary
increase. Mr. Varess's work for Persian Broadcast was apparently satisfactory to his employer
Persian Broadcast for the first two-year LCA period. The employer would not have applied for a
"Continuation" of Mr. Varess's E-3 Visa, and given him a 33.3 percent salary increase, if Mr.
Varess's work had not been satisfactory.

4.    As further detailed below, the substantial salary underpayments of Mr. Varess by Persian
Broadcast during the first two-year LCA period (with respect to the salary specified in the first
LCA), continued into the second LCA period (with respect to the increased salary specified in
the second LCA). The result was that Mr. Varess saw the total amount of his salary
underpayments being significantly increased, instead of being reduced, over the course of his
employment. There was no catching up, only more falling behind, and by cumulatively
increasing amounts.

     On July 11, 2014, ten months into Mr. Varess's work for Persian Broadcast under the
second LCA, Mr. Shadjareh sent Mr. Varess a text message confirming what he had told Mr.
Varess by phone the previous day: that Persian Broadcast would no longer provide Mr. Varess

U.S. Department of Labor
Wage and Hour Division
February 5, 2015
Page 3 of 7

with any salary at all. Mr. Varess then made the decision to cease work for Persian Broadcast on the grounds of (i) past salary underpayment by the employer for work performed, and (ii) stated intention by the employer not to pay any salary for future work. As a factual and legal matter, Mr. Varess's employment was constructively terminated by Persian Broadcast by virtue of the stated intention to cease paying him any salary.

Mr. Varess's final day of work was three days later, on July 14, 2014, when he presented one last show on Persian Broadcast. Since then, Mr. Varess has neither resided in the U.S. nor worked for any U.S. employer. Mr. Varess currently resides in Australia, the country of his nationality and domicile. Because Mr. Varess has not been living in (and remains at such a distance from) the U.S., he has retained my firm and me to pursue his back wages payment claim with DOL against Persian Broadcast and Mr. Shadjareh.

5.     By way of additional detail, Mr. Varess's salary was to be paid on a monthly basis. Within the two LCA periods, however, (i) Persian Broadcast skipped entirely a number of monthly salary payments, and (ii) there was not a single month as to which Persian Broadcast paid Mr. Varess the monthly salary amount in accordance with the annual salary specified in the two LCAs.

Further, Persian Broadcast never made any later monthly or other payment that included additional money to make up for any skipped month or for any prior month's shortfall. Also, the monthly salary actually paid (for the months in which Mr. Varess was paid) varied in amount each month, often by significant differences. These payments were all made by company check (without any pay stubs or W-2's ever being provided to Mr. Varess, and without any deductions for benefits or anything else).

6.     All of these unlawful actions and omissions were done and handled directly by Mr. Shadjareh. For those and other reasons, the back wages claim is also being asserted against Mr. Shadjareh directly and as an individual. It is clear from the facts of Mr. Shadjareh's interactions with his employees (including Mr. Varess), and also with other third parties and with the public, that Mr. Shadjareh acts as the owner and controlling operator of Persian Broadcast (whatever may be the technicalities of the ownership structure). With Persian Broadcast being treated by Mr. Shadjareh as his alter ego and his personal fiefdom, the full liability imposed by DOL on Persian Broadcast for Mr. Varess's back wages should be imposed in parallel, jointly and severally, against Mr. Shadjareh individually.

This personal liability of Mr. Shadjareh for back wages is critically important in case Mr. Shadjareh is tempted to put Persian Broadcast into bankruptcy in order to try to avoid the back wages claim by Mr. Varess. In that connection, when Mr. Varess pressed Mr. Shadjareh for salary payment in the days before Mr. Varess ceased his work, Mr. Shadjareh sent a reply text message saying that Mr. Shadjareh would have to "shut down" the television station if Persian Broadcast's money were used to pay salary to Mr. Varess.

U.S. Department of Labor
Wage and Hour Division
February 5, 2015
Page 4 of 7

7.     The total back salary claim is $109,358.58, calculated as follows. During the first LCA period, with Mr. Varess's annual salary at $45,000, Persian Broadcast paid him only $20,581.00. Since Mr. Varess worked during that period from September 8, 2011 through September 3, 2013, Mr. Varess should have been paid a total of $89,630.14. The result is that Mr. Varess was shorted on salary for the first LCA period by $69,049.14.

During the second LCA period, with Mr. Varess's annual salary officially raised to $60,000, Mr. Varess worked from September 4, 2013 through July 14, 2014. On that basis, Mr. Varess should have been paid a total of $51,616.44 for those second LCA period days he worked, but in fact was paid a total of only $11,280.00. The result is that Mr. Varess was shorted on salary for the work he did during the second LCA period by $40,336.44.

The resulting combined shorting on salary for both LCA periods – through the July 14, 2014 date of constructive termination of Mr. Varess's employment – is therefore $109,385.58. That salary shorted total comes to more than 77 percent of what Mr. Varess was supposed to be paid under the two LCAs through that termination date. In other words, Mr. Varess was paid less than 23 percent of his DOL approved salary for the work he performed.

8.     It is worth noting that – because Mr. Varess was forced out (due to ceasing of all salary) – from his second two-year LCA period employment less than halfway through it, Mr. Varess would be justified in claiming the entire $108,720 salary shortfall for the second LCA period. (2 years at $60,000 per year is $120,000, minus $11,280.03 salary actually paid during second LCA period, means he did not receive $108,720 of $120,000 he was supposed to be paid during second LCA period.)

This would bring Mr. Varess's total salary claim against Persian Broadcast to $177,769.14 ($69,049.14 plus $108,720). On that basis, Mr. Varess was paid barely more than 15 percent of the salary he was supposed to receive over the four years of the two LCAs. Seeing this as the full picture, the violations of DOL regulations by Persian Broadcast are so blatant, egregious and financially extensive (both in absolute dollars and percentages) that DOL would be justified in compelling them to pay Mr. Varess that $177,769 amount (plus applicable interest).

9.     It is now up to Mr. Shadjareh to demonstrate factually (with backup documents) to DOL exactly how much salary Persian Broadcast did in fact pay Mr. Varess during those two LCA periods. In that connection Persian Broadcast, as a U.S. and California employer, is legally required to keep full and accurate records of payments to employees. We respectfully request that your office, as part of its investigation, make demand on Persian Broadcast and Mr. Shadjareh to produce and provide your office promptly with the records of their salary payments to Mr. Varess during those two LCA periods of employment.

This is an evidently massive financial violation of the two LCAs by Persian Broadcast and Mr. Shadjareh, especially as to one individual employee, and for so long a period of

U.S. Department of Labor
Wage and Hour Division
February 5, 2015
Page 5 of 7

employment under a nonimmigrant visa. As the aggrieved employee party, Mr. Varess hereby
respectfully requests that this material violation be investigated by DOL; that DOL compel
Persian Broadcast (and Mr. Shadjareh individually, on a joint and several basis) to pay Mr.
Varess the $109,385.58 as back wages owed (and to seriously consider compelling them to pay
the full $177,769.14 for the reasons set out above); and that DOL take such additional actions as
may be appropriate (including but not limited to awarding interest and expenses to Mr. Varess).

10.     For your additional background information, Mr. Varess has been persistently trying to
persuade Persian Broadcast (*i.e.*, Mr. Shadjareh) to pay the committed salaries, as specified in
the LCAs, since Persian Broadcast first started shorting him on salary, and then skipping some
monthly salary payments entirely, during the first LCA period. These efforts continued into the
second LCA period. In response, Mr. Shadjareh always claimed Persian Broadcast's inability to
pay due to lack of adequate funds, while promising the back pay once Persian Broadcast was in a
better financial position.

        It was only after these repeated unsuccessful efforts during and after his employment that
Mr. Varess finally turned to me (contacting me from his current residence in Australia) to pursue
his recourse through DOL in order to compel full payment to him by Persian Broadcast and Mr.
Shadjareh of the massive back wages that are clearly owed. At that point, I first sent Persian
Broadcast (Mr. Shadjareh) a formal "last clear chance" letter urging them to pay the back salary,
and saying that I would lodge a formal complaint with DOL on Mr. Varess's behalf if they did
not make the payment by a stated reasonable deadline. The responses on behalf of Persian
Broadcast (through Mr. Shadjareh) were entirely fruitless, resulting in no payment whatsoever –
not even a promise of any payment in any amount.

11.     Understandably it may be asked why Mr. Varess put up with this massive, ongoing salary
underpayment situation for so long. The reason was that, for Mr. Varess, his work as a "TV
Producer and Reporter" (see attached LCAs) for a television station strongly critical of the
current regime in Iran – producing programs addressed to Persian speakers in the U.S. and
worldwide – was a labor of love for Mr. Varess, in addition to being a paid employment
position. Persian Broadcast serves the free Iranian community throughout the world, and Mr.
Varess was enthusiastic and proud to apply his professional skills and experience to be a part of
that broadcast service in the commendable cause of freedom for Iran and Iranians. However, Mr.
Varess never signed on with Persian Broadcast on the basis that his devotion to his employer's
mission meant that payment of less than the LCA committed salary was acceptable.

        Persian Broadcast, through Mr. Shadjareh, took grossly unfair advantage of Mr. Varess's
commitment to his job and to his employer's mission. All efforts to have the salary
underpayments rectified by Persian Broadcast and Mr. Shadjareh – including those efforts first
undertaken by Mr. Varess himself, and then undertaken by me on his behalf – have been either
ignored or rudely brushed aside by Persian Broadcast and Mr. Shadjareh.

U.S. Department of Labor
Wage and Hour Division
February 5, 2015
Page 6 of 7

12.    It is of vital importance to note that Persian Broadcast, via Mr. Shadjareh, has already admitted in writing that it shorted Mr. Varess on the LCA specified salary amounts. For example, a string of texts between Mr. Varess and Mr. Shadjareh from July 11-14, 2014 included the following statements: From Mr. Varess – "You didn't make payment today either." Then again from Mr. Varess – "No payment has been received." Then followed up by Mr. Varess – "I don't know how you can tell that you will not pay me a salary. You can't." The reply from Mr. Shadjareh – "… I have to pay salaries at the end of each month, when I have no money what am I supposed to do? If I have to, I will close down the TV [station]…."

This long continuing negative and evasive response pattern from Persian Broadcast and Mr. Shadjareh persisted despite the specific written and spoken warnings given to them that their failure to pay the LCA committed salary was in serious violation of DOL regulations. It is evident that Persian Broadcast and Mr. Shadjareh do not care the slightest about that.

As evidence of this, when Mr. Varess sent Mr. Shadjareh a letter demanding his back salary, Mr. Shadjareh replied with an August 26, 2014 email saying: "I hope you're joking, and if you're not, frankly it's not a very funny joke." For Persian Broadcast and Mr. Shadjareh, the laws of the U.S. and the regulations of DOL are no more than a "joke."

13.    Reflecting upon this extraordinary situation as an attorney practicing for decades, I find it astonishing that Mr. Shadjareh and his company Persian Broadcast have shown, and continue to show, such open and utter contempt for, and complete disregard (i) of DOL regulations applicable to the legal structure of the nonimmigrant foreign worker visa program, (ii) of the DOL regulatory process, and (iii) of your administering agency.

The American public is the general aggrieved victim of these legal violations by Persian Broadcast and Mr. Shadjareh, while Mr. Varess is the aggrieved individual victim who has suffered the most direct financial damage as a result. The fundamental integrity of the nonimmigrant foreign worker visa program, and of the process administered by DOL for that program, will be degraded if Persian Broadcast and Mr. Shadjareh are permitted to get away with this.

May I respectfully suggest that – considering the factor of future general deterrence, and given the massive dollar amount of the total salary shorting – if ever there were a case for DOL to make an example of a blatant LCA violator, this is the case for doing it.

*        *        *

Copies of the quoted and described texts and emails are attached – in English as translated from the also attached Persian versions.

Kindly address your communications to me concerning this matter. For your information, Mr. Varess's current address and contact information are as follows:

U.S. Department of Labor
Wage and Hour Division
February 5, 2015
Page 7 of 7

Address:

Kurraba Point,
Australia

Telephone: +61 2 9904 9931 or +61 416 350 940
Email: mvaress@yahoo.com

If you wish (as I mentioned in our phone call), I can prepare, sign and submit, on behalf of Mr. Varess as his legal counsel, a Form WH-4. This letter and its attachments could then serve as the "Description of facts and circumstances" referred to in item 8 of the Form WH-4. In the event you wish me to do that, kindly let me know if there are any required additional procedures and documents necessary in order for legal counsel such as myself to proceed in that manner.

Thank you for your kind consideration.

Sincerely,

Norman J. Resnicow

Attachments
cc: Mr. Majid Varess (via email to mvaress@yahoo.com)

SER-22

12:48 PM
05/26/15
Accrual Basis

# PERSIAN BROADCAST SERVICE GLOBAL INC.
## Find Report
### January through December 2014

| Type | Date | Num | Name | Memo | Account | Clr | Split | Debit | Credit | Balance |
|------|------|-----|------|------|---------|-----|-------|-------|--------|---------|
| **Jan - Dec 14** | | | | | | | | | | |
| Check | 7/11/2014 | 11272 | Majid Vares | | 1 · Wilshire S... | X | 0 · Cont... | | 1,200.00 | -1,200.00 |
| Check | 6/9/2014 | 11174 | Majid Vares | | 1 · Wilshire S... | X | 0 · Cont... | | 1,200.00 | -2,400.00 |
| Check | 5/14/2014 | 11136 | Majid Vares | | 1 · Wilshire S... | X | 0 · Cont... | | 900.00 | -3,300.00 |
| Check | 5/12/2014 | 11114 | Majid Vares | | 1 · Wilshire S... | X | 0 · Cont... | | 300.00 | -3,600.00 |
| Check | 4/18/2014 | 11027 | Majid Vares | | 1 · Wilshire S... | X | 0 · Cont... | | 1,200.00 | -4,800.00 |
| Check | 3/19/2014 | 11002 | Majid Vares | | 1 · Wilshire S... | X | 0 · Cont... | | 1,200.00 | -6,000.00 |
| Check | 2/18/2014 | 4961 | Majid Vares | | 2 · Center Ba... | X | 0 · Cont... | | 1,500.00 | -7,500.00 |
| Check | 1/21/2014 | 10835 | Majid Vares | | 1 · Wilshire S... | X | 0 · Cont... | | 1,500.00 | -9,00 |
| **Jan - Dec 14** | | | | | | | | 0.00 | 9,000.00 | -9,000.0 |



**PERSIAN BROADCAST SERVICE GLOBAL INC**
18720 OXNARD ST #102
TARZANA CA 91356
(818)881-5800

10835

DATE 1 · 9 · 14

PAY TO THE ORDER OF Majid Vakass $ 1500 xx/100

Fifteen hundred DOLLARS

WILSHIRE BANK
DOWNTOWN BRANCH
LOS ANGELES, CA

FOR

[redacted]

Page 2/2

BBCN Bank

Current Date:                August 17, 2016

Account Number:
Capture Date:               February 18, 2014
Item Number:                5250227871799
Posted Date:                February 18, 2014
Posted Item Number:         250227871799
Amount:                     1,500.00
Record Type:                Debit

PERSIAN BROADCAST SERVICE GLOBAL INC.
DBA PARS TV NET WORK
18720 OXNARD ST., # 102 818-881-6900
TARZANA, CA 91356                                      4961

BBCNBank

Seq: 59
Batch: 771791
Date: 02/14/14

Seq:90059 02/14/14
BAT:771791 CC:3182004195
WT:01 LTPS:Los Angeles
BC:Porter Ranch BC CA1-212

FEDERAL RESERVE BOARD OF GOVERNORS REG. CC



ACCOUNT:

PAGE 15   of 17

#11002  3/19/14          $1,200.00



1SEARCH REPORT

*Date : 08/17/2016
*Page : 1 of 1

*Period:01/01/2014-08/17/2016    *AcctNo:▮    *Chk.No:11027~11027    *Issued only.
Item Seq. 810023254
Check#: 11027                                    UDI: 20140416000000940023264000000000007  Proc.Date: 04/16/2014
Amount: $1,200.00                                RouteNo: 122038251                          IssueType: Issued
TrnCode: 52                                      AcctNo: ▮                                    Credit Offset: 1101601090
                                                 Account Name: PERSIAN BROADCAST SERVICE

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

PERSIAN BROADCAST SERVICE GLOBAL INC                                                 11027
18720 OXNARD ST #102
TARZANA CA 91356
(818)881-6000

DATE 04 01 2014

PAY
TO THE    Majid    Yaves
ORDER OF

$ 12,00

One    thousand    two    hundred    DOLLARS

W WILSHIRE BANK
DOWNTOWN BRANCH
401 E. 3RD ST. #211
LOS ANGELES, CA 90013
213-289-6700 OR fax 465-2391

NOT NEGOTIABLE

NEGOTIABLE NOT NEGOTIABLE NOT

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

Seq: 127
Batch: 381697
Date: 04/16/14

Seq:#127  04/16/14
BAT: 381697 CC: 818681606
Wi:81 LTPS:Los Angeles
BC: Parkes Beach BC, CAT.212

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

Total Number of    Search Scope : 1
                   Printed Scope : 1

MFVIEWS1R1

WILSHIRE BANK

AUG. 17. 2016  1:50PM  WILSHIRE STATE BANK

NO. 0174  P. 2

## SEARCH REPORT

| | |
|---|---|
| * Date : | 08/17/2016 |
| * Page : | 1 of 1 |

*Period:01/01/2014~08/17/2016  *AcctNo:▮▮▮  *Chk.No:11114~11114  *Issued only.

Item Seq. 910035857

DDI: 2014051200000910031⌐85700000000097;

Check#: 11114
Amount: $300.00
TranCode: 52

RouteNo: 122036251
AcctNo: ▮▮▮▮
Account Name: PERSIAN BROADCAST SERVICE

Proc.Date: 05/12/2014
IssueType: Issued
Credit Offset: 1101601090

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

PERSIAN BROADCAST SERVICE GLOBAL INC
18720 OXNARD ST #102
TARZANA CA 91356
(818)881-5300

11114
18-3123-3220
22

DATE 05-07 14

PAY
TO THE
ORDER OF  Majid Vares

$ 300.00/100

Three hundred                                      DOLLARS

WILSHIRE BANK
DOWNTOWN BRANCH
401 E 11TH ST, #314
LOS ANGELES, CA 90015
213-368-7700 213-688-7612

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

Seq: 55
Batch: 273863
Date: 05/08/14

Seq:99855 05/08/14
BAT:273863 CC:313960841P
WT:01 LTPS:L49 Model#:
BO:Sherman Oaks BC CAB-131

Majid Vares
0001420022508

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

Total Number of           Search Scope : 1                    Printed Scope : 1

STMFVIEWS1R1

WILSHIRE BANK

ASEARCH REPORT

*Period:01/01/2014-08/17/2016  *AcctNo:
*Chk.No:11136-11136    *Issued only.
Item Seq. 910002288                                    * Date : 08/17/2016
                                                       * Page : 1 of 1
Check#: 11136
Amount: $900.00
TranCode: 52
UDI: 201:051400000091000228800000000007;  Proc.Date: 05/14/2014
RouteNo: 122038251
AcctNo:                              IssueType: Issued
Account Name: PERSIAN BROADCAST SERVICE   Credit Offset: 1101601000

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

PERSIAN BROADCAST SERVICE GLOBAL INC
18720 OXNARD ST #102
TARZANA CA 91356
(818)831-8300                                          11136

                                                       16 78:31/770
                                                          07

PAY
TO THE
ORDER OF                              DATE 5-12-14

                                                       $ 900

            WILSHIRE BANK                          DOLLARS

OR NEGOTIABLE NOT NEGOTIABLE NOT

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

                                          Seq: 47
                                          Batch: 415981
                                          Date: 05/12/14

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT
Total Number of    Search Scope : 1                    Printed Scope : 1

MPVIEWSIRI

WILSHIRE BANK

SEARCH REPORT

*Period:01/01/2014-08/17/2016  *AcctNo:⬛⬛  *Chk.No:11174~11174  *Issued only.  * Date : 08/17/2016
                                                                                  * Page : 1 of 1

Item Seq. S10004551

Check#: 11174                         UDI: 2016089000000091000495100000000007:  Proc.Date: 06/09/2014
Amount: $1,200.00                     RouteNo: 1220 8281                          IssueType: Issued
TranCode: 82                          AcctNo:                                     Credit Offset: 1101601090
                                      Account Name: PERSIAN BROADCAST SERVICE

PERSIAN BROADCAST SERVICE GLOBAL, INC          11174
18720 OXNARD ST #102
TARZANA CA 91356
(818)881-8800

DATE _6__4_.14___

PAY TO THE ORDER OF _____

_____  $ 120__

DOLLARS

WILSHIRE BANK

Seq: 289
Batch: 397679
Date: 06/05/14

Total Number of          Search Scope : 1

Printed Scope : 1

STMFVIEWS1R1

WILSHIRE BANK

SEARCH REPORT

| | | | | • Date : | 08/17/2016 |
|---|---|---|---|---|---|
| *Period:01/01/2014-08/17/2016 | *AcctNo: ▮▮▮ | *Chk.No:11272-11272 | *Issued only. | • Page : | 1 of 1 |

| Item Seq. 910041146 | UDI: 201407110000091004114900000000007 | Pros.Date: 07/11/2014 |
|---|---|---|
| Checks: 11272 | RmtkNo: 122036281 | IssueType: Issued |
| Amount: $1,200.00 | AcctNo: ▮▮▮▮ | Credit Offset: 1101601090 |
| TranCode: 52 | Account Name: PERSIAN BROADCAST SERVICE | |

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

**PERSIAN BROADCAST SERVICE GLOBAL INC**          11272
18730 OXNARD ST #102
TARZANA CA 91356
(818)881-5800                                     16-2625/1220
                                                     07

DATE 7.   _____

PAY TO THE ORDER OF _____ _____ _____      $ 1200 —

_____ ___ ___ _____                               DOLLARS

**WILSHIRE BANK**
DOWNTOWN BRANCH
420 N. PEPPER #311
LOS ANGELES, CA 90013
213-385-7700 OR 800-808-3308

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NO

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

Seq: 290
Batch: 787669
Date: 07/16/14

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

| Total Number of | Search Scope : 1 | | Printed Scope : 1 |
|---|---|---|---|

12:49 PM
06/26/15
Accrual Basis

**PERSIAN BROADCAST SERVICE GLOBAL INC.**
**Find Report**
January through December 2013

| Type | Date | Num | Name | Memo | Account | Clr | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| Jan - Dec 13 | | | | | | | | | | |
| Check | 12/13/2013 | 10339 | Majid Vares | | Wilshire S... | X | Cont... | | 1,000.00 | -1,000.00 |
| Check | 12/13/2013 | 10738 | Majid Vares | | Wilshire S... | X | Cont... | | 1,260.00 | -2,260.00 |
| Check | 11/6/2013 | 10338 | Majid Vares | | Wilshire S... | X | Cont... | | 1,000.00 | -3,280.00 |
| Check | 11/4/2013 | 10674 | Majid Vares | | Wilshire S... | X | Cont... | | 893.00 | -4,173.00 |
| Check | 10/9/2013 | 10337 | Majid Vares | | Wilshire S... | X | Cont... | | 1,000.00 | -5,173.00 |
| Check | 9/6/2013 | 10336 | Majid Vares | | Wilshire S... | X | Cont... | | 1,000.00 | -6,173.00 |
| Check | 8/3/2013 | 10335 | Majid Vares | | Wilshire S... | X | Cont... | | 1,000.00 | -7,173.00 |
| Check | 7/5/2013 | 10334 | Majid Vares | | Wilshire S... | X | Cont... | | 2,300.00 | -9,473.00 |
| Check | 6/19/2013 | 10292 | Majid Vares | | Wilshire S... | X | Cont... | | 1,000.00 | -10,473.00 |
| Check | 5/31/2013 | 10228 | Majid Vares | | Wilshire S... | X | Cont... | | 1,000.00 | -11,473.00 |
| Check | 3/11/2013 | 10057 | Majid Vares | | Wilshire S... | X | Cont... | | 1,000.00 | -12,473.00 |
| Jan - Dec 13 | | | | | | | | 0.00 | 12,473.00 | -12,473.00 |

9595

☐ VOID  ☐ CORRECTED

| PAYER'S name, street address, city or town, province or state, country, ZIP or foreign postal code, and telephone no. | | OMB No. 1545-0115 | |
|---|---|---|---|
| PERSIAN BROADCAST SERVICE GLOBAL INC. 18720 OXNARD STREET # 102 TARZANA, CA 91356 818-881-5800 | 1 Rents $ | **2013** | Miscellaneous Income |
| | 2 Royalties $ | | |
| | 3 Other income $ | Form **1099-MISC** | |

| PAYER'S federal identification number | RECIPIENT'S identification number | 4 Federal income tax withheld $ | Copy A |
|---|---|---|---|
| ████8181 | ████7696 | 5 Fishing boat proceeds $ | 6 Medical and health care payments $ | **For Internal Revenue Service Center** |

RECIPIENT'S name

Majid Vares

| 7 Nonemployee compensation $  12473.00 | 8 Substitute payments in lieu of dividends or interest $ | File with Form 1096. |
|---|---|---|

Street address (including apt. no.)

18720 OXNARD ST #102

| 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ► ☐ | 10 Crop insurance proceeds $ | For Privacy Act and Paperwork Reduction Act Notice, see the 2013 General Instructions for Certain Information Returns. |
|---|---|---|

City or town, province or state, country, and ZIP or foreign postal code

TARZANA CA 91356

| 11 Foreign tax paid $ | 12 Foreign country or U.S. possession |
|---|---|

Account number (see instructions)                    ☐ 2nd TIN not.

| 13 Excess golden parachute payments $ | 14 Gross proceeds paid to an attorney $ |
|---|---|

| 15a Section 409A deferrals $ | 15b Section 409A income $ | 16 State tax withheld $ ............ $ ............ | 17 State/Payer's state no. ............ | 18 State income $ ............ $ ............ |
|---|---|---|---|---|

Form **1099-MISC**

39-2908903

Department of the Treasury - Internal Revenue Service

SEARCH REPORT

*Period:01/01/2013-12/31/2014 *AcctNo:7324332 *Chk.No:10334-10340 *Issued and Deposited. Date: 07/13/... Page: 1 of 2

Item Seq. 913544426 UDI: 20130705000000913584442600000000007

PERSIAN BROADCAST SERVICE GLOBAL INC
10334
WILSHIRE STATE BANK
[redacted]

Proc.Date: 07/05/2013
Check#: 10334
Amount: $2,300.00
TranCode: 52
IssueType: Issued
RouteNo: 122038251
AcctNo: [redacted]
Crd.Offset: 0
AcctName: PERSIAN BROADCAST SERVICE

Item Seq. 910792057 UDI: 20130812000000910792057000000000007

PERSIAN BROADCAST SERVICE GLOBAL INC
10335
WILSHIRE STATE BANK
[redacted]

Proc.Date: 08/12/2013
Check#: 10335
Amount: $1,000.00
TranCode: 52
IssueType: Issued
RouteNo: 122038251
AcctNo: [redacted]
Crd.Offset: 0
AcctName: PERSIAN BROADCAST SERVICE

Item Seq. 913690253 UDI: 20130906000000913690253000000000007

PERSIAN BROADCAST SERVICE GLOBAL INC
10336
WILSHIRE STATE BANK
CREDITED TO THE ACCOUNT WITHIN NAMED PAYEE
[redacted]

Proc.Date: 09/06/2013
Check#: 10336
Amount: $1,000.00
TranCode: 52
IssueType: Issued
RouteNo: 122038251
AcctNo: [redacted]
Crd.Offset: 0
AcctName: PERSIAN BROADCAST SERVICE

Item Seq. 917535901 UDI: 20131009000000917535901000000000007

PERSIAN BROADCAST SERVICE GLOBAL INC
10337
WILSHIRE STATE BANK
[redacted]

Proc.Date: 10/09/2013
Check#: 10337
Amount: $1,000.00
TranCode: 52
IssueType: Issued
RouteNo: 122038251
AcctNo: [redacted]
Crd.Offset: 0
AcctName: PERSIAN BROADCAST SERVICE

STMFVIEWS4R1

WILSHIRE BANK

MAY 18 2016   4:45PM   L...E STATE-BANK...   NO. 7654   P. 7



RESEARCH REPORT

Period:01/01/2013-12/31/2013   Account No: ****3332   Check No:*****334-*10340   Matched and

Date : 05/18/2016
Page : 3 of 2

Deposited.

| Item Seq. 913042534 | UDI: 20131130000001204259000002000097 | From.Date: 11/08/2013 |
| | | Check#: 10334 |
| | | Amount: $1,000.00 |
| | | TranCode: 57 |
| | | IssueType: Issuer |
| | | RouteNo: 122038425) |
| | | Acct No: |
| | | Ord.Offset: |
| | | AcctName: PERSIAN BROADCAST SERVICE |

| Item Seq. 917035281 | UDI: 20131213000009170332810000000097 | Pstd.Date: 12/13/2013 |
| | | Check#: 10339 |
| | | Amount: $1,000.00 |
| | | TranCode: 52 |
| | | IssueType: Issued |
| | | RouteNo: 122038425) |
| | | AcctNo: |
| | | Ord.Offset: 0 |
| | | AcctName: PERSIAN BROADCAST SERVICE |

Total Number of        Search Scope : 6                           Printed Scope : 6

STMFVIEWS4R1                                                              WILSHIRE BANK

OCT 23, 2014  5:31PM    WILSHIRE STATE BANK                              NO

ASEARCH REPORT

*Period:10/01/2013-12/31/2013   *AcctNo:          *Chk.No:10338-10339   *Issued only.
  Item Seq: 017632131                    UDI: 2013121390000917033281000000000071  Proc.Date: 12/13/2013
  Checks: 10339                          RouteNo: 122038251                         IssueType: Issued
  Amount: $1,000.00                      AcctNo:                                    Credit Offset: 0
  TranCode: 59                           Account Name: PERSIAN BROADCAST SERVICE

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

PERSIAN BROADCAST SERVICE GLOBAL INC                                    10339
            18720 OXNARD ST #102
            TARZANA CA 91356
            (818)881-5500
                                            DATE  12.3.13

PAY
TO THE      Majid Veres                                            |  $ 1000
ORDER OF
one thousand                                                      ____ DOLLARS

WILSHIRE STATE BANK
   DOWNTOWN BRANCH
   404 S. 14TH ST #211
   LOS ANGELES, CA 90015
   213-368-7200 OR 800-968-2265

FOR                    NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NO

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

                                            Seq: 36
                                            Batch: 082357
                                            Date: 12/11/13

            Seq:00036 12/11/13
            BAT:082357 CC:3188088976
            WT:81 LTPS:Los Angeles
            BC:Rescoe-Winnetka,GC,CA2-162

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT
Total Number of        Search Scope : 2                    Printed Scope : 2

STMRVIEWS1R1                                                            WILSHIRE BANK

SER-36





OCT 23 2014  3:30PM   WILSHIRE STATE BANK                    NO.

SEARCH REPORT

Period: 07/01/2013-10/31/2013    Acct No:          Chk.No:10336-10335   Issued only.                    Page

Item Seq. #17593801
Check#: 10337                                          UDI: 20131009600000091753530100C00000000    Proc.Date: 10/09/2012
Amount: $1,000.00                                        RouteNo:                                      IssueType: Issued
TranCode: 31                                             AcctNo:                                       Credit Offset: C
                                                         Account Name:      BROADCAST SERVICE

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

PERSIAN BROADCAST SERVICE GLOBAL INC                                           10337
     18720 OXNARD ST #102
     TARZANA CA 91356
     (818)881-6800                                                            15-391/1216
                                                          DATE 10-3-13           07

PAY
TO THE
ORDER OF   rapid  Votes                                              $ 1000 —

one  thousand                                                          DOLLARS

WILSHIRE STATE BANK
DOWNTOWN BRANCH
401 E 11TH ST #219
LOS ANGELES, CA 90019
213 304-3120 OR 800 850-3798

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

                                           Seq: I02
                                           Batch: 320423
                                           Date: 10/07/13

     Seq:98902 10/07/13
     DAT:320423 CC:3188000989
     WI:21 LTPS:Los Angeles
     BC:Devonshire-Reseda DC CA5-157

Credited To The Account Of
The Within Named Payee
Endorsement Guaranteed
Bank of America, N.A.

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

Total Number of          Search Scope : 2                        Printed Scope : 2

STMFVIEW51R1                                                                      WILSHIRE BANK

SER-40

DEC 29 2014  5:39PM   WILSHIRE STATE BANK                          NO.

1SEARCH REPORT

*Period:13/01/2013-12/31/2013   *AcctNo:█████   *Chk.No.10338-10339   *Issued only          * Page :      - -1 -

| Item Seq: 913242536 | UDI : 20151135000000913043534000000320007 | Proc.Date: 11/06/2013 |
| Checks: 10338 | RouteNo: 122038251 | IssueType: Issued |
| Amount: $1,000.00 | AcctNo: | Credit Offset: 0 |
| TranCode: 82 | Account Name:     CADCAST SERVICE |

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

PERSIAN BROADCAST SERVICE GLOBAL INC                         10338
18720 OXNARD ST #102
TARZANA CA 91356
(818)881-5800
                                                    DATE  11 . 3 . 13

PAY
TO THE
ORDER OF  _edej'd refe.s_                                      $ 1000⁰⁰

_one He Sd_                                           DOLLARS

WILSHIRE STATE BANK
DOWNTOWN BRANCH
408 E 16TH ST, #211
LOS ANGELES, CA 90015
213-387-7700 OR 866-586-2778

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

                                         Seq: 90
                                         Batch: 489307
                                         Date: 11/04/13

        Seq.00090 11/04/13
        BAT:489307 CC:3188900389
        WT:01 LIPS:Los Angeles
        HC:Devonshire-Reseda EC CA5-157

NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT NEGOTIABLE NOT

ST34FVIEWS1R1                                                    WILSHIRE BANK

OMB Approval: 1205-0310
Expiration Date: 01/31/2012

Labor Condition Application for Nonimmigrant Workers
ETA Form 9035 & 9035E
**U.S. Department of Labor**



**Electronic Filing of Labor Condition Applications
For The H-1B Nonimmigrant Visa Program**

This Department of Labor, Employment and Training Administration (ETA), electronic filing system enables an employer to file a Labor Condition Application (LCA) and obtain certification of the LCA. This Form must be submitted by the employer or by someone authorized to act on behalf of the employer.

A) I understand and agree that, upon my receipt of ETA's certification of the LCA by electronic response to my submission, I must take the following actions at the specified times and circumstances:
- print and sign a hardcopy of the electronically filed and certified LCA;
- maintain a signed hardcopy of this LCA in my public access files;
- submit a signed hardcopy of the LCA to the United States Citizenship and Immigration Services (USCIS) in support of the I-129, on the date of submission of the I-129;
- provide a signed hardcopy of this LCA to each H-1B nonimmigrant who is employed pursuant to the LCA.

☑ Yes ☐ No

B) I understand and agree that, by filing the LCA electronically, I attest that all of the statements in the LCA are true and accurate and that I am undertaking all the obligations that are set out in the LCA (Form ETA 9035E) and the accompanying instructions (Form ETA 9035CP).

☑ Yes ☐ No

C) I hereby choose one of the following options, with regard to the accompanying instructions:

☑ I choose to have the Form ETA 9035CP electronically attached to the certified LCA, and to be bound by the LCA obligations as explained in this form

☐ I choose not to have the Form ETA 9035CP electronically attached to the certified LCA, but I have read the instructions and I understand that I am bound by the LCA obligations as explained in this form

| ETA Form 9035/9035E Attestation | **FOR DEPARTMENT OF LABOR USE ONLY** | | | Page 1 of 1 |
|---|---|---|---|---|
| Case Number: I-203-11244-040717 | Case Status: CERTIFIED | Period of Employment: 09/12/2011 | to 09/12/2013 | |

1

OMB Approval: 1205-0310
Expiration Date: 01/31/2012

**Labor Condition Application for Nonimmigrant Workers**
**ETA Form 9035 & 9035E**
**U.S. Department of Labor**



*Please read and review the filing instructions carefully before completing the ETA Form 9035 or 9035E. A copy of the instructions can be found at http://www.foreignlaborcert.doleta.gov/. In accordance with Federal Regulations at 20 CFR 655.730(b), incomplete or obviously inaccurate Labor Condition Applications (LCAs) will not be certified by the Department of Labor. If the employer has received permission from the Administrator of the Office of Foreign Labor Certification to submit this form non-electronically, ALL required fields/items containing an asterisk ( * ) must be completed as well as any fields/items where a response is conditional as indicated by the section ( § ) symbol.*

### A. Employment-Based Nonimmigrant Visa Information

| 1. Indicate the type of visa classification supported by this application *(Write classification symbol):* * | E-3 Australian |
|---|---|

### B. Temporary Need Information

| 1. Job Title * TV PRODUCER AND REPORTER | | |
|---|---|---|
| 2. SOC (ONET/OES) code * 27-2012 | 3. SOC (ONET/OES) occupation title * PRODUCERS AND DIRECTORS | |
| 4. Is this a full-time position? * | **Period of Intended Employment** | |
| ☑ Yes  ☐ No | 5. Begin Date * *(mm/dd/yyyy)* 09/12/2011 | 6. End Date * *(mm/dd/yyyy)* 09/12/2013 |

7. Worker positions needed/basis for the visa classification supported by this application

| 1 | Total Worker Positions Being Requested for Certification * |

Basis for the visa classification supported by this application
*(indicate the total workers in each applicable category based on the total workers identified above)*

| 1 | a. New employment * | 0 | d. New concurrent employment * |
|---|---|---|---|
| 0 | b. Continuation of previously approved employment * without change with the same employer | 0 | e. Change in employer * |
| 0 | c. Change in previously approved employment * | 0 | f. Amended petition * |

### C. Employer Information

| 1. Legal business name * PERSIAN BROADCAST SERVICE GLOBAL INC | | |
|---|---|---|
| 2. Trade name/Doing Business As (DBA), if applicable  N/A | | |
| 3. Address 1 * 18720 OXNARD ST | | |
| 4. Address 2  NO 102 | | |
| 5. City * TARZANA | 6. State * CA | 7. Postal code * 91356 |
| 8. Country * UNITED STATES OF AMERICA | 9. Province N/A | |
| 10. Telephone number * 8188815800 | 11. Extension  N/A | |
| 12. Federal Employer Identification Number (FEIN from IRS) * 8181 | 13. NAICS code (must be at least 4-digits) * 51512 | |

---

ETA Form 9035/9035E        **FOR DEPARTMENT OF LABOR USE ONLY**        Page 1 of 5

Case Number: ___I-203-11244-040717___  Case Status: ___CERTIFIED___  Period of Employment: ___09/12/2011___ to ___09/12/2013___

OMB Approval: 1205-0310
Expiration Date: 01/31/2012

Labor Condition Application for Nonimmigrant Workers
ETA Form 9035 & 9035E
U.S. Department of Labor



**D. Employer Point of Contact Information**

Important Note: The information contained in this Section must be that of an employee of the employer who is authorized to act on behalf of the employer in labor certification matters. The information in this Section must be different from the agent or attorney information listed in Section E, unless the attorney is an employee of the employer.

| 1. Contact's last (family) name * SHADJAREH | 2. First (given) name * AMIR | 3. Middle name(s) * N/A |
|---|---|---|

| 4. Contact's job title * PRESIDENT |
|---|

| 5. Address 1 * 18720 OXNARD ST |
|---|

| 6. Address 2 NO 102 |
|---|

| 7. City * TARZANA | 8. State * CA | 9. Postal code * 91356 |
|---|---|---|

| 10. Country * UNITED STATES OF AMERICA | 11. Province N/A |
|---|---|

| 12. Telephone number * 8188815800 | 13. Extension N/A | 14. E-Mail address INFO@PARSTV.TV |
|---|---|---|

**E. Attorney or Agent Information (If applicable)**

| 1. Is the employer represented by an attorney or agent in the filing of this application? * If "Yes", complete the remainder of Section E below. | ☑ Yes   ☐ No |
|---|---|

| 2. Attorney or Agent's last (family) name § KLUG | 3. First (given) name § NOAH | 4. Middle name(s) § EDEN |
|---|---|---|

| 5. Address 1 § 18401 VON KARMAN AVENUE |
|---|

| 6. Address 2 SUITE 255 |
|---|

| 7. City § IRVINE | 8. State § CA | 9. Postal code § 92612 |
|---|---|---|

| 10. Country § UNITED STATES OF AMERICA | 11. Province N/A |
|---|---|

| 12. Telephone number § 9492610209 | 13. Extension N/A | 14. E-Mail address NKLUG@FRAGOMEN.COM |
|---|---|---|

| 15. Law firm/Business name § FRAGOMEN DEL REY BERSEN & LOEWY LLP | 16. Law firm/Business FEIN § 132726464 |
|---|---|

| 17. State Bar number (only if attorney) § 4578050 | 18. State of highest court where attorney is in good standing (only if attorney) § NEW YORK |
|---|---|

| 19. Name of the highest court where attorney is in good standing (only if attorney) § SUPREME COURT |
|---|

ETA Form 9035/9035E   **FOR DEPARTMENT OF LABOR USE ONLY**   Page 2 of 5

Case Number: I-203-11244-040717   Case Status: CERTIFIED   Period of Employment: 09/12/2011 to 09/12/2013

3

SER-44

AR-4344

OMB Approval: 1205-0310
Expiration Date: 01/31/2012

Labor Condition Application for Nonimmigrant Workers
ETA Form 9035 & 9035E
**U.S. Department of Labor**



---

**F. Rate of Pay**

| 1. Wage Rate (Required) | 2. Per: (Choose only one) * |
|---|---|
| From: $ _____45000.00_____ * <br> To: $ _____N/A_____ | ☐ Hour   ☐ Week   ☐ Bi-Weekly   ☐ Month   ☑ Year |

**G. Employment and Prevailing Wage Information**

**Important Note:** It is important for the employer to define the place of intended employment with as much geographic specificity as possible The place of employment address listed below <u>must be a physical location and cannot be a P.O. Box</u>.  The employer may use this section to identify up to three (3) physical locations and corresponding prevailing wages covering each location where work will be performed and the electronic system will accept up to 3 physical locations and prevailing wage information.  If the employer has received approval from the Department of Labor to submit this form non-electronically and the work is expected to be performed in more than one location, an attachment must be submitted in order to complete this section.

**a. Place of Employment 1**

| 1. Address 1 * <br> 18720 OXNARD ST | |
|---|---|
| 2. Address 2 <br> NO 102 | |
| 3. City * <br> TARZANA | 4. County * <br> LOS ANGELES |
| 5. State/District/Territory * <br> CALIFORNIA | 6. Postal code * <br> 91356 |

| *Prevailing Wage Information (corresponding to the place of employment location listed above)* | |
|---|---|
| 7. Agency which issued prevailing wage § <br> N/A | 7a. Prevailing wage tracking number (if applicable) § <br> N/A |
| 8. Wage level * <br> ☑ I    ☐ II    ☐ III    ☐ IV    ☐ N/A | |
| 9. Prevailing wage * <br> $ _____44013.00_____ | 10. Per: (Choose only one) * <br> ☐ Hour   ☐ Week   ☐ Bi-Weekly   ☐ Month   ☑ Year |
| 11. Prevailing wage source (Choose only one) * <br> ☑ OES    ☐ CBA    ☐ DBA    ☐ SCA    ☐ Other | |
| 11a. Year source published * <br><br> 2011 | 11b. If "OES", <u>and</u> SWA/NPC did not issue prevailing wage **OR** "Other" in question 11, specify source § <br> OFLC ONLINE DATA CENTER |

**H. Employer Labor Condition Statements**

! **Important Note:** In order for your application to be processed, you <u>MUST</u> read Section H of the Labor Condition Application – General Instructions Form ETA 9035CP under the heading "Employer (Labor Condition Statements" and agree to all four (4) labor condition statements summarized below:

   (1)  **Wages:** Pay nonimmigrants at least the local prevailing wage or the employer's actual wage, whichever is higher, and pay for non-productive time.  Offer nonimmigrants benefits on the same basis as offered to U.S. workers.

   (2)  **Working Conditions:** Provide working conditions for nonimmigrants which will not adversely affect the working conditions of workers similarly employed.

   (3)  **Strike, Lockout, or Work Stoppage:** There is no strike, lockout, or work stoppage in the named occupation at the place of employment.

   (4)  **Notice:** Notice to union or to workers has been or will be provided in the named occupation at the place of employment.  A copy of this form will be provided to each nonimmigrant worker employed pursuant to the application.

| 1. <u>I have read and agree to</u> Labor Condition Statements 1, 2, 3, and 4 above and as fully explained in Section H of the Labor Condition Application – General Instructions – Form ETA 9035CP. * | ☑ Yes   ☐ No |
|---|---|

---

| ETA Form 9035/9035E | **FOR DEPARTMENT OF LABOR USE ONLY** | Page 3 of 5 |
|---|---|---|

Case Number: __I-203-11244-040717__   Case Status: __CERTIFIED__   Period of Employment: __09/12/2011__ to __09/12/2013__

4

OMB Approval: 1205-0310
Expiration Date 01/31/2012

**Labor Condition Application for Nonimmigrant Workers
ETA Form 9035 & 9035E
U.S. Department of Labor**



---

### I. Additional Employer Labor Condition Statements – H-1B Employers ONLY

*Important Note*: In order for your H-1B application to be processed, you MUST read Section I – Subsection 1 of the Labor Condition Application – General Instructions Form ETA 9035CP under the heading "Additional Employer Labor Condition Statements" and answer the questions below.

#### a. Subsection 1

| | | |
|---|---|---|
| 1. Is the employer H-1B dependent? § | ☐ Yes | ☐ No |
| 2. Is the employer a willful violator? § | ☐ Yes | ☐ No |
| 3. If "Yes" is marked in questions I.1 and/or I.2, you must answer "Yes" or "No" regarding whether the employer will use this application ONLY to support H-1B petitions or extensions of status for exempt H-1B nonimmigrants? § | ☐ Yes    ☐ No    ☐ N/A | |

If you marked "Yes" to questions I.1 and/or I.2 and "No" to question I.3, you MUST read Section I – Subsection 2 of the Labor Condition Application – General Instructions Form ETA 9035CP under the heading "Additional Employer Labor Condition Statements" and indicate your agreement to all three (3) additional statements summarized below.

#### b. Subsection 2

A. **Displacement**: Non-displacement of the U.S. workers in the employer's workforce
B. **Secondary Displacement**: Non-displacement of U.S. workers in another employer's workforce; and
C. **Recruitment and Hiring**: Recruitment of U.S. workers and hiring of U.S. workers applicant(s) who are equally or better qualified than the H-1B nonimmigrant(s).

| | |
|---|---|
| 4. **I have read and agree** to Additional Employer Labor Condition Statements A, B, and C above and as fully explained in Section I – Subsections 1 and 2 of the Labor Condition Application – General Instructions Form ETA 9035CP. § | ☐ Yes    ☐ No |

---

### J. Public Disclosure Information

*Important Note*: You must select from the options listed in this Section.

| | |
|---|---|
| 1. Public disclosure information will be kept at: * | ☑ Employer's principal place of business<br>☐ Place of employment |

---

### K. Declaration of Employer

*By signing this form, I, on behalf of the employer, attest that the information and labor condition statements provided are true and accurate; that I have read sections H and I of the Labor Condition Application – General Instructions Form ETA 9035CP, and that I agree to comply with the Labor Condition Statements as set forth in the Labor Condition Application – General Instructions Form ETA 9035CP and with the Department of Labor regulations (20 CFR part 655, Subparts H and I). I agree to make this application, supporting documentation, and other records available to officials of the Department of Labor upon request during any investigation under the Immigration and Nationality Act. Making fraudulent representations on this Form can lead to civil or criminal action under 18 U.S.C. 1001, 18 U.S.C. 1546, or other provisions of law.*

| 1. Last (family) name of hiring or designated official * | 2. First (given) name of hiring or designated official * | 3. Middle initial * |
|---|---|---|
| Shadjareh | Amir | N/A |

| 4. Hiring or designated official title * |
|---|
| President |

| 5. Signature * | 6. Date signed * |
|---|---|
| | 9.8.11 |

---

**FOR DEPARTMENT OF LABOR USE ONLY**

Page 4 of 5

Case Number:  I-203-11244-040717     Case Status:  CERTIFIED     Period of Employment:  09/12/2011  to  09/12/2013

5

OMB Approval: 1205-0310
Expiration Date: 01/31/2012

Labor Condition Application for Nonimmigrant Workers
ETA Form 9035 & 9035E
U.S. Department of Labor



## L.  LCA Preparer

**Important Note**:  Complete this section if the preparer of this LCA is a person other than the one identified in either Section D (employer point of contact) or E (attorney or agent) of this application.

| 1.  Last (family) name § | 2. First (given) name § | 3. Middle initial § |
|---|---|---|
| N/A | N/A | N/A |
| 4.  Firm/Business name § | | |
| N/A | | |
| 5.  E-Mail address §   N/A | | |

## M.  U.S. Government Agency Use (ONLY)

By virtue of the signature below, the Department of Labor hereby acknowledges the following:

This certification is valid from _____ 09/12/2011 _____ to _____ 09/12/2013 _____.

*William L. Carlson*

Department of Labor, Office of Foreign Labor Certification

09/08/2011

Determination Date (date signed)

I-203-11244-040717

Case number

CERTIFIED

Case Status

*The Department of Labor is not the guarantor of the accuracy, truthfulness, or adequacy of a certified LCA.*

## N.  Signature Notification and Complaints

The signatures and dates signed on this form will not be filled out when electronically submitting to the Department of Labor for processing, but **MUST** be complete when submitting non-electronically.  If the application is submitted electronically, any resulting certification **MUST** be signed *immediately upon receipt* from the Department of Labor before it can be submitted to USCIS for further processing.

Complaints alleging misrepresentation of material facts in the LCA and/or failure to comply with the terms of the LCA may be filed using the WH-4 form with any office of the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor.  A listing of the Wage and Hour Division offices can be obtained at http://www.dol.gov/esa.  Complaints alleging failure to offer employment to an equally or better qualified U.S. worker, or an employer's misrepresentation regarding such offer(s) of employment, may be filed with the U.S. Department of Justice, Office of the Special Counsel for Immigration-Related Unfair Employment Practices, 950 Pennsylvania Avenue, NW, Washington, DC, 20530.  Please note that complaints should be filed with the Office of Special Counsel at the Department of Justice only if the violation is by an employer who is H-1B dependent or a willful violator as defined in 20 CFR 655.710(b) and 655.734(a)(1)(ii).

## O.  OMB Paperwork Reduction Act *(1205-0310)*

These reporting instructions have been approved under the Paperwork Reduction Act of 1995.  Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.  Obligations to reply are mandatory (Immigration and Nationality Act, Section 212(n) and (t) and 214(c).  Public reporting burden for this collection of information, which is to assist with program management and to meet Congressional and statutory requirements is estimated to average 1 hour per response, including the time to review instructions, search existing data sources, gather and maintain the data needed, and complete and review the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Room C-4312, 200 Constitution Ave. NW, Washington, DC 20210.  (Paperwork Reduction Project OMB 1205-0310.) **Do NOT send the completed application to this address.**

| ETA Form 9035/9035E | **FOR DEPARTMENT OF LABOR USE ONLY** | | | Page 5 of 5 |
|---|---|---|---|---|

Case Number: I-203-11244-040717   Case Status: CERTIFIED   Period of Employment: 09/12/2011 to 09/12/2013

6

OMB Approval: 1205-0310
Expiration Date: 03/31/2015

Labor Condition Application for Nonimmigrant Workers
ETA Form 9035 & 9035E
**U.S. Department of Labor**



### Electronic Filing of Labor Condition Applications
### For The H-1B Nonimmigrant Visa Program

This Department of Labor, Employment and Training Administration (ETA), electronic filing system enables an employer to file a Labor Condition Application (LCA) and obtain certification of the LCA. This Form must be submitted by the employer or by someone authorized to act on behalf of the employer.

A) I understand and agree that, upon my receipt of ETA's certification of the LCA by electronic response to my submission, I must take the following actions at the specified times and circumstances:
* print and sign a hardcopy of the electronically filed and certified LCA;
* maintain a signed hardcopy of this LCA in my public access files;
* submit a signed hardcopy of the LCA to the United States Citizenship and Immigration Services (USCIS) in support of the I-129, on the date of submission of the I-129;
* provide a signed hardcopy of this LCA to each H-1B nonimmigrant who is employed pursuant to the LCA.

☑ Yes ❑ No

B) I understand and agree that, by filing the LCA electronically, I attest that all of the statements in the LCA are true and accurate and that I am undertaking all the obligations that are set out in the LCA (Form ETA 9035E) and the accompanying instructions (Form ETA 9035CP).

☑ Yes ❑ No

C) I hereby choose one of the following options, with regard to the accompanying instructions:

☑ I choose to have the Form ETA 9035CP electronically attached to the certified LCA, and to be bound by the LCA obligations as explained in this form

❑ I choose not to have the Form ETA 9035CP electronically attached to the certified LCA, but I have read the instructions and I understand that I am bound by the LCA obligations as explained in this form

| ETA Form 9035/9035E Attestation | **FOR DEPARTMENT OF LABOR USE ONLY** | | | | | Page 1 of 1 |
|---|---|---|---|---|---|---|
| Case Number: I-203-13217-157366 | Case Status: CERTIFIED | Period of Employment: 09/12/2013 | to | 09/12/2015 | | |

1



OMB Approval: 1205-0310
Expiration Date: 03/31/2015

### Labor Condition Application for Nonimmigrant Workers
### ETA Form 9035 & 9035E
### U.S. Department of Labor

*Please read and review the filing instructions carefully before completing the ETA Form 9035 or 9035E. A copy of the instructions can be found at http://www.foreignlaborcert.doleta.gov/. In accordance with Federal Regulations at 20 CFR 655.730(b), incomplete or obviously inaccurate Labor Condition Applications (LCAs) will not be certified by the Department of Labor. If the employer has received permission from the Administrator of the Office of Foreign Labor Certification to submit this form non-electronically, ALL required fields/items containing an asterisk ( * ) must be completed as well as any fields/items where a response is conditional as indicated by the section ( § ) symbol.*

## A. Employment-Based Nonimmigrant Visa Information

| 1. Indicate the type of visa classification supported by this application *(Write classification symbol):* * | E-3 Australian |
|---|---|

## B. Temporary Need Information

| 1. Job Title * TV PRODUCER AND REPORTER | | |
|---|---|---|
| 2. SOC (ONET/OES) code * 27-2012 | 3. SOC (ONET/OES) occupation title * PRODUCERS AND DIRECTORS | |

| 4. Is this a full-time position? * | **Period of Intended Employment** | |
|---|---|---|
| ☑ Yes   ☐ No | 5. Begin Date * 09/12/2013 *(mm/dd/yyyy)* | 6. End Date * 09/12/2015 *(mm/dd/yyyy)* |

7. Worker positions needed/basis for the visa classification supported by this application

**1**   Total Worker Positions Being Requested for Certification *

Basis for the visa classification supported by this application
*(indicate the total workers in each applicable category based on the total workers identified above)*

| 0 | a. New employment * | 0 | d. New concurrent employment * |
|---|---|---|---|
| 1 | b. Continuation of previously approved employment * without change with the same employer | 0 | e. Change in employer * |
| 0 | c. Change in previously approved employment * | 0 | f. Amended petition * |

## C. Employer Information

| 1. Legal business name * PERSIAN BROADCAST SERVICE GLOBAL INC |
|---|
| 2. Trade name/Doing Business As (DBA), if applicable   N/A |
| 3. Address 1 *   18720 OXNARD ST, NO 102 |
| 4. Address 2   N/A |

| 5. City * TARZANA | 6. State * CA | 7. Postal code * 91356 |
|---|---|---|
| 8. Country * UNITED STATES OF AMERICA | 9. Province N/A | |
| 10. Telephone number * 8187761061 | 11. Extension N/A | |
| 12. Federal Employer Identification Number (FEIN from IRS) * ▓8181 | 13. NAICS code (must be at least 4-digits) * 51512 | |

OMB Approval: 1205-0310
Expiration Date: 03/31/2015

**Labor Condition Application for Nonimmigrant Workers
ETA Form 9035 & 9035E
U.S. Department of Labor**



**D. Employer Point of Contact Information**

**Important Note:** The information contained in this Section must be that of an employee of the employer who is authorized to act on behalf of the employer in labor certification matters. The information in this Section <u>must be different</u> from the agent or attorney information listed in Section E, unless the attorney is an employee of the employer.

| 1. Contact's last (family) name *  SHADJAREH | 2. First (given) name *  AMIR | 3. Middle name(s) *  N/A |
|---|---|---|
| 4. Contact's job title *  PRESIDENT | | |
| 5. Address 1 *  18720 OXNARD ST, NO 102 | | |
| 6. Address 2  N/A | | |
| 7. City *  TARZANA | 8. State *  CA | 9. Postal code *  91356 |
| 10. Country *  UNITED STATES OF AMERICA | 11. Province  N/A | |
| 12. Telephone number *  8187761061 | 13. Extension  N/A | 14. E-Mail address  INFO@PARSTV.TV |

**E. Attorney or Agent Information (If applicable)**

| 1. Is the employer represented by an attorney or agent in the filing of this application? *  If "Yes," complete the remainder of Section E below. | | ☑ Yes   ☐ No |
|---|---|---|
| 2. Attorney or Agent's last (family) name §  KLUG | 3. First (given) name §  NOAH | 4. Middle name(s) §  EDEN |
| 5. Address 1 §  LEVEL 42, 525 COLLINS STREET | | |
| 6. Address 2  N/A | | |
| 7. City §  MELBOURNE | 8. State §  N/A | 9. Postal code §  3000 |
| 10. Country §  AUSTRALIA | 11. Province  N/A | |
| 12. Telephone number §  7172726061 | 13. Extension  N/A | 14. E-Mail address  NKLUG@NEVETTFORD.COM.AU |
| 15. Law firm/Business name §  NEVETT FORD MELBOURNE PTY LTD | | 16. Law firm/Business FEIN §  N/A |
| 17. State Bar number (only if attorney) §  4758050 | | 18. State of highest court where attorney is in good standing (only if attorney) §  NEW YORK |
| 19. Name of the highest court where attorney is in good standing (only if attorney) §  SUPREME COURT | | |

---

| ETA Form 9035/9035E | **FOR DEPARTMENT OF LABOR USE ONLY** | Page 2 of 5 |
|---|---|---|

OMB Approval: 1205-0310
Expiration Date: 03/31/2015

Labor Condition Application for Nonimmigrant Workers
ETA Form 9035 & 9035E
**U.S. Department of Labor**



## F. Rate of Pay

| 1. Wage Rate (Required) | | 2. Per: (Choose only one) * |
|---|---|---|
| From: $ 60000.00 * | | ☐ Hour  ☐ Week  ☐ Bi-Weekly  ☐ Month  ☑ Year |
| To: $ N/A | | |

## G. Employment and Prevailing Wage Information

**Important Note:** It is important for the employer to define the place of intended employment with as much geographic specificity as possible The place of employment address listed below <u>must be a physical location and cannot be a P.O. Box.</u> The employer may use this section to identify up to three (3) physical locations and corresponding prevailing wages covering each location where work will be performed and the electronic system will accept up to 3 physical locations and prevailing wage information.  If the employer has received approval from the Department of Labor to submit this form non-electronically and the work is expected to be performed in more than one location, an attachment must be submitted in order to complete this section.

*a. Place of Employment 1*

| 1. Address 1 * 18720 OXNARD ST, NO 102 | | |
|---|---|---|
| 2. Address 2  N/A | | |
| 3. City * TARZANA | | 4. County * LOS ANGELES |
| 5. State/District/Territory * CALIFORNIA | | 6. Postal code * 91356 |

| *Prevailing Wage Information (corresponding to the place of employment location listed above)* | |
|---|---|
| 7. Agency which issued prevailing wage § N/A | 7a. Prevailing wage tracking number (if applicable) § N/A |
| 8. Wage level * ☑ I   ☐ II   ☐ III   ☐ IV   ☐ N/A | |
| 9. Prevailing wage * $ 59384.00 | 10. Per: (Choose only one) * ☐ Hour  ☐ Week  ☐ Bi-Weekly  ☐ Month  ☑ Year |
| 11. Prevailing wage source (Choose only one) * ☑ OES   ☐ CBA   ☐ DBA   ☐ SCA   ☐ Other | |
| 11a. Year source published * 2013 | 11b. If "OES", and SWA/NPC did not issue prevailing wage OR "Other" in question 11, specify source § OFLC ONLINE DATA CENTER |

## H. Employer Labor Condition Statements

❗ **Important Note:**  In order for your application to be processed, you <u>MUST</u> read Section H of the Labor Condition Application – General Instructions Form ETA 9035CP under the heading "Employer Labor Condition Statements" and agree to all four (4) labor condition statements summarized below:

(1) **Wages:** Pay nonimmigrants at least the local prevailing wage or the employer's actual wage, whichever is higher, and pay for non-productive time.  Offer nonimmigrants benefits on the same basis as offered to U.S. workers.

(2) **Working Conditions:** Provide working conditions for nonimmigrants which will not adversely affect the working conditions of workers similarly employed.

(3) **Strike, Lockout, or Work Stoppage:** There is no strike, lockout, or work stoppage in the named occupation at the place of employment.

(4) **Notice:** Notice to union or to workers has been or will be provided in the named occupation at the place of employment.  A copy of this form will be provided to each nonimmigrant worker employed pursuant to the application.

| 1. <u>I have read and agree to</u> Labor Condition Statements 1, 2, 3, and 4 above and as fully explained in Section H of the Labor Condition Application – General Instructions – Form ETA 9035CP. * | ☑ Yes   ☐ No |
|---|---|

| ETA Form 9035/9035E | **FOR DEPARTMENT OF LABOR USE ONLY** | Page 3 of 5 |
|---|---|---|
| Case Number: I-203-13217-157366 | Case Status: CERTIFIED  Period of Employment: 09/12/2013 to 09/12/2015 | |

4

AR-351

OMB Approval: 1205-0310
Expiration Date:09/30/2015

**Labor Condition Application for Nonimmigrant Workers
ETA Form 9035 & 9035E
U.S. Department of Labor**



## I. Additional Employer Labor Condition Statements – H-1B Employers ONLY

! **Important Note** In order for your H-1B application to be processed, you MUST read Section I – Subsection 1 of the Labor Condition Application – General Instructions Form ETA 9035CP under the heading "Additional Employer Labor Condition Statements" and answer the questions below.

### a. Subsection 1

| | | |
|---|---|---|
| 1. Is the employer H-1B dependent? § | ❏ Yes | ❏ No |
| 2. Is the employer a willful violator? § | ❏ Yes | ❏ No |
| 3. If "Yes" is marked in questions I.1 and/or I.2, you must answer "Yes" or "No" regarding whether the employer will use this application ONLY to support H-1B petitions or extensions of status for exempt H-1B nonimmigrants? § | ❏ Yes   ❏ No   ❏ N/A | |

If you marked "Yes" to questions I.1 and/or I.2 and "No" to question I.3, you MUST read Section I – Subsection 2 of the Labor Condition Application – General Instructions Form ETA 9035CP under the heading "Additional Employer Labor Condition Statements" and indicate your agreement to all three (3) additional statements summarized below.

### b. Subsection 2

A. Displacement: Non-displacement of the U.S. workers in the employer's workforce
B. Secondary Displacement: Non-displacement of U.S. workers in another employer's workforce; and
C. Recruitment and Hiring: Recruitment of U.S. workers and hiring of U.S. workers applicant(s) who are equally or better qualified than the H-1B nonimmigrant(s).

| | | |
|---|---|---|
| 4. I have read and agree to Additional Employer Labor Condition Statements A, B, C above and as fully explained in Section I – Subsections 1 and 2 of the Labor Condition Application – General Instructions Form ETA 9035CP. § | ❏ Yes | ❏ No |

## J. Public Disclosure Information

! **Important Note** You must select from the options listed in this Section.

| | |
|---|---|
| 1. Public disclosure information will be kept at: * | ☑ Employer's principal place of business<br>❏ Place of employment |

## K. Declaration of Employer

By signing this form I, on behalf of the employer, attest that the information and labor condition statements provided are true and accurate; that I have read sections H and I of the Labor Condition Application – General Instructions Form ETA 9035CP, and that I agree to comply with the Labor Condition Statements as set forth in the Labor Condition Application – General Instructions Form ETA 9035CP and with the Department of Labor regulations (20 CFR part 655, Subparts H and I). I agree to make this application, supporting documentation, and other records available to officials of the Department of Labor upon request during any investigation under the Immigration and Nationality Act. Making fraudulent representations on this Form can lead to civil or criminal action under 18 U.S.C. 1001, 18 U.S.C. 1546, or other provisions of law.

| 1. Last (family) name of hiring or designated official * | 2. First (given) name of hiring or designated official * | 3. Middle initial * |
|---|---|---|
| SHADJAREH | AMIR | N/A |

| 4. Hiring or designated official title * |
|---|
| PRESIDENT |

| 5. Signature * | 6. Date signed * |
|---|---|
| | 9.4.13 |

OMB Approval: 1205-0310
Expiration Date: 03/31/2015

## Labor Condition Application for Nonimmigrant Workers
### ETA Form 9035 & 9035E
### U.S. Department of Labor



### L. LCA Preparer

**Important Note**: Complete this section if the preparer of this LCA is a person other than the one identified in either Section D (employer point of contact) or E (attorney or agent) of this application.

| 1. Last (family) name § | 2. First (given) name § | 3. Middle initial § |
|---|---|---|
| N/A | N/A | N/A |

| 4. Firm/Business name § |
|---|
| N/A |

| 5. E-Mail address §   N/A |
|---|

### M. U.S. Government Agency Use (ONLY)

By virtue of the signature below, the Department of Labor hereby acknowledges the following:

This certification is valid from _____ 09/12/2013 _____ to _____ 09/12/2015 _____ .

*William L. Carlson*
08/30/2013

Department of Labor, Office of Foreign Labor Certification          Determination Date (date signed)

I-203-13217-157366          CERTIFIED

Case number          Case Status

*The Department of Labor is not the guarantor of the accuracy, truthfulness, or adequacy of a certified LCA.*

### N. Signature Notification and Complaints

The signatures and dates signed on this form will not be filled out when electronically submitting to the Department of Labor for processing, but **MUST** be complete when submitting non-electronically. If the application is submitted electronically, any resulting certification **MUST** be signed *immediately upon receipt* from the Department of Labor before it can be submitted to USCIS for further processing.

Complaints alleging misrepresentation of material facts in the LCA and/or failure to comply with the terms of the LCA may be filed using the WH-4 Form with any office of the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor. A listing of the Wage and Hour Division offices can be obtained at http://www.dol.gov/esa. Complaints alleging failure to offer employment to an equally or better qualified U.S. worker, or an employer's misrepresentation regarding such offer(s) of employment, may be filed with the U.S. Department of Justice, Office of the Special Counsel for Immigration-Related Unfair Employment Practices, 950 Pennsylvania Avenue, NW, Washington, DC, 20530. Please note that complaints should be filed with the Office of Special Counsel at the Department of Justice only if the violation is by an employer who is H-1B dependent or a willful violator as defined in 20 CFR 655.710(b) and 655.734(a)(1)(ii).

### O. OMB Paperwork Reduction Act *(1205-0310)*

These reporting instructions have been approved under the Paperwork Reduction Act of 1995. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. Obligations to reply are mandatory (Immigration and Nationality Act, Section 212(n) and (t) and 214(c). Public reporting burden for this collection of information, which is to assist with program management and to meet Congressional and statutory requirements is estimated to average 1 hour per response, including the time to review instructions, search existing data sources, gather and maintain the data needed, and complete and review the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Room C-4312, 200 Constitution Ave. NW, Washington, DC 20210. (Paperwork Reduction Project OMB 1205-0310.) **Do NOT send the completed application to this address.**

| ETA Form 9035/9035E | FOR DEPARTMENT OF LABOR USE ONLY | | | | | Page 5 of 5 |
|---|---|---|---|---|---|---|
| Case Number: I-203-13217-157366 | Case Status: CERTIFIED | Period of Employment: 09/12/2013 to 09/12/2015 | | | | |

6





[redacted]
NOTICE
[redacted]
MAY 17 2013
ADMITTED
SEP 03 2013
E3
SEP 02 2015

**P A R S   T V   N E T W O R K**
18720 Oxnard St. #102, Tarzana, CA 91356
Tel: (818) 881-5800    Fax: (818) 881-5446
www.parstv.tv

**Date: 11.13.2013**
Nonimmigrant Visa Section
United States Consulate General
Level 59, MLC Centre
19-29 Martin Place
Sydney, NSW 2000

<div align="center">

RE: E-3 VISA <u>RENEWAL</u> APPLICATION ON BEHALF OF MAJID VARESS
Employer: **Persian Broadcast Service Global Inc.**
Employee: **Majid Varess**
Specialty Occupation:  Producers and Directors (internal job title: TV Producer and Reporter)

</div>

Dear Sir or Madam:

We submit this letter on behalf of Majid Varess in order that he may be authorized to continue to perform temporary services in the specialty occupation of TV Producer and Reporter with Persian Broadcast Service Global Inc.   Persian Broadcast Service Global Inc wishes to continue to engage the services of Mr. Varess, an Australian citizen, for an additional two-year period.  He will be compensated in the amount of $60,000 per year.

<div align="center">

**The Petitioner**

</div>

Persian Broadcast Service Global Inc. owns and operates *Pars TV*, a 24-hour Persian language television station which has been broadcasting out of southern California since 1987. With millions of viewers around the world, *Pars TV* is one of the most well-known and reputable Persian language television stations in the world. In addition to being broadcast internationally via satellite, *Pars TV* programs are also available for viewing on our website. *Pars TV* airs a wide range of programs including news, sports, current affairs, talk shows, documentaries and movies.

Please visit our websites for additional information about our company:
http://www.voinews.net  and http://www.parstv.tv

<div align="center">

**Specialty Occupation**

</div>

Mr. Varess will continue to be employed in the specialty occupation of TV Producer and Reporter with Persian Broadcast Service Global Inc. More specifically, as a TV Producer and

Established
1987

Pars Tv
station
is broadcasted
internationally
worldwide

Access
Channels:

Galaxy 25
(US,Canada),

Hot Bird
(Europe,Iran,
Mideast)

UBI
(Australia),

Comham Cable
(Scandinavia),

Cable Free
(France)

1



P A R S   T V   N E T W O R K
18720 Oxnard St. #102, Tarzana, CA 91356
Tel: (818) 881-5800    Fax: (818) 881-5446
www.parstv.tv

Reporter, Mr. Varess is responsible for the following duties:

- Use media production, research, observation, communication and writing skills/experience to produce and present entertaining sport, current affairs and other programs for broadcast to a global Persian speaking audience
- Supervise and oversee the work of editors, assistant writers, directors and other crew members (eg., camera, lighting, sound and design staff)
- Evaluate notes taken about event aspects in order to isolate pertinent facts and details as well as determine story length and emphasis
- Research, study, analyze and interpret related background and other information obtained from a variety of sources and select/organize this material as required
- Translate source information and material where required
- Arrange and conduct interviews
- Evaluate leads and tips in order to develop story ideas
- Plan details such as framing, composition, camera movement, sound, and subject movement for each shot or scene
- Establish scene sequences according to time and other requirements and constraints
- Identify and approve equipment and elements required for productions, such as scenery, lights, props, costumes, choreography and music
- Monitor postproduction processes to ensure accurate completion of details, including overseeing the use of computer editing systems, electronic titling systems, video switching, equipment and digital video effects units
- Conduct live running commentaries including covering play-by-play action, interpreting circumstances and offering opinions and insights
- Report live from relevant sporting arenas and other external locations
- Perform or oversee strategic planning activities such as budgeting, scheduling, planning, and marketing
- Assist with resolving personnel problems where require

The position of TV Producer and Reporter requires the theoretical and practical application of highly specialized knowledge and attainment of at least a Bachelor's Degree in Media, Communication or a related field or equivalent.

### Beneficiary's Qualifications

Mr. Varess' academic preparation renders him well qualified to continue to perform the duties of the specialty position of Reporter and Producer with Persian Broadcast Service Global Inc. In September 1973, Mr. Varess was awarded a Bachelor of Science degree in Accounting

Established
1987

Pars Tv
station
is broadcasted
internationally
worldwide

Access
Channels:

Galaxy 25
(US,Canada),

Hot Bird
(Europe,Iran,
Mideast)

UBI
(Australia),

Comham Cable
(Scandinavia),

Cable Free
(France)

2



P A R S   T V   N E T W O R K
18720 Oxnard St. #102, Tarzana, CA 91356
Tel: (818) 881-5800     Fax: (818) 881-5446
www.parstv.tv

Established
1987

Pars Tv
station
is broadcasted
internationally
worldwide

Access
Channels:

Galaxy 25
(US,Canada),

Hot Bird
(Europe,Iran,
Mideast)

UBI
(Australia),

Comham Cable
(Scandinavia),

Cable Free
(France)

from the Iranian Institute of Advanced Accounting and in May 1988, Mr. Varess was awarded a Graduate Diploma in Communication from the University of Technology in Sydney. These degrees have been evaluated by an expert from The Trustforte Corporation, a reliable foreign credentials evaluation service based in the United States, and found to be equivalent to a **U.S. Bachelor of Arts Degree in Communications** from an accredited college or university in the United States. Mr. Varess thus qualifies as an E-3 worker in a specialty occupation.

Mr. Varess also has approximately 32 years work experience in the field of Producing and Reporting. This work experience alone would equate to at least a Bachelor of Arts Degree in Communications.

### The U.S. Employer Has An Approved Labor Condition Application

As described above, Mr. Varess is uniquely qualified to continue to serve as TV Producer and Reporter for Persian Broadcast Service Global Inc. based on his academic training, professional expertise, and significant achievements. He will receive a base annual salary of $60,000, commensurate with his responsibilities. As verified by the attached and approved Labor Condition Application, Mr. Varess' compensation is within the prevailing wage for similar positions and will not adversely affect working conditions of similarly employed U.S. workers.

### Conclusion

As described above, Mr. Varess is eligible for admission in temporary E-3 status.

Accordingly, we respectfully request your approval of continued E-3 status for Mr. Varess and his temporary admission for an additional two-year period. Please do not hesitate to contact our immigration counsel directly, Noah Klug, at the law firm Nevett Ford, at (03) 9614 7111 or nklug@nevettford.com.au should you require additional information.

Thank you for your kind consideration in this matter.

Sincerely,

Amir Shadjareh
President

3

1. Sep 2013, Pars TV Gozareshgaran promotional clip[1], entitled *Gozareshgaran [Reporters]
   programme coming soon to Pars TV.*



2. Sep 2013, clip from live broadcast of 2013 Women's World Wrestling Championships held in
   Budapest 16-22 September 2013, as filmed in Pars TV's control room.[2] The screen grab
   shows Pars TV's then new satellite frequency details for Iran and Europe, as well as Pars TV
   control room operator.[3]



3. 25 Sep 2013, Gozareshgaran programme, filmed at Pars TV studio.[4]



4. 26 Sep 2013, Gozareshgaran programme, filmed at Pars TV studio.[5]

---

[1] https://www.youtube.com/watch?v=9cMirGHgpC8.
[2] https://en.wikipedia.org/wiki/2013_World_Wrestling_Championships.
[3] https://www.youtube.com/watch?v=ZMMUvUK0CsE.
[4] https://vimeo.com/75472582. See also
https://www.facebook.com/Gozareshgaraan/posts/449125675204373.
[5] https://www.facebook.com/Gozareshgaraan/posts/449563551827252.  See also
https://vimeo.com/75564426; and https://www.youtube.com/watch?v=RQZl3DQ0tZ0. Among other things this

1





5.   02 Oct 2013, Gozareshgaran programme, filmed at Pars TV studio.[6]



6.   03 Oct 2013, Gozareshgaran programme, filmed at Pars TV studio.[7]

---

show discussed 16 September 2013 front page of the Guardian newspaper:
https://storify.com/Krank_IE/today-s-papers-september-16th.
[6] https://www.youtube.com/watch?v=-bJeXLRDXAU.  See also
https://www.youtube.com/watch?v=SvFhkwYhT_U and https://www.youtube.com/watch?v=fk7DVAgnc7E,
https://www.facebook.com/Gozareshgaraan/posts/452561471527460, and https://vimeo.com/76040785.
[7] https://www.youtube.com/watch?v=QQ22kCZ7zBo.  See also
https://www.facebook.com/Gozareshgaraan/posts/453014928148781 and https://vimeo.com/76132164.

2

AR-361



7.  04 Oct 2013 Gozareshgaran programme filmed at Pars TV studio.[8] The Pars TV studio phone
    number can be seen showing on the screen.  This programme included a segment on
    Liverpool Football Club fans which I had prepared during my trip to Europe.



8.  10 Oct 2013 Gozareshgaran programme filmed at Pars TV studio.[9]



---

[8] https://vimeo.com/76206012.  See also
https://www.facebook.com/Gozareshgaraan/posts/453426568107617
[9] https://vimeo.com/76685137. See also
https://www.facebook.com/Gozareshgaraan/posts/456442934472647. At 19:55 I am heard calling out to
Vartan who worked in the control room asking that he pause on a particular photograph.

3

9. 12 Oct 2013 Gozareshgaran programme filmed at Pars TV studio.[10] The first few minutes are adverts aired by Pars TV prior to the start of the programme. During this show we spoke about the 10 October 2013 passing of Iranian judoka, Kazem Sarkhani (pictured below).[11]



10. 17 Oct 2013 Gozareshgaran programme filmed at Pars TV studio.[12]



11. 18 Oct 13 Gozareshgaran programme filmed at Pars TV studio.[13] The Pars TV studio telephone number can be seen at the bottom of the screen.



---

[10] https://www.youtube.com/watch?v=2qntCa2U62A. See also https://vimeo.com/76755422.
[11] https://en.wikipedia.org/wiki/Kazem_Sarikhani.
[12] https://www.youtube.com/watch?v=awe5lNDPg54.
[13] https://www.youtube.com/watch?v=rxDchCdNKqs.

12. 25 Oct 2013 Gozareshgaran programme.[14] In this programme I opened with a discussion of the
    Iranian national football team's proceeding past the group stages in the 2013 U17 Football
    World Cup earlier that day.[15]  I can be heard giving instructions to Sepehr, a Pars TV control
    room operator about which clip to play.  Below is a grab from the programme which shows an
    interview I did from the studio with a Mohammad Reza Geran who was not in the studio about
    wrestling.



13. 31 Oct 2013 Gozareshgaran show filmed at Pars TV studio.[16] The Pars TV studio contact details
    are at the bottom of the screen as is a message in Persian which translates to: "Be with us for
    Pars TV's 16th anniversary."



14. 01 Nov 2013 Gozareshgara show filmed at Pars TV studio.[17] The Pars TV studio contact details
    are at the bottom of the screen as is a message in Persian which translates to: "Be with us for
    Pars TV's 16th anniversary." A similar message is on the television screen in the background.

---

[14] https://www.youtube.com/watch?v=m10t6gA1MBk.
[15] https://en.wikipedia.org/wiki/2013_FIFA_U-17_World_Cup.
[16] https://www.youtube.com/watch?v=7L0-ryYqCqU.
[17] https://www.youtube.com/watch?v=x9npbRT3IMA.

5

AR-364



15. 05 November 2013 Gozareshgaran programme filmed at Pars TV studio.[18] I am heard stating the date at the start of this clip.



16. 07 Nov 2013 Gozareshgaran programme filmed at Pars TV studio.[19]



---

[18] https://www.youtube.com/watch?v=d89Lfap5eLU.  See also https://www.youtube.com/watch?v=Bsq_oSGwk7A.
[19] https://www.youtube.com/watch?v=vku5A9AM8LY.

6

17. 07 Nov 2013 Gozareshgar programme filed at Pars TV studio.[20] I am heard joking with Pars TV
    control room operator Sepehr at the start of the clip.  I am also heard referring to the final of the
    U17 Football World Cup held 8 Nov 2013.



18. 14 Nov 2013 Gozareshgaran programme filmed at Pars TV studio.[21]  Pars TV control room
    operator Vartan is seen below entering the shot to assist with a sound issue.



19. 15 Nov 2013 Gozareshgaran programme filmed at Pars TV studio. [22] At 29.53 I am taking a call
    from a viewer, the contact phone number for the studio being set out at the bottom of the
    screen below.

---

[20] https://www.youtube.com/watch?v=PgIge9tvzN4.
[21] https://www.youtube.com/watch?v=6XhFhiDTqRg
[22] https://www.youtube.com/watch?v=sUDR88qA1r4.

7





**U.S. Customs and Border Protection**
Securing America's Borders

OMB No. 1651-0111
Expiration Date: 11/30/2014

### Admission (I-94) Number Retrieval

**Admission (I-94) Record Number: 05810443030**

**Admit Until Date: 2015 September 02**

Details provided on Admission (I-94) form:

| | |
|---|---|
| Family Name: | Varess |
| First (Given) Name: | MAJID |
| Birth Date: | 1951 ███ |
| Passport Number: | |
| Passport Country of Issuance: | Australia |
| Most Recent Date of Entry: | 2013 September 03 |
| Class of Admission: | E3 |

► Effective April 26, 2013, DHS began automating the admission process. An alien lawfully admitted or paroled into the U.S. is no longer required to be in possession of a preprinted Form I-94. A record of admission printed from the CBP website constitutes a lawful record of admission. See 8 CFR § 1.4(d).

► If an employer, local, state or federal agency requests admission information, present your admission (I-94) number along with any additional required documents requested by that employer or agency.

► Note: For security reasons, we recommend that you close your browser after you have finished retrieving your I-94 number.

► Accessibility

1

**Extracts of Text Messages**

**Translated from Finglish (Persian typed in English)**

Fri, Jul 11, 9:31 AM

**Majid VARESS to Amir SHADJAREH**

[In blue]

Hi

Taking in all the disrespect is no longer possible. You did not pay even today.



---------------------------------------------------------------------------------------

Fri, Jul 11, 10:38 AM

**Amir SHADJAREH to Majid VARESS**

[In grey]

Haven't you checked your account?

**Majid VARESS to Amir SHADJAREH**

[In blue]

No payment has been made. I'm sorry that you belittle me every day in a way or another.

1 | P a g e



---

**Fri, Jul 11, 1:33 PM**

**Majid VARESS to Amir SHADJREH**

[In blue]

1. I don't understand how you can tell me you are not going to pay my salary. You can't



AR-372

-------------------------------------------------------------------

**Amir SHADJREH to Majid VARESS**

[In grey]

I'm so sorry but why would I be ashamed (to say so). I have to pay wages at the beginning of the
month but when I don't have money what am I supposed to do. If necessary, I will close down the
TV. I said let's have the news show on every day, and we might be able to get some sponsors and
you said no



-------------------------------------------------------------------

I, Khosro Nazari, Accredited NAATI Professional Translator in English-Persian, both directions, with NAATI
no. 55411, certify that this is a true and accurate translation, to the best of my ability, of the extracts of text
messages in three pages as numbered.



SER-70

# UNITED STATES DEPARTMENT OF LABOR

# OFFICE OF ADMINISTRATIVE LAW JUDGES

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| MAJID VARESS, | ) | |
| | ) | |
| Prosecuting Party, | ) | |
| | ) | |
| versus | ) | Case No. 2016-LCA-00019 |
| | ) | |
| PERSIAN BROADCASTING SERVICE | ) | |
| GLOBAL, INC., | ) | |
| | ) | |
| Respondent. | ) | |

RECEIVED
NOV 21 2017
Office of Administrative Law Judges
San Francisco, Ca

PAGES: 1 through 156

LOCATION: San Francisco, California

DATE: October 26, 2017

VOLUME: I

ORIGINAL

==================================================================

## JACKSON REPORTING, INC.
### *OFFICIAL FEDERAL REPORTERS*
2300 Bethards Drive, Suite B
Santa Rosa, California 95405
(707) 546-8911

UNITED STATES DEPARTMENT OF LABOR

OFFICE OF ADMINISTRATIVE LAW JUDGES


In the Matter of:           )
                            )
MAJID VARESS,               )
                            )
     Prosecuting Party,     )
                            )
versus                      )   Case No. 2016-LCA-00019
                            )
PERSIAN BROADCASTING SERVICE )
GLOBAL, INC.,               )
                            )
     Respondent.            )


**VOLUME I**



                    Thursday,
                    October 26, 2017



                    Office of Department of Labor
                    90 Seventh Street
                    San Francisco, California 94103



          The above-entitled matter came on for hearing,

pursuant to notice, at 1:30 o'clock p.m.



          BEFORE:           THE HONORABLE CHRISTOPHER LARSEN,
                            Administrative Law Judge


REPORTERS AND TRANSCRIBERS      **JACKSON REPORTING, INC.**      *(707) 546-8911*
                                *Computerized Transcripts*
                    2300 Bethards Drive, Suite B, Santa Rosa, California 95405

**APPEARANCES:**

<u>On behalf of the Prosecuting Party</u>:

NORMAN RESNICOW, ESQ.
Fox, Horan & Camerini
825 Third Avenue
New York, New York 10025
PH:  (212) 480-4800


<u>On behalf of Respondent</u>:

DAVID STURMAN, ESQ.
JONATHAN STURMAN, ESQ.
Law Office of David M. Sturman
16530 Ventura Boulevard, Suite 412
Encino, California  91436
PH:  (818) 907-0777

REPORTERS AND TRANSCRIBERS   **JACKSON REPORTING, INC.**   *(707) 546-8911*
*Computerized Transcripts*
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-73

3

I N D E X

PROCEEDING:                                                    PAGE:

Thursday, October 26, 2017                                        4

| WITNESSES: | DIRECT | CROSS | REDIRECT | RECROSS | JUDGE |
|---|---|---|---|---|---|
| Majid Varess | 16 | 51 | 91 | 109 | |
| | | | 110 | | |
| Nick Zahab | 116 | 127 | 139 | 145 | |
| | | | 151 | 152 | |

| EXHIBITS: | IDENTIFIED | RECEIVED | REJECTED | W/D |
|---|---|---|---|---|

PROSECUTING PARTY

| | | | | |
|---|---|---|---|---|
| 1 through 10 | 5 | 5 | | |
| G | 7 | 8 | | |


RESPONDENT

| | | | | |
|---|---|---|---|---|
| 1 through 6 | 5 | 5 | | |


ADMINISTRATIVE LAW JUDGE

(None marked, nor received.)

1

2

3

REPORTERS AND TRANSCRIBERS    JACKSON REPORTING, INC.    (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-74

1          MR. RESNICOW:  It's not any extreme religious view

2    but I'm trying to be respectful.

3          JUDGE LARSEN:  Of course.  Of course.  No.  We

4    don't use the Bible.  But Mr. Varess, can you hear me?

5          MR. VARESS:  Yes, Your Honor.

6          JUDGE LARSEN:  All right.

7    Whereupon,

8                    MAJID VARESS,

9    having been first duly sworn by the Administrative Law Judge,

10   was called, examined, and testified as follows:

11         JUDGE LARSEN:  Thank you very much.  All right.

12   Mr. Resnicow, you may proceed.

13         MR. RESNICOW:  Thank you.  I'm not going to -- we

14   have stipulated facts so I'm not -- I assume I do not have to

15   try to put stipulated facts which are already in the record.

16   I may overlap a bit, Your Honor.  I apologize if I do.

17                  DIRECT EXAMINATION

18   BY MR. RESNICOW:

19      Q    Good morning, Majid.  How old are you currently,

20   Majid?

21      A    Sixty-six.

22      Q    When you started in 2011 then you were how old?

23      A    Sixty or 61.

24      Q    Okay.  May I -- would you say it would be a correct

25   statement that finding jobs for anti-regime radio stations to

REPORTERS AND TRANSCRIBERS        JACKSON REPORTING, INC.        (707) 546-8911
                                  Computerized Transcripts
                    2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-75

1    do sports and Farsi on a worldwide basis, there's not too

2    many jobs in that field anywhere in the world.  Is that

3    correct?

4         A    Yes.  That's correct.

5         Q    Okay.  So this job was a great opportunity for you

6    in the latter stages of your career.  Is that correct?

7         A    That is correct.

8         Q    Okay.  And you didn't come here with any idea of

9    trying to get a green card because you are a citizen of

10   Australia.  Pretty much all of your family is there, your

11   son, your brother passed away.  Is that correct?

12             MR. J. STURMAN:  Hold it.

13             JUDGE LARSEN:  Hold it.  There's an objection.

14   Everybody stop talking.  What's the objection, Mr. Sturman?

15             MR. J. STURMAN:  Leading the witness.

16             JUDGE LARSEN:  Leading.  The objection is

17   sustained.

18             MR. RESNICOW:  Okay.

19   BY MR. RESNICOW:

20        Q    Did you come here to get a green card, Mr. Varess?

21             MR. J. STURMAN:  Objection.

22             THE WITNESS:  No.

23             JUDGE LARSEN:  State the objection, please.

24             MR. J. STURMAN:  What's the relevance?

25             JUDGE LARSEN:  Overruled.  You may answer, Mr.

REPORTERS AND TRANSCRIBERS    JACKSON REPORTING, INC.    (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-76

1    Varess.

2           THE WITNESS:   No, sir, I didn't come there to get a

3    green card.

4    BY MR. RESNICOW:

5       Q    Is pretty much all of your family - they're not in

6    Iran.  Is pretty much all of your family in Australia?  For

7    example, you mentioned a brother passed away, a son with a

8    family, et cetera.

9       A    Yes.  They are in Australia.

10      Q    Thank you.  So you planned -- is it fair -- is it

11   correct to say that you planned to do your stint here and

12   then return back to Australia after your job here was

13   finished?

14      A    Absolutely.  I'm living Australia for 35 years.

15      Q    Thank you.  In your job, could you describe what

16   you did when you started work in November 2011?  Describe

17   briefly, if you could -- briefly, what you did as a producer

18   and sports presenter personality.

19      A    I was making a weekly -- two weekly program which I

20   was writing it, I was editing it, I was 18 years and I was

21   presenting it.  And this, obviously, come from my very long

22   background in sports and TV, which started in 1974.

23      Q    Okay.

24      A    And I was --

25      Q    Please stick to the question I've asked.  I know --

REPORTERS AND TRANSCRIBERS       JACKSON REPORTING, INC.       (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-77

```
 1    we don't want to tell stories.

 2         A    And I was working the technical people in PARS TV,

 3    and making this program, and doing it live from PARS TV

 4    station in Los Angeles.

 5         Q    Okay.  Thank you.  And you worked with the

 6    technicians at the PARS TV studio.  Is that correct?

 7         A    That's correct.

 8         Q    Okay.  When you started working, you were -- your

 9    stated salary $45,000 a year.  What payment patterns

10    developed when you started working, I believe it was, in

11    November 2011 after your arrival?

12         A    There wasn't any specific pattern.  I was given

13    sometimes check (inaudible) and sometimes a thousand,

14    sometimes five hundred, and all they say, "We have financial

15    problem.  We'll pay you later."  And later, and that was the

16    pattern, basically, from the beginning right to the end.

17         Q    And generally, what kinds of things were you told

18    when you told your employer, Mr. Shadjareh, that you were

19    supposed to be paid your salary and you weren't?  What did he

20    generally say to you?  Give me some examples.

21         A    Could you repeat the question again, please?

22         Q    Yes.  When you would say, "Why aren't I getting my

23    salary every week, every two weeks, every month, on the

24    $45,000?"  When you would ask him why you weren't getting it,

25    and when were you going to be paid, give me some examples of
```

1    the kind of answers he would give you.

2         A    Most of the time, it was about that we are short in

3    project.  We are not getting enough responses.  We don't have

4    enough advertising.  I can pay you, you know.  I believe in

5    you.  You believe in me.  And those are things and that was

6    basically the things he was saying.

7         Q    And now from the time you started producing shows

8    in November 2011, until your final show under the second LCA,

9    on July 2014, did he ever pay you regularly --

10        A    Never.

11        Q    -- the amount he was supposed to pay you?

12        A    Never.

13        Q    And you received payments though through mid-July

14   2014.  Is that correct?

15        A    That's correct.

16        Q    The payments that you received in 2014, which are

17   in the record, did you ever know whether those were payments

18   catching up for the first LCA period or whether they were

19   payments for work during the second LCA period?

20        A    No.  How do I know?  No.

21        Q    Did you receive any benefits during this

22   employment, such as medical --

23        A    None.

24        Q    None.  Did you receive anything of value, for

25   example, did he pay your rent --

REPORTERS AND TRANSCRIBERS      JACKSON REPORTING, INC.      (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-79

1       A    No.

2            MR. D. STURMAN:  I'm sorry.  David Sturman.  I

3   didn't hear the answer.

4   BY MR. RESNICOW:

5       Q    Majid, did you receive -- did he pay any of your

6   rental amounts where you lived ever?

7       A    No.  But can I add something to that because --

8       Q    No.  Answer the question, please.

9       A    No, sir.  No.

10      Q    You're sure?

11      A    Yes.  But that's -- maybe I have to ask something.

12      Q    Please answer the question, Majid.

13           JUDGE LARSEN:  I believe he's answered it three

14  times.

15           MR. RESNICOW:  Okay.

16           JUDGE LARSEN:  No, no, no.  He's also indicated

17  that he thinks a further explanation may be necessary --

18           MR. RESNICOW:  Okay.

19  BY MR. RESNICOW:

20      Q    Please give the explanation.

21           JUDGE LARSEN:  -- but you wouldn't let him pursue

22  that.

23           THE WITNESS:  My explanation is, a few times, I

24  can't recall if it was two or three times, but when I was

25  overseas, he made a check to my landlord on my behalf that he

REPORTERS AND TRANSCRIBERS    JACKSON REPORTING, INC.    (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-80

AR-396

22

1    was calculating as a payment to me.  That's what the

2    explanation was about that.

3    BY MR. RESNICOW:

4        Q    About how much total money did that amount to?

5        A    A few thousand, five thousand, maybe.

6        Q    Did you consider that a benefit?

7        A    No, never.

8        Q    Did you consider it salary?

9        A    Yes.

10       Q    Okay.  But you never received any medical benefit?

11       A    Nothing.

12       Q    Okay.  So did you and your wife have enough money

13   to live off, eat, and medical care?

14       A    Very limited -- no, it was very difficult

15   especially when we didn't have any medical or anything.

16       Q    Okay.  Did there come a time when you were

17   presented with a proposal for you to do programs together

18   with a Mr. Nick Daryoush?

19       A    Mr. Shadjareh wanted to get probably sponsors by

20   expanding our shows.  And my show --

21           MR. D. STURMAN:  I'm sorry, Your Honor.  I'm not

22   objecting.  I just can't hear his answer.

23           JUDGE LARSEN:  Mr. Varess, I don't know what the

24   problem is but you seem to be kind of cutting in and out a

25   little bit.  Could you start over, please, and restate your

REPORTERS AND TRANSCRIBERS   **JACKSON REPORTING, INC.**   *(707) 546-8911*
*Computerized Transcripts*
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-81

1    instruction to the program.

2        Q    Okay.  And this started when you were in the U.S.

3    from September 3 through November 16, 2013.

4        A    That's correct.

5        Q    And it continued after you left the U.S. back in

6    Australia, when you returned to Australia after November 16

7    until April 23, 2014.

8        A    That's correct.

9        Q    And Mr. Daryoush left this arrangement because of a

10    dispute with Mr. Shadjareh and PARS.

11        A    That's correct.

12        Q    Okay.  Now is it correct to say that as far as you

13    were concerned, since you didn't sign anything, and you

14    didn't want to have a reduction in salary, as far as you were

15    concerned, you were doing what your boss, Mr. Shadjareh,

16    asked you to do as part of your work under the second LCA?

17        A    Of course.

18        Q    When did you begin doing the shows?  When did the

19    shows start with Mr. Nick Daryoush?

20        A    I don't have the exact date but I think you

21    referred to the exact date.  Daryoush was with me for about

22    six months and then he left.  And he left because he never

23    get the timings he wanted.  Mr. Shadjareh apparently promised

24    him the program would be every day and he can get sponsors.

25    And that's why he left.

REPORTERS AND TRANSCRIBERS    JACKSON REPORTING, INC.    (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-82

       A    Could you repeat that again, please?

       Q    Okay.  Would you have accepted a decrease in salary
when your first LCA salary of $45,000 a year was increased to
$60,000 a year for your second LCA period?  Would you have
accepted a reduction in salary below the $45,000?

       A    No.

       Q    So you go -- is it fair to say that your going
forward with a second LCA looked to an increase in salary,
not a decrease in salary?

       A    It was obvious to everyone, I think, in the PARS
TV.

       Q    Okay.  And how else can I say it?  Why did you keep
working all of this time when you were being paid so little
and underpaid according through two LCAs?

       A    There's two different reasons, two sets of
different reasons probably.  One of them is, moving at my age
to the United States of America, with the health problems I
had, it wasn't easy.  I didn't have any health coverage or
anything.  I lived in Australia for 35 years and home, my
car, my children, my -- everyone are here.  This movement by
itself cost a lot to me.  The ticket, the house of rent on my
place in Sydney, which I wasn't able to rent it on time, and
then there were other expenses which come to -- with such a
big move.  You buy beds, a dressing table, a dining table, a
refrigerator, and this sort of things in U.S. to try to make

REPORTERS AND TRANSCRIBERS    JACKSON REPORTING, INC.    (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-83

1    a little universe in Woodland Hills area in Los Angeles.

2    This was huge.  And it was impossible to leave that in terms

3    of financial things, especially when you get hit by small

4    checks every month, every time.  And that was one of the

5    reasons that financially, I was under a lot of pressure.  And

6    I feel like I lost a lot.  That's the first thing.

7            The second thing is, I'm not sure if it's relevant

8    or not but my name, Varess, probably is the most famous sport

9    commentator in Iranian history.  And I couldn't leave my

10   name, my reputation, everything was on the line.  And I've

11   got millions of people around the world watching me.  It

12   wasn't between me and Shadjareh at that time.  It was between

13   me and my audience.  And I was so upset.  I was working like

14   hell to make this show -- one man in this age and I'm sorry

15   but they're talking about second LCA.  What did you do in

16   first LCA?  The first year, what you did to me.

17        Q    Majid, I'm sorry.

18        A    I'm very sorry.

19        Q    Go ahead.

20        A    I'm sorry.

21        Q    The fact that this was an anti-regime station, was

22   that a factor you took into consideration?

23            MR. D. STURMAN:  Object.

24            THE WITNESS:  Yeah.  Of course.  I --

25            JUDGE LARSEN:  Wait a moment.

REPORTERS AND TRANSCRIBERS        JACKSON REPORTING, INC.        (707) 546-8911
                                  Computerized Transcripts
                          2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-84

```
 1              MR. D. STURMAN:  Objection.

 2              JUDGE LARSEN:  There's an objection pending.  May I

 3   hear the basis for the objection?

 4              MR. D. STURMAN:  All of that --

 5              JUDGE LARSEN:  What?

 6              MR. D. STURMAN:  What's the relevance?

 7              JUDGE LARSEN:  Overruled.  You may answer.

 8              THE WITNESS:  Could you repeat?

 9              MR. RESNICOW:  Yes.

10   BY MR. RESNICOW:

11       Q    Was the fact that this was an anti-regime station a

12   factor?  Try to answer briefly, if you can --

13       A    Yes.

14       Q    -- a factor in your decision to keep working?

15       A    Yes.  Very much so.  Very much so, yes.

16       Q    Thank you.  Briefly, what is the nature of your

17   health problem then and currently?  Very briefly, please.

18              MR. D. STURMAN:  Objection.  Relevance.

19              JUDGE LARSEN:  Overruled.

20              THE WITNESS:  I have emphysema, very bad emphysema.

21              MR. RESNICOW:  I'm going to ask a difficult

22   question.

23   BY MR. RESNICOW:

24       Q    What have your doctors told you you're expected

25   life span is?
```

REPORTERS AND TRANSCRIBERS   JACKSON REPORTING, INC.   (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-85

1            MR. D. STURMAN:  Objection.

2            JUDGE LARSEN:  State the basis.

3            MR. D. STURMAN:  Relevance.

4            JUDGE LARSEN:  Overruled.  You may answer.

5            THE WITNESS:  Yeah.  My lung has big problem that's

6    the thing.  And I have a few discussions with my doctors and

7    saying I'm under a lot of medical things.  And yeah, that --

8    I think that's enough to talk about my health.  Sorry.

9            MR. RESNICOW:  Sorry if the question bothered you.

10   I apologize.  It was not planned.

11   BY MR. RESNICOW:

12       Q    Did there come a time when you were handed a

13   document by Mr. Shadjareh with a signature on it, on behalf

14   of PARS, during the period you were here, September --

15   beginning September 3, 2013 and when you left on November 16,

16   2013?  You were handed a document by him.

17       A    Yes.

18       Q    Could you describe the document?  I think it's one

19   of the Exhibits, please.

20       A    Just let me see the couple of documents because in

21   the month of September, he gave me two different documents.

22       Q    The one that said, "To Whom It May Concern."  It

23   was forgetting a rental.

24       A    Yeah.  He gave me a document which says:

25            "To Whom It May Concern, This is to

REPORTERS AND TRANSCRIBERS     JACKSON REPORTING, INC.     (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-86

```
 1              confirm that Mr. Majid Varess is working

 2              for PARS TV station as a score producer

 3              until September 2015.  The monthly salary

 4              is $5,000."

 5              And Amir Shadjareh as the CEO of PARS TV signed the

 6    document "with best regards."

 7         Q    And what's the date of that document, please?

 8         A    September 7th, 2015.

 9         Q    Okay.  Which is four days after you arrived on the

10    September 3rd?

11         A    That's correct.

12         Q    Because you needed a place to stay?

13         A    Yes.

14         Q    Okay.  Did he hand this to you personally?

15         A    Yes.  He did.

16         Q    Do you remember where you were when he handed it to

17    you?

18         A    It was in the office.  And then he came with me to

19    that real estate for showing that we get the unit we were

20    looking to --

21         Q    Okay.

22         A    -- collect.

23         Q    Did he give you a second document in November of --

24    before you left -- before you left November 16, did he give

25    you a second document also with the signature of PARS?
```

REPORTERS AND TRANSCRIBERS     JACKSON REPORTING, INC.     (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-87

36

1       A    That's correct.

2       Q    And could you -- that's also an Exhibit.  Could you

3    describe roughly and briefly, please, what the document said?

4       A    The document he gave me was dated 15, 2013 -- the

5    13th of November, of course.  It was about non-immigration,

6    non-immigrant visa section, United States Consulate General

7    in Sydney.  And it was about the E-3 usual -- E-3 visa

8    renewal application on behalf of Majid Varess.  And this,

9    again, he mentioned that the president of Broadcast Service

10   Global, Incorporation, wishes to continue to engage the

11   services of Mr. Varess, an Australian citizen, for an

12   additional two-year period.  He will be compensated in the

13   amount of $60,000 per year and then --

14      Q    So this document was to enable you to finalize your

15   visa arrangements in Australia pursuant to the second LCA,

16   the period of which was stated to begin September, I believe,

17   12, 2013.

18      A    That's correct.  This is identical to the first

19   letter he gave me in 2011 to show to U.S. Embassy in Sydney.

20      Q    So is it correct to say that even though you were

21   working with Nick Daryoush Zahab, et cetera, from about

22   September 25th in the U.S. under the new arrangements, this

23   document reaffirmed your understanding that you were

24   continuing to work under the second LCA?

25      A    Of course.

REPORTERS AND TRANSCRIBERS   **JACKSON REPORTING, INC.**   *(707) 546-8911*
*Computerized Transcripts*
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-88

1    again.

2    BY MR. RESNICOW:

3        Q    The visa that you came on, on the third of

4    September, provided for the same two-year period in your

5    approved LCA.   Is that correct?

6        A    The visa went -- sorry, could you say it again?

7        Q    The visa that -- the stamped visa that you got when

8    you came to the U.S. on September 3rd, 2013, corresponded to

9    the period in your LCA, the same two-year period.

10       A    About that, yes.

11       Q    Okay.  So you had, under that stamped visa, a right

12   to stay here for two years.   Correct?

13       A    That's correct.

14       Q    So when you went back, was it -- was the purpose of

15   that to -- just to complete some paper work in Australia?

16       A    Yes.

17       Q    Okay.

18       A    Because that stay for that two years has to be one.

19   If I wanted to travel, then I needed to get a visa from

20   Sydney and only in Sydney.

21       Q    So if I may ask, was it your understanding that if

22   you had just simply stayed in the U.S. and not try to get a

23   multiple entry visa, you could have stayed in the U.S. and

24   worked for two years under your LCA.

25            MR. D. STURMAN:   Objection.

REPORTERS AND TRANSCRIBERS   **JACKSON REPORTING, INC.**   *(707) 546-8911*
*Computerized Transcripts*
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-89

AR-541

41

```
1    stayed in the U.S. under the two-year visa that you got,

2    instead of going back to Australia to try to get multiple

3    entry, that you could have stayed for the two years and

4    worked under the second LCA?

5        A    A hundred percent.  Yes.

6        Q    Thank you.  "Yes" would be sufficient.  We don't

7    need percentages.  Okay.  So under the circumstances, when

8    you got back to Australia, did you continue to produce shows?

9        A    Yes.

10       Q    Did you have continuing payment problems with PARS,

11   your employer?

12       A    Yes.

13       Q    Did you have serious reason to believe that if

14   you -- was he paying for your plane fares, by the way, PARS?

15       A    No.

16       Q    So you were doing this all out of your own pocket?

17       A    That's correct.

18       Q    And flights to Australia, what's roughly a round

19   trip Australia and back cost?

20       A    It depends on the season but averages about $1,500.

21       Q    Per person?

22       A    Yes.

23       Q    Were you travelling with your wife at the time?

24       A    That's right.

25       Q    So it's $3,000 round trip roughly?
```

REPORTERS AND TRANSCRIBERS     **JACKSON REPORTING, INC.**     *(707) 546-8911*
*Computerized Transcripts*
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-90

1     A    That's correct.

2     Q    Okay.  And he was paying you a thousand or fifteen

3  hundred a month, roughly, when he paid you?

4     A    Yeah.  He paid me $20,000 for the two years of the

5  LCA instead of $90,000.  That's how much he paid me.

6     Q    Okay.  Well, the documents speak for themselves on

7  that.  I will observe.  We have documents on that.  So did

8  you have the hope that he would start catching up on payments

9  after you went back to get the multi-entry visa?

10     A    He continued with the pattern.  It depends how long

11  you can stay -- how frustrated you are.  And he had started

12  even not paying that few hundred dollars of time and I

13  realized that he started to look around even more and not

14  paid me and finally he said it because we talk every day

15  about these things.  And yeah, I think that's my answer.

16     Q    Did you have communications with Mr. Shadjareh, as

17  you've just said, after you returned to Australia?

18     A    He --

19     Q    Did Mr. Shadjareh ever once, either in speaking or

20  in writing, indicate that he thought you were working under

21  the unsigned agreement rather than under the LCA?

22     A    Never.

23     Q    Did the subject of that contract ever come up in

24  communications with you?

25     A    No.

REPORTERS AND TRANSCRIBERS    **JACKSON REPORTING, INC.**    *(707) 546-8911*
*Computerized Transcripts*
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-91

43

1      Q    So as far as you were concerned that contract, that

2    unsigned contract had nothing to do with you?

3      A    That's correct.  I doubted even if Mr. Zahab signed

4    such a contract.

5      Q    What were the circumstances of Mr. Zahab's quitting

6    the show in late April of 2014?

7      A    What was what?  Sorry.

8      Q    What were the circumstances of Mr. Nick Daryoush

9    Zahab's quitting the show in, I think it was, April 25, 2014?

10     A    Yeah.  My understanding is Zahab got sick of the

11   situation.  He never got the timing he wanted, and probably

12   the money he wanted.  I don't know about that part.  And he

13   quit and he asked me all the good -- he wished me all the

14   best on his Facebook on his last show and I continued after

15   Mr. Zahab left the show.  And I had to because I was under

16   the LCA and that's it.  And that's -- a few months later,

17   from April 27th, I think, to the July 14th, I still have my

18   show and on the 14th, he finally said, "I'm not paying you."

19     Q    You referred to a Facebook posting about the time

20   -- on or about the time he left on April 25th.  Could you

21   just -- we have a certified translation of that in the

22   Exhibits.  Could you just briefly tell me what that posting

23   said in its pertinent part?

24     A    This is from Mr. Zahab's Facebook, it says, "I

25   hereby inform you that due to disagreement with PARS TV

REPORTERS AND TRANSCRIBERS        JACKSON REPORTING, INC.        (707) 546-8911
                                    Computerized Transcripts
                       2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-92

```
1   show.

2       Q    It happened after, after you stopped on July 14th?

3       A    I'm sorry?

4       Q    The dispute, was the dispute going -- was it before

5   or after or overlapping when you did your last show on July

6   14th, 2014?

7       A    I can't recall but it is very close to that.

8       Q    Okay.  When you were doing your programs, did you

9   do -- how -- when you were being -- excuse me, when you were

10   doing your programs, did you report from any other countries

11   beyond Australia and the U.S.?

12      A    Yes.  Yes, I did.

13      Q    What other countries did you do shows from?

14      A    I did a few reports from England.  One was

15   Wimbledon.  And one was at Liverpool City which was, again,

16   between Liverpool and Manchester United.  I did again in

17   Ireland, which was Liverpool, Ireland again.  What was that

18   team?

19      Q    Okay.  We don't need the teams.  We just need the

20   cities.

21      A    Yeah.  And Belgium I did.  And France.  And of

22   course, from Australia a number of times.  And that's it,

23   yes.

24      Q    And your shows, were your shows transmitted either

25   by internet or live feed to the studios in California?
```

REPORTERS AND TRANSCRIBERS    JACKSON REPORTING, INC.    (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-93

1      A    Yeah.  It was always wire internet but whether it

2   was live internet or I recorded the show and e-mailed the

3   file to PARS TV and then they upload the things.

4      Q    And by that, you mean upload to satellite?

5      A    Yes.

6      Q    From where?  Is it correct to say that it would be

7   transmitted from there to Iranians worldwide outside and

8   inside Iran?

9      A    Yes.  That's correct.  But when it goes to

10  Satellite, Iran is one of the countries which will be covered

11  by that.

12     Q    So there are no shows -- is it correct to say that

13  there are no shows that you did from when you started in 2011

14  until your last show in July 2014, that were not

15  transmitted -- uploaded -- transmitted to PARS Studio in the

16  LA area and then uploaded to satellite.  Is that correct?

17     A    Yes.  Yes.  It's impossible any other way.

18     Q    Okay.  So you're always connected.  And did you

19  work with the technicians there in coordination with the

20  technicians in the studio to upload the shows?

21     A    Yeah.  Until the last day.

22     Q    So when you were outside the U.S., it's like you

23  were kind of like a foreign correspondent for a U.S.

24  newspaper?

25     A    Yeah.  You can consider it that way but the show

REPORTERS AND TRANSCRIBERS   JACKSON REPORTING, INC.   (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-94

50

1    wouldn't -- he officially said, in effect, "I wouldn't pay

2    you if I didn't have the money," at that point, did you

3    consider it an employer saying to you, "Don't count on me to

4    pay you"?

5        A    That's right.

6        Q    Don't count -- do you mean, don't count on me to

7    pay you ever or for the future?

8        A    At that moment, I think it was their last nail to

9    the coffin, just when he says in one of the things he send

10   me, "If I don't have money, I'm going to close the station,"

11   then it says it all, I think.

12       Q    Okay.  So is this a situation where someone says --

13   like someone says to you, "I'm not firing you but I'm not

14   paying you"?

15       A    Could you ask it again, please?

16       Q    Yes.  Is this, in effect, a situation whether an

17   employer, your employer said to you, "I'm not firing you but

18   I'm not promising to ever pay you anything again"?

19       A    A hundred percent.  Very close to this statement.

20   He never wanted to fire me.  Why?  He never had a sport

21   program on his television before me.  And I don't think I was

22   a liability to him.  But yes, he never said go away.  He

23   always spoke nicely to me and respect me.  And even on

24   television, he said, "We are proud to help Mr. Varess with a

25   couple of university degrees and background."  All these

1      MR. RESNICOW:  Your Honor, I would ask that Counsel

2   let the client, as long as he's not rambling on too long,

3   complete his answers to the questions instead of cutting him

4   off.

5      MR. J. STURMAN:  We --

6      JUDGE LARSEN:  Hold on, hold on just a second.  I

7   believe Mr. Varess answered the question.  If you want to

8   follow up on redirect, Mr. Resnicow, you'll have an

9   opportunity to do that later.

10      MR. RESNICOW:  Thank you, Your Honor.

11      JUDGE LARSEN:  All right.  Mr. Sturman.

12      MR. J. STURMAN:  Okay.

13   BY MR. J. STURMAN:

14      Q    So just to summarize where we are now, Mr. Varess,

15   the lawyer, Noah Klug, that you hired, he arranged everything

16   as far as your immigration.  He prepared all of the forms.

17   He assisted you in applying for the E-3 visa.  Correct?

18      A    I could do it myself maybe but we gave it to him.

19      Q    Okay.  So he did it.

20      A    Yes.  That's right.

21      Q    Okay.  And you said in the first LCA that -- you

22   testified that Amir wasn't paying and you were unhappy.

23   Correct?

24      A    That's right.

25      Q    Why did you come back in September of 2013 if you

REPORTERS AND TRANSCRIBERS    JACKSON REPORTING, INC.    (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-96

1    were unhappy?

2       A    Well, I think I answered that question.  If you

3    want me to repeat it again.

4       Q    I don't remember but could you answer again.

5            MR. RESNICOW:  Your Honor, I think he answered that

6    question but he can give another speech if you'd like.

7            JUDGE LARSEN:  Please answer the question, Mr.

8    Varess.

9            THE WITNESS:  Yeah.  I didn't go for the process of

10   meeting Amir Shadjareh.  I went -- the things I was feeling I

11   could do for sports, for Iran situation.  I needed supporting

12   person or supporting station to give me money, give me salary

13   to do this.  Also when done, I was doing my show.  I was

14   happy with my show.  I was getting a lot of support.  And the

15   other half wasn't.  I came back to continue with the hope.

16   It's not one person in this station.  There's a number of

17   people.  It is not like a shop.  When you are on air, you are

18   communicating with a lot of people.  You cannot stop

19   something because you haven't been paid $2,000.  It's

20   different from -- maybe it's different from other jobs.  I

21   came back with the hope that he always -- it's getting

22   better.  It's getting better.  We are the -- and we were

23   planning to broadcast the 2015 AFC and 2014 --

24       Q    You know what?  I've heard enough.  Thank you, Mr.

25   Varess.  Mr. Varess, when did you renew your -- your first

REPORTERS AND TRANSCRIBERS        JACKSON REPORTING, INC.        (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-97

1    Is that correct, Mr. Varess?

2              THE WITNESS:  Your Honor, when I get back, let me

3    say that, please.  When I came back, they gave me this

4    two-year visa to stay.  And when I was planning to go back to

5    Australia, that, to me, that was the time I had to go and get

6    my visa in a way or in New York, or to get a multiple visa.

7              MR. J. STURMAN:  Okay.

8              THE WITNESS:  I didn't think --

9              JUDGE LARSEN:  Okay.  Yeah.  So you had a good

10   reason for not renewing it.  But the fact is you didn't renew

11   it.  Correct?

12             THE WITNESS:  That's correct, Your Honor.

13             JUDGE LARSEN:  All right.  Thank you.  Mr. Sturman,

14   you may proceed.

15             MR. J. STURMAN:  Okay.

16   BY MR. J. STURMAN:

17        Q    So you did not renew it.  Did you try to renew it?

18        A    When I was in the states, as I said --

19        Q    Yes or no, did you attempt to renew the visa?

20        A    Yes.

21        Q    When?  What month and what year?

22        A    When I came back to Australia, about late December

23   or early January, as far as I'm concerned, I lost the

24   application with all the documents that Mr. Shadjareh

25   supported.  I lost an application to Consulate in Sydney.  I

REPORTERS AND TRANSCRIBERS        JACKSON REPORTING, INC.        (707) 546-8911
                                        Computerized Transcripts
                          2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-98

1    asked for an appointment.  I asked for an appointment and

2    then discussed it with Mr. Shadjareh.  I postponed it because

3    I wasn't receiving any money.  I had to pay the fee again.  I

4    had to pay Noah, as you mentioned his name.  I have to pay

5    him and nothing would happen.  And I started to think that I

6    have to get money before to follow this.  And my show was

7    going on with Zahab and then by myself.  That's the story.

8         Q    So you never got another visa.  That's what it

9    looks like.

10        A    No, no.  I withdraw the application.

11        Q    Okay.  That's fine.  So you didn't get a visa.

12   Okay.  So why did you have to work in the United States when

13   you came in on September -- after September 12th when your

14   visa expired?

15        A    Could you please repeat the question?

16        Q    Did you have a right to work after your visa

17   expired in September -- on September 12th, 2013?

18        A    Yes.

19        Q    You did?  But you just said you never got a visa.

20        A    I said I had two-year visa.

21        Q    You said --

22        A    I had a visa.  Excuse me.  U.S. visa is just a

23   travel activity in this case.  I was -- by having LCA to work

24   on, if I didn't want to come to Sydney or anywhere in the

25   world, I did it based on the U.S. law as far as I am

REPORTERS AND TRANSCRIBERS          JACKSON REPORTING, INC.          (707) 546-8911
                                      Computerized Transcripts
                        2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-99

1    concerned with that two years in the airport, I was allowed

2    to stay in the United States and work based on the LCA.

3        Q    Mr. Varess, then why -- why did you try to renew

4    your visa if you didn't need it?

5        A    Of course I need to travel.

6        Q    You just said that you had two years.

7        A    All right.  Let me ask you your question to my

8    answer.  We were planning -- one of the reasons to be honest

9    with you, one of the reasons I continued to work, there was a

10   big World Cup in the end of July in Brazil 2015 which is --

11   2014 which Iran was in it and it was so important to me to

12   commentate and support --

13       Q    Okay.  Mr. Varess though, you just said that you

14   were the most famous Iranian sportscaster and that you have

15   millions of followers.  And you already said you didn't like

16   Amir because he was not paying you.  I mean, you're so

17   popular, why couldn't you get a job somewhere else?

18            MR. RESNICOW:  Your Honor, objection.  Objection.

19   The witness is being badgered and I would appreciate a

20   lowering of the temperature of the questions please.

21            JUDGE LARSEN:  Well, I would appreciate a lowering

22   of the temperature as well but that's not an objection.

23            MR. J. STURMAN:  Okay, Your Honor.  I will attempt

24   to --

25            JUDGE LARSEN:  The witness is not being badgered.

REPORTERS AND TRANSCRIBERS    JACKSON REPORTING, INC.    (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-100

1    attorney, if you had the right to work without renewing your

2    visa?

3              MR. RESNICOW:  I'm sorry.  Can you repeat the

4    question, please?  I couldn't hear.

5    BY MR. J. STURMAN:

6         Q    Did your attorney tell you, you had the right to

7    work without renewing your visa?

8              MR. RESNICOW:  Objection, Your Honor.  The way it's

9    phrased by him, he's -- this would violate attorney-client

10   privilege.

11             JUDGE LARSEN:  Sustained.

12   BY MR. J. STURMAN:

13        Q    Were you given advice -- were you given advice that

14   you had the right to work without a renewing your visa?

15             MR. RESNICOW:  Your Honor, objection to all

16   questions now and in the future of the discussions between my

17   client and the person described by the other party as my

18   client's attorney on attorney-client privilege.

19             JUDGE LARSEN:  Well, the party described by the

20   opposing party as your client's attorney is Mr. Klug I

21   believe.  And the question Mr. Sturman just asked was not

22   limited to Mr. Klug.  Let me suggest, Mr. Sturman, that --

23   well, I won't do that.  Let me do this.  Mr. Varess, other

24   than Mr. Klug, has anyone ever told you, and don't tell me

25   one way or the other what Mr. Klug may or may not have told

REPORTERS AND TRANSCRIBERS        JACKSON REPORTING, INC.        (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-101

1    you, but other than him, has anyone ever told you that you

2    had the right to remain in the United States and work after

3    the expiration of your E-3 visa in September of 2013?

4              THE WITNESS:  The airport officer.

5              JUDGE LARSEN:  So yes, someone did.

6              THE WITNESS:  Yes.

7              JUDGE LARSEN:  All right.  Thank you.  Mr. Sturman,

8    you may proceed.  Mr. Sturman?

9              MR. J. STURMAN:  Yeah.  One second, Your Honor.

10             JUDGE LARSEN:  You may proceed.

11   BY MR. J. STURMAN:

12        Q    In your testimony, you talked about a contract that

13   was unsigned.  Did you ever read that contract?

14        A    Yes.

15        Q    And did you disagree with it?

16        A    I remember the first thing I told Mr. Zahab was,

17   "I'm under LCA.  This is between you and Mr. Shadjareh."

18   There wasn't even going anywhere for me to even talk about

19   that contract.

20        Q    Whose idea was it to work with Nick, Mr. Zahab?

21        A    Mr. Shadjareh because he believed because Daryoush

22   was living for years in Los Angeles, and he was a very nice

23   person, really a very nice person.  He -- if he come and he

24   wasn't happy with this station he was working.  If he joined

25   us and we have everyday program, he can bring a sponsor and

REPORTERS AND TRANSCRIBERS    JACKSON REPORTING, INC.    (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-102

1    $1,500?  Do you recall?

2         A    It was different.  Sometimes $1,500, sometimes

3    $1,000, sometimes $900, sometimes $300, sometimes $1,200.

4         Q    Wait.  You said that you worked from outside the

5    United States during the first LCA.  Correct?

6         A    Sometimes.

7         Q    Sometimes.  You said you worked in Ireland.

8    Correct?

9         A    Yes.

10        Q    England?

11        A    Yes.

12        Q    France?

13        A    Yes.

14        Q    Whose idea was it for you to go to Ireland?

15        A    My -- I was conducting the show.  I decide which

16   program is good for the show.  He gave me time.  He gave me

17   facility.  I am the producer.  And the person in sports

18   decides which program is good.

19        Q    Okay.  So you were making all of the decisions on

20   how to produce the show.  Correct?

21        A    In technical side, yes.

22        Q    But did you have -- and so you -- then -- so was it

23   your idea to go to England and to go to France.  Correct?

24        A    I'm sorry.

25        Q    It was -- was it also your idea to go to England

REPORTERS AND TRANSCRIBERS    JACKSON REPORTING, INC.    (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-103

78

```
1    and France, or was it Amir's idea?

2         A    The England was because Wimbledon was there at the

3    time and I was going there.  And obviously, I decide to go to

4    this competition.

5         Q    Okay.  So you left the United States in November of

6    2013 and you haven't -- have you returned since?

7         A    Since September -- September the 3rd, I think.

8         Q    That's when you came to the United States.  That

9    was the last time you came to the United States?

10        A    Yes.

11        Q    Okay.  I'm asking when you left the United States.

12   It was November.  Right?

13        A    Yes.  November 16th, I believe.

14             JUDGE LARSEN:  Don't we have a stipulation on this,

15   Counsel?

16             MR. J. STURMAN:  Yes.

17   BY MR. J. STURMAN:

18        Q    And so you never came back.  And you testified

19   earlier you still worked for Amir.  Right?

20        A    Yes.

21        Q    But on both the LCAs, there's a designated area of

22   employment.  Did you -- so you weren't working at the PARS

23   facility.  You were working overseas.  Correct?

24        A    Could you say it again, please?

25        Q    After November 2013, you were working overseas.
```

REPORTERS AND TRANSCRIBERS    **JACKSON REPORTING, INC.**    *(707) 546-8911*
*Computerized Transcripts*
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-104

1    You were not working at Persian TV.  You were working

2    overseas.

3         A    For PARS TV.

4         Q    Right.  But not at PARS TV, just for PARS TV.

5         A    No, no.  Like I did from England.  Like I did

6    during sometimes in first LCA, and all of my shows on YouTube

7    at the time, I was here with PARS Local and everything on it.

8         Q    Okay.  But you were not working at the address at

9    PARS TV, the one on the second LCA.

10        A    I physically wasn't there at PARS TV.

11        Q    Okay.  And did you have set hours at this time or

12   did you have to clock in?  Did you have to keep track of your

13   work hours?

14        A    If I had -- I'm sorry but producing the TV program

15   doesn't have that nature.  I don't know what you're talking

16   about.  Sometimes there's during the night.  Sometimes it's

17   24 hours but no, if you ask me keep it in writing somewhere,

18   no.

19        Q    Who provided all of the equipment for the filming?

20        A    These days, you don't need much equipment except

21   the satellite system.  From Alaska, you can broadcast a TV

22   show.

23        Q    So was it your equipment or was it Amir's

24   equipment?

25        A    I never give him anything.  That was my

REPORTERS AND TRANSCRIBERS    JACKSON REPORTING, INC.    (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-105

1     for the week because I think there are language problems.

2             MR. J. STURMAN:  Oh, okay.  Well, I think I got it.

3     BY MR. J. STURMAN:

4         Q     It was that Nick was doing one show by himself.

5     Majid was doing -- I'm sorry, Mr. Varess, you were doing one

6     show by yourself.  And then you and Nick were doing one show

7     together.

8         A     In a given week, yes.  Correct, Your Honor.

9             JUDGE LARSEN:  That's correct?  All right, thank

10    you.

11            MR. J. STURMAN:  Okay.

12    BY MR. J. STURMAN:

13        Q     So that's just -- is it your understanding that

14    that's a coincidence that that's the same as the unsigned

15    contract?  Is that just a coincidence?

16        A     I don't know.

17        Q     Okay.  Why did you leave in November?

18        A     I left like the other time and I was supposed to

19    come and get my re-entry visa because I was telling you,

20    there was a big competition in Brazil in 2014.  And all the

21    planning was going to this World Cup, which Iran was in it.

22    That was my very main concern.  And I needed that re-entry

23    visa and everything was in the service of that competition

24    which Iran was in it.  It was a World Cup.  It was once.  It

25    was like a time event.  And again, in 2015, there was a

REPORTERS AND TRANSCRIBERS        JACKSON REPORTING, INC.        (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-106

83

1    exiation (phonetic) football cup in Australia in my next

2    door, and that was another competition which we definitely

3    wanted to cover that.  And that was the reason that I came

4    here to sort out a few things, to get my re-entry visa and to

5    come back.

6        Q    Okay.  But did Amir ask you to leave?

7        A    Amir was hundred percent behind us having the World

8    Cup because --

9        Q    But whose idea -- did he say, "Hey, you should

10   leave"?  Or did you decide that it was best if you went?

11       A    This decision in this situation is not coming large

12   with this side.  We talked that I better get this because

13   preparing for the World Cup is not overnight.  You have to

14   have your visa.  You have to have -- to get --

15       Q    No.  I understand.  Mr. Varess, let me be -- maybe

16   what I'm trying to ask -- let me try to be a little clearer.

17   Was it your idea to leave and cover the World Cup or were you

18   the one who first proposed the idea?

19       A    For the World Cup, it's everybody's dream to have

20   TV in it.  Everybody calls for it.  When Iran is in the World

21   Cup, which --

22       Q    Okay.  But was it Amir's dream or was it your

23   dream?

24       A    I can't answer this question.  It was everybody's

25   dream.

REPORTERS AND TRANSCRIBERS        JACKSON REPORTING, INC.        (707) 546-8911
                                  Computerized Transcripts
                    2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-107

84

1          MR. RESNICOW:  Your Honor, objection on the grounds

2     of lack of specificity.  We're getting into metaphysics here

3     in dreams.

4          MR. J. STURMAN:  I'm not.

5          JUDGE LARSEN:  The objection is overruled.  Mr.

6     Sturman is asking whether Mr. Varess' leave the country was

7     something of his idea or was it Mr. Shadjareh's idea.  And

8     Mr. Varess has answered, everybody knew.  He can't say,

9     apparently, whose idea it was.  It was something that was

10    necessary to cover the World Cup, which they both agreed they

11    wanted to do.  I think that's where we are.

12         THE WITNESS:  Can I add something, Your Honor?

13         JUDGE LARSEN:  Mr. Varess, let's get a question for

14    you.  Mr. Sturman.

15         THE WITNESS:  Sure.

16    BY MR. J. STURMAN:

17    Q    So you wanted to leave to cover the World Cup.  Yes

18    or no.

19    A    But of the main reason was the necessary of getting

20    that re-entry visa was for World Cup and planning to go to

21    Brazil and see the station, see the facility.  It wasn't like

22    in six months later the World Cup.  The World Cup --

23    Q    You wanted to go.  Yes or no.

24    A    -- seven months before.

25    Q    You wanted to go.  Yes?  Right?

REPORTERS AND TRANSCRIBERS        JACKSON REPORTING, INC.        (707) 546-8911
                                    Computerized Transcripts
                 2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-108

1       A    Of course.

2       Q    So Amir didn't order you to go.  Did he?

3       A    Amir would love me to go to the World Cup.  But

4    because Amir doesn't have money to pay, he never could order

5    me to go to the World Cup.

6       Q    But the main purpose was the re-entry permit, you

7    just said.

8       A    I'm sorry.

9       Q    The main purpose of leaving was to get the re-entry

10   permit.  Is that what you just said before?

11      A    Yes, yes.

12      Q    Okay.  So you wanted to leave to get the re-entry

13   permit.  It wasn't -- Amir didn't ask you to leave.

14      A    I think I explained enough.  I don't know what to

15   say.

16      Q    Okay.  All right.  Did you and Amir ever come to an

17   agreement on the first LCA?  You said he wasn't paying you.

18   Did you ever work out an agreement with him?

19      A    No.

20      Q    No?  Did he ever -- and you said he was sending you

21   checks that you didn't know what they were for or you said

22   you didn't know if they were the first LCA or the second LCA.

23   Correct?

24           MR. RESNICOW:  Your Honor, I object on the grounds

25   of lack of specificity, time period.  We have several years

REPORTERS AND TRANSCRIBERS     JACKSON REPORTING, INC.     (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-109

1    Q    Was Mr. Shadjareh, was he okay with you going to do

2    these programs from Europe to show rugby and tennis and other

3    things?  Was he okay with that and supportive of you doing

4    these shows from Europe?

5    A    Yes.

6    Q    Okay.  When you -- was every one of your shows,

7    wherever you did it in the world, Belgium, Ireland, France,

8    England, Australia, in every case, were those shows

9    transmitted to Los Angeles and uploaded into the television

10   system through satellite from Los Angeles?

11   A    Yes.

12   Q    Okay.  In doing your work, whether you were in Los

13   Angeles or outside, did you really do literally everything

14   except the technician's work with regard to the show,

15   producer, director, performer, writer, film clip maker,

16   camera, everything?  Do you do all of those things?

17   A    Yes.

18   Q    Was it a very full work week?

19   A    I'm sorry.

20   Q    Was it a very full work week generally for you?

21   A    Yes.

22   Q    About how many hours a week did you put in?

23   A    I can't say but it wasn't less than 60, 65, or 70

24   hours.

25   Q    Sixty, 65 or 70, was part of that due to

REPORTERS AND TRANSCRIBERS    **JACKSON REPORTING, INC.**    *(707) 546-8911*
*Computerized Transcripts*
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-110

AR476

1   differences in time zones like we have here?

2        A    Let me give you an example.  One show which was

3   10:30 in the morning on Sunday, Los Angeles time, was 3:00 in

4   the morning in Sydney.  I had to wake up 1:00 a.m. to shave,

5   to get dressed, to organize everything and go on air at 3:00

6   in the morning, and talk to the technician in Los Angeles,

7   which was say about 10:00 in the morning Los Angeles time,

8   and then the show starts 10:30 there and 3:00 o'clock in the

9   morning here.  And it finishes at 4:30 in the morning.

10       Q    Okay.  So I guess this testimony, you're used to

11  the hours.  Now you didn't own the station.  So Amir

12  Shadjareh was your boss.  Right?

13       A    Yes.

14       Q    So ultimately, if there were decisions to make, the

15  boss makes the decisions.  Right?

16       A    Yeah, of course.

17       Q    So you were not insubordinate.  You followed his

18  instructions and followed his decisions.  Right?

19       A    Yes.

20       Q    Did you ever do -- did he ever say to you that you

21  were -- punish you or write to you or treat -- say that you

22  were insubordinate and not following his instructions as the

23  boss?

24       A    No, never.  I'll give you a few examples again.

25  He, a number of times because of some unexpected thing, did

REPORTERS AND TRANSCRIBERS        JACKSON REPORTING, INC.        (707) 546-8911
                                    Computerized Transcripts
                          2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-111

108

1    correct?

2        A    On average, yes.

3        Q    Okay.  So to summarize, the allegations that you

4    made in the claim you put in relate to violations continuing

5    through the date you left after the second LCA period began

6    through the date that you were producing things for him, as

7    you understood, under the LCA.  They didn't pay you.  And

8    continuing thereafter, but at least through July 14th, 2014.

9        A    Right.

10       Q    And you put in your claim in December of 2015,

11   which is well within a year of July 14th, 2014?

12       A    Right.

13       Q    And your programs were aired on the station through

14   -- your last show was July 14th, 2014?

15       A    Yes.

16       Q    Okay.  And do you stand by everything that was put

17   in that document, which otherwise speaks for itself, as true,

18   complete, and correct?

19       A    Correct.

20            MR. RESNICOW:  Thank you, Your Honor.  I've

21   completed recross (sic).

22            JUDGE LARSEN:  Recross, Mr. Sturman?  Mr. Sturman.

23            MR. J. STURMAN:  Oh, sorry.  I had the mute on.  I

24   was talking to the room, I guess.

25            JUDGE LARSEN:  Do you have any questions no

REPORTERS AND TRANSCRIBERS    **JACKSON REPORTING, INC.**    *(707) 546-8911*
*Computerized Transcripts*
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-112

# UNITED STATES DEPARTMENT OF LABOR

## OFFICE OF ADMINISTRATIVE LAW JUDGES

In the Matter of:           )
                            )
MAJID VARESS,               )
                            )
    Prosecuting Party,      )
                            )
versus                      )    Case No. 2016-LCA-00019
                            )
PERSIAN BROADCASTING SERVICE )
GLOBAL, INC.,               )
                            )
    Respondent.             )

RECEIVED
NOV 21 2017
Office of Administrative Law Judges
San Francisco, Ca

PAGES:  157 through 249

LOCATION:  San Francisco, California

DATE:  October 27, 2017

VOLUME:  II

ORIGINAL

=================================================================

## JACKSON REPORTING, INC.
### OFFICIAL FEDERAL REPORTERS
2300 Bethards Drive, Suite B
Santa Rosa, California 95405
(707) 546-8911

UNITED STATES DEPARTMENT OF LABOR

OFFICE OF ADMINISTRATIVE LAW JUDGES


In the Matter of:          )
                           )
MAJID VARESS,              )
                           )
      Prosecuting Party,   )
                           )
versus                     )   Case No. 2016-LCA-00019
                           )
PERSIAN BROADCASTING SERVICE )
GLOBAL, INC.,              )
                           )
      Respondent.          )


**VOLUME II**


Friday,
October 27, 2017


Department of Labor
Suite 4-800
90 Seventh Street
San Francisco, California 94103


       The above-entitled matter came on for hearing,

pursuant to notice, at 1:30 o'clock p.m.


       BEFORE:        THE HONORABLE CHRISTOPHER LARSEN,
                      Administrative Law Judge

REPORTERS AND TRANSCRIBERS       **JACKSON REPORTING, INC.**        *(707) 546-8911*
                                 *Computerized Transcripts*
                 2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-114

**APPEARANCES:**

<u>On behalf of the Prosecuting Party</u>:

NORMAN RESNICOW, ESQ.
Fox, Horan & Camerini
825 Third Avenue
New York, New York 10025
PH:  (212) 480-4800


<u>On behalf of Respondent</u>:

DAVID STURMAN, ESQ.
JONATHAN STURMAN, ESQ.
Law Office of David M. Sturman
16530 Ventura Boulevard, Suite 412
Encino, California  91436
PH:  (818) 907-0777

REPORTERS AND TRANSCRIBERS   **JACKSON REPORTING, INC.**   *(707) 546-8911*
*Computerized Transcripts*
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-115

159

I N D E X

PROCEEDING:                                                    PAGE:

Friday, October 27, 2017                                        160

WITNESSES:            DIRECT   CROSS   REDIRECT   RECROSS  JUDGE

Amir Shadjareh          160     191      223        227
                                         228        229


EXHIBITS:           IDENTIFIED    RECEIVED    REJECTED   W/D


PROSECUTING PARTY

(None marked, nor received.)


RESPONDENT

(None marked, nor received.)


ADMINISTRATIVE LAW JUDGE

(None marked, nor received.)

1

2

REPORTERS AND TRANSCRIBERS    **JACKSON REPORTING, INC.**    *(707) 546-8911*
*Computerized Transcripts*
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

1                    P R O C E E D I N G S

2                                          (1:40 o'clock p.m.)

3              JUDGE LARSEN:  We'll go on the record.  And let's

4    come to order again in the matter of Varess as Prosecuting

5    Party versus Persian Broadcast Service Global, ALJ Case No.

6    2016-LCA-00019.

7              Just before we went on the record, we did a

8    telephonic role call and so we have Mr. Varess, his counsel

9    Mr. Resnicow is on the line.  We have both David Sturman and

10   Jonathan Sturman representing Respondent.  And with them, I

11   understand, is our witness for today, Mr. Amir Shadjareh, or

12   I hope that's close to how he pronounces it.  So I'm going to

13   begin by -- Mr. Shadjareh by placing you under oath.  I'll

14   ask you, please, to raise your right hand.

15   Whereupon,

16                        AMIR SHADJAREH,

17   having been first duly sworn by the Administrative Law Judge,

18   was called, examined, and testified as follows:

19             JUDGE LARSEN:  All right.  Thank you.  And is --

20   which of the Mr. Sturman is going to do the questioning of

21   this witness?

22             MR. D. STURMAN:  David Sturman will be doing the

23   questioning.

24             JUDGE LARSEN:  All right.  Thank you, Mr. Sturman.

25   You may go ahead on direct examination.

REPORTERS AND TRANSCRIBERS    JACKSON REPORTING, INC.    (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-117

1                    DIRECT EXAMINATION

2    BY MR. D. STURMAN:

3        Q    What's your position with the Respondent, Persian

4    Broadcasting Services Global?

5        A    COO.

6        Q    How did you --

7             MR. RESNICOW:  I'm sorry.  I could not hear the

8    answer, sir.

9             MR. D. STURMAN:  He said Chief Operating Officer,

10   COO.  He'll speak up.

11            JUDGE LARSEN:  This is Judge Larsen.  I was having

12   a little bit of trouble hearing you, too, so I would

13   appreciate it if you could keep your voice up, please.

14            THE WITNESS:  I'm going to try to.

15            JUDGE LARSEN:  Okay.

16            MR. D. STURMAN:  Can everyone hear me?

17            MR. RESNICOW:  Yes.

18            MR. D. STURMAN:  Okay.

19   BY MR. D. STURMAN:

20       Q    So you're the Chief Operating Officer of Persian

21   Broadcasting?

22       A    Yes.

23       Q    Okay.  When you -- this is a company that does

24   what?

25       A    Finish the program for news and the -- most news

REPORTERS AND TRANSCRIBERS    JACKSON REPORTING, INC.    (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-118

1    and the news casting is on the rise.

2        Q    For the Persian community.

3        A    For the Persian community in the United States and

4    outside the United States.

5        Q    Okay.  And you hired -- or Majid was working for

6    you as what?

7        A    As a sports producer.

8        Q    A sports producer?

9        A    Yeah.

10        Q    Do you have any other producers of any other

11    segment?

12        A    Sure.  We have --

13        Q    Now how do you pay all of your producers?

14        A    With the program, they make a number of programs.

15        Q    You pay them by -- do you employ them as employees

16    or are they contractors?

17        A    No.  They're contractors.

18        Q    All of them?

19        A    All of them.

20        Q    Any exceptions?

21        A    No.

22        Q    Was -- now -- was Majid's work significantly

23    different than any of the other producers --

24        A    No.

25        Q    -- in your company?

REPORTERS AND TRANSCRIBERS    **JACKSON REPORTING, INC.**    *(707) 546-8911*
*Computerized Transcripts*
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-119

1   present himself.  And he told me, he likes to come here to

2   the United States to produce some movie for himself.  And

3   also he can produce the sports program for me, too.  And

4   really, I never had a sports program into my TV because all

5   job is not support.  Okay.  But because of this Persian and

6   Persian and he likes to do that, and we had a mutual friend,

7   I said okay.  We can do that.  What do I have to do, then you

8   know, we talk a couple of others and he never talk about the,

9   you know, price that one time.

10      Q    Well, when did you talk to about the price?

11      A    He went a couple of days after, when we talked

12  again.

13      Q    Okay.

14      A    You know, and then we talk about this.  And the --

15  he says, only thing is asking to me to pay him is his rent.

16      Q    Okay.

17      A    Nothing else.

18      Q    Nothing?

19      A    Nothing else.

20      Q    How much was his rent?

21      A    Okay.  We put the limit for him -- I told him

22  what's the rent.  Rents can be $4,000 and can be $3,000 and

23  can be $1,000.  We get our agreement that they'll take $1,500

24  to $1,800.

25      Q    Fifteen hundred and what?

REPORTERS AND TRANSCRIBERS    JACKSON REPORTING, INC.    (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-120

1      Q    Okay.  And you said she was at your office how many

2   times?

3      A    Three times.

4           MR. D. STURMAN:  Nothing further for this witness.

5           JUDGE LARSEN:  Cross-examination, Mr. Resnicow.

6           MR. RESNICOW:  Okay.  Here we go.

7                    CROSS-EXAMINATION

8   BY MR. RESNICOW:

9      Q    Mr. Shadjareh, you said that you are the Chief

10   Operating Officer of the company.

11      A    Yes.

12      Q    Is there anyone in the company who has a higher

13   title than you or is that the highest title?

14      A    I'm the highest.

15      Q    You're the highest.  So you would be the equivalent

16   of CEO or President in effect.  Correct?

17      A    Yes.

18      Q    Okay.  Who is the owner of the company?

19      A    Me.

20      Q    A hundred percent?

21      A    Yes.

22      Q    Okay.  Is it not the case that your company was

23   involved in a lawsuit in New York?

24           MR. D. STURMAN:  Objection.

25           MR. RESNICOW:  The purpose is to show that he uses

REPORTERS AND TRANSCRIBERS   **JACKSON REPORTING, INC.**   *(707) 546-8911*
*Computerized Transcripts*
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-121

1   read these lengthy excerpts from Counsel's summary in order

2   to ask that question.  That's only confusing things.  It's

3   confusing me and it would not surprise me if it were

4   confusing people other than me.  So just ask your question

5   directly.  What did you know?  When did you know it?

6          MR. RESNICOW:  Okay.

7   BY MR. RESNICOW:

8      Q   Did you know that Mr. Varess arrived on or about

9   September 3, 2013 in the U.S. and stayed until November 16,

10  2013?

11     A   Absolutely I know because I suppose to send some --

12         MR. D. STURMAN:  (Inaudible.)

13         THE WITNESS:  Okay.  Yes.

14  BY MR. RESNICOW:

15     Q   And during this period, did he produce shows,

16  including beginning on September 12 for your station?

17     A   I don't understand that question.

18     Q   When he returned to the U.S. --

19     A   September --

20     Q   -- to your knowledge -- I'm sorry.  Does somebody

21  want to explain this to me?  I'll try.

22     A   Okay.  Go ahead.

23     Q   When he was in the U.S. with your knowledge,

24  beginning September 3 and especially beginning September 12,

25  2013, through the period November 16, did he produce shows

REPORTERS AND TRANSCRIBERS   JACKSON REPORTING, INC.   (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-122

1    that were presented on PARS TV, sports shows?

2        A    Yes.  September 25 is PARS and November 16 he left.

3        Q    Okay.  But he arrived on September 3.  Correct?

4        A    He arrived September 3 but he didn't produce

5    program until September 25th.

6        Q    Okay.  Now the second LCA period was stated on the

7    document you signed to begin September 12th.  Correct?

8        A    Yes.

9        Q    And you signed the document for him to get a rental

10   that stated that he was working for a salary of $45,000.

11   That's an Exhibit.  That has your signature.  Correct?

12       A    I did, as a friend.

13       Q    Are you in the custom of signing documents that are

14   false and misstate what his salary is?

15            UNIDENTIFIED SPEAKER:  No.

16            THE WITNESS:  No.

17            MR. RESNICOW:  Your Honor, I heard the witness

18   being coached with a whisper there.

19            MR. D. STURMAN:  No one whispered.

20            MR. RESNICOW:  No.  I heard the word "no" being

21   whispered.

22            JUDGE LARSEN:  Mr. Sturman, what's going on at your

23   end?

24            MR. D. STURMAN:  Nothing.  We're sitting here

25   watching him testify and listening.

REPORTERS AND TRANSCRIBERS   JACKSON REPORTING, INC.   (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-123

200

1     to prepare himself to leave the country.  As a friend, he

2     asked me, "Could you sign that letter because without this,

3     they don't want to give me the apartment?"  And I signed it

4     as a friend.  Maybe I made a mistake but I signed friendly.

5     That's honest.  If you want to believe it, or don't want to

6     believe, if any fine, then I can pay for fine.  I'm sorry.

7           MR. RESNICOW:  Thank you.

8           THE WITNESS:  I did because he's one of my Persian

9     people.  I like -- my job is to helping the Persian people.

10    I am here for that.  I spend all of my life for that.

11    Because I'm helping for a lot of people in the country.  I

12    can never stay away if someone asking help.  I cannot do

13    that.  I'm 72 years old, 45 years and working hard for my

14    country, for my people.  I'm sorry.  I'm crying right now.  I

15    suppose not to be here today.  Because I did everything

16    friendship.  Sorry.  Sorry, Your Honor.

17          MR. D. STURMAN:  Object.

18          MR. RESNICOW:  Well, I'm 70 years old so I guess

19    I'm just a kid.

20    BY MR. RESNICOW:

21       Q    Mr. Shadjareh, there's a letter -- another Exhibit,

22    the one after that, November 13, 2013, concerning the renewal

23    of the signed LCA which was done over the Summer and had a

24    commencement period of September 12, 2013, is that your

25    signature on that letter?

1       A    Yes.

2       Q    Okay.

3       A    For the example -- okay.

4       Q    Now I understand that you are trying, with your

5   capable lawyers, to build a case on a document that wasn't

6   signed by anybody, that says "draft," but somehow you're

7   trying to assert that two documents bearing your signature

8   don't really count for anything.  Is that your position?

9       A    No.

10      Q    Well, apparently signatures don't matter but

11  unsigned documents marked "draft," change the whole case.  Is

12  that your belief?

13           MR. D. STURMAN:  Objection.

14           JUDGE LARSEN:  State the basis for the objection.

15           MR. D. STURMAN:  Calls for conclusion and it's

16  arguing the law.

17           JUDGE LARSEN:  I'm going to overrule those

18  objections but I will sustain an objection that you didn't

19  make on the grounds that this is an argumentative question.

20  I think the witness has already told his side of the story

21  with respect to the documents that are signed and that are

22  not signed.  So I don't know that there's any need to plow

23  that ground further, Mr. Resnicow, unless there are facts to

24  develop that we haven't heard yet.

25           MR. RESNICOW:  Well, let's -- I won't pursue that

REPORTERS AND TRANSCRIBERS     JACKSON REPORTING, INC.     (707) 546-8911
Computerized Transcripts
2300 Bethards Drive, Suite B, Santa Rosa, California 95405

SER-125

Ira J. Nasserian, Esq.                                    CSB# 225380
12 Cypress Way
Rolling Hills Estates, CA 90274
Phone: (310) 337-7900
Email: inasserian@lawinscal.com

Attorney for Plaintiff Persian Broadcast Service Global, Inc.

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES, CALIFORNIA

| | |
|---|---|
| PERSIAN BROADCAST SERVICE GLOBAL INC., a California corporation<br><br>Plaintiff.<br><br>v.<br><br>MARTIN J. WALSH, in his capacity as United States Secretary of Labor, UNITED STATES DEPARTMENT OF LABOR, MAJID VARESS<br><br>Defendants | No. 2:21-cv-00229-CAS (GJSx)<br><br>**PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIM**<br><br>Hon. Christina A. Snyder |

PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIM

1

## FEDERAL DEFENDANTS' ANSWER

Plaintiff    PERSIAN    BROADCAST    SERVICE    GLOBAL    INC
("Counterclaim Defendant") by and through counsel, hereby answers Federal
Defendants MARTIN J. WALSH, in his official capacity as Secretary of Labor, and
UNITED STATES DEPARTMENT OF LABOR (collectively, "Federal Defendant
or Counterclaim Plaintiffs ") Counterclaim.

## PRELIMINARY STATEMENT

Responses in numbered paragraphs below are to the allegations in each
corresponding numbered paragraph of Federal Defendants' Counterclaim. Federal
Defendants' topic headings are inserted below for ease of reference. Use of thes
topic headings below does not constitute an admission or acknowledgement b
Counterclaim Defendant of their relevance or accuracy.

All of Counterclaim Defendant's answers, admissions, denials, and statemen
of lack of knowledge are based on the administrative record, and specifically th
portions of the record to which undersigned counsel currently has acces
Counterclaim Defendant expressly reserves its right to amend this Answer aft
completion of discovery.

## Introduction

Paragraph 1. Admit as to status of parties

Paragraph 2. Admit as to the Counterclaim Plaintiffs have brought this action b
deny Plaintiff/Counterclaim Defendant Persian Broadcast Service Global In
("Counterclaim Defendant") owes any  payment of back wages, plus interest, f
violations of the Immigration and Nationality Act's ("INA") E-3 visa progra
requirements and implementing regulations.

PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIM

2

Paragraph 3 The allegation contained in paragraph 3 constitutes a conclusion of law to which no response is required.

## Jurisdiction and Venue

The allegation contained in paragraph 4 constitutes a statement of jurisdiction and a conclusion of law to which no response is required.

The allegation contained in paragraph 5 constitutes a statement of venue and a conclusion of law to which no response is required

## The Parties

Paragraph 6. Admit

Paragraph 7. Admit.

## Legal Background

Paragraph 8. Admit

Paragraph 9. Admit

Paragraph 10. Admit

Paragraph 11. Admit

Paragraph 12. Admit

Paragraph 13. Admit

Paragraph 14. Admit

Paragraph 15. Admit

## Factual and Procedural Background

Paragraph 16. Admit

Paragraph 17. Admit

Paragraph 18. Admit

Paragraph 19. Admit

PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIM

3

Paragraph 20. Admit

Paragraph 21. Admit

Paragraph 22. Admit

Paragraph 23. Admit

Paragraph 24. Admit

## Count One: Enforcement of DOL's Order Issued Under the INA

Paragraph 25. As Counterclaim Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 24 of the Counterclaim as if set forth fully herein, Counterclaim Defendant herein repeats its answers to paragraphs 1 through 24 of the Counterclaim as if set forth fully herein.

Paragraph 26.The allegation contained in paragraph 26 constitutes a conclusion of law to which no response is required .

Paragraph 27. Admit

Paragraph 28. Admit

## Count Two: Federal Debt Collection Procedures Act

Paragraph 29. As Counterclaim Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 28 of the Counterclaim as if set forth fully herein, Counterclaim Defendant herein repeats its answers to paragraphs 1 through 28 of the Counterclaim as if set forth fully herein.

Paragraph 30.The allegation contained in paragraph 30 constitutes a conclusion of law to which no response is required .

Paragraph 31.The allegation contained in paragraph 31 constitutes a conclusion of law to which no response is required .

PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIM

Paragraph 32.The allegation contained in paragraph 32 constitutes a conclusion of law to which no response is required .

Paragraph 33. Counterclaim Defendant admits that DOL's final order found it liable for a debt of $183,794, plus interest  but denies it is liable for any portion of that amount as the DOL's order was in error due to inaccurate conclusions of fact and an improper interpretation of law.

Paragraph 34. Admit

## Claim for Relief

The remainder of the Counterclaim contains Counterclaim Plaintiffs' prayer for relief, to which no response is required. To the extent a response is deemed necessary, Counterclaim Defendant's deny all Counterclaim Plaintiffs' claims that they are entitled to the requested relief or to any relief whatsoever.

## GENERAL DENIAL

Pursuant to Rule 8(b)(3), Counterclaim Defendant denies all other allegations set forth in the Complaint not otherwise admitted or qualified above.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Counterclaim fails to state a claim against Counter Defendant for which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Counterclaim Plaintiffs' action at issue was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

**THIRD AFFIRMATIVE DEFENSE**

The findings of fact made by the agency are not supported by substantial evidence.

**FOURTH AFFIRMATIVE DEFENSE**

A review the administrative record of the proceedings demonstrates several factual errors in the agency action.

**SEVENTH AFFIRMATIVE DEFENSE**

The errors of law committed by the Counter Plaintiffs were extremely harmful and prejudicial to Counter Defendant, and warrant none of the relief requested in their Counterclaim

**WHEREFORE,** having fully answered Counter Plaintiffs' Counterclaim, Counter Defendant prays for a judgment as follows:

1. Dismissing the Counterclaim with prejudice;

2. For costs of suit, as allowed by law; and

3. For such further relief as the Court may deem just.

Respectfully submitted,

Dated: June 2, 2021

Ira J. Nasserian, Esq.
12 Cypress Way
Rolling Hills Estates, CA 90274
Phone: (310) 337-7900
Email: inasserian@lawinscal.com

PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTERCLAIM

1  TRACY L. WILKISON
   Acting United States Attorney
2  DAVID M. HARRIS
   Assistant United States Attorney
3  Chief, Civil Division
   JOANNE S. OSINOFF
4  Assistant United States Attorney
   Chief, General Civil Section
5  MATTHEW J. SMOCK (Cal. Bar No. 293542)
   Assistant United States Attorney
6        Federal Building, Suite 7516
         300 North Los Angeles Street
7        Los Angeles, California 90012
         Telephone: (213) 894-0397
8        Facsimile: (213) 894-7819
         E-mail: Matthew.Smock@usdoj.gov
9

10  Attorneys for Defendants Martin J. Walsh
    and United States Department of Labor

11                    UNITED STATES DISTRICT COURT

12            FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                        WESTERN DIVISION

14

15  PERSIAN BROADCAST SERVICE            No. 2:21-cv-00229-CAS (GJSx)
    GLOBAL INC., a California
16  corporation,                         **FEDERAL DEFENDANTS' ANSWER
                                         AND COUNTERCLAIM**
17              Plaintiff,
                                         Hon. Christina A. Snyder
18              v.

19  MARTIN J. WALSH, et al.,[1]

20              Defendants.

21

22

23

24

25

26

27  _____

28
         [1] Pursuant to Federal Rule of Civil Procedure 25(d), Martin J. Walsh, the current
    Secretary of the Department of Labor, is automatically substituted as the proper
    defendant in this action in place of Eugene Scalia.

1

**FEDERAL DEFENDANTS' ANSWER**

2      Defendants MARTIN J. WALSH, in his official capacity as Secretary of Labor,

3   and UNITED STATES DEPARTMENT OF LABOR (collectively, "Federal

4   Defendants"), by and through counsel, hereby answer Plaintiff PERSIAN

5   BROADCAST SERVICE GLOBAL INC.'s ("Plaintiff") Complaint:

6

**PRELIMINARY STATEMENT**

7      Responses in numbered paragraphs below are to the allegations in each

8   corresponding numbered paragraph of Plaintiff's Complaint.  Plaintiff's topic headings

9   are inserted below for ease of reference.  Use of these topic headings below does not

10  constitute an admission or acknowledgement by Federal Defendants of their relevance or

11  accuracy.

12      All of Federal Defendants' answers, admissions, denials, and statements of lack of

13  knowledge are based on the administrative record, and specifically the portions of the

14  record to which undersigned counsel currently has access.  Federal Defendants currently

15  lack knowledge or information sufficient to form a belief about some of the allegations

16  in the Complaint because the full administrative record for the case, including the

17  transcript and exhibits from the evidentiary hearing, has only recently been located and

18  has not yet been received by undersigned counsel.  Federal Defendants expressly reserve

19  their right to amend their Answer.

20

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

21      1.      The first sentence of paragraph 1 is admitted.  The second sentence of

22  paragraph 1 is denied except to admit in September 2011, Plaintiff filed a labor condition

23  application ("LCA") to employ an E-3 nonimmigrant as a "TV producer and reporter,"

24  that Majid Varess subsequently applied for and received an E-3 visa pursuant to the

25  LCA, and that Plaintiff employed Varess pursuant to the LCA.  The third sentence of

26  paragraph 1 is denied except to admit that the Department of Labor approved Plaintiff's

27  LCA for a period of two years ending September 12, 2013, that Varess was approved for

28  an E-3 visa pursuant to the LCA, and that Varess entered the United States to work for

Plaintiff.  As to the fourth sentence in paragraph 1, Federal Defendants admit that Varess

1

left the United States on more than one occasion during his E-3 visa period. Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in the fourth sentence of paragraph 1 because the full administrative record for the case, including the transcript and exhibits from the evidentiary hearing, has only recently been located and has not yet been received by undersigned counsel, and on that basis, Federal Defendants deny them. The fifth sentence of paragraph 1 is denied except to admit that on February 5, 2015, Varess filed a written complaint with the Department of Labor's Wage and Hour Division ("WHD"), referring to a telephonic complaint on December 9, 2014, and that in his complaint Varess alleged that Plaintiff had failed to pay him the required wages under his first and second LCAs. The sixth sentence of paragraph 1 is denied except to admit that the WHD and an administrative law judge ("ALJ") initially concluded that Plaintiff did not commit any violations with regard to Varess's employment, that the Administrative Review Board ("ARB") reversed the ALJ's decisions, and that the ALJ and ARB subsequently concluded that Plaintiff committed violations and owed Varess $183,794 in back wages, plus prejudgment and postjudgment interest. The portion of the sixth sentence of paragraph 1 beginning with "Plaintiff now…" contains Plaintiff's characterization of the administrative proceedings and its Complaint, to which no response is required. To the extent a response is deemed required, Federal Defendants deny the allegations.

## JURISDICTION AND VENUE

2.     The allegation contained in paragraph 2 constitutes a statement of jurisdiction and a conclusion of law to which no response is required. At all stages of this litigation, the Court must assure itself that it has subject-matter jurisdiction, Fed. R. Civ. P. 12(h)(3), and Federal Defendants may not waive subject-matter jurisdiction, *United States v. N.T. Rayon Importing Co.*, 329 U.S. 654, 660 (1947).

3.     The allegation contained in paragraph 3 constitutes a statement of venue and a conclusion of law to which no response is required.

2

**PARTIES**

4.      Federal Defendants deny the allegations, except admit that Plaintiff is a California corporation and owns and operates a Farsi-language television station, that Plaintiff first filed a Labor Condition Application ("LCA") in 2011 to employ an E-3 nonimmigrant worker, and that Varess was issued an E-3 visa pursuant to the LCA.

5.      Federal Defendants deny the allegations, except admit that Defendant Martin J. Walsh, substituted as defendant for Eugene Scalia pursuant to Fed. R. Civ. P. 25(d), is the Secretary of Labor, is charged with the supervision and management of all decisions and actions within DOL, and is being sued in his official capacity.

6.      The first sentence of paragraph 6 is a legal conclusion to which no response is required.  The second sentence of paragraph 6 is denied, except Federal Defendants admit that the DOL is responsible for certifying labor condition applications (LCAs) under the E-3 visa program and for enforcing compliance with the labor-related conditions of the E-3 program, including the payment of required wages and other attestations under LCAs.

7.      Admit.

**LEGAL BACKGROUND**

8.      Federal Defendants admit the allegations contained in the first, third, fourth, and fifth sentences of paragraph 8.  The second sentence of paragraph 8 is denied, except admit that the E-3 program is generally governed by the labor certification standards that apply to H-1B and H-1B1 programs, with some exceptions.

9.      The first sentence of paragraph 9 is a legal conclusion to which no response is required.  To the extent a response is required, Federal Defendants deny the allegations, except admit that to hire an E-3 worker, an employer must file an LCA with the Department of Labor pursuant to 8 U.S.C. § 1182(t)(1), and that an employer that files an LCA must comply with it.  The second sentence of paragraph 9 is denied except to admit that an LCA includes, among other things, the job title, rate of pay, place of employment, period of intended employment, and prevailing wage source, and that an

3

employer signing an LCA affirms that it will pay E-3 nonimmigrants the greater of the prevailing or actual wage, and will pay for non-productive time.

## **FACTUAL BACKGROUND**

10. Federal Defendants deny the allegations contained in paragraph 10, except admit the following: In September 2011, Plaintiff filed a labor condition application (LCA) to employ an E-3 nonimmigrant as a "TV producer and reporter" for a period of two years ending September 12, 2013. The LCA listed an annual salary of $45,000. The Department of Labor approved the LCA. Plaintiff employed Varess pursuant to the LCA.

11. Federal Defendants deny the allegations contained in paragraph 11, except admit that Varess entered the United States pursuant to an E-3 visa on November 23, 2011 and commenced working for Plaintiff, and that Varess departed the United States on August 19, 2012.

12. Federal Defendants deny the allegations contained in paragraph 12, except admit that Varess returned to the United States on October 17, 2012, then departed the United States on January 14, 2013, then returned to the United States on May 17, 2013.

13. Admit.

14. Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 14 because the full administrative record for the case, including the transcript and exhibits from the evidentiary hearing, has only recently been located and has not yet been received by undersigned counsel, and on that basis, Federal Defendants deny them.

15. Federal Defendants admit only that on September 4, 2013, Plaintiff signed a second LCA seeking to continue Varess's previously approved employment as a "TV producer and reporter" for a two-year period beginning September 12, 2013 and ending September 12, 2015. Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 15 because the full administrative record for the case, including the transcript and exhibits

4

from the evidentiary hearing, has only recently been located and has not yet been received by undersigned counsel, and on that basis, Federal Defendants deny them.

16.    Federal Defendants admit only that Varess departed the United States on November 16, 2013.  Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 16 because the full administrative record for the case, including the transcript and exhibits from the evidentiary hearing, has only recently been located and has not yet been received by undersigned counsel, and on that basis, Federal Defendants deny them.

17.    Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 17 because the full administrative record for the case, including the transcript and exhibits from the evidentiary hearing, has only recently been located and has not yet been received by undersigned counsel, and on that basis, Federal Defendants deny them.

18.    Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 18 because the full administrative record for the case, including the transcript and exhibits from the evidentiary hearing, has only recently been located and has not yet been received by undersigned counsel, and on that basis, Federal Defendants deny them.

19.    Federal Defendants deny the allegations contained in paragraph 19, except admit that after departing on November 16, 2013, Varess had not returned to the United States by the time that evidence closed in the administrative proceedings in this case.

**PROCEDURAL HISTORY**

20.    Federal Defendants deny the allegations contained in paragraph 20, except admit that on February 5, 2015, Varess filed a written complaint with WHD, referring to a telephonic complaint on December 9, 2014, and that in his complaint Varess alleged that Plaintiff had failed to pay him the required wages under his first and second LCAs.

21.    Federal Defendants deny the allegations contained in paragraph 21, except admit that WHD conducted an investigation pursuant to the E-3 statute and regulations

5

1   and issued a determination on March 28, 2016 that Plaintiff had not committed any wage

2   violations.

3         22.    Federal Defendants deny the allegations contained in paragraph 22, except

4   admit that pursuant to 20 C.F.R. § 655.820, Varess requested an administrative hearing

5   with an administrative law judge with DOL's Office of Administrative Law Judges to

6   review WHD's determination, and Varess's appeal was docketed on April 11, 2016.

7         23.    Federal Defendants deny the allegations contained in paragraph 23, except

8   admit that after conducting a hearing, on December 11, 2017, Judge Christopher Larsen

9   issued an order denying relief to Varess because he concluded that Varess "ha[d] not

10  shown, by a preponderance of the evidence, that [Plaintiff] was obligated to pay him a

11  salary," and also stated in the order, "In the alternative, the court denies the complaint as

12  untimely." Federal Defendants further aver the ALJ did not provide a basis for denying

13  the complaint as untimely, and elsewhere in the order stated, "I do not reach, and do not

14  decide, Respondent's claim that the complaint was untimely." Federal Defendants

15  further aver that the ALJ's December 11, 2017 order, which is contained in the

16  administrative record, speaks for itself.

17        24.    Federal Defendants deny the allegations contained in paragraph 24, except

18  admit that on December 14, 2017, Judge Larsen vacated his December 11, 2017 order to

19  "correct a clerical error," and issued an amended decision in which he omitted the

20  sentence denying the complaint as untimely, while retaining the sentence stating that he

21  was not reaching or deciding the timeliness issue. Federal Defendants further aver that

22  the ALJ's December 14, 2017 amended order, which is contained in the administrative

23  record, speaks for itself.

24        25.    Admit.

25        26.    Admit.

26        27.    Admit. Federal Defendants further aver that the ALJ ordered Plaintiff to

27  pay prejudgment and postjudgment interest on the back-wage amount.

28        28.    Admit.

6

29.     Federal Defendants deny the allegations contained in paragraph 29, except admit that on July 14, 2020, the ARB affirmed the ALJ's October 30, 2019 decision.

30.     The allegation contained in paragraph 30 consists of a legal conclusion to which no response is required.  To the extent a response is required, Federal Defendants deny the allegation.

## FIRST CAUSE OF ACTION

**Agency Action Arbitrary, Capricious, and Contrary to Law - 5 U.S.C. § 706(2) as to finding that complaint was timely filed**

31.     Federal Defendants incorporate by reference their responses to paragraphs 1 through 30.

32.     The allegations contained in paragraph 32 consist of legal conclusions to which no response is required.  To the extent a response is required, Federal Defendants refer the Court to the cited statute for a full statement of its contents.

33.     The allegations contained in paragraph 33 consist of legal conclusions to which no response is required.  To the extent a response is required, Federal Defendants deny these allegations.

34.     The allegations contained in paragraph 34 consist of legal conclusions to which no response is required.  To the extent a response is required, Federal Defendants deny these allegations.

## SECOND CAUSE OF ACTION

**Agency Action Arbitrary, Capricious, and Contrary to Law - 5 U.S.C. § 706(2) as to any calculation of back wages owed Varess**

35.     The allegations contained in paragraph 35 consist of legal conclusions to which no response is required.  To the extent a response is required, Federal Defendants deny these allegations.

36.     Federal Defendants deny the allegations contained in paragraph 36, except admit that the ALJ determined, and the ARB affirmed, that Plaintiff should have paid Varess $120,000 under the second LCA, including for nonproductive time to the extent required under the E-3 statute and regulations.

7

37.     The first portion of paragraph 37 consists of a legal conclusion to which no response is required.  To the extent a response is required, Federal Defendants deny this allegation.  Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations regarding Varess's testimony because the full administrative record for the case, including the transcript and exhibits from the evidentiary hearing, has only recently been located and has not yet been received by undersigned counsel, and on that basis, Federal Defendants deny the allegation.

38.     The allegations contained in paragraph 38 consist of legal conclusions to which no response is required.  To the extent a response is required, Federal Defendants deny these allegations.

39.     The allegations contained in paragraph 39 consist of legal conclusions to which no response is required.  To the extent a response is required, Federal Defendants deny these allegations.

## **PRAYER FOR RELIEF**

The remainder of the Complaint contains Plaintiff's prayer for relief, to which no response is required. To the extent a response is deemed necessary, Federal Defendants deny Plaintiff is entitled to the requested relief or to any relief whatsoever.

## **GENERAL DENIAL**

Pursuant to Rule 8(b)(3), Federal Defendants deny all other allegations set forth in the Complaint not otherwise admitted or qualified above.

## **AFFIRMATIVE DEFENSES**

### **FIRST AFFIRMATIVE DEFENSE**

The Complaint fails to state a claim against Federal Defendants for which relief may be granted.

### **SECOND AFFIRMATIVE DEFENSE**

Plaintiff failed to exhaust administrative remedies because Plaintiff did not raise each issue alleged in the Complaint before the Department of Labor during the administrative proceedings below.

### **THIRD AFFIRMATIVE DEFENSE**

8

1    Plaintiffs are barred from bringing any claim over which the Court lacks subject

2    matter jurisdiction.

3    ## FOURTH AFFIRMATIVE DEFENSE

4    No agency action at issue was arbitrary, capricious, an abuse of discretion, or

5    otherwise not in accordance with the law.

6    ## FIFTH AFFIRMATIVE DEFENSE

7    The findings of fact made by the agency are supported by substantial evidence.

8    ## SIXTH AFFIRMATIVE DEFENSE

9    Under the Administrative Procedure Act, 5 U.S.C. § 501 *et seq.*, judicial

10   review of a final agency decision is limited to the administrative record of the

11   proceedings below.

12   ## SEVENTH AFFIRMATIVE DEFENSE

13   Any errors of law committed by the agency, which Defendants expressly deny,

14   were harmless and not prejudicial, and warrant none of the relief requested in the

15   Complaint.  *See* 5 U.S.C. § 706.

16   *       *       *

17   WHEREFORE, having fully answered Plaintiff's Complaint, Federal Defendants

18   pray for a judgment as follows:

19   1.  Dismissing the Complaint with prejudice;

20   2.  For costs of suit, as allowed by law; and

21   3.  For such further relief as the Court may deem just.

22

23

24

25

26

27

28

9

### FEDERAL DEFENDANTS' COUNTERCLAIM

Martin J. Walsh, in his official capacity as United States Secretary of Labor, and the United States Department of Labor ("DOL"), by their undersigned counsel, allege as follows:

### Introduction

1.      This action is brought by Defendants Martin J. Walsh, in his official capacity as United States Secretary of Labor, and DOL (collectively "Federal Defendants" or "Counterclaim Plaintiffs"), to enforce an administrative order and to collect a debt to the United States.

2.      Specifically, Counterclaim Plaintiffs bring this action to enforce a DOL final order mandating the payment of back wages, plus interest, owed by Plaintiff/Counterclaim Defendant Persian Broadcast Service Global Inc. ("Persian"), for violations of the Immigration and Nationality Act's ("INA") E-3 visa program requirements and implementing regulations.

3.      Counterclaim Plaintiffs bring this action pursuant to their authority under the E-3 provisions of the INA, 8 U.S.C. § 1182(t), and the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 *et seq.*

### Jurisdiction and Venue

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 8 U.S.C. § 1329.

5.      Venue in the Central District of California is proper under 28 U.S.C. § 1391, because Persian resides in Los Angeles County, California, part of the Central District of California, and because this is a counterclaim brought by Federal Defendants, under Federal Rule of Civil Procedure 13, against the plaintiff in an action in this Court.

### The Parties

6.      DOL is a federal agency responsible for enforcing employment standards and worker protections provided in the provisions of the INA applicable to workers under the E-3 visa program.  *See* 8 U.S.C. § 1182(t).

10

7.    Persian is a California corporation and owns and operates a Farsi-language television station that broadcasts from its studio in Los Angeles County, California.

**Legal Background**

8.    The E-3 visa program of the INA allows employers to bring Australian nationals to the United States to perform "specialty occupations" as temporary workers. 8 U.S.C. § 1101(a)(15)(E)(iii).

9.    To employ an E-3 worker, the employer must file a Labor Condition Application ("LCA") with DOL that contains certain attestations.  8 U.S.C. § 1182(t)(1).

10.    One required attestation is that that an employer of an E-3 nonimmigrant must pay a required wage, which is the higher of (1) "the actual wage level paid by the employer to all other individuals with similar experience and qualifications for the specific employment in question," or (2) "the prevailing wage level for the occupational classification in the area of employment." 8 U.S.C. § 1182(t)(1)(A)(i).

11.    The INA authorizes DOL to receive, investigate, and render decisions on complaints from aggrieved parties regarding alleged violations of an LCA's attestations. *See* 8 U.S.C. § 1182(t)(3).

12.    Under the applicable regulations, DOL's Wage and Hour Division ("WHD") investigates such complaints and then issues a letter setting forth its determination and any remedies.  20 C.F.R. §§ 655.800(a)*;* 655.805(a); 655.806(a)(3), (b); 655.815.

13.    Interested parties may challenge WHD's determination before an administrative law judge ("ALJ").  *Id.* § 655.820.

14.    The ALJ's decision may be appealed to DOL's Administrative Review Board ("ARB").  *Id.* § 655.845.

15.    The ARB is authorized to issue final decisions on behalf of DOL in E-3 visa matters.  *See* Secretary's Order 01-2020, Delegation of Authority and Assignment of Responsibility to the Administrative Review Board, 85 Fed. Reg. 13,186 (Mar. 6, 2020).

11

**Factual and Procedural Background**

16.     On February 5, 2015, Majid Varess, an E-3 worker for whom Persian had filed two LCAs, one in 2011 and one in 2013, filed a complaint with WHD alleging that Persian had failed to pay him the required wage under his LCAs and the INA.

17.     WHD's investigation found no violations, and after Varess sought review by an ALJ, on December 14, 2017, ALJ Christopher Larsen issued a decision and order finding no violations and denying Varess relief.

18.     Varess petitioned the ARB for review of the ALJ's decision.

19.     On September 26, 2019, the ARB reversed the ALJ, concluding that the ALJ erred in finding that Persian did not violate its LCA attestations and did not owe Varess back wages.  Accordingly, it remanded the matter to the ALJ to make findings of fact concerning the timeliness of Varess's complaint and a computation of damages.

20.     On October 30, 2019, ALJ Larsen issued a decision and order concluding that Varess's complaint was timely filed and that Persian owed Varess $183,794 in back wages, plus prejudgment and postjudgment interest.  A true and correct copy of the ALJ's Order is attached as **Exhibit A**.

21.     Persian petitioned the ARB for review of the ALJ's decision.

22.     On July 14, 2020, the ARB issued its final Decision and Order, affirming ALJ Larsen's decision on remand.  A true and correct copy of the final Decision and Order is attached as **Exhibit B**.

23.     On or about March 11, 2021, WHD sent a letter to Persian and to its counsel, demanding that it immediately pay the amounts assessed, plus interest.

24.     Persian has not made any payments in response to the October 30, 2019 ALJ decision, the July 14, 2020 ARB decision, or the March 11, 2021 demand letter.

**Count One: Enforcement of DOL's Order Issued Under the INA**

25.     Counterclaim Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 24 of the Counterclaim as if set forth fully herein.

12

26.     The INA provides this court jurisdiction over "all causes, civil and criminal, brought by the United States that arise under the provisions of [8 U.S.C. §§ 1151-1382]." 8 U.S.C. § 1329.

27.     On July 14, 2020, DOL, through the ARB, issued its Decision and Order finding that Persian violated the INA, and ordering it to pay $183,794 in back wages plus interest.

28.     Persian has not complied with DOL's July 14, 2020 final order.

### Count Two: Federal Debt Collection Procedures Act

29.     Counterclaim Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 28 of the Counterclaim as if set forth fully herein.

30.     The Federal Debt Collection Procedures Act provides a mechanism for the United States "to recover a judgment on a debt."  28 U.S.C. § 3001.

31.     The "United States" includes its agencies and departments.  *Id.* § 3002(15)(B).

32.     "Debt" is broadly defined as "an amount that is owing to the United States on account of a . . . fine, assessment, penalty, restitution, damages, interest, . . . or other source of indebtedness to the United States."  *Id.* § 3002(3)(B).

33.     Pursuant to DOL's final order and to the Certificate of Indebtedness attached as **Exhibit C**, Persian is liable to the United States for a debt of $183,794, plus interest.

34.     No part of the aforesaid sum has been paid, although duly demanded.

### Claim for Relief

WHEREFORE, Counterclaim Plaintiffs demand judgment against Persian enforcing DOL's final order for the amount due and owing, as follows:

(a)     Back wages in the amount of $183,794;

(b)     Pre-judgment interest;[2]

---

[2] *See Administrator, Wage Hour Division v. Government Training, LLC*, DOL Adm. Rev. Bd. 16-049, 2018 WL 2927670, at *6 n.44 (ARB February 23, 2018); *cf.*

13

1       (c)     Post-judgment interest, under 28 U.S.C. § 1961, from the date of entry of

2   judgment until the judgment is paid in full;

3       (d)     Fees and costs under 28 U.S.C. §§ 1914(a) and 2412;

4       (e)     Attorney fees to the extent allowed by law; and

5       (f)     Such other and further relief as this Court may deem just and equitable.

6

7

8   Dated: May 13, 2021              Respectfully submitted,

9                                    TRACY L. WILKISON
                                    Acting United States Attorney

10                                  DAVID M. HARRIS
                                    Assistant United States Attorney

11                                  Chief, Civil Division
                                    JOANNE S. OSINOFF

12                                  Assistant United States Attorney
                                    Chief, General Civil Section

13

14

15                                /s/ Matthew J. Smock

16                                MATTHEW J. SMOCK
                                Assistant United States Attorney

17                                Attorneys for Defendants Martin J. Walsh
                                and United States Department of Labor

18

19

20

21

22

23

24

25

26

27

28   *Sharkey v. Lasmo (AUL Ltd.)*, 214 F.3d 371, 375 (2d Cir. 2000) (noting that where a damages award includes compensation for lost wages, it is ordinarily an abuse of discretion not to include pre-judgment interest).

**U.S. Department of Labor**     Office of Administrative Law Judges
90 Seventh Street, Suite 4-800
San Francisco, CA 94103-1516

(415) 625-2200
(415) 625-2201 (FAX)



**Issue Date: 30 October 2019**

CASE NO.:   2016-LCA-00019

*In the Matter of:*

**MAJID VARESS**,
         *Prosecuting Party,*

         vs.

**PERSIAN BROADCAST SERVICE
GLOBAL, INC.**,
         *Respondent.*

<u>**DECISION AND ORDER AFTER REMAND**</u>

     This is a claim arising under the Immigration and Nationality Act ("INA" or "Act") H-1B visa program, 8 U.S.C. §1182. I held a telephonic hearing in this matter on October 26 and 27, 2017. On December 14, 2017, I issued an Amended Decision and Order denying relief. An appeal followed, and on September 26, 2019, the Administrative Review Board issued its Decision and Order Reversing and Remanding, directing me to consider and issue findings with respect to 1) the timeliness of the Prosecuting Party's February 5, 2015, complaint; and 2) if the complaint was timely, the computation of damages. Having carefully considered the record before me, I now find as follows.

<u>**The Prosecuting Party's Complaint is Timely**</u>

     The Prosecuting Party, Majid Varess, filed his complaint in this matter on February 5, 2015. Under 20 C.F.R. section 655.806, subsection (a)(5), an aggrieved party must file a complaint "not later than 12 months after the latest date on which the alleged violation(s) were committed, which would be the date on which the employer allegedly failed to perform an action or fulfill a condition specified in the LCA, or the date on which the employer, through its action or inaction, allegedly demonstrated a misrepresentation of a material fact in the LCA."

This case involves two Labor Condition Applications.  Before the telephonic hearing, the parties stipulated the Department of Labor approved the first ("LCA 1") with a validity date of September 12, 2011, to September 23, 2013.  LCA 1 sets forth an annual wage rate of $45,000.  The parties further stipulated that Respondent filed the second Labor Condition Application ("LCA 2") in August, 2013, and the Department of Labor approved it with a validity date of September 12, 2013, to September 12, 2015.  LCA 2 sets forth an annual wage rate of $60,000.

In its Decision and Order Reversing and Remanding, p. 5, the Administrative Review Board found

> In this case, Respondent failed to pay Complainant the required wage under the first LCA which was $45,000 per year. Respondent also failed to pay Complainant the required wage of $60,000.00 for the second LCA period.  Because Respondent's president signed and filed both LCAs with the DOL, it was legally obligated to pay the Complainant the specified wages when Complainant entered into employment until the LCA period expired unless an exception to that obligation applied.

The Board also concluded Respondent never effected a bona fide termination of the Mr. Varess's employment under 20 C.F.R. section 655.731, subsection (c)(7)(ii),[1] and Mr. Varess never voluntarily requested voluntary nonproductive status under that same regulation.  What is more, the Board ruled misconduct by Mr. Varess, as a matter of law, did not excuse Respondent's obligation to pay the wages specified in an LCA.  *See* 20 C.F.R. section 655.731, subsection (c)(7)(i).

Respondent advances two arguments to support its contention the February 4, 2015, complaint is untimely.  First, Respondent contends Mr. Varess failed to renew his E-3 visa for the second LCA period, so the one-year period for filing a complaint would have commended upon expiration of his first visa on September 12, 2013.  Second, Respondent contends Mr. Varess left the United States on November 16, 2013, and never returned – facts to which the parties stipulated before the telephonic hearing before me.  Respondent contends Mr. Varess's departure comprised, in essence, the termination of his employment, and accordingly the commencement of the one-year period for filing the complaint.

But under the legal principles set forth by the Administrative Review Board, neither line of argument is tenable.  On the record before me, Respondent had a legal obligation to pay wages under LCA 1 and under LCA 2, and only a *bona fide* termination of employment or the employee's request to be placed in nonproductive status can affect that legal obligation.  Since neither condition occurred in this case,

---

[1] Respondent apparently conceded this point in its brief before the Board.  Decision and Order Reversing and Remanding, p. 5.

Respondent was obligated to pay LCA wages even after Mr. Varess filed his complaint. Accordingly, the complaint is timely.

## The Record Shows $183,794.00 in Damages

Since the complaint was timely, I must calculate the damages to which the prosecuting party is entitled. As the Board noted, Mr. Varess entered the United States to begin work under LCA 1 on November 23, 2011 (Decision and Order Reversing and Remanding, p. 9, fn. 7). Respondent accordingly was obligated under LCA 1 to pay him $45,000 per year from November 23, 2011, to September 11, 2013. Respondent was obligated to pay him $60,000 per year under LCA 2 from September 12, 2013, to September 12, 2015. Thus, Respondent should have paid Mr. Varess about $84,375.00 under LCA 1 (93.5 weeks of employment from about November 23, 2011, to September 11, 2013) and $120,000.00 under LCA 2 ($60,000.00 annually for two years), a total of $204,375.00.

At the hearing, Respondent placed in evidence documents showing payments it made to Mr. Varess in 2013 and 2014 (RX 6). In 2013, Respondent appears to have paid Mr. Varess a total of $9,000.00: $1,500.00 in January and February, and $1,200.00 in March, April, May,[2] June, and July. In 2014, Respondent avers it paid Mr. Varess a total of $12,473.00 (as shown on a 2013 Form 1099-MISC, and on a "Find Report" document on the preceding page in RX 6). But it did not offer into evidence all of the checks referenced on the "Find Report;" instead, it offered copies (in many cases duplicate copies) of negotiated checks totaling only $7,300.00.

Respondent[3] also introduced into evidence a February 5, 2015, letter from Attorney Norman J. Resnicow to the Department of Labor's Wage and Hour Division on behalf of Mr. Varess (RX 2). In that letter, Attorney Resnicow states Respondent paid Mr. Varess $20,581.00 while LCA 1 was in force – $892 less than the $21,473.00 Respondent attempts to document in RX 6, but considerably more than the $16,300.00 supported by copies of negotiated checks. Since clarity and accuracy in record-keeping seems to be neither party's strong suit, I accept Attorney Resnicow's figure of $20,581.00 as an admission.

Consistent with the Administrative Review Board's determination that Respondent was obligated to pay wages under both LCA 1 and LCA 2, I conclude Respondent owes Mr. Varess $183,794.00 in back wages (that is, gross salary of $204,375.00 less the $20,581.00 Mr. Varess admittedly received). He is entitled to recover prejudgment and postjudgment interest under *Mao v. Nasser Engineering & Computing Services*, ARB No. 06-121, ALJ No. 2005-LCA-36 (ARB Nov. 26, 2008).

---

[2] The May payment came in two installments, one of $300.00 and one of $900.00 (RX 6).

[3] Mr. Varess did not introduce this document in support of his claim.

Mr. Varess seeks an award of attorney fees, but under *Talukdar v. U.S. Dept. of Veterans Affairs,* ARB No. 04-100, ALJ No. 2002-LCA-25 (ARB Jan. 31, 2007), attorney fees are not recoverable in this matter.  Likewise, while the Administrator can award civil monetary penalties in an appropriate case, 20 C.F.R. section 655.801, subsection (b), Mr. Varess cites no authority for the proposition that I may do so in a case where he acts as Prosecuting Party, and I know of none.

## ORDER

After careful consideration of the record in the light of the Administrative Review Board's Decision and Order Reversing and Remanding, I find and conclude:

1.  Mr. Varess's complaint in this matter was timely filed.

2.  Respondent must pay Mr. Varess $183,794.00 in back wages, together with prejudgment and postjudgment interest in an amount to be calculated by the Wage and Hour Division.

SO ORDERED.

CHRISTOPHER LARSEN
Administrative Law Judge

**NOTICE OF APPEAL RIGHTS:** Any interested party desiring review of this Decision and Order may file a petition for review with the Administrative Review Board (Board) pursuant to 20 C.F.R. § 655.845.

The Board's address is: Administrative Review Board, U.S. Department of Labor, Suite S-5220, 200 Constitution Avenue, NW, Washington DC 20210, for traditional paper filing. Alternatively, the Board offers an Electronic File and Service Request (EFSR) system. The EFSR for electronic filing (eFile) permits the submission of forms and documents to the Board through the Internet instead of using postal mail and fax. The EFSR portal allows parties to file new appeals electronically, receive electronic service of Board issuances, file briefs and motions electronically, and check the status of existing appeals via a web-based interface accessible 24 hours every day. No paper copies need be filed.

An e-Filer must register as a user, by filing an online registration form. To register, the e-Filer must have a valid e-mail address. The Board must validate the e-Filer before he or she may file any e-Filed document. After the Board has accepted an e-Filing, it is handled just as it would be had it been filed in a more traditional manner. e-Filers will also have access to electronic service (eService), which is simply a way to receive documents, issued by the Board, through the Internet instead of mailing paper notices/documents.

Information regarding registration for access to the EFSR system, as well as a step by step user guide and FAQs can be found at: https://dol-appeals.entellitrak.com. If you have any questions or comments, please contact: Boards-EFSR-Help@dol.gov

If filing paper copies, you must file an original and four copies of the petition for review with the Board, together with one copy of this decision. If you e-File your petition only one copy need be uploaded.

If no petition for review is filed, this Decision and Order becomes the final order of the Secretary of Labor. *See* 20 C.F.R. § 655.840(a). If a petition for review is timely filed, this Decision and Order shall be inoperative unless and until the Board issues an order affirming it, or, unless and until 30 calendar days have passed after the Board's receipt of the petition and the Board has not issued notice to the parties that it will review this Decision and Order.

**U.S. Department of Labor**     Administrative Review Board
200 Constitution Ave. NW
Washington, DC 20210-0001



In the Matter of

MAJID VARESS,                           ARB CASE NO.  2020-0017

       PROSECUTING PARTY,      ALJ CASE NO.  2016-LCA-00019

                            DATE:   July 14, 2020

    v.

PERSIAN BROADCAST SERVICE
GLOBAL, INC.,

       RESPONDENT.


Appearances:

*For the Complainant and Prosecuting Party*:
    Jonathan D. Wasden, Esq.; *Wasden Banias, LLC*; Mount Pleasant, South Carolina

*For the Respondent*:
    Jonathan R. Sturman, Esq.; *Law Offices of David M. Sturman*; Encino, California

Before: Thomas H. Burrell, *Acting Chief Administrative Appeals Judge*; James A. Haynes and Heather C. Leslie, *Administrative Appeals Judges*


## DECISION AND ORDER

PER CURIAM. This case arises under the E-3 visa program provisions of the Immigration and Nationality Act, as amended (INA), 8 U.S.C. § 1101(a)(15)(E)(iii) (2014), and implementing regulations at 20 C.F.R. Part 655, subparts H and I (2018). The Respondent Persian Broadcast Service Global Inc. requests that the Administrative Review Board (Board) reverse the Administrative Law Judge's (ALJ) Amended Decision and Order After Remand (October 30, 2019). The ALJ

2

found in favor of Complainant. Respondent appealed to the Board. We summarily affirm.

### PROCEDURAL HISTORY

Complainant filed a complaint against Respondent with the Administrator, Wage and Hour Division, for unpaid wages on February 5, 2015. *Id.* at 3; see RX 2. The Administrator determined that the Respondent had not committed any violations. Complainant filed objections with the Office of Administrative Law Judges requesting a hearing. After an ALJ found for Respondent, Complainant appealed the ALJ's decision to the Board, and we reversed and remanded because none of the exceptions to the Respondent's obligations to pay wages under the LCAs applied. In the decision (ARB Decision), we directed the ALJ on remand to make a determination regarding the timeliness of the complaint.

On remand, the ALJ found for Complainant and ordered Respondent to pay Complainant back wages. The ALJ also held that Complainant's complaint was timely filed as Respondent's obligation to pay Complainant wages continued until the end of the second LCA period, which ran from September 12, 2013, to September 12, 2015. D. & O. at 2-3. Respondent again appealed to the Board arguing that the complaint was untimely, and in the event it is found timely, that it is not obligated to pay Complainant for periods of time it argues were nonproductive time due to Complainant's voluntary acts.

### JURISDICTION AND STANDARD OF REVIEW

This Board has jurisdiction to hear appeals concerning questions of law or fact from final decisions of ALJs in cases under the E-3 provisions of the Immigration and Nationality Act. *See* 20 C.F.R. § 655.845; *see also* Secretary's Order No. 01-2020 (Delegation of Authority and Assignment of Responsibility to the Administrative Review Board (Secretary's discretionary review of ARB decisions)), 85 Fed. Reg. 13,186 (Mar. 6, 2020). The Board has plenary authority to review an ALJ's legal conclusions de novo. *Limanseto v. Ganze & Co.*, ARB No. 2011-0068, ALJ No. 2011-LCA-00005, slip op. at 3 (ARB June 6, 2013).

### DISCUSSION

An employer is required to pay its E-3 nonimmigrant employees the required wage, including for so-called "nonproductive time," for the entire duration of the LCA period, unless the employer can show that one of the two exceptions to the

3

benching provision applies. 20 C.F.R. § 655.731(b)(7)(ii).[1] Respondent failed to pay Complainant the required wage for certain periods during the duration of his two LCAs and neither of the two exceptions applies. ARB Decision at 5-6.

On appeal, Respondent does not argue that it paid Complainant the required wages under the LCAs it completed for him or that it effected a bona fide termination of his employment. Instead, Respondent's first argument is that Complainant's February 5, 2015 complaint was untimely filed. Regulation § 655.806(a)(5) provides that a complainant must file a complaint alleging a violation of the nonimmigrant worker regulations "not later than 12 months after the latest date on which the alleged violation(s) were committed, which would be the date on which the *employer* allegedly failed to perform an action or fulfill a condition specified in the LCA, or the date on which the employer, through its action or inaction, allegedly demonstrated a misrepresentation of a material fact in the LCA." 20 C.F.R. § 655.806(a)(5) (emphasis added). As the ALJ explained, Respondent was liable to pay wages for the duration of the second LCA (September 12, 2013, to September 12, 2015) and the reasons Respondent provides for why the second LCA was invalid do not relieve it of its obligations.[2] See ARB Decision at 5. It seems that any nonpayment of wages during the second LCA period would start the clock as a failure to perform an action.  Alternatively, the evidence shows that on July 11, 2014, Respondent paid Complainant wages and notified Complainant that it would no longer pay him. ARB Decision at 2-3. Considering this notification, notice of an adverse action, the limitations period would have started running on July 11, 2014. Thus, Complainant February 5, 2015 is timely under either alternative.

Respondent's second argument is that the regulatory exception to its requirement to pay the required wages applies because Complainant voluntarily put himself in nonproductive status. Respondent has the burden to prove nonproductive time that relieves it of the obligation to pay wages. *Gupta v. Compunnel Software Group, Inc.*, ARB No. 2012-0049, ALJ No. 2011-LC-00045, slip op. at 16 (ARB May 29, 2014). As explained in the Board's prior order, Respondent failed to show that

---

[1]     The two exceptions specified in this regulation are (1) when there has been a bona fide termination or (2) when "conditions unrelated to employment … take the nonimmigrant away from his/her duties at his/her voluntary request and convenience (e.g., touring the U.S., caring for ill relative) or render the nonimmigrant unable to work (e.g., maternity leave, automobile accident which temporarily incapacitates the nonimmigrant)."

[2]     The arguments Respondent makes for why its obligation to pay ended at an earlier date (making Complainant's complaint untimely) were rejected in our prior order (for example, that Respondent's obligation ended when Complainant left the country on November 16, 2013).

4

Complainant put himself in nonproductive status to relieve it of its obligation to pay wages. ARB Decision at 6.

The ALJ addressed all of Respondent's arguments and we affirm the ALJ's findings that Respondent failed to pay Complainant the required wage under both LCAs for the reasons he explained. We also affirm the ALJ's finding that the complaint was timely filed. The ALJ found Respondent liable for $183,794 in back wages. Respondent does not challenge this computation on appeal other than his previously rejected arguments discussed above. Accordingly, we find that the amount of back wages that the ALJ ordered with respect to the LCAs was proper and is affirmed. 20 C.F.R. §§ 655.810(a), 655.700(c)-(d).

<div align="center">CONCLUSION</div>

In sum, Respondent failed to pay Complainant, an E-3 nonimmigrant employee, the required wage for two LCA periods. Respondent thus owes Complainant $183,794.00 in back pay plus pre and post-judgment interest.

**SO ORDERED.**

UNITED STATES DEPARTMENT OF LABOR
WAGE AND HOUR DIVISION
SAN FRANCISCO, CA

**CERTIFICATE OF INDEBTEDNESS**

**Debtors' Names and Last-Known Address:**

Amir Shadjareh, President
Persian Broadcast Service Global, Inc.
18720 Oxnard Street, Suite 102
Tarzana, CA 91356

**Total Debt due United States as of April 26, 2021: $196,966.36**

I certify that U.S. Department of Labor, Wage and Hour Division records show that the Debtors named above are indebted to the United States in the amount stated above, consisting of a principal balance of **$183,794.00** in back wages plus **$13,172.36** in prejudgment and post-judgment interest.

This claim arises out of an enforcement action against the Debtors for violations of Immigration and Nationality Act H-lB visa program, 8 U.S.C. §1101(a)(15)(H)(I)(b) and §1182(n) , and the implementing regulations at 20 C.F.R. Part 655, Subparts H and I. On July 14, 2020, U.S. Department of Labor, Administrative Review Board issued a Final Decision and Order awarding $196,966.36 in back wages plus prejudgment and post-judgment interest to the U.S. Department of Labor, Wage and Hour Division for distribution to one (1) former H-1B employee of the Debtors. *See Majid Varess v. Persian Broadcast Service Global, Inc.*, 2020 WL 4274179 (ARB No. 2020-0017, July 14, 2020).

**CERTIFICATION:** Pursuant to 28 U.S.C. §1746, I certify under penalty of perjury that the foregoing is true and correct.

4/26/2021
Date

MICHAEL EASTWOOD
Director of Enforcement
U.S. Department of Labor
Wage and Hour Division
90 7th Street, # 4-390
San Francisco, CA 94103-6714

Name _Ira J. Nasserian, Esq.  CSB# 225380_

Address _12 Cypress Way_

City, State, Zip _Rolling Hills Estates, CA 90274_

Phone _(310) 337-7900_

Fax _____

E-Mail _inasserian@lawinscal.com_

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☒ Retained

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERSIAN BROADCAST SERVICE  GLOBAL INC., a California corporation | CASE NUMBER: |
| PLAINTIFF(S), | 2:21-cv-00229-CAS (GJSx) |
| v. | |
| MARTIN J. WALSH, in his capacity as United States Secretary of Labor,  UNITED STATES DEPARTMENT DEFENDANT(S). | **NOTICE OF APPEAL** |

NOTICE IS HEREBY GIVEN that __PERSIAN BROADCAST SERVICE  GLOBAL INC.,__ hereby appeals to
                                        *Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☐ Order (specify):

☒ Judgment (specify):
   Docket #36, Granting Defendants Motion

☐ Other (specify):

Imposed or Filed on _____02/07/2022_____. Entered on the docket in this action on _03/01/2022_____.

A copy of said judgment or order is attached hereto.

_____3/7/2022_____                    _____
Date                                 Signature
                                     ☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk

**Note:**   The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the
         attorneys for each party.  Also, if not electronically filed in a criminal case,  the Clerk shall be furnished a sufficient number
         of copies of the Notice of  Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

A-2 (01/07)                           NOTICE OF APPEAL

Ira J. Nasserian, Esq. CSB# 225380
12 Cypress Way
Rolling Hills Estates, CA 90274
Phone: (310) 337-7900
Email: inasserian@lawinscal.com

Attorney for Plaintiff and Appellant
Persian Broadcast Service Global, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES, CALIFORNIA

| | |
|---|---|
| PERSIAN BROADCAST SERVICE GLOBAL INC., a California corporation ) | No. 2:21-cv-00229-CAS (GJSx) |
| | **NOTICE OF APPEAL – PLAINTIFF PERSIAN BROADCAST SERVICE GLOBAL INC.'S NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT** |
| Plaintiff. ) | |
| v. ) | |
| MARTIN J. WALSH, in his capacity as ) | |
| United States Secretary of Labor, ) | **REPRESENTATION STATEMENT** |
| UNITED STATES DEPARTMENT OF ) | |
| LABOR, ) | **SUMMARY JUDGMENT APPEAL** |
| Defendants | **Before Hon. Christina A. Snyder** |

**NOTICE OF APPEAL; REPRESENTATION STATEMENT**

1

## **NOTICE OF APPEAL**

Notice is hereby given that Persian Broadcast Service Global, Inc., ("Persian"),

Plaintiff in the above-referenced case, hereby appeals to the United States Court of

Appeals for the Ninth Circuit from the District Court's  Order and Judgment

granting Defendants Martin J. Walsh, in his capacity as United States Secretary of

Labor,  United States Department of Labor Motion for Summary Judgment,

denying Persian's Motion for Summary Judgment and awarding to Majid Varess

$183,794 plus interest and costs payable to Defendants, a copy of which is attached

as Exhibit 1 (the "Order and Judgment").

The United States Court of Appeals for the Ninth Circuit has pendent appellate

jurisdiction over the District Court's "Order and Judgment granting Defendants

Motion for Summary Judgment in its entirety and denying Persian's Motion for

Summary Judgment in its entirety for the following reasons, among others:

    1)    The Order and Judgment is final; and

**NOTICE OF APPEAL; REPRESENTATION STATEMENT**

2

2)    The Order and Judgment concerning the Summary Judgment

Order is based solely on legal arguments.

Dated: March 7, 2022          Respectfully submitted,

Ira J. Nasserian, Esq.
12 Cypress Way
Rolling Hills Estates, CA 90274
Attorney for Plaintiff
Persian Broadcast Service Global, Inc.

**NOTICE OF APPEAL; REPRESENTATION STATEMENT**

3

## REPRESENTATION STATEMENT

The undersigned represents Persian Broadcast Service Global, Inc., Plaintiff and Appellant in this matter, and no other party. Attached is a service list that shows all of the parties to the action below, and identifies their counsel by name, firm, address, email and telephone number, where appropriate. (F.R.A.P. 12(b); Circuit Rule 3-2(b).)

Dated: March 7, 2022,  Respectfully submitted,

Ira J. Nasserian, Esq.
12 Cypress Way
Rolling Hills Estates, CA 90274
Attorney for Plaintiff
Persian Broadcast Service Global, Inc.

**NOTICE OF APPEAL; REPRESENTATION STATEMENT**

4

## SERVICE LIST OF REPRESENTATION STATEMENT

Plaintiff and Appellant:

Persian Broadcast Service Global, Inc.

Counsel for Plaintiff and Appellant Persian Broadcast Service Global, Inc.:

.:   Ira J. Nasserian, Esq.  CSB# 225380
12 Cypress Way
Rolling Hills Estates, CA 90274
Phone: (310) 337-7900
Email: inasserian@lawinscal.com

Defendants/Appellees:

Martin J. Walsh, in his capacity as United States Secretary of Labor,
United States Department of Labor

Counsel for Defendants and Appellees Martin J. Walsh, U. S. Secretary of Labor,
United States Department of Labor

Tracy L. Wilkison
United States Attorney

David M. Harris
Assistant United States Attorney
Chief, Civil Division

Joanne S. Osinoff
Assistant United States Attorney
Chief, General Civil Section

Matthew J. Smock (Cal. Bar No. 293542)
Assistant United States Attorney
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-0397
Facsimile: (213) 894-7819
E-mail: Matthew.Smock@usdoj.gov

**NOTICE OF APPEAL; REPRESENTATION STATEMENT**

5

# Exhibit 1

**NOTICE OF APPEAL; REPRESENTATION STATEMENT**

6

**Notice of Electronic Filing**

The following transaction was entered on 3/2/2022 at 11:24 AM PST and filed on 3/1/2022

**Case Name:**       Persian Broadcast Service Global Inc. v. Eugene Scalia et al

**Case Number:**     2:21-cv-00229-CAS-GJS

**Filer:**

**WARNING: CASE CLOSED on 02/07/2022**

**Document Number:** 36

**Docket Text:**

**ORDER AND JUDGMENT ON DEFENDANTS MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS MOTION FOR SUMMARY JUDGMENT by Judge Christina A. Snyder, IT IS SO ORDERED AND ADJUDGED that: Defendants' motion for summary judgment is granted in its entirety; Plaintiff's motion for summary judgment is denied in its entirety;Judgment is hereby entered in favor of Defendants and against Plaintiff;Plaintiff is ordered to pay Majid Varess $183,794, plus pre-judgmentinterest at the rate set forth in 26 U.S.C. § 6621(a)(2), plus post-judgmentinterest at the rate set forth in 28 U.S.C. § 1961(a); and Defendants shall be entitled to costs pursuant to Federal Rule of Civil Procedure 54(d). (shb)**

**2:21-cv-00229-CAS-GJS Notice has been electronically mailed to:**

Matthew J Smock    caseview.ecf@usdoj.gov, carolina.usi@usdoj.gov, matthew.smock@usdoj.gov, usacac.civil@usdoj.gov

Ira J Nasserian    inasserian@lawinscal.com

**2:21-cv-00229-CAS-GJS Notice has been delivered by First Class U. S. Mail or by other means BY THE FILER to :**

**Notice of Electronic Filing**

The following transaction was entered on 3/2/2022 at 11:24 AM PST and filed on 3/1/2022
**Case Name:**        Persian Broadcast Service Global Inc. v. Eugene Scalia et al
**Case Number:**      2:21-cv-00229-CAS-GJS
**Filer:**
**WARNING: CASE CLOSED on 02/07/2022**
**Document Number:** 36
**Docket Text:**
**ORDER AND JUDGMENT ON DEFENDANTS MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS MOTION FOR SUMMARY JUDGMENT by Judge Christina A. Snyder, IT IS SO ORDERED AND ADJUDGED that: Defendants' motion for summary judgment is granted in its entirety; Plaintiff's motion for summary judgment is denied in its entirety;Judgment is hereby entered in favor of Defendants and against Plaintiff;Plaintiff is ordered to pay Majid Varess $183,794, plus pre-judgmentinterest at the rate set forth in 26 U.S.C. § 6621(a)(2), plus post-judgmentinterest at the rate set forth in 28 U.S.C. § 1961(a); and Defendants shall be entitled to costs pursuant to Federal Rule of Civil Procedure 54(d). (shb)**


**2:21-cv-00229-CAS-GJS Notice has been electronically mailed to:**

Matthew J Smock     caseview.ecf@usdoj.gov, carolina.usi@usdoj.gov, matthew.smock@usdoj.gov, usacac.civil@usdoj.gov

Ira J Nasserian     inasserian@lawinscal.com


**2:21-cv-00229-CAS-GJS Notice has been delivered by First Class U. S. Mail or by other means BY THE FILER to :**

Query    Reports    Utilities    Help    Log Out

ACCO,(GJSx),APPEAL,CLOSED,DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:21-cv-00229-CAS-GJS

Persian Broadcast Service Global Inc. v. Eugene Scalia et al
Assigned to: Judge Christina A. Snyder
Referred to: Magistrate Judge Gail J. Standish
Case in other court:  9th Circuit, 22-55254
Cause: 05:702 Administrative Procedure Act

Date Filed: 01/11/2021
Date Terminated: 02/07/2022
Jury Demand: None
Nature of Suit: 790 Labor: Other
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Persian Broadcast Service Global Inc.**
*a California corporation*

represented by **Ira J Nasserian**
Law Offices of Ira J Nasserian and
Associates
12 Cypress Way
Rolling Hills Estates, CA 90274
310-337-7900
Fax: 310-337-7902
Email: inasserian@lawinscal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Marty J Walsh**
*Secretary of Labor*

represented by **Matthew J Smock**
AUSA - US Attorneys Office
Civil Division
300 North Los Angeles Street Suite 7516
Los Angeles, CA 90012
213-894-0397
Fax: 213-894-7819
Email: matthew.smock@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**United States Department of Labor**

represented by **Matthew J Smock**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Majid Varess**
*TERMINATED: 08/10/2021*

**Counter Claimant**

**Marty J Walsh**

represented by **Matthew J Smock**

SER-170

*Secretary of Labor*
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**United States Department of Labor**      represented by **Matthew J Smock**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Persian Broadcast Service Global Inc.**  represented by **Ira J Nasserian**
*a California corporation*                        (See above for address)
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/11/2021 | 1 | COMPLAINT Receipt No: ACACDC-29976475 - Fee: $402, filed by Plaintiff Persian Broadcast Service Global Inc.. (Attorney Ira J Nasserian added to party Persian Broadcast Service Global Inc.(pty:pla))(Nasserian, Ira) (Entered: 01/11/2021) |
| 01/12/2021 | 2 | NOTICE OF ASSIGNMENT to District Judge Christina A. Snyder and Magistrate Judge Gail J. Standish. (lh) (Entered: 01/12/2021) |
| 01/12/2021 | 3 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (lh) (Entered: 01/12/2021) |
| 01/12/2021 | 4 | NOTICE OF DEFICIENCIES in Attorney Case Opening. The following error(s) was found: The Civil Cover Sheet (CV-71)is missing or incomplete. All civil actions presented for filing must be accompanied by a completed Civil Cover Sheet. See Local Rule 3-1. Counsel must file a completed Civil Cover Sheet immediately. Failure to do so may be addressed by judicial action, including sanctions. See Local Rule 83-7. No Notice of Interested Parties has been filed. A Notice of Interested Parties must be filed with every partys first appearance. See Local Rule 7.1-1. Counsel must file a Notice of Interested Parties immediately. Failure to do so may be addressed by judicial action, including sanctions. See Local Rule 83-7. (lh) (Entered: 01/12/2021) |
| 01/12/2021 | 5 | AMENDED CIVIL COVER SHEET filed by Plaintiff Persian Broadcast Service Global Inc.. (Nasserian, Ira) (Entered: 01/12/2021) |
| 01/12/2021 | 6 | CERTIFICATE of Interested Parties filed by Plaintiff Persian Broadcast Service Global Inc., (Nasserian, Ira) (Entered: 01/12/2021) |
| 01/14/2021 | 7 | Request for Clerk to Issue Summons on Certificate/Notice of Interested Parties 6 , Complaint (Attorney Civil Case Opening) 1 , Civil Cover Sheet (CV-71) 5 filed by Plaintiff Persian Broadcast Service Global Inc.. (Nasserian, Ira) (Entered: 01/14/2021) |
| 02/01/2021 | 8 | NOTICE TO COUNSEL upon filing of the complaint by Judge Christina A. Snyder. (rba) (Entered: 02/01/2021) |
| 02/11/2021 | 9 | 60/21 DAY Summons Issued re Complaint (Attorney Civil Case Opening) 1 as to Defendants Eugene Scalia, United States Department of Labor, Majid Varess. (shb) (Entered: 02/11/2021) |
| 03/31/2021 | 10 | STIPULATION Extending Time to Answer the complaint as to United States Department |

**SER-171**

|            |    | of Labor answer now due 5/13/2021; Eugene Scalia answer now due 5/13/2021, re Complaint (Attorney Civil Case Opening) 1 filed by Defendant United States Department of Labor; Eugene Scalia.(Attorney Matthew J Smock added to party Eugene Scalia(pty:dft), Attorney Matthew J Smock added to party United States Department of Labor(pty:dft))(Smock, Matthew) (Entered: 03/31/2021) |
|------------|----|------|
| 05/13/2021 | 11 | ANSWER to Complaint (Attorney Civil Case Opening) 1 AND, COUNTERCLAIM against Persian Broadcast Service Global Inc. filed by Defendants United States Department of Labor, Eugene Scalia. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Smock, Matthew) (Entered: 05/13/2021) |
| 06/02/2021 | 12 | *Answer to Counterclaim filed by Counter Defendant Persian Broadcast Service Global Inc* ANSWER to Answer to Complaint (Attorney Civil Case Opening),, Counterclaim, 11 *Answer to Counterclaim* filed by Plaintiff/Counter defendant Persian Broadcast Service Global Inc..(Nasserian, Ira) (Entered: 06/02/2021) |
| 06/11/2021 | 13 | *Answer to Counterclaim filed by Counter Defendant Persian Broadcast Service Global Inc* ANSWER to Answer to Complaint (Attorney Civil Case Opening),, Counterclaim, 11 *Answer to Counterclaim* filed by Counter defendant Persian Broadcast Service Global Inc.. (Nasserian, Ira) (Entered: 06/11/2021) |
| 07/01/2021 | 14 | ORDER SETTING SCHEDULING CONFERENCE by Judge Christina A. Snyder. Scheduling Conference is set for 8/16/2021 at 11:00 AM before Judge Christina A. Snyder. (cj) (Entered: 07/01/2021) |
| 07/01/2021 | 15 | MINUTE ORDER (IN CHAMBERS) - ORDER TO SHOW CAUSE by Judge Christina A. Snyder: IT IS HEREBY ORDERED that PLAINTIFF show cause in writing not later than July 21, 2021, why this action should not be dismissed for lack of prosecution as to defendant MAJID VARESS, only. (see document for further details) (bm) (Entered: 07/02/2021) |
| 08/02/2021 | 16 | JOINT REPORT Rule 26(f) Discovery Plan filed by Defendants Eugene Scalia, United States Department of Labor.. (Attachments: # 1 Proposed Order)(Smock, Matthew) (Entered: 08/02/2021) |
| 08/10/2021 | 17 | SCHEDULING NOTICE (IN CHAMBERS) AND SETTING HEARING BY ZOOM by Judge Christina A. Snyder, re: Initial Order Setting R26 Scheduling Conference 14 and Joint Report Rule 26(f) Discovery Plan 16 . The 8/16/2021 Scheduling Conference at 11:00 AM will be held by Zoom. Zoom Webinar Information can be found on the Court's website, under Judge Snyder's Procedures. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (cj) TEXT ONLY ENTRY (Entered: 08/10/2021) |
| 08/10/2021 | 18 | MINUTE (IN CHAMBERS) - DISMISSAL BY COURT FOR FAILURE TO COMPLY WITH LOCAL RULES AND FEDERAL RULES OF CIVIL PROCEDURE, 15 by Judge Christina A. Snyder: A response to the Order to Show Cause was to be filed and served no later thanJuly 21, 2021. As of todays date, no such response has been received by this Court; IT IS HEREBY ORDERED AND ADJUDGED that the above-entitled action isdismissed WITHOUT PREJUDICE, as to defendant MAJID VARESS, only for plaintiff's failure to comply with the Local Rules, Federal Rules of Civil Procedure, and orders of this Court. Majid Varess terminated. (shb) (Entered: 08/11/2021) |
| 08/16/2021 | 19 | MINUTES OF ZOOM SCHEDULING CONFERENCE held before Judge Christina A. Snyder. The Court confers with counsel and sets the following dates: Settlement Completion Cutoff: November 5, 2021; Plaintiffs Dispositive Motion Cut-off: November 22, 2021; Defendant Cross Dispositive Motion Cut-off: December 13, 2021; Plaintiffs Opposition Brief Cutoff: January 3, 2022; Defendants Reply Brief Cutoff: January 24, 2022; Hearing on Dispositive Motions (10:00 A.M.): February 7, 2022.Counsel inform the |

| | | |
|---|---|---|
| | | court of the parties preference to go before a Magistrate Judge for settlement purposes. Counsel are to confer regarding the Magistrate Judges identified in Court for settlement purposes. Counsel shall contact those Magistrate Judges Courtroom Deputy Clerk regarding availability, forthwith. ADR-12 to issue. Court Reporter: Laura Elias. (shb) (Entered: 08/18/2021) |
| 08/16/2021 | 20 | ORDER/REFERRAL to ADR Procedure No 1 by Judge Christina A. Snyder. Case ordered to Magistrate Judge Gail J. Standish for Settlement Conference. ADR Proceeding to be held no later than November 5, 2021. (shb) (Entered: 08/20/2021) |
| 09/01/2021 | 21 | SCHEDULING NOTICE by Magistrate Judge Michael R. Wilner. Status Conference set for September 17, 2021 at 11:00 AM. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (vm) TEXT ONLY ENTRY (Entered: 09/01/2021) |
| 09/07/2021 | 22 | CERTIFIED ADMINISTRATIVE RECORD filed by Defendants Eugene Scalia, United States Department of Labor. (Attachments: # 1 CAR PART 1 - 1-95, # 2 CAR PART 2 - 96-195, # 3 CAR PART 3 - 196-295, # 4 CAR PART 4 - 296-395, # 5 CAR PART 5 - 396-495, # 6 CAR PART 6 - 496-595, # 7 CAR PART 7 - 596-695, # 8 CAR PART 8 - 696-795, # 9 CAR PART 9 - 796-895, # 10 CAR PART 10 - 896-978)(Smock, Matthew) (Entered: 09/07/2021) |
| 09/17/2021 | 23 | MINUTES OF Status Conference held before Magistrate Judge Michael R. Wilner.The Court conferred with the parties on the status of the case. The Court sets a further status conference on October 8, 2021 at 10:00 a.m. Court Recorder: Not Recorded. (vm) (Entered: 09/17/2021) |
| 10/08/2021 | 24 | MINUTES OF Status Conference held before Magistrate Judge Michael R. Wilner: The Court will conduct a settlement conference in this action on Thursday, October 28, 2021, beginning at 9 a.m. PT. (See Minute Order for further details) Court Recorder: Not Recorded. (vm) (Entered: 10/08/2021) |
| 10/28/2021 | 25 | MINUTES OF Settlement Conference held before Magistrate Judge Michael R. Wilner. Judge Wilner attempted to conduct a settlement conference today. Mr. Nasserian and Persian Broadcast are ordered to show cause why they should not be sanctioned for their conduct today. They will discharge this OSC by filing a declaration (not to exceed five pages) regarding todays hearing no later than November 5. (See Minute Order for further details) Court Recorder: Not Recorded. (vm) (Entered: 10/28/2021) |
| 11/05/2021 | 26 | RESPONSE filed by Counter Defendant Persian Broadcast Service Global Inc. (Attachments: # 1 Supplement year to date profit and loss, # 2 Supplement authorization foe settlement)(Nasserian, Ira) (Entered: 11/05/2021) |
| 11/05/2021 | 27 | RESPONSE filed by Plaintiff Persian Broadcast Service Global Inc. (Attachments: # 1 year to date profit and loss, # 2 authorization for settlement)(Nasserian, Ira) (Entered: 11/05/2021) |
| 11/10/2021 | 28 | ORDER DISCHARGING OSC by Magistrate Judge Michael R. Wilner. In an exercise of discretion, the OSC is discharged as to Mr. Nasserian and PBS without further consequence. (See Order for further details) (vm) (Entered: 11/10/2021) |
| 11/22/2021 | 29 | NOTICE OF MOTION AND MOTION for Summary Judgment as to complaint filed by plaintiff Persian Broadcast Service Global Inc.. (Attachments: # 1 statement of uncontroverted facts) (Nasserian, Ira) (Entered: 11/22/2021) |
| 12/13/2021 | 30 | NOTICE OF MOTION AND MOTION for Summary Judgment *And Cross -Motion for Summary Judgment* filed by Defendants Eugene Scalia, United States Department of Labor. Motion set for hearing on 2/7/2022 at **10:00 AM** before Judge Christina A. Snyder. (Attachments: # 1 DEFENDANTS STATEMENT OF UNCONTROVERTED MATERIAL |

| | | |
|---|---|---|
| | | FACTS, RESPONSE TO PLAINTIFFS STATEMENT OF MATERIAL FACTS, AND PROPOSED CONCLUSIONS OF LAW, # 2 Proposed Order and Judgment) (Smock, Matthew) (Entered: 12/13/2021) |
| 12/14/2021 | 31 | SCHEDULING NOTICE AND ORDER by Judge Christina A. Snyder. The Court, on its own motion, hereby resets the Motion for Summary Judgment as to the Complaint 29 and the Motion for Summary Judgment and Cross-Motion for Summary Judgment 30 to February 7, 2022 at **10:00 a.m.** IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (droj) (Entered: 12/14/2021) |
| 01/03/2022 | 32 | OPPOSITION filed by Plaintiff Persian Broadcast Service Global Inc.. (Attachments: # 1 Proposed Order)(Nasserian, Ira) (Entered: 01/03/2022) |
| 01/24/2022 | 33 | REPLY in support NOTICE OF MOTION AND MOTION for Summary Judgment *And Cross -Motion for Summary Judgment* 30 filed by Defendants Eugene Scalia, United States Department of Labor. (Smock, Matthew) (Entered: 01/24/2022) |
| 01/31/2022 | 34 | SCHEDULING NOTICE (IN CHAMBERS) AND SETTING HEARING BY ZOOM by Judge Christina A. Snyder, re: NOTICE OF MOTION AND MOTION for Summary Judgment as to complaint 29 , Text Only Scheduling Notice 31 , and NOTICE OF MOTION AND MOTION for Summary Judgment 30 . The 2/7/2022 hearing at 10:00 AM will be held by Zoom. Zoom Webinar Information can be found on the Court's website, under Judge Snyder's Procedures. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (cj) TEXT ONLY ENTRY (Entered: 01/31/2022) |
| 02/07/2022 | 35 | MINUTES PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 29, filed on NOVEMBER 22, 2021); DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT (DKT. 30, FILED ON DECEMBER 13, 2021) by Judge Christina A. Snyder: 1) The Court DENIES Persian Broadcast's motion for summary judgment. 2) The Court GRANTS defendants' cross-motion for summary judgment on their counterclaim and orders Persian Broadcast to pay Varess $183,794 plus pre-judgment interest pursuant to 26 U.S.C. § 6621(a)(2), and post-judgment interest pursuant to 28 U.S.C. § 1961(a).IT IS SO ORDERED. Court Reporter: Katie Thibodeaux. (shb) Modified on 3/1/2022 (cj). (Entered: 02/08/2022) |
| 03/01/2022 | 36 | ORDER AND JUDGMENT ON DEFENDANTS MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS MOTION FOR SUMMARY JUDGMENT by Judge Christina A. Snyder, IT IS SO ORDERED AND ADJUDGED that: Defendants' motion for summary judgment is granted in its entirety; Plaintiff's motion for summary judgment is denied in its entirety;Judgment is hereby entered in favor of Defendants and against Plaintiff;Plaintiff is ordered to pay Majid Varess $183,794, plus pre-judgmentinterest at the rate set forth in 26 U.S.C. § 6621(a)(2), plus post-judgmentinterest at the rate set forth in 28 U.S.C. § 1961(a); and Defendants shall be entitled to costs pursuant to Federal Rule of Civil Procedure 54(d). (shb) (Entered: 03/02/2022) |
| 03/07/2022 | 37 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by plaintiff Persian Broadcast Service Global Inc.. Appeal of Judgment,, 36 . (Appeal Fee - $505 Fee Paid, Receipt No. ACACDC-32905438.) (Attachments: # 1 judge's order)(Nasserian, Ira) (Entered: 03/07/2022) |
| 03/09/2022 | 38 | NOTIFICATION from Ninth Circuit Court of Appeals of case number assigned and briefing schedule. Appeal Docket No. 22-55254 assigned to Notice of Appeal to 9th Circuit Court of Appeals, 37 as to Plaintiff Persian Broadcast Service Global Inc.. (shb) (Entered: 03/10/2022) |

SER-174

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 11/14/2022 11:09:41 | | | |
| **PACER Login:** | fvargas1971 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:21-cv-00229-CAS-GJS End date: 11/14/2022 |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |

**SER-175**